## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

KRYSTI MERCHANT, as Personal
Representative for the Estate of
Cory Merchant, Deceased,

      Plaintiff,

v.                                                                   Case No. 5:23-cv-00661
                                                                     **DISPOSITIVE MOTION**

BILLY WOODS, Sheriff of Marion
County, Florida, in his official
Capacity; Deputy JUSTIN KOSINSKI;
Deputy DELLUN MILLER; Sergeant
JEROME DUKES;

      Defendants.

_____/

## DEFENDANT, JEROME DUKES', MOTION FOR SUMMARY JUDGMENT

Defendant, Sergeant JEROME DUKES (**"Sergeant Dukes"**), by and through

his undersigned attorneys, pursuant to Rule 56, Fed. R. Civ. P., hereby files his

Motion for Summary Judgment, and states:

## INTRODUCTION

1.    On December 8, 2023, Plaintiff, KRYSTI MERCHANT, as Personal

Representative for the Estate of Cory Merchant, Deceased ("**Plaintiff**"), filed her

First Amended Complaint against Sergeant Dukes alleging (1) violation of the Due

Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 and (2)

wrongful death under Florida law, due to death of Cory Merchant ("**Merchant**"),

a pretrial detainee at the Marion County Jail.

2.    For the reasons argued herein, Sergeant Dukes is entitled to summary judgment as a matter of law on Counts I and III.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue of fact is "genuine" only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant shows "an absence of evidence to support the nonmoving party's case," the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine disputes of material facts. *Id.* at 325. In determining whether a genuine dispute of material fact exists, the court must read the record and the evidence presented in the light most favorable to the non-moving party. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

## STATEMENT OF FACTS

On November 6, 2021, Deputy Kosinksi and Deputy Dellun Miller ("**Deputy**

**Miller**") were assigned as the detention deputies for Gulf Pod, which consisted of four, separate housing sections.     Exh. 12, Sheriff Woods' Answers to Interrogatories, # 15.  The shift began at 6:00 p.m., and continued to 6:00 a.m. the following day, November 7, 2021.  Exh. 21, Kosinski Deposition, 24/2-24/6; Exh. 23, Miller Deposition, 31/22-32/9.  Sergeant Dukes was their sector supervisor. Exh. 39, Detention Personnel Post Assignments; Exh. 20, Gulf Pod Post Order.  In addition to the Gulf Pod, Sergeant Dukes was expected to supervise the detention deputies in other pods within the Marion County Jail.  Exh. 19, Dukes Deposition, 124/11-125/13.

    As the shift sergeant, Sergeant Dukes was the first-line supervisor responsible for monitoring Deputy Kosinski's and Deputy Miller's actions and, if either was errant in their duties, Sergeant Dukes would be responsible for advising his supervisor, the lieutenant over the shift.  Exh. 18, McNeely Deposition, 35/3-36/9.  Sergeant Dukes was expected to have consistent involvement and interaction with their housing sections and the detention staff.  Id., 36/11-37/16. Sergeant Dukes was responsible for ensuring that Deputy Kosinski and Deputy Miller enforced the lockdown policy and completed security checks in a timely manner and according to Sheriff's Office policy.  Id., 44/24-45/22, 47/1-51/5, 68/6-69/4, 135/12-138/4.  Sergeant Dukes would review the daily logs to ensure that the housing units were being properly operated by the detention deputies.

Id., 53/10-57/19. Sergeant Dukes had some discretion in how to discipline the detention deputies under his supervision, but the range of discipline, including whether it needed to be escalated to the lieutenant and the chain of command, was dictated by Sheriff's Office policy. Id., 59/4-63/3, 130/3-130/11. Sergeant Dukes disciplined Deputy Miller in April of 2021, due to Deputy Miller's failure to conduct the security checks pursuant to Sheriff's Office policy. Exh. 23, Miller Deposition, 79/16-97/4.

As the shift sergeant, Sergeant Dukes would walk through each of the housing pods and speak with the inmates in at least one housing section within the housing pods. Exh. 19, Dukes Deposition, 16/8-16/16/18, 17/5-19/10, 124/18-125/13. Sergeant Dukes did not have the responsibility to develop a housing plan and place inmates into certain pods based on their security level but, as with all the detention deputies, Sergeant Dukes would be responsible to monitor the inmates and review incident reports so that classifications and investigations can potentially rehouse an inmate that might be problematic. Id., 76/10-78/4; Exh. 18, McNeely Deposition, 63/14-63/23, 65/8-66/13.

