## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

KRYSTI MERCHANT, as Personal
Representative for the Estate of
Cory Merchant, Deceased,

      Plaintiff,

v.

BILLY WOODS, Sheriff of Marion
County, Florida, in his official
Capacity; Deputy JUSTIN KOSINSKI;
Deputy DELLUN MILLER; Sergeant
JEROME DUKES;

      Defendants.

Case No. 5:23-cv-00661
**DISPOSITIVE MOTION**

_____/

### DEFENDANTS, JUSTIN KOSINSKI'S AND DELLUN MILLER'S, MOTION FOR SUMMARY JUDGMENT

Defendants, Deputy JUSTIN KOSINSKI (**"Deputy Kosinski"**) and Deputy DELLUN MILLER (**"Deputy Miller"**), by and through their undersigned attorneys, pursuant to Rule 56, Fed. R. Civ. P., hereby files their Motion for Summary Judgment, and state:

### INTRODUCTION

1.    On December 8, 2023, Plaintiff, KRYSTI MERCHANT, as Personal Representative for the Estate of Cory Merchant, Deceased (**"Plaintiff"**), filed her First Amended Complaint against Deputy Kosinski and Deputy Miller alleging (1)

1

violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 and (2) wrongful death under Florida law, due to the assault and death of Cory Merchant ("**Merchant**"), a pretrial detainee at the Marion County Jail.

2.    For the reasons argued herein, Deputy Kosinski and Deputy Miller are entitled to summary judgment as a matter of law on Counts I and III.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  An issue of fact is "genuine" only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id*.  The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant shows "an absence of evidence to support the nonmoving party's case," the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine disputes of material facts. *Id*. at 325.  In determining whether a genuine dispute of material fact exists, the court must read the record and the evidence presented in the light most favorable to the non-moving party. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

## STATEMENT OF FACTS

On November 6, 2021, Deputy Kosinksi and Deputy Dellun Miller were assigned as the detention deputies for Gulf Pod, which consisted of four, separate housing sections.  Exh. 12, Sheriff Woods' Answers to Interrogatories, # 15. Sergeant Jerome Dukes ("**Sergeant Dukes**") was their sector supervisor.  Exh. 39, Detention Personnel Post Assignments; Exh. 20, Gulf Pod Post Order.  The shift began at 6:00 p.m., and continued to 6:00 a.m. the following day, November 7, 2021.  Exh. 21, Kosinski Deposition, 24/2-24/6; Exh. 23, Miller Deposition, 31/22-32/9.  Gulf Pod, Section Alpha, housed inmates convicted of, or accused of, sex offense crimes.   Exh. 21, Kosinski Deposition, 20/20-21/14; Exh. 23, Miller Deposition, 16/10-16/17.  Neither Deputy Kosinski nor Deputy Miller determined which inmates would be placed into Gulf Pod, Section Alpha; instead, classifications within the Sheriff's Office would decide where inmates were housed while incarcerated within the Marion County Jail.  Exh. 21, Kosinski Deposition, 21/1-21/7; Exh. 23, Miller Deposition, 21/17-21/22; Exh. 15, Classification of Inmates, #6766.00.

Deputy Kosinski and Deputy Miller were responsible for the security of Gulf Pod, which included monitoring the inmates.  Exh. 21, Kosinski Deposition, 21/17-22/3; Exh. 23, Miller Deposition, 39/5-39/12; Exh. 20, Gulf Pod Post Order. Inmates were also required to follow the rules and regulations outlined in the