On November 7, 2021, Eric Lutterloah ("**Lutterloah**"), at approximately 1:09 a.m., within in a span of less than 30 seconds, arose from his bunk, walked over to the next bunk, talked to Merchant, and then punched Merchant three times in the face, which caused Merchant to fall to the ground and strike the back of head. Exh.

1, Jail Surveillance Video, 01:08:48-01:09:15; Exh. 2, Incident Report #210005382; Exh. 3, FIBRS Incident Report.  At the time of Lutterloah's assault, Deputy Miller had relieved another deputy assigned to master control, which left Deputy Kosinski alone to monitor Gulf Pod.  Exh. 23, Miller Deposition, 39/13-39/17; Exh. 21, Kosinski Deposition, 31/5-31/10; Exh. 37, Dukes Affidavit.  Although Deputy Miller had video cameras in master control, Deputy Miller did not observe Lutterloah's assault as Deputy Miller's primary responsibility was to open the security doors to allow other correctional officers and inmates to access the various areas of the jail.  Exh. 23, Miller Deposition, 40/7-41/15.  Deputy Kosinski also did not observe Lutterloah and Merchant off of their bunks and did not observe the assault.  Exh. 21, Kosinski Deposition, 58/24-59/9; 71/18-71/25.  Neither Deputy Kosinski nor Deputy Miller knew or had any reason to believe that Lutterloah and Merchant disliked each other, had any problems with each in the past, that Lutterloah and Merchant were going to fight if housed in the same housing section, or that housing Lutterloah and Merchant together could cause a risk of harm to Merchant.  Exh. 21, Kosinski Deposition, 72/1-72/15; Exh. 23, Miller Deposition, 98/18-98/21, 99/8-100/5.  Nor had Sergeant Dukes been made aware of Lutterloah prior to this incident.  Exh. 19, Dukes Deposition, 129/24-130/3.

After the assault occurred, another inmate walked to the rover station window, knocked, and said, "man down."  Exh. 1, Jail Surveillance Video,

01:09:56-01:11:11; Exh. 21, Kosinski Deposition, 60/12-60/16, 73/5-73/13.  Deputy Kosinski retrieved his gloves, opened the housing section, and went towards where Merchant laid on the floor.  Exh. 1, Jail Surveillance Video, 01:11:11-01:13:48; Exh. 21, Kosinski Deposition, 62/3-62/9, 63/10-63/21, 73/14-75/10.  After observing Merchant in distress, Kosinski immediately radioed for backup and medical assistance.  Id., 63/22-64/6.  Thereafter, other officers and a nurse with a backboard arrived inside Gulf Pod to assist with the situation.  Exh. 1, Jail Surveillance Video, 01:13:49-01:15:25; Exh. 19, Dukes Deposition, 138/25-139/25. After Sergeant Dukes arrived shortly after, Sergeant Dukes called 911 and Merchant was carried out of the G-Pod on a stretcher and brought to the hospital. Id., 140/23-141/7; Exh. 1, Jail Surveillance Video, 01:14:10-01:15:25; Exh. 37, Dukes Affidavit.  Sergeant Dukes instructed that the correctional deputies to review the video cameras and conduct an investigation, which is what the Sheriff's Office policy would have required in any inmate-on-inmate assault.  Exh. 19, Dukes Deposition, 64/18-66/20, 67/11-67/25, 131/10-131/15; Exh. 2, Incident Report #210005382; Exh. 3, FIBRS Incident Report.

Merchant later died at the hospital on November 13, 2021, due to complications from blunt head trauma as a result of Lutterloah's assault.  Exh. 4, Autopsy Report and Certification of Death.  Lutterloah is still awaiting trial for the charge of manslaughter, a second-degree felony, due to his assault and the death

of Merchant. <u>Exh. 5</u>, Information, 2021-CF-004457; <u>Exh. 6</u>, Probable Cause
Affidavit, 2021-CF-004457.

<u>**MEMORANDUM OF LAW**</u>

1.    <u>Sergeant Dukes is entitled to qualified immunity</u>.