inmate handbook.  Exh. 16, Inmate Handbook.  The inmate handbook, among other proscriptions and topics, prohibited fighting and disorderly conduct, and outlined the procedures for disciplinary hearings, inmate requests, lockdown, and reporting incidents of assault and sexual violence.  Id.; Exh. 23, Miller Deposition, 55/17-55/24; Exh. 21, Kosinski Deposition, 77/1-77/8.  Since this shift was predominantly a night shift when inmates would sleep, Deputy Kosinski and Deputy Miller would regularly watch inmates through the windows and video camera system in the rover station.  Exh. 21, Kosinski Deposition, 22/16-23/10; Exh. 19, Dukes Deposition, 42/10-44/24; Exh. 18, McNeely Deposition, 32/11-32/9.  Deputy Koskinski and Deputy Miller would also conduct hourly security checks by entering the housing section to physically check each inmate in Gulf Pod.  Exh. 21, Kosinski Deposition, 23/11-23/25; Exh. 23, Miller Deposition, 22/4-22/8; Exh. 22, Headcount of Inmates, #6164.00; Exh. 20, Gulf Pod Post Order.  Either Deputy Kosinski or Deputy Miller completed the security checks on November 6 and November 7, 2021.  Exh. 21, Kosinski Deposition, 24/14-25/5; Exh. 23, Miller Deposition, 32/22-33/18; Exh. 36, Daily Log Report.  While conducting the security check, Deputy Kosinski would enter the housing section and walk through the bunks where the inmates slept to make sure there were no abnormalities, that the inmates were breathing, and that the inmates did not appear injured.  Exh. 21, Kosinski Deposition, 26/16-27/14.  Deputy Kosinski

would not just enter the day room area and look around because that would not be a complete security check.  Id., 29/17-30/13.  Although Deputy Miller was counseled in the past for not correctly completing a security check, on the date of the incident Deputy Miller completed security checks pursuant to Sheriff's Office policy.  Exh. 23, Miller Deposition, 100/18-100/21.

On November 7, 2021, Eric Lutterloah ("**Lutterloah**"), at approximately 1:09 a.m., within in a span of less than 30 seconds, arose from his bunk, walked over to the next bunk, talked to Merchant, and then punched Merchant three times in the face, which caused Merchant to fall to the ground and strike the back of head.  Exh. 1, Jail Surveillance Video, 01:08:48-01:09:15; Exh. 2, Incident Report #210005382; Exh. 3, FIBRS Incident Report.  At the time of Lutterloah's assault, Deputy Miller had relieved another deputy assigned to master control, which left Deputy Kosinski alone to monitor Gulf Pod.  Exh. 23, Miller Deposition, 39/13-39/17; Exh. 21, Kosinski Deposition, 31/5-31/10; Exh. 37, Dukes Affidavit.  Although Deputy Miller had video cameras in master control, Deputy Miller did not observe Lutterloah's assault as Deputy Miller's primary responsibility was to open the security doors to allow other correctional officers and inmates to access the various areas of the jail.  Exh. 23, Miller Deposition, 40/7-41/15.  Deputy Kosinski also did not observe Lutterloah and Merchant off of their bunks and did not observe the assault.  Exh. 21, Kosinski Deposition, 58/24-59/9; 71/18-71/25.  Neither Deputy

Kosinski nor Deputy Miller knew or had any reason to believe that Lutterloah and Merchant disliked each other, had any problems with each in the past, that Lutterloah and Merchant were going to fight if housed in the same housing section, or that housing Lutterloah and Merchant together could cause a risk of harm to Merchant. Exh. 21, Kosinski Deposition, 72/1-72/15; Exh. 23, Miller Deposition, 98/18-98/21, 99/8-100/5.

After the assault occurred, another inmate walked to the rover station window, knocked, and said, "man down." Exh. 21, Kosinski Deposition, 60/12-60/16, 73/5-73/13. Deputy Kosinski retrieved his gloves, opened the housing section, and went towards where Merchant laid on the floor. Id., 62/3-62/9, 63/10-63/21, 73/14-75/10. After observing Merchant in distress, Kosinski immediately radioed for backup and medical assistance. Id., Kosinski Deposition, 63/22-64/6. Thereafter, other officers and a nurse with a backboard arrived inside Gulf Pod to assist with the situation. Exh. 1, Jail Surveillance Video, 01:13:49-01:15:25; Exh. 19, Dukes Deposition, 138/25-139/25. After Sergeant Dukes arrived shortly after, Merchant was carried out of the G-Pod on a stretcher and brought to the hospital. Id., 140/23-141/7; Exh. 1, Jail Surveillance Video, 01:14:10-01:15:25. Merchant later died at the hospital on November 13, 2021, due to complications from blunt head trauma as a result of Lutterloah's assault. Exh. 4, Autopsy Report and Certification of Death. Lutterloah is still awaiting trial for the charge of

manslaughter, a second-degree felony, due to his assault and the death of Merchant.  Exh. 5, Information, 2021-CF-004457; Exh. 6, Probable Cause Affidavit.