"To receive qualified immunity, [a] government official must first prove that
he was acting within his discretionary authority." *Caldwell v. Warden, FCI
Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (internal quotation marks omitted).
An official acts within his discretionary authority if his actions (1) were
undertaken "pursuant to the performance of his duties," and (2) were "within the
scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988); *see also
Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (noting that an official acts
within his discretionary authority if he "perform[s] a legitimate job-related
function . . . through means that [are] within his power to utilize"). Here, the
Marion County Sheriff's Office employed Sergeant Dukes as a correctional officer
in the Marion County Jail at the time of Lutterloah's assault on Merchant. Sergeant
Dukes supervised Deputy Kosinski and Deputy Miller whose primary
responsibility was to supervise the inmates inside the Gulf Pod to include
Merchant and Lutterloah. Thus, since Sergeant Dukes was acting in his
discretionary authority at the time of the incident, in order to defeat Sergeant
Dukes' right to qualified immunity, Plaintiff must show that (1) Sergeant Dukes

7

violated a constitutional right and (2) the right was clearly established at the time of the alleged violation. *Holloman*, 370 F.3d at 1264.

Deliberate indifference claims brought by pretrial detainees, such as Merchant, are governed by the Due Process Clause of the Fourteenth Amendment. *See e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . ."). The standards for deliberate indifference claims under the Fourteenth Amendment are "identical" to those under the Eighth Amendment. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) (*citing Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)); *see also Ireland v. Prummell*, 53 F.4th 1274, 1288, n. 4 (11th Cir. 2022) (applying Eighth Amendment caselaw to pretrial detainee deliberate indifference claims); *Keith v. Dekalb Cnty, Ga.*, 749 F.3d 1034, 1045, n. 35 (11th Cir. 2014) (stating that pretrial detainee's deliberate indifference to a substantial risk of harm claims are properly analyzed under the Substantive Due Process Clause of the Fourteenth Amendment, but the standard is the same as that for the Eighth Amendment); *Nelson v. Tompkins*, 89 F.4th 1289, 1297 (11th Cir. 2024) (in assault involving pretrial detainee, noting that the deliberate indifference standard "has two components: one subjective and one objective") (*quoting* Mosley v. Zachery, 966 F.3d 1265, 1270 (11th Cir. 2020)); *Baker v. Williams*, 3:16-cv-224-J-32JBT, 2017 U.S. Dist. LEXIS 71217,

at *6, n. 3 (M.D. Fla. May 10, 2017) (applying deliberate indifference standard to pretrial detainee's claim that jail officials failed to protect him from assault by other inmates). To survive summary judgment in a case alleging deliberate indifference, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman*, 718 F.3d at 1331 (citation omitted).

A.    *Lutterloah was not a "substantial risk of serious harm" to Merchant.*

Plaintiff alleged that Sergeant Dukes failed to protect Merchant from particularly violent inmates in the Marion County Jail, including Lutterloah. *See, e.g.* Doc. 64, ¶ 340, iii. However, the record evidence in this case does not support "a strong likelihood, rather than a mere possibility," that Lutterloah presented a substantial risk of serious harm to Merchant. *See Nelson*, 89 F.4th at 1296 (citation omitted). Merchant and Lutterloah resided together in Gulf Pod for the majority of Lutterloah's incarceration in the Marion County Jail prior to Lutterloah's assault on Merchant. Yet there were no documented disagreements between Merchant and Lutterloah. In fact, until Lutterloah struck Merchant on November 7, 2021, Lutterloah had no prior instances of any other known disagreements with inmates in Gulf Pod despite having resided in Gulf Pod since his booking into the Marion County Jail on June 10, 2020, a period of 515 days, excluding Lutterloah's 8 days spent in another housing section. Exh. 31, Merchant Housing Movements

Classifications Report; <u>Exh. 30</u>, Lutterloah Housing Movements Classifications Report; <u>Exh. 32</u>, Peterson Affidavit.  Further, although Sergeant Dukes recalled speaking with Merchant on several occasions, Sergeant Dukes did not have any recollection of speaking with Lutterloah or being made aware of Lutterloah.  <u>Exh. 19</u>, Dukes Deposition, 129/8-130/3.  Thus, there is no evidence that Lutterloah posed a substantial risk of harm to Merchant or any other inmate within the Marion County Jail at the time of Lutterloah's assault.