## MEMORANDUM OF LAW

1.    Deputy Kosinski and Deputy Miller are entitled to qualified immunity.

"To receive qualified immunity, [a] government official must first prove that he was acting within his discretionary authority." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (internal quotation marks omitted). An official acts within his discretionary authority if his actions (1) were undertaken "pursuant to the performance of his duties," and (2) were "within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988); *see also Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (noting that an official acts within his discretionary authority if he "perform[s] a legitimate job-related function . . . through means that [are] within his power to utilize").  Here, the Marion County Sheriff's Office employed Deputy Kosinski and Deputy Miller as correctional officers in the Marion County Jail at the time of Lutterloah's assault on Merchant.  Deputy Kosinski and Deputy Miller supervised the inmates inside the Marion County Jail to include Merchant and Lutterloah.  Thus, since Deputy Kosinski and Deputy Miller were acting in his discretionary authority at the time of the incident, in order to defeat their right to qualified immunity, Plaintiff must show that (1) Deputy Kosinski and Deputy Miller violated a constitutional right

and (2) the right was clearly established at the time of the alleged violation. *Holloman*, 370 F.3d at 1264.

Deliberate indifference claims brought by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. *See e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . ."). The standards for deliberate indifference claims under the Fourteenth Amendment are "identical" to those under the Eighth Amendment. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) (*citing Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)); *see also Ireland v. Prummell*, 53 F.4th 1274, 1288, n. 4 (11th Cir. 2022) (applying Eighth Amendment caselaw to pretrial detainee deliberate indifference claims); *Keith v. Dekalb Cnty, Ga.*, 749 F.3d 1034, 1045, n. 35 (11th Cir. 2014) (stating that pretrial detainee's deliberate indifference to a substantial risk of harm claims are properly analyzed under the Substantive Due Process Clause of the Fourteenth Amendment, but the standard is the same as that for the Eighth Amendment); *Nelson v. Tompkins*, 89 F.4th 1289, 1297 (11th Cir. 2024) (in assault involving pretrial detainee, noting that the deliberate indifference standard "has two components: one subjective and one objective") (*quoting* Mosley v. Zachery, 966 F.3d 1265, 1270 (11th Cir. 2020)); *Baker v. Williams*, 3:16-cv-224-J-32JBT, 2017 U.S. Dist. LEXIS 71217, at *6, n. 3 (M.D. Fla.

May 10, 2017) (applying deliberate indifference standard to pretrial detainee's claim that jail officials failed to protect him from assault by other inmates).  To survive summary judgment in a case alleging deliberate indifference, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Goodman*, 718 F.3d at 1331 (citation omitted).

      A.   *Lutterloah was not a "substantial risk of serious harm" to Merchant.*

Plaintiff alleged that Deputy Kosinski and Deputy Miller failed to protect Merchant from particularly violent inmates in the Marion County Jail, including Lutterloah.  However, the record evidence in this case does not support "a strong likelihood, rather than a mere possibility," that Lutterloah presented a substantial risk of serious harm to Merchant.  *See Nelson*, 89 F.4th at 1296 (citation omitted). Merchant and Lutterloah resided together in Gulf Pod for the majority of Lutterloah's incarceration in the Marion County Jail prior to Lutterloah's assault on Merchant.  Yet there were no documented disagreements between Merchant and Lutterloah.  In fact, until Lutterloah struck Merchant on November 7, 2021, Lutterloah had no prior instances of any other known disagreements with inmates in Gulf Pod despite having resided in Gulf Pod since his booking into the Marion County Jail on June 10, 2020, a period of 515 days, excluding Lutterloah's 8 days spent in another housing section.  Exh. 31, Merchant Housing Movements

Classifications Report; <u>Exh. 30</u>, Lutterloah Housing Movements Classifications Report; <u>Exh. 32</u>, Peterson Affidavit.   Merchant also never requested "keep aways" from Lutterloah at any time, or any other inmate who resided in Gulf Pod with Merchant at the time of Lutterloah's assault.  Yet Merchant was familiar with this process as he had previously requested "keep aways" from other inmates in April of 2020.  <u>Exh. 38</u>, Merchant Request Form.

Thus, there is no evidence that Lutterloah posed a substantial risk of harm to Merchant or any other inmate within the Marion County Jail at the time of Lutterloah's assault.