> B.    *The Marion County Jail did not pose a "substantial risk of serious harm" to Merchant.*

Plaintiff has alleged that various conditions inside the Marion County Jail, e.g., segregation of sex offender inmates, past inmate-on-inmate assaults, dormitory-style housing, nighttime security checks every hour, and inmates being outside their bunk at lockdown, created a substantial risk of serious harm to Merchant that caused Merchant's assault and ultimate death.  However, "not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Prisons and jails are necessarily dangerous places.  *See id.* at 858 (Thomas, J., concurring in the judgment); *Kincaid v. Williams*, 143 S. Ct. 2414, 2419 n.2, (2023) (Alito, J., dissenting) (referring to "the uniquely dangerous context of prison"); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 333 (2012) ("Jails are often crowded, unsanitary, and

dangerous places."); *Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) (en banc) ("Prisons are dangerous and filled with law-breaking because that is where the criminals are. Even the most secure prisons are dangerous places for inmates, employees, and visitors."). "[T]hey house society's most antisocial and violent people in close proximity with one another." *Farmer*, 511 U.S. at 858; *see also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."). Violent incidents among inmates are "inevitable" in such an environment "no matter what the guards do . . . unless all prisoners are locked in their cells 24 hours a day and sedated." *Farmer*, 511 U.S. at 858-59 (Thomas, J., concurring in judgment) (citation omitted)*; see also Purcell ex. rel. Estate of Morgan v. Toombs County*, 400 F.3d 1313, 1320, n.4 (11th Cir. 2005) (holding that gambling and fights over card games not sufficient to find jail administrators liable for beating death of an inmate who attackers believed took their money); *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (violence among inmates must have resulted in so many incidents or injuries that such incidents or injuries were "the norm or something close to it.") (*quoting Purcell*, 400 F.3d at 1322). But the Constitution does not mandate jail officials foresee and prevent all potential danger despite the inherent risk of violence in jails. Instead, jail officials have a constitutional obligation to guarantee inmates' safety through

"reasonable measures."  *See Farmer*, 511 U.S. at 832.

Sergeant Dukes did not classify inmates and did not decide to place inmates charged with sex offenses into the same housing section.  Nor is there evidence in the record to indicate that Sergeant Dukes observed any prior violence or rule violations by Lutterloah that would have necessitated drafting an incident or disciplinary report for review by investigations or classifications within the Sheriff's Office to determine whether Lutterloah should have been moved to another housing section within the Marion County Jail.  Instead, Sergeant Dukes' primary responsibility was to supervise the detention deputies in his sector, including Deputy Kosinski and Deputy Miller, as well as several other deputies stationed within other housing pods within the Marion County Jail pursuant to the Sheriff's Office's policies.

There is no evidence in the record that Sergeant Dukes failed to enforce the policies of the Sheriff's Office to include the lockdown procedures, security checks, or the general requirement that correctional deputies monitor and supervise the inmates.  Nor is there any indication that the Sheriff's Office's policies created safety risks to inmates at the Marion County Jail.  While Sergeant Dukes was aware that fights occurred between inmates in the Marion County Jail and had to intervene to break up fights between inmates, there is no evidence that Sergeant Dukes was present in Gulf Pod during Lutterloah's assault to intervene or render

12

immediate aid to Merchant after the assault occurred.  Exh. 19, Dukes Deposition, 48/2-49/12.  Further, Sergeant Dukes did not recall any widespread or pervasive amount of violence between inmates in the Marion County Jail.  Id., 49/14-50/14. However, in one instance of an inmate-on-inmate assault in September of 2021, Sergeant Dukes responded to the incident and followed the Sheriff's Office policy to ensure that the inmates were separated, seen by the medical unit, and a report was drafted to be forwarded to investigations for review.  Id., 61/19-64/6.  Thus, the conditions within the Marion County Jail do not support the assertion that they posed a substantial risk of harm to Merchant, or that Sergeant Dukes created conditions that posed a substantial risk of harm to Merchant.