B.    *The Marion County Jail did not pose a "substantial risk of serious harm" to Merchant.*

Plaintiff has alleged that various conditions inside the Marion County Jail, e.g., segregation of sex offender inmates, past inmate-on-inmate assaults, dormitory-style housing, hourly, nighttime security checks, and inmates being outside their bunk at lockdown, created a substantial risk of serious harm to Merchant that caused Merchant's assault and ultimate death.  However, "not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Prisons and jails are necessarily dangerous places.  *See id.* at 858 (Thomas, J., concurring in the judgment); *Kincaid v. Williams*, 143 S. Ct. 2414, 2419 n.2, (2023) (Alito, J., dissenting) (referring to "the

uniquely dangerous context of prison"); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 333 (2012) ("Jails are often crowded, unsanitary, and dangerous places."); *Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) (en banc) ("Prisons are dangerous and filled with law-breaking because that is where the criminals are. Even the most secure prisons are dangerous places for inmates, employees, and visitors."). "[T]hey house society's most antisocial and violent people in close proximity with one another." *Farmer*, 511 U.S. at 858; *see also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."). Violent incidents among inmates are "inevitable" in such an environment "no matter what the guards do . . . unless all prisoners are locked in their cells 24 hours a day and sedated." *Farmer*, 511 U.S. at 858-59 (Thomas, J., concurring in judgment) (citation omitted)*; see also Purcell ex. rel. Estate of Morgan v. Toombs County*, 400 F.3d 1313, 1320, n.4 (11th Cir. 2005) (holding that gambling and fights over card games not sufficient to find jail administrators liable for beating death of an inmate who attackers believed took their money); *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (violence among inmates must have resulted in so many incidents or injuries that such incidents or injuries were "the norm or something close to it.") (*quoting Purcell*, 400 F.3d at 1322). But the Constitution does not mandate jail officials foresee and

11

prevent all potential danger despite the inherent risk of violence in jails.  Instead, jail officials have a constitutional obligation to guarantee inmates' safety through "reasonable measures."  *See Farmer*, 511 U.S. at 832.

As an initial matter, Deputy Kosinski and Deputy Miller did not classify inmates and did not decide to place inmates charged with sex offenses into the same housing section.  Nor is there evidence in the record to indicate that Deputy Kosinski and Deputy Miller observed any prior violence or rule violations by Lutterloah that would have necessitated drafting an incident or disciplinary report for review by investigations or classifications within the Sheriff's Office to determine whether Lutterloah should have been moved to another housing section within the Marion County Jail.  Further, if Deputy Kosinski and Deputy Miller had observed prior inmate-on-inmate violence during their supervision of the inmates, per Sheriff's Office policy, they would have intervened, brought the inmates for medical clearance, and drafted an incident report for investigations. Exh. 21, Kosinski Deposition, 36/3-36/15, 37/7-37/13, 77/16-79/25; Exh. 23, Miller Deposition, 50/10-50/24, 55/3-55/16.  And if Deputy Kosinski or Deputy Miller did not observe the incident, but later learned of the incident from the inmates, they would review the video footage and draft an incident report to allow investigations to determine whether any inmate should be disciplined or rehoused.  Exh. 21, Kosinski Deposition, 38/2-39/9; 77/16-79/25; Exh. 23, Miller

Deposition, 50/14-50/24, 57/19-57/24, 66/9-66/14.  This was the expectation and policy of the Sheriff's Office.  In fact, Deputy Kosinski was previously disciplined by the Sheriff's Office because another correctional deputy working with Deputy Kosinski failed to properly document an altercation between two inmates even though Deputy Kosinski was not in the housing section with the situation took place.  Exh. 21, Kosinski Deposition, 13/22-14/24.