C.    *Sergeant Dukes was not "deliberately indifferent" to a "substantial risk of serious harm" to Merchant.*

Even assuming *arguendo* that that Lutterloah or the conditions within the Marion County Jail posed a "substantial risk of serious harm" to Merchant, the record lacks evidence showing that Sergeant Dukes was "deliberately indifferent." *See Nelson*, 89 F.4th at 1297 (deliberate indifference standard "has two components: one subjective and one objective.").  In *Nelson* the 11th Circuit affirmed denial of qualified immunity to an intake correctional officer that had knowledge that a black inmate was accused of stabbing a white store clerk after viewing videos of police killing black people.  *Id.* at 1293-94.  The intake correctional officer did not tell anyone about this inmate's racial motive in stabbing the white clerk and the

jail later housed the black inmate with another white inmate in a cell together. *Id.* at 1194-95. The black inmate later strangled and killed the white inmate while they were in their cell. *Id.* In evaluating whether the intake correctional officer met the subjective component of deliberate indifference, the 11th Court noted that a reasonable jury could infer that the intake correctional officer "*knew* of the obvious risk of serious harm" (emphasis in original) because the officer "knew that [the black inmate] stabbed a white man in the back after watching videos of white-on-black police shootings; that [the black inmate] stabbed the man solely because he was white; that classification officers assigned [the black inmate] to a cell with [the white inmate,]" despite "that [the black inmate] was polite and cooperative with officers [] during the booking process; that [the black inmate] never threatened anyone in the jail; and that [the white inmate] never reported feeling threatened." *Id.* at 1297-98.

In the present action, there is no evidence in the record that Sergeant Dukes "actually (subjectively) knew" of a substantial risk of serious harm to Merchant and that Sergeant Dukes "disregarded the known risk by failing to respond to it in an (objectively) reasonable manner." *Nelson*, 89 F.4th at 1297 (cleaned up) (*quoting Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020), and *quoting Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)). Based on the record evidence, Sergeant Dukes did not witness the assault and was not in a position to

prevent it before the assault occurred.  Instead, Sergeant Dukes was alerted of a medical emergency and responded to the Gulf Pod as part of his duties as a supervisor.  As with the other individual defendants, there is no evidence that Sergeant Dukes was aware that Lutterloah, or any other inmate posed a substantial risk of serious harm, or that Merchant was uniquely vulnerable and thus needed protection from other inmates.  Simply because Merchant had been punched before while in the Marion County Jail does not mean that an inference could be drawn that Merchant needed protection from inmates and that Sergeant Dukes should have drew the same inference.  *Farmer*, 511 U.S. at 837.

D.    *Plaintiff cannot prove a "causal connection" between Sergeant Dukes' conduct and Lutterloah's assault on Merchant.*

Plaintiff must prove "a causal connection between [Sergeant Dukes'] conduct and the [Fourteenth] Amendment violation."  *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Circuit 2016) (plaintiff alleged that jail officials violated their classification policy by housing with another inmate a paranoid schizophrenic inmate accused of murder who had previously committed an assault on another inmate). This causal element requires proof that the officer "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded."  *Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611,

622 (alterations adopted) (citation and internal quotation marks omitted).    In *Rodriguez*, the 11th Circuit found that the jail official, who was chief of security at the prison, could have moved an inmate who complained of threats from the Latin Kings to immediate administrative confinement and put in motion procedures for protective management, but the jail official failed to do so.  *Id.* at 623.  Instead, the jail official returned the inmate back to the housing section with the Latin Kings who had threatened the inmate's life.  *Id.*  And later that morning after the transfer, an enforcer for the Latin Kings stabbed the inmate in the back and chest.  *Id.* at 616.

Here, other than actually observing Lutterloah leave his bunk and strike Merchant, which Sergeant Dukes was not in a position to do given his other responsibilities as the sector sergeant, there is nothing in the record to suggest that Sergeant Dukes had the means to improve Merchant's safety generally or his safety from Lutterloah specifically, or that Sergeant Dukes had other means to protect Merchant from violence that Sergeant Dukes nevertheless disregarded. Instead, simply by not being present in Gulf Pod to observe the assault due to his other supervisory responsibilities does not mean Sergeant Dukes caused Lutterloah's assault on Merchant.

Further, although it does not appear that Plaintiff alleged a separate claim for supervisory liability in their First Amended Complaint, there is also no evidence that Sergeant Dukes enforced his own policy, which was inconsistent

with the Sheriff's Office policy or the Florida Model Jail Standards, to create a substantial risk of serious harm to Merchant. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (discussing supervisor liability and observing that a causal connection may be established when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights).

Thus, Sergeant Dukes actions or inactions preceding, during, or after Lutterloah's assault do not support the conclusion that Sergeant Dukes caused the assault on Merchant.