In order to provide for the safety and security of the Marion County Jail and the inmates, Deputy Kosinski and Deputy Miller, per Sheriff's Office policy, conducted security checks at night in addition to their continuous monitoring of inmates through the video surveillance system and windows that provided observation into the individual housing sections within Gulf Pod.  Exh. 21, Kosinski Deposition, 22/16-23/25; Exh. 23, Miller Deposition, 28/10-28/19, 29/4-29/16.  There is no evidence that at any time preceding Lutterloah's assault on Merchant that Deputy Kosinski or Deputy Miller observed or should have known that an assault was imminent.  There is no evidence, for example, that earlier in the shift Lutterloah and Merchant had feuded or threatened each other.  There is no evidence that another inmate advised Deputy Kosinski or Deputy Miller that Lutterloah might assault Merchant later at night when the inmates were sleeping.  Instead, the record evidence supports the conclusion that Lutterloah's assault on Merchant was spontaneous, unexpected, and lasted less than 30 seconds from the

moment Lutterloah arose from his bunk until Lutterloah threw the final punch that downed and critically injured Merchant. *See, e.g. Houston v. Givens*, 11-678-CG-M, 2012 U.S. Dist. LEXIS 181468, at *16-17 (S.D. Ala. Dec. 4, 2012) (noting that detention officer's absence from his post when inmate assault occurred was "merely a scintilla upon which a fair minded jury could not reasonably return a verdict for plaintiff" because inmate's assault on plaintiff was spontaneous and unprovoked), *adopted by*, 2012 U.S. Dist. LEXIS 180919 (S.D. Ala., Dec. 21, 2012)).

    C.   *Deputy Kosinski and Deputy Miller were not "deliberately indifferent" to a "substantial risk of serious harm" to Merchant.*

Even assuming *arguendo* that that the conditions within the Marion County Jail posed a "substantial risk of serious harm" to Merchant, the record lacks evidence showing that Deputy Kosinski or Deputy Miller were "deliberately indifferent." *See Nelson*, 89 F.4th at 1297 (deliberate indifference standard "has two components: one subjective and one objective."); *see also Johnston v. Crosby*, 135 Fed. Appx. 375, 377 (11th Cir. 2005) (unpublished) ("[i]n determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a 'particular threat or *fear felt by [the] plaintiff*.'") (emphasis in original), *quoting Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003).

In *Nelson*, the 11th Circuit affirmed denial of qualified immunity to an intake correctional officer that had knowledge that a black inmate was accused of stabbing a white store clerk after viewing videos of police killing black people. *Id.*

at 1293-94.  The intake correctional officer did not tell anyone about this inmate's racial motive in stabbing the white clerk and the jail later housed the black inmate with another white inmate in a cell together.  *Id.* at 1194-95.  The black inmate later strangled and killed the white inmate while they were in their cell.  *Id.*  In evaluating whether the intake correctional officer met the subjective component of deliberate indifference, the 11th Court noted that a reasonable jury could infer that the intake correctional officer "*knew* of the obvious risk of serious harm" (emphasis in original) because the officer "knew that [the black inmate] stabbed a white man in the back after watching videos of white-on-black police shootings; that [the black inmate] stabbed the man solely because he was white; that classification officers assigned [the black inmate] to a cell with [the white inmate.]"  *Id.* at 1297.

In the present action, there is no evidence in the record that Deputy Kosinski or Deputy Miller "actually (subjectively) knew" of a substantial risk of serious harm to Merchant and that Deputy Kosinksi or Deputy Miller "disregarded the known risk by failing to respond to it in an (objectively) reasonable manner." *Nelson*, 89 F.4th at 1297 (cleaned up) (*quoting Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020), and *quoting Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014)).  There is no evidence, for example, that Merchant advised Deputy Kosinski or Deputy Miller that he feared for safety in Gulf Pod, or that Merchant advised them of certain conditions that posed a risk for his safety.

15

For support that Deputy Kosinski and Deputy Miller subjectively knew of a substantial risk of serious harm, Plaintiff likely will point to evidence of "Friday Night Fights" or the inmate-on-inmate assaults that occurred in the past. However, there is no evidence that Deputy Kosinski or Deputy Miller was aware that "Friday Night Fights" ever occurred on their shift and, of course, Lutterloah's assault on Merchant did not occur during one of these alleged "Friday Night Fights." Exh. 21, Kosinski Deposition, 43/24-45/24; Exh. 23, Miller Deposition, 97/5-97/8. As for past inmate-on-inmate assaults, while they occurred more frequently from 2017-2021 as the inmate population grew within the Marion County Jail, there is no evidence, nor analysis of any records, that Deputy Kosinski or Deputy Miller ignored the violence that occurred within the Marion County Jail. Exh. 11, Monthly/Yearly Averages, 1984-2024. As noted previously, Deputy Kosinski and Deputy Miller intervened when inmates fought and provided other jail administrators with incident reports to allow them to make discipline decisions for the involved inmates. Deputy Kosinski and Deputy Miller maintained vigilance over the inmates by observing them through the video monitors and windows and by also completing the hourly security checks while the inmates were on lockdown. While Plaintiff may attempt to criticize Deputy Kosinski or Deputy Miller over how long it took them to complete the security checks, there is no dispute the Deputy Kosinski completed them per the Sheriff's Office policy, the