E.    *Plaintiff cannot point to any "clearly established law" that would have put Sergeant Dukes on notice that his conduct was clearly unlawful given the circumstances.*

Finally, Plaintiff can point to no "clearly established law" that would have put Sergeant Dukes on notice that his conduct "was already established to such a high degree that every objectively reasonable" officer in his place "would be on notice" that what he was doing was "clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002); *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (plaintiffs can satisfy requirement by (1) by pointing to a materially similar decision of the Supreme Court, of the Eleventh Circuit, or of the Florida Supreme Court; (2) by establishing that "a broader, clearly established principle should control the novel facts" of the case; or (3) by convincing the court that the case is one of those rare ones that "fits within the exception of conduct which so obviously violates th[e] constitution that prior

case law is unnecessary").

Certainly, it is clearly established that Sergeant Dukes must ensure the safety of the inmates, including Merchant, through "reasonable measures." *See Farmer*, 511 U.S. at 832. However, it is not clearly established that Sergeant Dukes must guarantee the inmates' safety through his personal observation at all times or by his presence in certain housing sections at certain times. Nor is this a case in which Sergeant Dukes did "nothing" to prevent or reduce inmate-on-inmate assaults. *See, e.g. Marsh v. Butler County*, 268 F.3d 1014, 1034 (11th Cir. 2001) (where jail usually only had one jailer to oversee entire facility, where video surveillance did not exist to monitor inmates, where jail did not segregate or discipline inmates, where inmate was beaten for several minutes and other inmates tried to get jailer's attention but no response was taken until 10 to 15 minutes after assault ended, jail deliberately indifferent to serious risk of substantial harm). Sergeant Dukes was required to present himself to each housing pod throughout this shift. Sergeant Dukes was also required to address the inmates within a specific housing section each night. There is no evidence that Sergeant Dukes failed to do this or even failed to supervise Deputy Kosinski or Deputy Miller, assuming *arguendo* that either was in a position to foresee and prevent Lutterloah's assault.

2.    <u>Sergeant Dukes is entitled to state law immunity</u>.

In Count III, Plaintiff seeks to hold Sergeant Dukes liable under Florida law

for the wrongful death of Merchant.  In wrongful death actions under Florida law, Plaintiff must show that the injury suffered by Merchant was reasonably foreseeable or anticipated to allow time for Sergeant Dukes to prevent the injury. *See Groover v. Polk Cty. Bd. of Cty. Comm'rs*, 570 F. Supp. 3d 1134, 1147 (M.D. Fla. 2021) (granting summary judgment where evidence "too speculative and imprecise to create a dispute of fact as to whether the Defendants more likely than not caused [decedent's] death."); *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) (affirming directed verdict in negligence action where plaintiff "established a no better than even chance" the decedent would have survived); *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1242 (11th Cir. 2024) ("Florida courts follow the 'more likely than not' standard of causation" in wrongful death cases). However, in order to show that Merchant's assault and injury were foreseeable, Plaintiff would need to heap inference upon inference, or speculation on top of speculation, to achieve this outcome.  And given the swiftness in which Lutterloah escalated the assault on Merchant, and the fact that Sergeant Dukes was conducting his other supervisory duties at the time, Plaintiff cannot argue that, if only Sergeant Dukes had observed Merchant out of his bunk or observed Lutterloah confront Merchant, then the assault could have been prevented.  There is no testimony or evidence in the record that even if Sergeant Dukes was present in Gulf Pod and had observed these occurrences that Lutterloah would have

stopped his assault on Merchant.

There is also no evidence that Merchant made requests to Sergeant Dukes to be moved from Gulf Pod due to his fear of an assault from the inmates, including Lutterloah. In fact, based on Merchant's disciplinary history in the jail, it appears that Merchant wanted to be in Gulf Pod, which the Marion County Jail later accommodated after Merchant was housed in various medical pods due to his suicidal idealization. Exh. 33, Merchant Incident Reports, P. 16-19. Further, the objective evidence points to Sergeant Dukes taking every reasonable action in his supervisory capacity to provide for the safety and security of the Gulf Pod inmates and the Marion County Jail. Further, Sergeant Dukes responded to Gulf Pod after being alerted of the incident and called 911 to request emergency services for Merchant's transport to the hospital. And in the aftermath, Sergeant Dukes directed his subordinates to review the video footage and draft an incident report to assist jail investigators in pursuing criminal charges against Lutterloah.