16

Florida Model Jail Standards, and within the constitutional contours outlined in, for example, *Cagle v. Sutherland*, where a correctional officer let one hour and forty minutes elapse between cell checks and during that time an inmate committed suicide.  334 F.3d 980, 985 (11th Cir. 2003); *see also Grochowski v. Clayton Cty.*, 961 F.3d 1311, 1320 (11th Cir. 2020).  Thus, there is no evidence that Deputy Kosinski or Deputy Miller knew of and disregarded "an excessive risk to [Merchant's] health or safety" and that they were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [Deputy Kosinski and Deputy Miller] [] also dr[e]w the inference."  *Farmer*, 511 U.S. at 837.

D.    *Plaintiff cannot prove a "causal connection" between Deputy Kosinski's and Deputy Miller's conduct and Lutterloah's assault on Merchant.*

Plaintiff must prove "a causal connection between [Deputy Kosinski's and Deputy Miller's] conduct and the [Fourteenth] Amendment violation."  *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Circuit 2016) (plaintiff alleged that jail officials violated their classification policy by housing with another inmate, a paranoid schizophrenic inmate accused of murder and who had previously committed an inmate assault). This causal element requires proof that the officer "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded."  *Rodriguez v. Sec'y for the Dep't of Corr.*,

508 F.3d 611, 622 (alterations adopted) (citation and internal quotation marks omitted).  In *Rodriguez*, the 11th Circuit found a causal connection where a jail official, who was chief of security at the prison, could have moved an inmate who complained of threats from the Latin Kings to immediate administrative confinement and put in motion procedures for protective management, but the jail official failed to do so.  *Id.* at 623.  Instead, the jail official returned the inmate back to the housing section with the Latin Kings who had threatened the inmate's life.  *Id.*  And later that morning after the transfer, an enforcer for the Latin Kings stabbed the inmate in the back and chest.  *Id.* at 616.

Here, other than actually observing Lutterloah leave his bunk and strike Merchant during those 30 seconds that Deputy Kosinski was not looking at the video monitor or the window and when Deputy Miller was breaking another deputy in master control, there is nothing in the record to suggest that Deputy Kosinski or Deputy Miller had the means to improve Merchant's safety generally or his safety from Lutterloah specifically, that Deputy Kosinski or Deputy Miller knew that by not observing Lutterloah strike Merchant it would be insufficient to provide Merchant with reasonable protection from violence, and that Deputy Kosinski or Deputy Miller had other means to protect Merchant from violence that they nevertheless disregarded.  Instead, simply by not observing or recognizing immediately that a spontaneous and unexpected assault will or had occurred does

not show that Deputy Kosinski's lack of observation or Deputy Miller's break of another deputy in the control room caused Lutterloah's assault of Merchant. It is speculation to assume that even if they saw Lutterloah get up and approach Merchant, and thereafter attempted to intervene, that Lutterloah would have stopped his assault on Merchant. Thus, the record evidence shows that Deputy Kosinski's or Deputy Miller's action or inaction did not cause Lutterloah to assault Merchant.

     E.    *Plaintiff cannot point to any "clearly established law" that would have put Deputy Kosinski or Deputy Miller on notice that their conduct was clearly unlawful given the circumstances.*

     Finally, Plaintiff can point to no "clearly established law" that would have put Deputy Kosinski or Deputy Miller on notice that their conduct "was already established to such a high degree that every objectively reasonable" officer in his place "would be on notice" that what he was doing was "clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002); *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (plaintiffs can satisfy requirement by (1) by pointing to a materially similar decision of the Supreme Court, of the Eleventh Circuit, or of the Florida Supreme Court; (2) by establishing that "a broader, clearly established principle should control the novel facts" of the case; or (3) by convincing the court that the case is one of those rare ones that "fits within the exception of conduct which so obviously violates th[e] constitution that

prior case law is unnecessary").