Further, even assuming *arguendo* that Sergeant Dukes was negligent in failing to foresee or prevent Lutterloah's assault, there is no evidence that Sergeant Dukes "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" to pierce their statutory immunity under Florida law. *See* § 768.28(9)(a), Fla. Stat. Importantly, the immunity provided by § 768.28(9)(a), Fla. Stat., is both an immunity from

liability and an immunity from suit, which is effectively lost if the person entitled to assert the immunity is required to go to trial. *See Tucker v. Resha*, 648 So. 2d 1187 (Fla. 1994). The trial judge must act as a gatekeeper under these circumstances, and should terminate civil proceedings when the immunity applies. *See Willingham v. City of Orlando*, 929 So.2d 43, 48 (Fla. 5th DCA 2006).

The phrase "bad faith" has been "equated with the actual malice standard." *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998). The phrase "malicious purpose" has been interpreted to mean conduct committed with "ill will, hatred, spite, [or] an evil intent." *Eiras v. State Dep't of Bus. & Prof'l Regulation Div. of Alcoholic Bevs. & Tobacco*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017). Or, more simply, "the subjective intent to do wrong." *Id.* at 1345. The phrase "wanton and willful disregard of human rights [or] safety" connotes "conduct much more reprehensible and unacceptable than mere intentional conduct," *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987), and "conduct that is worse than gross negligence." *Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593 (Fla. 2d DCA 2003). Here, there is no evidence that Sergeant Dukes acted in a manner sufficient to pierce their statutory immunity under Florida.

3. Merchant had no "survivors" under Florida or Federal law. [1]

---

[1] Plaintiff and Tommie Merchant are also not entitled to "survivor" damages under 42 U.S.C. § 1983. *See Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011) ("§ 1983 does not

Finally, neither Plaintiff, Krysti Merchant, nor Tommie Merchant are "survivors" under Florida's Wrongful Death statute, which would entitle them to damages, because there is no evidence that Cory Merchant provided either "support" or "services" to Krysti Merchant or Tommie Merchant "from the date of [Cory Merchant's] injury to [] his death, with interest," or that Cory Merchant would provide any "future loss of support and services [to Krysti Merchant or Tommie Merchant] from the date of death and reduced to present value." § 768.21(1), Fla. Stat.; Exh. 34, Krysti Merchant Deposition, 9/6-9/9, 10/13-11/4, 23/10-23/13, 19/2-19/20, 22/2-22/14, 22/23-23/9, 45/17-48/6; Exh. 35, Tommie Merchant Deposition, 28/24-29/21, 30/10-31/4, 52/23-53/11, 55/10-56/19, 56/21-57/12; *see also* Sheriff Woods' Motion for Summary Judgment, Sec. 2.B. Thus, as it relates to Plaintiff's wrongful death action, neither Krysti Merchant nor Tommie Merchant are "survivors" and judgment should entered against them for their "survivor" claims.

**WHEREFORE**, Defendant, Sergeant JEROME DUKES**,** respectfully requests

---

provide for the survival of civil rights actions. Due to this deficiency…the state law of the forum applies as long as it is not inconsistent with the Constitution and the laws of the United States."); *see also Mucciolo v. Boca Raton Reg'l Hosp., Inc.*, 824 F. App'x 639, 644 (11th Cir. 2020) ("when death is the result of a personal injury, the law of Florida essentially substitutes a statutory wrongful death action for the personal injury action."); *Ortiz v. Burlein*, 2023 WL 11823630, at *3 (M.D. Fla. 2023) ("When a personal injury to the decedent results in death, no action for the personal injury shall survive…But under the survival statute…personal injury actions in which the personal injury is not also the cause of death [may be brought.").

the Court enter an Order granting summary judgment for Sergeant Dukes and against Plaintiff on Counts I and III of Plaintiff's First Amended Complaint.

Dated: June 27, 2025

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of June, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to counsel for Plaintiff, James M. Slater, Esquire, Slater Legal, PLLC, 113 South Monroe Street, Tallahassee, Florida 32301, and Sam Harton, Esquire, Romanucci and Blandin, 321 North Clark Street, Chicago, Illinois 60654.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Fla. Bar No. 599565
Brandon T. Byers, Esquire
Fla. Bar. No. 0119492
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile:  407-841-8431
Email: bbogan@hilyardlawfirm.com
         bbyers@hilyardlawfirm.com
Attorneys for Defendant, Sergeant Dukes