Certainly, it is clearly established that Deputy Kosinski and Deputy Miller must ensure the safety of the inmates, including Merchant, through "reasonable measures." *See Farmer*, 511 U.S. at 832. However, it was not clearly established that Deputy Kosinski or Deputy Miller must guarantee the inmates' safety through their personal observation at all times. Nor is this a case in which Deputy Kosinski or Deputy Miller did "nothing" to prevent or reduce inmate-on-inmate assaults by, for example, failing to complete security checks or intervene when they observed, or when an inmate advised them of, an inmate-on-inmate assault. *See supra* Sec. 1; *see also, e.g. Marsh v. Butler County*, 268 F.3d 1014, 1034 (11th Cir. 2001) (where jail usually only had one jailer to oversee entire facility, where video surveillance did not exist to monitor inmates, where jail did not segregate or discipline inmates, where inmate was beaten for several minutes and other inmates tried to get jailer's attention but no response was taken until 10 to 15 minutes after assault ended, jail deliberately indifferent to serious risk of substantial harm).

2.    <u>Deputy Kosinski and Deputy Miller are entitled to state law immunity</u>.

In Count III, Plaintiff seeks to hold Deputy Kosinski and Deputy Miller liable under Florida law for the wrongful death of Merchant. In wrongful death actions under Florida law, Plaintiff must show that the injury suffered by

20

Merchant was reasonably foreseeable or anticipated to allow time for Deputy Kosinski or Deputy Miller to prevent the injury. *See Groover v. Polk Cty. Bd. of Cty. Comm'rs*, 570 F. Supp. 3d 1134, 1147 (M.D. Fla. 2021) (granting summary judgment where evidence "too speculative and imprecise to create a dispute of fact as to whether the Defendants more likely than not caused [decedent's] death."); *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984) (affirming directed verdict in negligence action where plaintiff "established a no better than even chance" the decedent would have survived); *Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1242 (11th Cir. 2024) ("Florida courts follow the 'more likely than not' standard of causation" in wrongful death cases). However, in order to show that Merchant's assault and injury were foreseeable, Plaintiff would need to heap inference upon inference, or speculation on top of speculation, to achieve this outcome. And given the swiftness in which Lutterloah escalated the assault on Merchant, Plaintiff cannot argue that, if only they had observed Merchant out of his bunk or observed Lutterloah confront Merchant, then the assault could have been prevented. There is no testimony or evidence in the record that even if Deputy Kosinski or Deputy Miller had observed these occurrences that Lutterloah would have stopped his assault on Merchant.

There is also no evidence that Merchant made requests to Deputy Kosinski or Deputy Miller to be moved from Gulf Pod due to his fear of an assault from the

inmates, including Lutterloah.  In fact, based on Merchant's disciplinary history in the jail, it appears that Merchant wanted to be in Gulf Pod, which the Marion County Jail later accommodated after Merchant was housed in medical pods and administrative confinement due to his suicidal idealization and disciplinary violations, respectively.  Exh. 33, Merchant Incident Reports, P. 16-19.  Further, the objective evidence points to Deputy Kosinski and Deputy Miller taking every reasonable action to provide for the safety and security of the Gulf Pod inmates and the Marion County Jail.  Deputy Kosinski acted with diligence in responding to the assault by entering the housing section and radioing for backup and emergency assistance once he determined that Merchant was in distress.  And Deputy Miller opened doors to allow medical personnel and correctional officers to allow them to render aid to Merchant.  In the aftermath, Deputy Kosinski did not ignore the assault but reviewed the video footage and drafted an incident report to assist jail investigators in pursuing criminal charges against Lutterloah.

Further, even assuming *arguendo* that Deputy Kosinski or Deputy Miller were negligent in their monitoring of the inmates in Gulf Pod and that as a result of this negligence it was foreseeable that Lutterloah would assault Merchant, there is no evidence that Deputy Kosinski or Deputy Miller "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" to pierce their statutory immunity under

Florida law.  *See* § 768.28(9)(a), Fla. Stat.  Importantly, the immunity provided by § 768.28(9)(a), Fla. Stat., is both an immunity from liability and an immunity from suit, which is effectively lost if the person entitled to assert the immunity is required to go to trial.  *See Tucker v. Resha*, 648 So. 2d 1187 (Fla. 1994).  The trial judge must act as a gatekeeper under these circumstances, and should terminate civil proceedings when the immunity applies.  *See Willingham v. City of Orlando*, 929 So.2d 43, 48 (Fla. 5th DCA 2006).  And while Florida statutes do not define the terms used in §768.28(9)(a), Fla. Stat., the standard higher is certainly higher than negligence and similar to "deliberate difference."  *See Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998) ("bad faith" "equated with the actual malice standard"); *Eiras v. State Dep't of Bus. & Prof'l Regulation Div. of Alcoholic Bevs. & Tobacco*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) ("malicious purpose" has been interpreted to mean conduct committed with "ill will, hatred, spite, [or] an evil intent" or "the subjective intent to do wrong"); *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987) ("wanton and willful disregard of human rights [or] safety" connotes "conduct much more reprehensible and unacceptable than mere intentional conduct"); *Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593 (Fla. 2d DCA 2003) ("conduct that is worse than gross negligence").  Here, there is no evidence that Deputy Kosinski or Deputy Miller acted in a manner sufficient to pierce their

statutory immunity under Florida.

     3.    <u>Merchant had no "survivors" under Florida or Federal law.</u> [1]

Finally, neither Plaintiff, Krysti Merchant, nor Tommie Merchant, who is not a plaintiff, are "survivors" under Florida's Wrongful Death statute, which would entitle them to damages, because there is no evidence that Cory Merchant provided either "support" or "services" to Krysti Merchant or Tommie Merchant "from the date of [Cory Merchant's] injury to [] his death, with interest," or that Cory Merchant would provide any "future loss of support and services [to Krysti Merchant or Tommie Merchant] from the date of death and reduced to present value." §768.21(1), Fla. Stat.; <u>Exh. 34</u>, Krysti Merchant Deposition, 9/6-9/9, 10/13-11/4, 23/10-23/13, 19/2-19/20, 22/2-22/14, 22/23-23/9, 45/17-48/6; <u>Exh. 35</u>, Tommie Merchant Deposition, 28/24-29/21, 30/10-31/4, 52/23-53/11, 55/10-56/19, 56/21-57/12; *see also* Sheriff Woods' Motion for Summary Judgment, Sec. 2.B. Thus, as it relates to Plaintiff's wrongful death action, neither Krysti Merchant nor Tommie Merchant are "survivors" and judgment should entered against them

---

[1] Plaintiff and Tommie Merchant are also not entitled to "survivor" damages under 42 U.S.C. § 1983. *See Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011) ("§ 1983 does not provide for the survival of civil rights actions. Due to this deficiency…the state law of the forum applies as long as it is not inconsistent with the Constitution and the laws of the United States."); *see also Mucciolo v. Boca Raton Reg'l Hosp., Inc.*, 824 F. App'x 639, 644 (11th Cir. 2020) ("when death is the result of a personal injury, the law of Florida essentially substitutes a statutory wrongful death action for the personal injury action."); *Ortiz v. Burlein*, 2023 WL 11823630, at *3 (M.D. Fla. 2023) ("When a personal injury to the decedent results in death, no action for the personal injury shall survive…But under the survival statute…personal injury actions in which the personal injury is not also the cause of death [may be brought].").

for their "survivor" claims.

**WHEREFORE**, Defendants, Deputy JUSTIN KOSINSKI and Deputy DELLUN MILLER**,** respectfully request that the Court enter an Order granting summary judgment for Deputy Kosinski and Deputy Miller and against Plaintiff on Counts I and III of Plaintiff's First Amended Complaint.

Dated: June 27, 2025

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of June, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to counsel for Plaintiff, James M. Slater, Esquire, Slater Legal, PLLC, 113 South Monroe Street, Tallahassee, Florida 32301, and Sam Harton, Esquire, Romanucci and Blandin, 321 North Clark Street, Chicago, Illinois 60654.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Fla. Bar No. 599565
Brandon T. Byers, Esquire
Fla. Bar. No. 0119492
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile: 407-841-8431
Email: bbogan@hilyardlawfirm.com
        bbyers@hilyardlawfirm.com
Attorneys for Defendant, Deputy Kosinski and Deputy Miller

25