

**COPY**

1   UNITED STATES DISTRICT COURT

2   MIDDLE DISTRICT OF FLORIDA OCALA DIVISION

3   CASE NO.: 5:23-CV-00661

4

5   KRYSTI MERCHANT, AS

6   PERSONAL REPRESENTATIVE FOR THE

7   ESTATE OF CORY MERCHANT,

8   DECEASED,

9   Plaintiff,

10

11  V.

12

13  BILLY WOODS, SHERIFF OF MARION COUNTY,

14  FLORIDA, IN HIS OFFICIAL CAPACITY;

15  DEPUTY JUSTIN KOSINSKI;

16  DEPUTY JOSEPH MILLER,

17  SERGEANT JEROME DUKES,

18  Defendants.

19

20

21  DEPONENT:  CAPTAIN BRIAN PETERSON, CORPORATE DESIGNEE

22  DATE:      SEPTEMBER 18, 2024

23  REPORTER:  JESSICA ETHRIDGE

24

25

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS



401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

```
 1                    APPEARANCES

 2   ON BEHALF OF THE PLAINTIFF, KRYSTI MERCHANT AS THE

 3   PERSONAL REPRESENTATIVE FOR THE ESTATE OF CORY MERCHANT,

 4   DECEASED:

 5   Sam Harton, Esquire

 6   Romanucci & Blandin, LLC

 7   321 North Clark Street

 8   Suite 900

 9   Chicago, Illinois 60654

10   Telephone No.: (312) 458-1000

11   E-mail: sharton@rblaw.net

12    (Appeared via videoconference)

13

14   ON BEHALF OF THE DEFENDANT, BILLY WOODS, SHERIFF OF

15   MARION COUNTY, FLORIDA, IN HIS OFFICIAL CAPACITY, ET AL:

16   Bruce R. Bogan, Esquire

17   Hilyard, Bogan & Palmer, P.A.

18   105 East Robinson Street

19   Suite 201

20   Orlando, Florida 32801

21   Telephone No.: (407) 425-4251

22   E-mail: bbogan@hilyardlawfirm.com

23    (Appeared via videoconference)

24

25
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1                        INDEX

 2                                            Page

 3   PROCEEDINGS                                5

 4   DIRECT EXAMINATION BY MS. HARTON           7

 5

 6                       EXHIBITS

 7   Exhibit                                   Page

 8     49    Inmate Welfare Information          10

 9     47    Federal Rules of Civil Procedure 30(b)(6)

10           Rider                              13

11     19    Defendant Sheriff Billy Woods Answers to

12           Interrogatories                    20

13     32    Detention Personnel post assignments Excel

14           Sheet                              91

15     51    Sheriff Marion County post order for Gulf

16           Pod                                97

17

18

19

20

21

22

23

24

25
```



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

1                          STIPULATION

2    The 30(b)(6) deposition of CAPTAIN BRIAN PETERSON,

3    CORPORATE DESIGNEE was taken at MILESTONE REPORTING

4    COMPANY, 315 EAST ROBINSON STREET, SUITE 510, ORLANDO,

5    FLORIDA 32801, via videoconference in which all

6    participants attended remotely, on WEDNESDAY the 18th

7    day of SEPTEMBER 2024 at approximately 10:02 a.m. (CT);

8    said deposition was taken pursuant to the FLORIDA Rules

9    of Civil Procedure.

10

11   It is agreed that JESSICA ETHRIDGE, being a Notary

12   Public and Court Reporter for the State of FLORIDA may

13   swear the witness and that the reading and signing of

14   the completed transcript by the witness is not waived.

15

16

17

18

19

20

21

22

23

24

25

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
1              PROCEEDINGS
2         THE REPORTER:  Okay.  We're now on record.  My
3    name is Jessica Ethridge, I'm an online video
4    technician and court reporter today representing
5    Milestone Reporting Company located in Orlando,
6    Florida.  Today's the 18th day of September 2024,
7    and the current time is 10:02 a.m., Central Standard
8    Time.
9         We're convened by videoconference to take
10   deposition of Captain Brian Peterson in the matter
11   of Krysti Merchant as personal representative for
12   the estate of Cory Merchant, deceased, v. Billy
13   Woods, Sheriff of Marion County, Florida, et al.,
14   pending in this -- the Middle District of Florida,
15   Ocala Division, Case number 5:23-CV-00661.  Will all
16   parties but the witness please state your name, your
17   appearance, and how you're attending starting with
18   Plaintiff's Counsel.
19        MS. HARTON:  This is Sam Harton for the
20   plaintiff.  You guys went out.
21        MR. BOGAN:  Let me go --
22        THE REPORTER:  We can hear you now.
23        MR. BOGAN:  You can?  It seems like it keeps
24   going in and out.
25        THE WITNESS:  Yeah, it's going in and out.  The
```



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1      audio is.  The --

2           MS. HARTON:  Yeah, for sure.

3           MR. BOGAN:  So I mean, we can -- we can -- we

4      can try it but I'm not sure --

5           THE REPORTER:  Would you --

6           MR. BOGAN:  -- how long we're going to go --

7           THE REPORTER:  -- would you like me to take us

8      off record real quick?

9           MR. BOGAN:  Yeah.

10          MS. HARTON:  Yeah, sure, sure.

11          THE REPORTER:  One second.  Okay.  We're off

12     record.

13            (OFF THE RECORD)

14          THE REPORTER:  Okay.  We're back on record.  Mr.

15     Bogan?

16          MR. BOGAN:  Yeah.  Bruce Bogan for the

17     defendants.

18          THE REPORTER:  Thank you so much, Counsel.  And

19     Captain Peterson --

20          THE WITNESS:  Yeah.

21          THE REPORTER:  Would you please state your --

22          THE WITNESS:  Oh, oh --

23          THE REPORTER:  -- full name for the record.

24          THE WITNESS:  -- yeah.  Brian Peterson.

25          THE REPORTER:  Thank you so much.  We


MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

```
 1      identified you off record so if you would, go ahead
 2      and raise your right hand.  Do you solemnly swear or
 3      affirm the testimony you're about to give will be
 4      the truth, the whole truth, and nothing but the
 5      truth?
 6           THE WITNESS:  Yes, ma'am.
 7           THE REPORTER:  Okay.  You may proceed.
 8                DIRECT EXAMINATION
 9        BY MS. HARTON:
10      Q.   Captain Peterson, have you ever given a
11 deposition before?
12      A.   Yes, ma'am.
13      Q.   Okay.  How many depositions have you given?
14      A.   Handful.
15      Q.   Okay.  Were you defendants in any of those?
16      A.   No, ma'am.
17      Q.   Were you a 30(b)(6) witness like you are
18 today?
19      A.   No, ma'am, not that I recall.
20      Q.   So I'm just going to go through the ground
21 rules associated with the deposition.  My name's Sam
22 Harton.  I represent the estate of Cory Merchant and his
23 sister, Krysti Merchant.  I'm just going to be asking
24 questions today.  Your job is just to answer them, tell
25 the truth but there are just a few things I like to make
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  witnesses aware of, and this is not like a normal

2  conversation where we kind of, you know, go with the

3  general flow of conversation.  It's more I have to ask

4  the question.  You have to answer the question so it's

5  really important that you wait for my questions to be

6  finished and then you can answer, and then I will wait

7  for your answers to be finished before I ask another

8  question so that the court reporter can actually take

9  down everything that we say and it's not all garbled

10  because we're talking over each other, does that make

11  sense?

12        A.   Yes, ma'am.

13        Q.   Okay.  You're doing a great job with verbal

14  answers.  It's very important to say yes and no.  You

15  don't have to call me ma'am, but just making sure that

16  you're verbalizing your answers instead of uh-huhs, uh-

17  uhs, shaking the head, nodding the head, does that make

18  sense?

19        A.   Yes.

20        Q.   Okay.  Another important thing is that I'm

21  never going to ask you to speculate.  I might ask you to

22  estimate or approximate something, but this is not a

23  quiz.  It -- it's there's no right or wrong answers. You

24  just have to answer these questions to the best of your

25  ability, and if you do not know, and you -- or you do

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        Toll Free **855-MYDEPOS**

1   not recall something, that answer is completely fine as

2   long as that answer is the truth, does that make sense?

3        A.   Yes, ma'am.

4        Q.   Okay.  I like to have my outline here that I

5   go by so that I make sure that I get through all the

6   questions that I want to ask you, but like most lawyers,

7   I tend to divert from my outline, and that means that

8   I'm often coming up with questions on the fly, which

9   means that sometimes my questions don't make a lot of

10  sense so if there's ever a time that you are confused by

11  my question, please ask me to clarify, because if you do

12  go ahead and answer the question, I'm going to assume

13  that you understood my question; is that fair?

14       A.   Yes.

15       Q.   Okay.  Your lawyer may object to some of my

16  questions as we go through this.  He is just lodging his

17  objection for the record.  If you do not -- if your

18  lawyer objects, you still have to answer the question

19  unless he advises you not to answer the question; is

20  that fair?

21       A.   Yes.

22       Q.   Okay.  So I have to ask you two questions that

23  are a little rude, but I ask them of everyone.  Have you

24  ever been convicted of a felony?

25       A.   No.



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q.   Is there any reason why you would not be able
to testify completely and truthfully today, maybe some
sort of medication that you're on or you didn't get
enough sleep last night, something like that?

A.   No.

Q.   What did you review in preparation for this
deposition?

A.   Can you repeat that question again?

Q.   Yeah.  Did you review any documents in
preparation for your deposition?

A.   Just policies and procedures.

Q.   Which policies and procedures?

A.   Post orders, classification policy, booking
policy.  There's -- there's numerous ones that -- that I
reviewed.

Q.   Those policies, are those titled, Directives?

A.   Yes, ma'am.

Q.   Okay.

A.   Would be Agency Directives.

Q.   Okay.  So give me one second.  I'm going to
show you Exhibit 49.  Can you see this document?

          (EXHIBIT 49 MARKED FOR IDENTIFICATION)

          THE WITNESS:  Yes.

          BY MS. HARTON:

Q.   Okay.  This -- I don't -- I'm not asking

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  whether this is one of the specific policies that you

2  reviewed, but does this generally look like the types of

3  policies that you reviewed?

4      A.   Could you be more specific?  Are you talking

5  about the layout of it or?

6      Q.   Yeah, the layout and the, you know, the way

7  it's got, you know, a number that is designating what it

8  is.

9      A.   Yes, ma'am.  Yes.

10      Q.   Okay.  So those policies that you have in

11  front of you, I would like to know what numbers are

12  associated with them.  Specifically, you mentioned a

13  classifications policy and a booking policy.  Can you go

14  through those documents and tell me what the -- what the

15  numbers on them are?

16      A.   I've got the booking housing post order.  I've

17  got a detention bureau inmate --

18      Q.   Go ahead.

19      A.   Detention bureau inmate confinement meeting,

20  the housing movements report, intake booking officer

21  post order.  I've got Agency Policy 6720.

22      Q.   What was -- what was the second post order

23  that you mentioned?

24      A.   Intake booking officer.

25      Q.   Okay.  Is that it?



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      A.   No, ma'am.

2      Q.   Okay.

3      A.   I've got a 67 -- got a 6721 policy number.   A

4  6723.   The booking and release internal manual.   These

5  are miscellaneous booking forms, housing, classification

6  housing plan from October 28, 2021, housing plan from

7  January 4, 2022, a Gulf Pod post order, Policy number

8  6011, and Policy 6766.

9      Q.   Thank you very much.   Okay.   So you understand

10 today that you are testifying on behalf of Marion

11 County?

12     A.   Yes, ma'am.   The sheriff.

13     Q.   On behalf of the sheriff.   Sure.   And so the

14 words that are coming out of your mouth are going to be

15 as if the sheriff or Marion County said them, fair?

16         MR. BOGAN:   Object to form.   You can answer. Go

17    ahead.

18         THE WITNESS:   Yes.

19         BY MS. HARTON:

20     Q.   And if you admit or deny something, that means

21 the sheriff or Marion County admits or denies it, fair?

22         MR. BOGAN:   Object to form.   Go ahead.

23         THE WITNESS:   Yes.

24         BY MS. HARTON:

25     Q.   And if you say you don't know, that means



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   Marion County and the sheriff do not know, fair?

2          MR. BOGAN:  Object to form.  You can answer.

3          THE WITNESS:  Yes.

4          BY MS. HARTON:

5      Q.   And you, Captain Peterson, consent to testify

6   on behalf of the sheriff and Marion County?

7      A.   Can you repeat that again, please?

8      Q.   Yeah.  Sorry.  You, Captain Peterson, consent

9   to testify on behalf of Marion County and the sheriff,

10  fair?

11         MR. BOGAN:  Object to form.  Go ahead.

12         THE WITNESS:  Yes.

13         BY MS. HARTON:

14     Q.   Okay.  I'm going to show you a document.  This

15  is Exhibit 47.  Have you seen this document before?

16         (EXHIBIT 47 MARKED FOR IDENTIFICATION)

17         THE WITNESS:  Yes.

18         BY MS. HARTON:

19     Q.   Have you read through the topics on this

20  document?

21     A.   I have.

22     Q.   Okay.  And you're prepared to testify on

23  Topics 1, 3, and 5 of Exhibit 47?

24     A.   Yes.

25     Q.   Besides Mr. Bogan, is anyone else in the room

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

32801 Petersen Brian 09-13-2024        Page 14

1  with you?

2      A.   No.

3      Q.   And I assume you still work at the Marion

4  County sheriff's office?

5      A.   That's correct.

6      Q.   What is your current position?

7      A.   I'm currently the captain over jail services.

8      Q.   What does that mean?

9      A.   Under -- under my command is the inmate

10 kitchen, the kitchen at the jail, inmate work farm,

11 programs.  It's pretty much -- and facility services.

12     Q.   Does that include booking and intake

13 processes?

14     A.   Currently, no.

15     Q.   Okay.  Do you know why you were chosen to

16 testify mostly on intake and booking procedures when you

17 are -- you are not currently in that position?

18         MR. BOGAN:  Object to form.

19         THE WITNESS:  Because I was previously in that

20    position.

21         BY MS. HARTON:

22     Q.   What position are you referring to?

23     A.   The captain over booking, classifications,

24 warrants, transportation, inmate medical.

25     Q.   Did you hold that position in November of

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        Toll Free 855-MYDEPOS

1  2021?

2       A.   No, not as captain, no.

3       Q.   What was your position in November, 2021?

4       A.   (No verbal response.)

5       Q.   Sir, I asked a question.  Do you not know the

6  answer to my question?

7       A.   I had to refer to my notes to make sure

8  because I was bounced around.  It was -- I was the

9  lieutenant over classifications booking, transportation,

10 and warrants at that time.

11      Q.   Okay.  What notes are you referring to?

12      A.   That was just -- this is just my who was, I

13 guess, staffing assignments and classifications.

14      Q.   Okay.  Let's take a step back.  What notes are

15 you referring to to refresh your recollection on that?

16           MR. BOGAN:  It's not a note.  It's a -- it's a

17       memo or something like that.  He has no notes.

18           BY MS. HARTON:

19      Q.   What memo is it?

20      A.   It's a memo sent from the jail secretary.

21      Q.   And that's it's a memo what?  Assigning you to

22 that post in November of 2021?

23      A.   No.

24      Q.   Okay.  Tell me what the memo is.

25      A.   It's -- the subject is 2020, 2021, 2022.  And

**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

1  then it has listed down 2020, the supervisors, a list of

2  -- name supervisors.  2021, a list of supervisors. 2022,

3  a list of supervisors.  9-13-20, a list of supervisors,

4  and 10-23-2022, a list of supervisors.

5       Q.   And you're -- and you're listed as one of the

6  supervisors?

7       A.   That's correct.

8       Q.   Okay.  Tell me a little bit about your duties

9  when you were a captain over booking and intake.

10      A.   I -- as the lieutenant over booking and

11 intake, my duties were mainly the administrative duties

12 of -- of what happens in -- in -- in booking and intake,

13 the -- the processes.

14      Q.   Okay.  Does the captain over intake and

15 booking have any role in developing written policies for

16 intake and booking?

17      A.   Yes.

18      Q.   Okay.  What role?

19      A.   Their input.

20      Q.   Can you describe that process for me of

21 developing those written policies for intake and

22 booking?

23      A.   I mean, it's -- it's coming up with ways to

24 process certain, in this case, booking, how to process

25 inmates or -- or things that may happen in -- in booking

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  but it's a -- it's a -- it's a discussion that's created

2  and it's the document is then proceeded to be approved

3  by command staff within the sheriff's office.

4       Q.   Okay.  That -- you said there's a discussion.

5  Who is generally a part of those discussions to develop

6  intake and booking policies?

7       A.   Usually, it would be from the captain's level.

8  The lieutenant, sergeants, classification sergeants,

9  watch commanders could be involved and -- and shift

10 sergeants.

11      Q.   Who -- how does it -- how does it work where

12 you may -- it sounds like, you know, sort of everyone

13 who's involved in intake and booking, that's got some

14 sort of higher rank, gets to have some input into how

15 these intake booking processes are developed; is that

16 fair?

17      A.   Yes.

18      Q.   Okay.  How does it -- how does it -- how do

19 you go from the discussion to establishing a written

20 policy? Who decides what the written policy is actually

21 going to be after those discussions?

22      A.   Ultimately, it falls on the -- on the captain.

23      Q.   So that would be you?

24      A.   No, that was not me.

25      Q.   When you were the captain of intake and



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Petersen Brandt 09-13-2024        Page 18

1    booking, you would've been responsible for implementing

2    or the written policy after those discussions; is that

3    fair?

4         A.   Whenever I was the captain, yes.

5         Q.   Okay.  When you were the captain.  Okay.

6         A.   Right.

7         Q.   And when were you the captain of intake and

8    booking?

9         A.   Let's see.  It was November of 2023 until last

10   month.

11        Q.   And what was your -- what were you the captain

12   of in November of 2021?

13        A.   I was not a captain.

14        Q.   I see.  Okay.  What was your position in 2021?

15        A.   Lieutenant.

16        Q.   You were a lieutenant in booking and intake?

17        A.   I was not a lieutenant in booking and/or

18   intake.  I was a -- I was a lieutenant over

19   classifications, booking, and intake, so I didn't work

20   in booking intake.  I was just over the, as I said

21   before, the administrative duties of -- of booking and

22   intake.

23        Q.   So even though you were not the one writing

24   the policies in November of 2021, you have sufficient

25   knowledge to testify today on behalf of what the

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

132201 Peterson Brian 09-13-2024                    Page 19

```
 1   policies and procedures were in November of 2021 as they

 2   relate to booking and intake?

 3        A.   Yes.

 4        Q.   Okay.  How long were you a lieutenant over

 5   classifications, booking, and intake?

 6        A.   I don't recall.  I know after I was a

 7   lieutenant over classifications, they moved me to a

 8   watch command position, which I think I believe it was

 9   in 2022, I think it was.

10        Q.   Okay.  Before they moved you to watch command,

11   how many years had you been a lieutenant over booking

12   and intake?

13        A.   That's a good question.  I don't remember when

14   I was promoted.

15        Q.   That's okay.

16        A.   Yeah.  I can't -- I can't recall off the top

17   of my head when I was promoted to that position.

18        Q.   Can you give me an estimate?

19        A.   My -- my guess would be 2018, 2019.

20        Q.   And before you were promoted to lieutenant,

21   what was your position?

22        A.   Sergeant.

23        Q.   And were you a sergeant specifically assigned

24   to classifications, booking, and intake?

25        A.   I was sergeant assigned to classifications.
```

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1      Q.   When did you start working at the Marion

 2 County jail?

 3      A.   In 2002.

 4      Q.   And do you know when you were -- did you start

 5 as a detention deputy?

 6      A.   I did.

 7      Q.   And when did you get promoted to sergeant?

 8      A.   That was 2016.

 9      Q.   I'm going to show you Exhibit 19.  Can you see

10 my -- this document?

11           (EXHIBIT 19 MARKED FOR IDENTIFICATION)

12           THE WITNESS:  Yes, ma'am.  I can see it.

13           BY MS. HARTON:

14      Q.   Have you seen this document before?

15      A.   Briefly.  I didn't -- I did not read over it

16 thoroughly.

17      Q.   Okay.  So just for the record, these are

18 Sheriff Billy Woods' answers to interrogatories issued

19 by the plaintiff.  You did not answer these

20 interrogatories yourself, correct?

21      A.   Repeat that again for me.

22      Q.   You didn't answer these interrogatories,

23 right?

24      A.   No.

25      Q.   Okay.  With that understanding, I still want
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   to ask a few questions about some of the answers.  So on

 2           Page 8, interrogatory number 15, we asked:

 3   "Describe in detail the housing layout at the Marion

 4   County jail, including how many housing units there are,

 5   the names for each housing unit, any special

 6   designations assigned to any unit, the inmate capacity

 7   and number of bunks per unit, whether each housing unit

 8   contains cells or is dorm style."  Okay.  So the answer

 9   here, I'm going to scroll to Page 10, where the answer

10   describes --

11       A.   Okay.

12       Q.   -- Gulf Pod, do you see that?

13       A.   Yes, I do.

14       Q.   Okay.  And it says, "Max cap 265."  Max.  Does

15   that mean there's a maximum of -- there -- there's 265

16   bunks in Gulf Pod?

17           MR. BOGAN:  Object to form.  You can answer.

18           THE WITNESS:  No, ma'am.

19            BY MS. HARTON:

20       Q.   What does that mean?

21       A.   That means that the -- that's how many beds or

22   that pod is -- is -- was designed for originally.

23       Q.   Okay.  And then do you know how many beds are

24   actually in Gulf Pod?

25       A.   No, not -- not all the sections combined.
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Okay.  Tell me what you do know about how many

2  beds there are in Gulf Pod.

3    A.   I do know that roughly at the time there, or

4  even now, there's about 88 bunks per section in Gulf

5  Pod.

6    Q.   So there's four sections in Gulf Pod, fair?

7    A.   Yes.

8    Q.   Okay.  88 times four is well over 300; is that

9  fair?

10    A.   Yes.

11    Q.   Okay.  It's actually exactly 352, right?  And

12  just for the record, the witness, I believe, is going on

13  his phone to use his calculator, which is totally fair.

14  I'm not -- I'm not very good at math, myself.

15    A.   Okay.  Four times the 88 is 352.

16    Q.   Okay.  So 352 is higher than 265 bunks, fair?

17  Yes?

18         MR. BOGAN:  Object to form.

19         THE WITNESS:  Yes.

20         BY MS. HARTON:

21    Q.   Okay.  So there's a max capacity in these Gulf

22  Pods of 265, but yet there are 88 bunks per section and

23  352 bunks total in Gulf Pod, right?

24    A.   Yes.

25    Q.   Okay.  Are -- how many detainees are typically

---

**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   in each section?

2           MR. BOGAN:  Object to form.  You can answer.

3           THE WITNESS:  Repeat that question for me again

4       please.

5           BY MS. HARTON:

6       Q.   Yeah.  Yeah.  It's -- no, it's a bad question.

7   Are each -- is each section in Gulf Pod in November of

8   2021, was each section typically -- were all the bunks

9   full?

10          MR. BOGAN:  Object to form.  Go ahead.

11          THE WITNESS:  I -- I don't -- I don't recall.

12          BY MS. HARTON:

13      Q.   What about today?  Do you know if the bunks

14  are typically all full in Gulf Pod?

15          MR. BOGAN:  Object to form.  You can answer.

16          BY MS. HARTON:

17      Q.   In Gulf Pod?

18      A.   Typically.  Well, there's different

19  classifications for each one of those sections there so

20  it -- it just depends.  Not all sections or have about

21  88 inmates.  I would say, Alpha, Bravo, Charlie, or ABC

22  sections, probably have close to or -- or at least over

23  80 inmates in each section.

24      Q.   What about Delta section?

25      A.   Delta is our pre-class so those inmates are

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free 855-MYDEPOS

Braun 09-13-2024                  Page 24

```
 1  just typically held in there on a temporary basis so

 2  there's usually not that amount of inmates in the

 3  section.

 4      Q.   About how many are there typically in that

 5  section?

 6      A.   I don't think you'd give a typical --

 7      Q.   Okay.

 8      A.   -- an answer for a typical set of inmates

 9  because it fluctuates.  You know, it depends on the rest

10  for the weekend for the month.

11      Q.   Can you give me a range?

12      A.   Sure.  I can give you a range.  20 to 60, 20

13  to 70.

14      Q.   So just to recap, Gulf Alpha, Gulf Bravo, and

15  Gulf Charlie typically have over 80 inmates and Gulf

16  Delta can have -- can fluctuate anywhere between 20 to

17  70 inmates, fair?

18          MR. BOGAN:  Object to form.  Go ahead.

19          THE WITNESS:  I would say those Alpha, Bravo,

20      Charlie sections have around 80 inmates.

21          BY MS. HARTON:

22      Q.   Fair to say that based on what you just

23  testified to, there are times where there are more than

24  265 inmates in Gulf Pod?

25          MR. BOGAN:  Object to form.
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

32201 Peterson, Brian 09-13-2024        Page 25

```
 1          THE WITNESS:  Yes, there could be.

 2          BY MS. HARTON:

 3     Q.   Okay.  And do you know why Gulf Pod has a max

 4  cap of 265?  What's the purpose of the max cap?

 5     A.   As I explained earlier, that's -- that's how

 6  the pod was designed.  The -- the original design was

 7  for 265 beds for that pod.  Throughout the years, we

 8  have been able to augment -- augment the -- the layout

 9  of the pod to add more bunks to -- to help us take in

10  the increased population.

11     Q.   You said there's been an increased population.

12  Can you explain that?

13          MR. BOGAN:  Object to form.

14          THE WITNESS:  I mean, the -- the population

15      goes up and down, but it has increased throughout

16      the years.

17          BY MS. HARTON:

18     Q.   Okay.  Like in the last ten years, the last 15

19  years, the last five years?

20          MR. BOGAN:  Object to form.  You can answer.

21          THE WITNESS:  I'm unsure.  I mean, overall,

22      it's -- it's increased, but there may have been

23      years that it -- it has also decreased, but I could

24      tell you, you know, ten years ago, obvious, the --

25      the population was a lot lower than the 1840, 18 and
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Peterson, Brian 09-13-2024 Page 26

1      some change that we have in there today.  But before

2      that, there was we had even more than that so or

3      back to 1800 so it just goes up and down.

4          BY MS. HARTON:

5      Q.   You were a detention deputy at the Marion

6  County jail ten years ago, right?

7      A.   Yes.

8      Q.   As a detention deputy, did you ever function

9  as a rover in the -- in the pods?

10     A.   I could -- I couldn't -- I don't know for

11 sure. I, as any detention deputy, we could work booking,

12 work a rover in the pod.  There's multiple.  Work

13 hospital. There's multiple places we could go.

14     Q.   Okay.  Sometimes you would work as a -- as a

15 rover in the pods and -- in which your responsibility

16 would be to monitor and supervise the inmates, fair?

17     A.   I would say within my career, I have worked as

18 a rover as a deputy.  Correct.

19     Q.   So in Gulf Alpha, there are 88 bunks and

20 they're all sex offenders or could -- or accused of

21 sexual offenses, fair?

22     A.   Yes.

23     Q.   Okay.  Are any of them -- strike that.  Are

24 they all pretrial detainees awaiting adjudication of

25 their sexual offenses, or are they -- have some of them

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  been convicted of the sexual offenses that they've been

2  accused of?

3          MR. BOGAN:  Object to form.  You can --

4          THE WITNESS:  It could be both pretrials and

5      ones waiting for transport to prison.

6          BY MS. HARTON:

7      Q.   Okay.  So there's no distinction between, as

8  far as putting the sex offenders in a pod together,

9  there's no distinction made between whether they are

10 pretrial or post-conviction, fair?

11         MR. BOGAN:  Object to form.  Go ahead.

12         THE WITNESS:  No, there is no difference. There

13     -- there -- there's no difference.

14         BY MS. HARTON:

15     Q.   Do you have a sense in Gulf Alpha of the ratio

16 between pretrial detainees and post-conviction inmates

17 in Gulf Alpha?

18         MR. BOGAN:  Object to form.

19         THE WITNESS:  No.

20         BY MS. HARTON:

21     Q.   And that's -- that -- that's true as it

22 applies to November, 2021 as well.  You don't -- you

23 don't know what that ratio would be?

24     A.   That's correct.  I do not know.

25     Q.   So I'm going to go back up to -- so we

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  established that Gulf Alpha is felony inmates with

2  sexual offenses.  And then going up to Page 9, Delta

3  Echo and Delta Foxtrot are also felony inmates with

4  sexual offenses.  Is that an accurate statement?

5      A.   According to that document, yes.

6      Q.   According to this document, is there -- is

7  there a distinction that I'm missing?

8      A.   That I -- I didn't see the date on the top of

9  that housing plan there, but those housing plans, they

10  change periodically just based on the need of the inmate

11  population.

12      Q.   Okay.  Does this --

13      A.   So that's -- as of right -- as of today,

14  that's what it is.

15      Q.   Oh, okay.  You don't know if this is how it

16  applied in November of 2021?

17      A.   Not without having to look at the housing plan

18  from that -- from that time period.

19      Q.   Did you review the housing plan from November

20  2021 before this deposition?

21      A.   I did.

22      Q.   Okay.  Do you have it in front of you?

23      A.   I do have it.

24      Q.   Okay.  Can you pull it out for me?

25      A.   So what was the -- what's the -- the date you



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

1  were asking about?

2      Q.   November 2021.

3      A.   So what I have here is a housing plan document

4  dated October 28, 2021.

5      Q.   Is there any way you could hold that document

6  up to the -- up to the screen so I can see it and see

7  what it looks like?

8          MR. BOGAN:  I don't think that's going to work.

9          THE WITNESS:  We're on the other side of the

10     room.

11         MS. HARTON:  Bruce, I don't think I have this

12     document.

13         THE WITNESS:  It almost -- it -- it looks like

14     that just dated -- it's the same layout.  It's just

15     dated differently.  And -- and has the sheriff's --

16     it's on letterhead.

17         MS. HARTON:  Okay.  I mean, I -- I'm going to -

18     - I'm just -- I'm going to issue a new set of

19     production after this deposition, but I -- I'm going

20     to just make -- I'm just going to state on the

21     record that I would like to reserve the right to

22     reopen this deposition if needed -- need be or seek

23     another 30(b)(6) deposition for questions about

24     these documents that are responsive to the

25     production that I have not received.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1          MR. BOGAN:  So yeah, just for the record, I --

2     I'm not agreeing with you that that document was

3     previously asked for.  If it were and/or if it had

4     been, then we have not previously produced it, you

5     know.  And I'm not trying to be difficult with you.

6     You're entitled -- you want to look at this document

7     and I have no problem with that.  But I'm not

8     agreeing to, you know, continuing this deposition,

9     nor was he asked to bring any documents here today.

10    And obviously he brought whatever he felt

11    comfortable that might be, you know, appropriate for

12    the 30(b)(6) writer.  So that's my response to that.

13    I mean, I -- if you want to take a break, I, you

14    know, will be happy to ask someone to scan it, and I

15    can see if we can e-mail it to you, but that's the

16    best I can do.

17         MS. HARTON:  Yeah.  I think -- I think scan --

18    we don't need to take a break this second, but we

19    can when, you know, when someone needs to use the

20    bathroom. When we take that break, if you could scan

21    it and send it to me, that would be great.  But I

22    think I can probably just ask the witness questions

23    about it for now.

24         BY MS. HARTON:

25    Q.   Looking at the -- on that housing plan that



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  you're looking at, does it have a Gulf Pod section?

2       A.   Yes, it does.

3       Q.   Okay.  Is the Gulf Pod section -- are the

4  descriptions of each -- or are the descriptions of each

5  section any different than what is reflected on Exhibit

6  19?

7       A.   No, it is not any different.

8       Q.   On that housing plan, is there any -- are

9  there any other pods or sections that house felony

10  inmates with sexual offenses?

11      A.   According to this document I have, shows

12  Foxtrot Section A, Alpha Section, will house now male

13  felony inmates with sexual offenses also.

14      Q.   Okay.  Do you -- so both Exhibit 19 and the

15  housing plan that you are looking at now, both of those

16  documents reflect that there are multiple places where

17  felony males with sex offenses can be placed.  So my

18  question to you is: Is there any -- is there any

19  difference between those different sections?  Is there

20  any reason why someone with the sexual offense might be

21  put in Foxtrot Alpha as opposed to Gulf Alpha?

22      A.   No.

23      Q.   Okay.  So generally, just can you walk me

24  through the process in November of 2021 of what would

25  happen when a new inmate comes into the jail?



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

132801 Petersen Brian 09-13-2024                    Page 32

```
 1        A.   You want it from the beginning?

 2        Q.   Yeah.  Just when a new inmate arrives at the

 3   jail, how are they -- how are they processed through

 4   intake, and how are they booked?

 5        A.   It starts off with the detention deputy

 6   assuming custody of the inmate along with the inmate

 7   activation form that has relevant information pertaining

 8   to the -- to the arrestee.  The officer then or the

 9   attention deputy then passes down the subject, gathers

10   any jewelry, any money, shoes, belt, anything that would

11   harm -- that they could harm themselves with.  After

12   they pat them down, they bring them into booking, put

13   them on a body scanner.  They're scanned for any

14   contraband.  They're then brought to the booking counter

15   and -- and what we call Rapid ID, where we take the

16   fingerprints of their index and middle finger to get a

17   rapid identification potentially from FDLE.  That inmate

18   is then activated in our jail management system.  The

19   inmate is then escorted to booking dress out room where

20   the rest of their clothing is confiscated.  They're

21   issued an inmate uniform, strip searched if needed and

22   then they're -- are you there?

23             MR. BOGAN:  Can you guys see us?

24             THE REPORTER:  Yeah.

25             THE WITNESS:  Hello.
```

**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1          MR. BOGAN:  You can see us.

 2          THE REPORTER:  Yeah.

 3          MR. BOGAN:  Can you --

 4          THE WITNESS:  You can still see us?  Everything

 5    went -- everything went dark here.

 6          MR. BOGAN:  We can hear you, but we can't see

 7    you.  It's all good.  You want me to go get them?

 8          MS. HARTON:  We can go off the record, Jessica,

 9    it's fine.

10          THE REPORTER:  Okay.  I was about to ask. Thank

11    you.  One second.

12          Okay.  We're off record.

13           (OFF THE RECORD)

14          THE REPORTER:  We're back on record.

15          THE WITNESS:  Yes.  You want to repeat that

16    last question?  Because I don't remember where we

17    were.

18          BY MS. HARTON:

19    Q.   Yeah.  Well, you were just walking me through

20    the process of what happens when a new inmate comes into

21    the jail.  And you left -- I think you left off, you

22    activate them in the jail management system.  And so if

23    you could go from there, that would be great.

24    A.   Yep.  So then from there, once an inmate is

25    activated, they're escorted -- escorted to the booking

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Zimmer Peterson Erika 09-13-2024                              Page 34

1  change out cell where the uniform -- where their, excuse

2  me -- where their clothing is confiscated.  They're

3  issued a -- a uniform and strip searched, if needed.

4  From that point, their inventory is -- their property is

5  inventoried.  And then they either have a seat on the

6  bench, or we go ahead and either start the booking

7  process of -- of asking them -- filling up the -- the

8  proper paperwork or they can get on the phone.  There's

9  -- that's where it kind of differs on there's no set

10 process that they have to do one thing or the other, or

11 the -- or the deputies will take them and go get their

12 fingerprints.  The pictures and fingerprints before --

13 before the booking, before they start asking them to

14 fill out the booking forms.

15      Q.   When you say filling out the proper paperwork,

16 are you referring to booking forms?

17      A.   Yes, ma'am.

18      Q.   Okay.  What book --

19      A.   Completing that --

20      Q.   Go ahead.

21      A.   Completing the -- the booking forms and the

22 arrest affidavit.

23      Q.   What are -- what are the booking forms

24 comprised of?

25      A.   Well, the -- the arrest affidavit deals with

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  asking them their -- their next of kin, if they want a

2  public defender attorney.  There's marital status, race.

3  As far as -- that's as far as the arrest affidavit goes.

4  And then there's a -- a classification form where we ask

5  their education, their current residence, how long

6  they've been living at their residence.  There's like, I

7  think, like 18 questions on there.  I don't remember off

8  the top of my head those -- all those questions.  But

9  had they been arrested before, what their charges were,

10 are they affiliated with any gangs?  Do they have any

11 enemies?

12           Another form that's completed is a -- is a --

13 I forget the exact title, but it -- it's basically a

14 sexual harassment form.  The inmate reviews that, signs

15 it.  There's a public defender form that we complete for

16 the courts.  I can't think of what else.  It seems like

17 there's some -- and then of course there's other forms

18 if they're -- if they have a hold for another agency,

19 there's a form that has to be filled out.  If they're a

20 -- if they're a sex offender, then there's an additional

21 form that has to be filled out for them.

22      Q.   Does just a sex offender have to be filled out

23 if they are accused of a sex offense or if they have

24 been previously convicted of a sex offense?

25      A.   If they're a registered sex offender.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Peterson, Brian 09-13-2024   Page 36

1    Q.   Okay.  You said in the classifications form

2  you ask if they have any enemies.  Why do you ask that?

3    A.   For separation reasons.

4    Q.   Okay.  So someone identifies an enemy that

5  they might have, that they have.  You might or you would

6  put them in a separate pod from that inmate so that

7  there are no physical altercations between those two

8  inmates; is that fair?

9    A.   We may separate them.

10    Q.   Okay.  But you may not separate them?

11    A.   That's correct.

12    Q.   Why would you not separate two inmates where

13  one has been identified as an enemy?

14    A.   Well, because when you ask that -- when you

15  ask that question to any individual, they could take

16  that term broadly.  Their enemy may be someone that

17  looked at them wrong, or they don't know someone, or

18  they -- they sometimes they may utilize it as a -- a way

19  to manipulate their housing.

20    Q.   How do you go about inquiring as to whether

21  that enemy designation is sufficiently serious to

22  separate the inmates?

23    A.   If there's speculation that there -- that it

24  may be serious, we may, precautionary, go ahead and

25  separate them and give the information to the jail



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

132801 Peterson Brian 09-13-2021    Page 37

1   investigators to look in -- to look into.

2        Q.   How do you determine if there is speculation

3   that it's sufficiently serious?

4        A.   Well, if -- I'll use an example.  Someone

5   comes in and says, "Hey, this guy, Joe Smith, murdered

6   my daughter or whatever."  Of course, we're going to

7   keep them separate and make sure they're not housed

8   together. But we'll also relay that information to the

9   jail investigators to look into verify that that

10  information's correct.

11       Q.   If someone designates another inmate as an

12  enemy, will it always be referred to investigations?

13       A.   No, not necessarily.

14       Q.   Okay.  How -- who determines whether or not it

15  should be referred to investigations?

16       A.   There's no particular person that determines

17  that.  If it's already been verified in the past that

18  these individuals are -- are enemies, then there's no

19  sense to send it to the jail investigator.

20       Q.   And then in that case, you would just separate

21  them without notifying the investigator?

22       A.   That's correct.  And if they have past

23  enemies, if they've been in the jail previously and they

24  have enemies, those -- those enemies are documented in

25  our jail management system under keep aways.



**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONE**REPORTING.com          Toll Free 855-MYDEPOS

1      Q.   And --

2      A.   Or I should say any enemy that's verified is -

3  - is added as a keep away in the computer.

4      Q.   Yeah.  And I'm trying to understand the

5  verification process.  How do you as an intake officer,

6  how -- sorry, strike that.  How does an intake officer

7  go about verifying whether the enemy designation is

8  sufficiently serious enough to either report it to

9  investigations or actually keep these inmates away from

10 each other?

11          MR. BOGAN:  Object to form.  You can answer.

12          THE WITNESS:  It -- it just depends on their

13      response.  If they say, "Brian Peterson is an enemy

14      of me."  As an officer, that's -- that's not a --

15      that's not a good reason to list as an enemy for an

16      inmate. We're not going to house them differently

17      because he has an issue with an officer at the jail.

18      But if it's like I said, if -- if they're related to

19      a victim of a crime, then we may separate, even as a

20      precautionary, separate them and then refer, if need

21      be, refer to the investigators to look at, or we may

22      just go ahead and -- and put the keep away in the

23      computer and -- and that's the end of it.

24          BY MS. HARTON:

25      Q.   So you -- so once an inmate lists an enemy on



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1    the -- on the classifications form, would you -- is it a

2    matter of procedure to follow up with that person and

3    inquire about why that person is an enemy?

4        A.   Yes.

5        Q.   Okay.  And then whoever is inquiring can use

6    their discretion, depending on the answer, as to whether

7    they should report it to investigations or put a keep

8    away in the computer, fair?

9        A.   That's correct, or -- and I'll -- and I'll

10   also add they can notify a supervisor if need be.

11       Q.   Okay.  And that person who would be conducting

12   that inquiry would be an intake officer?  It wouldn't be

13   a supervisor, right?

14       A.   It could be a supervisor.  There -- there's --

15   supervisors help out all the time too, help get inmates,

16   book them.

17       Q.   Okay.  It would -- so once these

18   classification forms are completed -- sorry, strike

19   that.  The classification form that is completed when an

20   inmate comes into the jail, is that physically filled

21   out by the inmate or is it done with the inmate and the

22   officer discussing it and doing it together?

23       A.   So it's done with the inmate and officer

24   discussing it together.  The officer's -- the deputy's

25   filling it out, asking the inmate, going through the



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900            www.**MILESTONEREPORTING**.com            Toll Free 855-MYDEPOS

1  series of questions, asking the inmate those questions

2  and -- and answering it according to the inmate's

3  response.

4      Q.  Okay.  You mentioned a -- the Rapid ID by

5  which you get information from the FDLE.  Is the FDLE

6  the Florida Department of Law Enforcement?

7      A.  Yes, that's correct.

8      Q.  Okay.  And information from the FDLE would

9  include information from prior incarcerations at a state

10  prison, right?

11     A.  Not at that point.  Not the Rapid ID.  The

12  Rapid ID just quickly gives a identification of if -- if

13  the subject has been in -- in FDLE system, their name

14  and their state ID number.  Doesn't give any specifics

15  on their -- on their past.

16     Q.  Okay.  If their name was in the FDLE system,

17  you -- that would mean though that they had some sort of

18  arrest or conviction by the state police or the state

19  system?

20          MR. BOGAN:  Object to form.

21          THE WITNESS:  No.

22          BY MS. HARTON:

23     Q.  Okay.  Okay.  So just because you get

24  information from the Florida Department of Law

25  Enforcement doesn't necessarily mean that this person

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

 1  has been in the Florida prison system; is that fair?

 2      A.   That's correct.

 3      Q.   Okay.  Is there a way -- sorry, strike that.

 4  When someone comes into the jail, does the intake

 5  officer, to any extent, inquire about prior convictions

 6  and incarcerations?

 7      A.   When the inmate comes into jail?

 8      Q.   Yeah.  When you're conducting -- when you're

 9  conducting the intake and booking process, does that

10  include an inquiry into their past convictions and past

11  prison time?

12      A.   By the officer?  No.

13      Q.   Okay.  You're making a distinction there.  So

14  clarify for me.

15      A.   As I said, in that classification form, we ask

16  if they'd been ever -- ever been arrested, had they ever

17  had any prior arrests, and what were the charges.

18      Q.   Okay.  So you're relying on the inmate's self-

19  reporting of their -- of their criminal history?

20      A.   At that point of the booking, yes.

21      Q.   Okay.  Is there any point at which -- in which

22  you attempt to get verification of criminal background

23  by -- from the prison system or from the state police or

24  any other agency?

25      A.   So once the booking process is completed by



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  the deputies, the file is then given to a civilian.  The

2  civilian enters the information that was gathered,

3  including the charges.  And their responsibility is to

4  run a criminal history.

5      Q.  The civilian is the -- it's their

6  responsibility to run the criminal history?

7      A.  Yes, ma'am.  Because they have access to the

8  computers.

9      Q.  Okay.  When you say civilian, can you just

10  explain?  I think I know what you mean, but I just want

11  to make sure.

12      A.  Civilian staff.  I'm sorry.  Civilian staff.

13  They're not sworn deputies, officers.  They -- they have

14  limited interactions with inmates.

15      Q.  Okay.  Is there a -- is there a name for that

16  job where someone is using -- they're getting the file

17  and using the computer to search criminal history?  Like

18  whose job is that?  What's their job title?

19      A.  Detention assistant.  Now they're called

20  booking specialist.  A booking specialist is a detention

21  assistant.  It's just a more specialized title, I guess.

22      Q.  And so when the civilian gets the file and

23  enters the file into the computer, do they always search

24  for the criminal history, or they do only do it when the

25  individual has self-reported their criminal history?



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.**MILESTONEREPORTING**.com        Toll Free 855-MYDEPOS

1    MR. BOGAN:  Object to form.  Go ahead.

2    THE WITNESS:  No.  A criminal history is ran on

3    every subject, whether they report it or not.  Every

4    -- every person that comes into the jail, a -- a

5    criminal history is ran.

6    BY MS. HARTON:

7    Q.   And that was true in November of 2021?

8    A.   Yes.

9    Q.   Has that been true as long as you've been

10   involved in intake and booking at the Marion County

11   Jail?

12   A.   Yes.  The best of my knowledge, yes.

13   Q.   Okay.  You said earlier when the booking

14   process is complete, the civilian gets the file.  At

15   what point do you consider the booking process complete?

16   A.   That would be once all the booking paperwork

17   is filled out, the inmate is interviewed to complete

18   that paperwork.  The inmate is pictured, fingerprinted.

19   The property's done.  Usually at that point, the -- the

20   file goes to the assistant, and the inmate is waiting to

21   see medical staff for an assessment.

22   Q.   Okay.  So the inmate is interviewed.  Who's --

23   is the inmate interviewed by a booking officer?

24   A.   That's correct.  That's how they get those

25   answers for the classifications and -- and the booking

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1  forms.

 2       Q.   Okay.  So that inter --

 3       A.   In the interview process.

 4       Q.   That interview is a -- is a component of

 5  filling out the classifications form?

 6       A.   That's correct.

 7       Q.   And does that classifications form sort of

 8  serve as a checklist for the booking officer conducting

 9  the interview?

10       A.   Yes.

11       Q.   And then once the booking process is complete

12  and the -- and the booking specialist gets the file, I

13  -- I'm assuming the individual is sent to one of the pre

14  classification sections; is that fair?

15       A.   No.

16       Q.   Okay.  Explain.

17       A.   After that point, they have a seat out there

18  in the booking area usually, and they have an

19  opportunity to use the phone, make some phone calls and

20  await the medical assessment by the booking nurse.

21       Q.   Does every inmate get a medical assessment

22  prior to being classified?

23       A.   Not necessarily prior to being classified.

24  They've been classified before they get the medical

25  assessment, but that's part of -- that's part of the --
```



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

1   that's part of the classification assessment.  They get

2   booked, then they go see the nurse.  If the nurse has

3   any input, then that determines on where they may be

4   housed.

5        Q.   Okay.

6        A.   Or has an effect on where they may be housed.

7        Q.   Right.  Right.  So walk me through just the

8   same way you did with the first, walk me through the

9   process of when the inmate comes to the jail.  Walk me

10  through the process of after booking is done, the

11  booking process is done, how does it -- how do you go

12  about assigning an inmate to a pod?

13       A.   Based on -- based on their charges, if they

14  have any prior -- anything prior that they were in,

15  let's say, administrative confinement, we take that into

16  consideration.  If they were prior escape risk, security

17  risk, suicide precaution, any mental health status, and

18  then any input from medical, that's all taken into

19  consideration when determining where to house an

20  individual.

21       Q.   So you said you based it on their charges, do

22  you consider prior convictions in determining where to

23  assign someone?

24       A.   And then --

25            MS. HARTON:  Object to form.  Go ahead.



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

Brian 39-13-2024

 1          THE WITNESS:  In the initial, this is the

 2     initial booking.  I mean, the initial

 3     classifications. It's -- it's taken to -- to an

 4     extent.  If they have -- like I said, if they have a

 5     prior conviction for escape, that's going to be

 6     taken in consideration, or if they have a -- a prior

 7     murder on an inmate in custody, that'll be taken

 8     into consideration.

 9          MS. HARTON:  But just because someone has been

10     -- if someone has just been convicted of what would

11     be considered a violent felony in the past, you

12     wouldn't necessarily consider that in determining

13     where they need to be housed?

14          MR. BOGAN:  Object to form.  Go ahead.

15          THE WITNESS:  At the booking process, no.

16          BY MS. HARTON:

17     Q.    Okay.  At what point would you consider that?

18     A.    That would be done at the classifications, at

19 the primary classifications.

20     Q.    Okay.  So again, I need you to walk me through

21 all.  I don't work at the Marion County Jail.  Okay?

22     A.    Okay.

23     Q.    I'm relying on you to sort of explain to me

24 how these processes work because every jail is a little

25 bit different.  So the booking process is complete and

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  the civilian gets the file.  And the inmate is seen by

2  then nurse.  How does staff go about classifying that

3  inmate? Walk me through step by step the process.

4          MR. BOGAN:  Object to form.  Go ahead.

5          THE WITNESS:  Well, they're taking into

6      consideration the inmate's behavior during the

7      interview process, during their interactions, any

8      mental health status they -- they -- they may have,

9      the charges --

10          BY MS. HARTON:

11     Q.   You said, who -- you said, taking into

12  consideration.  Who is taking it into consideration?  Is

13  it a booking officer?  Is it a civilian classifications

14  person?

15     A.   The booking officer.

16     Q.   Okay.  So the booking officer takes all this

17  information into consideration, and then what do they

18  do?

19     A.   Then they determine where -- where is the most

20  appropriate place to house an individual.

21     Q.   And at -- and at that point, when they

22  determine where the most appropriate place to house an

23  individual is, are they still considered pre-

24  classification, or at that point, are they classified?

25     A.   No.  They're -- that's pre-classification.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free **855-MYDEPOS**

Marilyn Peterson Bratton  09-13-2024  Page 48

1      Q.   Okay.  Can you -- can you explain to me what

2  pre-classification means?

3      A.   That they're waiting for the primary

4  classifications from the classifications department, as

5  opposed to the initial classification that's done by

6  booking staff.

7      Q.   Okay.  So that -- does that mean that booking,

8  these booking classifications, they are they assigning

9  these individuals to one of the pre-classification

10  sections?

11      A.   Can you repeat that again for me?

12      Q.   Okay.  Maybe it might be helpful to show you

13  Exhibit 19.  Here, Section D, will house -- it's on Page

14  10.  It says, "Section D will house pre-classification

15  male inmates, pending primary classification."  Explain

16  to me the difference between pre-classification and

17  primary classification?

18      A.   Okay.  The -- the initial classification is

19  done by booking staff.  The primary classification is

20  done by classification staff, within 72 hours of when

21  the inmate arrives.

22      Q.   Okay.

23      A.   The -- the initial classification is done --

24  it's done within 24 hours from when an inmate arrives.

25  But, you know, usually that's done while the inmate is



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        Toll Free 855-MYDEPOS

1  in booking.  It's done -- that's how they determine

2  where to house the inmate, initially.  So that -- that

3  initial -- that initial one does -- that initial

4  classification, they have limited resources on -- on

5  determining where an inmate should be housed.  That's

6  why they're housed in a pre-class section, or when it's

7  open, a -- the booking housing is also a -- is a pre-

8  class area that we can house inmates until they're --

9  they're classed by -- by classifications.

10      Q.  Okay.  So the booking officer will classify

11  someone, and they'll go into one of these pre-

12  classification sections, such as Gulf Pod Section D; is

13  that fair?

14      A.  That would -- yeah.  That would be for any

15  inmate that's not, again, that's what we call a general

16  pop -- general population.  That's -- that's Delta

17  sections.  It's for inmates that are not sex offenders,

18  that are not on suicide precaution, that are not

19  considered special-needs, or inmates with mental health

20  issues, or escape-risk inmates, high-risk inmates, or

21  inmates that should be in administrative confinement, or

22  I -- and that's only from, obviously, male inmates.

23      Q.  Okay.  And from there, within 72 hours, a

24  primary classifications officer will conduct a new

25  assessment of the individual and determine where they

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  should be housed, fair?

2      A.   Yes.

3      Q.   Okay.  Is there anything that the primary

4  classifications officers take into account that the

5  initial booking officers do not take into account?

6      A.   Well, they have a -- they have access -- the

7  classifications department has access to past incidents.

8  They also utilize a -- a decision tree, a Northpointe

9  Decision Tree, to help determine where an inmate should

10 be housed, that -- there's a series of questions on

11 there that -- that the classification specialist has to

12 answer.  And it includes the inmate's history, if

13 they've had any assaultive charges in the past, any

14 violent incidents -- I don't remember all the questions,

15 but there's questions such as those in there.

16     Q.   Okay.

17     A.   And then it gives a -- a determination on,

18 should this inmate be a high-risk, medium-risk, or a

19 low-risk inmate.

20     Q.   You said, high-risk, medium-risk, or low-risk

21 inmate?

22     A.   Yes, ma'am.

23     Q.   Sorry.  Was that a yes?

24     A.   Yes, ma'am.

25     Q.   Okay.  Sorry.  You cut out for a minute.  You

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  said that you consider their past history.  Does that

2  include past convictions, or just past history within

3  the jail?

4      A.   Past convictions.

5      Q.   Okay.  So as a matter of policy, the -- Marion

6  County is considering an individual's past convictions,

7  prior to deciding where to place them in the jail, fair?

8      A.   No.

9      Q.   No.  Okay.  Go -- explain?

10     A.   Again.  The initial placing an inmate, if

11 they're charged with a sex offense, they're going to go

12 into the sex offender unit.  That's not taken into

13 account.  They're -- they're -- that necessarily doesn't

14 take into account their criminal history.  If they're an

15 escape risk, that's not necessarily going to take into

16 account their past -- their past criminal history.  Same

17 thing with suicidal inmates and mental health inmates.

18     Q.   So all the sex offenders that are put into,

19 for example, Gulf Pod Section A, they are classified

20 there without necessarily considering their prior

21 criminal convictions?

22         MR. BOGAN:  Object to form.

23         THE WITNESS:  Correct.

24          BY MS. HARTON:

25     Q.   Sorry.  Did you say, correct?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

Peterson, Brian 09-13-2024

1    A.    That's correct.

2    Q.    And there's no sort of delineation as to,

3  okay, this section has the really, really seriously-

4  violent sexual offenders.  And this section has, maybe,

5  more mitigated offenses associated with sex crimes.

6  There's no -- there's no sort of hierarchy to the sex

7  offenses; is that fair?

8    A.    No.

9    Q.    Okay.  I -- actually, I'm not going to ask you

10 to explain.  It's a really bad question.  So I'm just

11 going to ask you a different question.  When you

12 classify an inmate into Gulf Pod Section A as a sexual

13 offender, you're not necessarily considering, was this

14 an aggravated sexual offense, versus, you know, lewd

15 battery or anything like that, or you're not comparing

16 the severity of each offense when determining how to

17 classify them; is that fair?

18        MR. BOGAN:  Object to form.

19        THE WITNESS:  Yes.  That's correct.

20         BY MS. HARTON:

21    Q.    Okay.  But going back to the question I asked

22 before, there are sort of differences in severity

23 amongst different types of sexual offenses; is that

24 fair?

25        MR. BOGAN:  Object to form.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1              THE WITNESS:  Yes.

2              BY MS. HARTON:

3        Q.   Okay.  In what way?

4        A.    If they were a sexual predator, or a previous

5   -- a sex -- a sex predator charged within a facility,

6   then they may be -- they would -- they would be

7   separated, and -- and -- and housed separately, in that

8   case, dealing with sex offenders.  But also, you -- the

9   other thing, it also takes into account their -- their

10  other charges.  It may not be just sex offense.  If they

11  -- if there was a -- I don't know, a murder and a sex

12  offense from a previous facility, they -- they would

13  take that into consideration.  That's --

14       Q.   But at the end of the day, they're going to go

15  into the sex offense section, right?

16             MR. BOGAN:  Object to form.

17             THE WITNESS:  Not always.

18             BY MS. HARTON:

19       Q.   Okay.  Where else could they go?

20       A.    Well, if they're on suicide precaution,

21  they'll be housed appropriately as a suicidal inmate.

22  If they had any medical issues, they may be housed in

23  the infirmary.  If they're an inmate with mental health

24  issues, they may go into our special needs section.  And

25  again, this is all dealing with male inmates, only.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  That's -- we're not talking about females, here, or if

 2  they have a past where they were in, when they left us

 3  last time, that they were in administrative confinement,

 4  they may go back in administrative confinement security

 5  risk.  They -- they could go back in confinement --

 6  escape risks, they would go into confinement.

 7      Q.   I didn't hear you say anything related to

 8  whether or not they would be a danger to another inmate.

 9  Is it fair to say that the Marion County Sheriff's

10  Office consider all inmates who have been accused of

11  sexual offenses, to some extent, a danger to other

12  inmates?

13         MR. BOGAN:  Object to form.

14         THE WITNESS:  No.

15          BY MS. HARTON:

16      Q.   Okay.  And what -- why is that?

17         MR. BOGAN:  Object to form.

18         THE WITNESS:  I don't understand the question.

19          BY MS. HARTON:

20      Q.   Okay.  Does the Marion County Sheriff's Office

21  -- I mean, you're here testifying on behalf of the

22  Marion County Sheriff's Office, correct?

23      A.   Yes, we've established -- yes.

24      Q.   Okay.  And as part -- and when you're

25  classifying an inmate, one of the things that you are

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  considering is whether or not they are a serious danger

2  to another inmate; is that fair?

3      A.   That's correct, as -- as is, are they a

4  victim? Are they -- are they subject to be a victim,

5  victimization?

6      Q.   Okay.  Are you only considering whether

7  they're subject to victimization, or are you also

8  considering whether they could also be potentially a

9  perpetrator of violence?

10     A.   Both of those are considered.

11     Q.   Okay.  Thank you.  And when you're classifying

12 people in a sex-offense pod, it -- does the Marion

13 County Sheriff's Office consider all the people

14 classified in those pods as a potential perpetrator of

15 violence?

16         MR. BOGAN:  Objection.

17         THE WITNESS:  No.  We don't -- we do not have a

18    sex-offender pod.  We have sex-offender sections,

19    okay?

20         BY MS. HARTON:

21     Q.   And are -- go ahead.

22     A.   No.  So if you want to repeat the question, as

23 far as sex-offender sections --

24     Q.   Are all of the inmates in the sex-offender

25 sections considered a risk of violence towards other

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

32801 Peterson Brian 09-13-2024                    Page 56

 1  inmates?

 2          MR. BOGAN:  Object to form.

 3          THE WITNESS:  I guess.  Yes.  They could be, or

 4      -- or -- or another reason is, at least to protect

 5      them, to make sure they're not a -- a -- a victim,

 6      because of their -- because of their crimes.

 7          BY MS. HARTON:

 8      Q.   Well, you're housing them with all the other

 9  sex offenders, right?

10      A.   That's correct.

11      Q.   Okay.  What measures does the Marion County

12  Sheriff's Office take to determine whether an inmate

13  with a sexual offense, who's being placed in a sexual-

14  offense pod, is a particularly higher risk of violence

15  than the other inmates in that pod, or in that section?

16          MR. BOGAN:  Object to form.

17          THE WITNESS:  I -- I -- I guess, I don't

18      understand the question.  All -- sex -- all inmates

19      with sex-offense charges, they get housed in the

20      same section.

21          BY MS. HARTON:

22      Q.   Okay.

23      A.   -- unless there's those other things I talked

24  about, before.

25      Q.   Okay.  And those things did not include

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Daniel Peterson   Brian 30-13-2024   Page 57

1    propensity for violence against another inmate?

2           MR. BOGAN:  Object to form.

3           THE WITNESS:  It could.

4            BY MS. HARTON:

5      Q.   Okay.  And how would you go about determining

6    that?

7      A.   Well, like I said before, if they were in

8    administrative confinement before, when they left, if

9    they have a history of being in -- in administrative

10   confinement for violence on another inmate, they would

11   take that in consideration on whether we would put this

12   guy in general population, or do -- does he go back into

13   administrative confinement, pending a review.  Or if we

14   get information, maybe comes from another agency, we may

15   get information from that agency saying, hey, FYI, this

16   guy battered another inmate, or -- or murdered another

17   inmate, or whatever, then that information would be

18   utilized at that time to determine the proper location

19   to house that inmate.

20     Q.   And that information might come from the

21   Florida Department of Corrections; is that fair?

22           MR. BOGAN:  Object to form.

23           THE WITNESS:  It may -- oh, hold on.  We went

24       black here for a second.  I hit the PC, like you

25       said. Oh, there it is.  There it is.  There.  I'm

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Gleason Peterson Brown 09-13-2021                    Page 58

```
 1       sorry.

 2            BY MS. HARTON:

 3       Q.   Are we good?

 4       A.   Can you repeat that again?  Yeah.

 5       Q.   No.  No, you answered my question.  I was

 6  going to ask my next question.  The Florida -- how --

 7       A.   Oh, can you go back and ask that question

 8  again, because I think I was in the middle of answering

 9  it, when we went off.

10       Q.   Oh, okay.  I asked -- I asked that information

11  regarding prior violence by an inmate, that information

12  might come from another agency, like the Florida

13  Department of Corrections, right?

14       A.   Yes.  It may come from another agency.

15       Q.   How would you go about getting that

16  information from the Florida Department of Corrections?

17       A.   Usually, if it's a point where they're

18  charged, we'll ask for an incident report, if need be,

19  to determine the details of the incident.

20       Q.   But how do you -- how do you go about finding

21  out if that -- the incident ever happened?

22       A.   How it ever happened?  That's only -- only if

23  -- if DOC reports it to us.  We don't have access to

24  their incident reports.

25       Q.   In what scenarios does DOC report incidents of
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Lisamor Peterson Bratah 09-13-2024   Page 59

1  violence to you?

2      A.   If we have a -- if we have an inmate that

3  comes from their facility, for battery on another

4  inmate, or for murder, we've had inmates right here in

5  Marion County that they murdered another inmate.  We

6  hold them. We end up getting them, because they have to

7  go to court.  They have to start their -- their criminal

8  process.

9      Q.   Okay.

10     A.   So that -- that information would be relayed

11 to us then.

12     Q.   But if an inmate comes in for a crime where

13 they were arrested on the street and you book them, and

14 you classify them, you are not requesting their file

15 from the Florida Department of Corrections; is that

16 fair?

17     A.   Correct.

18     Q.   Okay.  Is there any scenario, besides the one

19 you articulated, where they're being transferred from

20 the DOC to the jail, is there any scenario where you

21 would request an inmate's file from the DOC, if you knew

22 that they had been convicted of a crime, in the past?

23     A.   If the information was relayed to us, yes.

24 Obviously, we would ask for that file.

25     Q.   I'm not asking about whether it was relayed to



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  you.  I am asking about when you request it?

2      A.   Yes, we would request it.

3      Q.   When?

4      A.   During the primary classification.

5      Q.   Okay.  So for every inmate that comes through

6  primary classifications, you request their file from the

7  Department of Corrections?  If they've been through the

8  Department of Corrections?

9      A.   No.

10     Q.   Okay.  Please explain the discrepancy.

11     A.   That's only if the information -- we were

12  talking about violent inmates, if they've committed a

13  crime on other inmates from DOC, if that information was

14  passed along to us, then yes, we would seek out that --

15  that file from DOC.

16     Q.   But that information is not typically passed

17  along to you, right?

18     A.   If the inmate is a violent inmate in DOC, they

19  would, then, there's a potential that it would be

20  relayed -- that information being relayed to us.  Yes.

21     Q.   If they were transferred from DOC, but not if

22  they were just arrested off the street, fair?

23     A.   If the arresting officer has knowledge, or --

24  or -- or the booking officer has knowledge, or any staff

25  has any knowledge, or the inmate says, hey, yeah, I -- I



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  killed a guy in -- in prison last week.  That's

2  knowledge that we received and we would look into.

3      Q.  But again, you are not requesting the file

4  from DOC for every inmate that goes through primary

5  classifications, unless someone gives you a particular

6  reason to, right?

7      A.  Right.

8      Q.  Okay.  But it's not part of the booking

9  process or the classification process to -- for every

10  inmate to just request the DOC file, right?

11      A.  To the best of my knowledge, no.

12      Q.  Okay.  Can you walk me through the process of

13  how one inmate might be moved from one pod, or section,

14  that they've been classified in, to another section?

15          MR. BOGAN:  Object to form.  Go ahead.

16          THE WITNESS:  Are you asking if they were -- if

17      -- if they're just moved?

18          BY MS. HARTON:

19      Q.  Okay.  Let me -- let's start -- strike that.

20  Let's start from the beginning.  Sometimes, inmates are

21  assigned to a section and they are, for a number of

22  reasons, could be moved to a different section, right?

23      A.  Correct.

24      Q.  Okay.  Explain to me the procedure of

25  determining that an individual needs to be transferred

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Peterson, Brian 09-13-2024                          Page 62

1   from one section to another?

2          MR. BOGAN:  Object to form.

3          THE WITNESS:  I mean, there's various reasons.

4      An inmate could be moved from a pod to another pod

5      of the same classification, if -- if the officer

6      feels like there's an issue.  If -- if any

7      information arises that there may be an issue, well,

8      within the section with that inmate, even from

9      classifications, you know, if -- if -- if there's a

10     numerous amount of incident reports, or -- or

11     multiple incident reports that lead to, there may be

12     an issue, we can move inmates there, at that point.

13     That's just, you know, within the same

14     classifications, we -- we can move inmates really,

15     as we see fit, for the -- to run the -- the jail

16     appropriately.

17         BY MS. HARTON:

18     Q.   Okay.  If an inmate gets hurt by another

19  inmate, would they typically be moved to a different

20  section?

21         MR. BOGAN:  Object to form.  Go ahead.

22         THE WITNESS:  Yes.  It would be typically moved

23     separated from that inmate, or most of the time, if

24     it's in -- a battery involved, then they will

25     receive a disciplinary report, and -- and go into

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    disciplinary confinement pending the outcome of

2    their report.

3         BY MS. HARTON:

4    Q.   You're talking about the perpetrator, right?

5    A.   It -- it depends.

6    Q.   Why would the victim of a battery get a

7    disciplinary report?

8    A.   Well, it -- it -- it could be a mutual

9    battery.

10   Q.   Oh, okay.

11   A.   You have those too.

12   Q.   A fight?

13   A.   Yes.

14   Q.   Okay.  But regardless, if someone is hurt by

15   another inmate via a battery, they would be separated

16   from each other, correct?

17   A.   Yes.

18   Q.   For a -- for a period of time.  But would they

19   be -- what measures are taken in order to ensure that

20   that individual is not able to -- the perpetrator is not

21   able to harm that particular victim, again?

22        MR. BOGAN:  Form.  Go ahead.

23        THE WITNESS:  If, during the investigation, it

24   was confirmed that there was a fight, a battery,

25   whatnot, there could potentially be keep aways

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1    placed on those inmates to make sure they don't

2    interact with each other, again, or, like I said, at

3    the very least, they're separated.  They're moved to

4    different sections, or go into disciplinary

5    confinement.

6         BY MS. HARTON:

7    Q.   So you listed for me a number of documents

8    that are created through the booking process, an arrest

9    affidavit, a classifications form, a sexual harassment

10   form, a public defender form.  Possibly a hold for

11   another agency, a sex offender form.  Is there any other

12   document that is created that I'm missing?

13   A.   Yes.  I'm sure there's more.  What those are,

14   I can't -- I don't remember off the top of my head.

15   There's -- for immigration status, there's -- there's

16   multiple different forms.

17   Q.   I just have this note that you said there's a

18   booking form regarding a hold from another agency.  Can

19   you explain what that is?

20   A.   It's just a -- information for us, that the

21   inmate has a -- a hold of criminal charges out of

22   another agency that, even if they do post bond with us,

23   or they do get released somehow from us, that they

24   cannot be released out of custody because they have

25   pending charges at another agency, or I should say,



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 also, for a Baker Act, or --

2      Q.   An inmate can request a keep away against

3 another inmate; is that fair?

4      A.   Yes.  They can request it.

5      Q.   That doesn't necessarily mean they're going to

6 get the -- get it, right?

7      A.   That's correct.

8      Q.   If they request those keep aways, but they are

9 not granted, are those keep away requests stored

10 anywhere in the inmate's file, where classifications can

11 access it?

12      A.   If -- are -- you're asking if the requests are

13 kept?

14      Q.   Correct.

15      A.   So the inmate filled out inmate request form

16 asking for a keep away, yes.  Those -- those inmate

17 requests, all inmate requests are -- are kept by

18 classifications within the inmate file.

19      Q.   Okay.  So that's something else that primary

20 classifications would consider, in determining where to

21 house an individual; is that fair?

22      A.   Yes, that would -- yeah.  That -- that could

23 be considered.

24      Q.   Okay.  What kind of weight would a primary

25 classifications officer be expected to give to the fact



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1  that an inmate had requested keep aways on multiple

2  inmates?

3           MR. BOGAN:  Object to form.

4           THE WITNESS:  It just depends on the

5      circumstances.

6           BY MS. HARTON:

7      Q.   How does the classifications officer go about

8  determining the circumstances?

9      A.   Clear, better clarification from the inmate,

10 they may just say, hey, I just want keep aways against

11 this inmate or these multiple inmates, and that's it.

12 They need to -- they have to provide a reason why, so it

13 could be looked into.

14     Q.   So if a inmate had a keep away, had requested

15 eight keep aways on eight different inmates during their

16 time at the Marion County Jail, what would a

17 classifications officer be expected to do with that

18 information?

19          MR. BOGAN:  Object to form.

20          THE WITNESS:  Again, it depends on the request

21     that was sent in by the inmate.  If there's not

22     enough information there -- if there's not enough

23     information, there  they have to gather that

24     information.  Once I get that permission's gathered,

25     then it's -- they may seek the assistance from a

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Peterson, Brian 09-13-2024                Page 67

1    supervisor.

2          BY MS. HARTON:

3      Q.   Okay.  So if there's not enough information on

4    the keep away, itself, they would be expected to talk to

5    the inmate, themselves, and determine, you know, the

6    severity of the keep aways on the file?

7      A.   No.  No.  The -- and -- and they're -- they're

8    not -- the classification officers, they're not sworn.

9    So they -- they're -- they're civilian staff, so they

10   don't have interactions with the inmates.  They

11   communicate -- they communicate via the inmate request

12   form.  They can respond back saying, please provide

13   further details.  If it's something that's serious in

14   nature, that they may be in that same -- in that same

15   section with that inmate, with the reported inmate.  At

16   that time, the classification specialist may call down

17   to the detention deputy working that area, and have them

18   pull them out -- pull the inmate out, and -- and ask

19   those pertinent questions.

20     Q.   When I say the word rover, as it refers to

21   detention deputies and pods, do you understand what I

22   mean?

23     A.   Yes.

24     Q.   Okay.  What -- can you just kind of put on the

25   record what you understand it to mean?



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    A.   An officer that works the pod, that deals with

2  the inmate population within that pod that they're

3  assigned to.

4    Q.   He's present in the pod and expected to

5  supervise and monitor the inmates in the pod, fair?

6    A.   As best as he can, or she can.

7    Q.   Why do you say as best as he or she can.  Why

8  do you add that qualifier to the answer?

9    A.   I mean, they're in charge of -- of supervising

10  their inmates, but there's multiple things going on in

11  the -- in the pod at the time, at -- at any given time

12  that they can't -- they may not be able to solely focus

13  on the inmate population that's surrounding them.

14    Q.   What documents do the rovers have access to

15  that are -- strike that.  We talked a lot about, you

16  know, documents associated with a booking file, such as

17  the classification sheet.  Does -- do the rovers have

18  access to any of those documents?

19    A.   No.  They have -- I -- I -- they have -- the

20  only access they have -- the only document they have

21  access to is the -- is the booking cell change.  That's

22  where the booking officer writes down the -- the

23  inmate's housing assignment.  And that's what goes with

24  the inmate to the pod.  And that's -- then the officer

25  knows where to house this inmate.  Everything else is

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  whatever's in the jail management system.

2      Q.   The jail management system, is there a

3  particular software that that's run on, that you know

4  of?

5      A.   Yes.  We're -- we're currently using -- excuse

6  me.  It's Beacon.  It's called Beacon.

7      Q.   And I think I've -- I think I've seen Beacon

8  before.  It -- does it have sort of you can go into --

9  on the jail management system, you can go into an

10 individual page associated with an inmate in the jail?

11     A.   Yes.  You can search by inmate.

12     Q.   Okay.  And when you search by inmate, there

13 are multiple tabs that you can kind of explore as

14 they're associated with an inmate such as, you know,

15 medical or any sort of safety hazard or anything like

16 that?

17          MR. BOGAN:  Object to form.

18          THE WITNESS:  There is no medical tab within --

19     within --

20          BY MS. HARTON:

21     Q.   Are there other -- what are the -- what are

22 the tabs that are associated with each inmate?

23     A.   There may be incident reports, housing, next

24 of kin information, keep away information.  There's

25 alerts at the -- at the top.  I can't remember them all.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   There's so many tabs, left to right, top to bottom.

2       Q.   Sure.  Yeah.  I understand.  Are all -- the

3   information on all those tabs, like the incident reports

4   and the keep away, are those all considered by

5   classifications?

6       A.   Yes.

7       Q.   Classifications is expected to go through each

8   of those tabs and review the information in them before

9   determining what the appropriate housing is for an

10  individual?

11      A.   They may not go through all tabs, but they

12  would go through the appropriate tabs that relate to

13  classifying inmates.

14      Q.   Which ones would those be?

15      A.   I -- I couldn't tell you off the top of my

16  head, but there's no sense for them to go into inmate

17  property or -- or inmate worker because they're not an

18  inmate worker yet.  The property has nothing to do with

19  inmate classification.  So there are tabs that they

20  don't look at.

21      Q.   So you're here to testify largely to topics

22  regarding intake booking and classifications, and you

23  can't tell me what information within the jail

24  management system classifications is expected to review

25  before classifying an inmate?



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

1          MR. BOGAN:  Object to form.

2          THE WITNESS:  In particular, no.  I can't tell

3     you all the tabs that they look -- I know they look

4     at the incident reports.  I know they look at the

5     previous classifications level, but besides that, I

6     mean, I don't know exactly what tabs.  Like I said,

7     there's -- there's probably 50 tabs that they can

8     look at.

9          BY MS. HARTON:

10    Q.   When it comes to people accused of sexually-

11 based offenses, how is their risk of violent behavior

12 assessed during the booking process?

13         MR. BOGAN:  Object to form.

14         THE WITNESS:  Based on their interactions with

15    the deputy, based on their charges, any past -- any

16    known past behavior of the inmate, and any -- any

17    information that's relayed.

18         BY MS. HARTON:

19    Q.   Is that the same for classifications?

20    A.   Yes.

21    Q.   Okay.

22    A.   In addition to everything else that they

23 utilize --

24    Q.   Is it fair to --

25    A.   -- or take into account.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Christopher Peterson Brian 09-13-2024          Page 72

```
 1       Q.   What else would they utilize or take into

 2   account?

 3            MR. BOGAN:  Object to form.  Go ahead.

 4            THE WITNESS:  The past incident reports, like

 5       we spoke about, what they go through when they do

 6       the primary classifications.

 7            BY MS. HARTON:

 8       Q.   But people who are accused of sexually based

 9   crimes, if they are believed to be -- they're believed

10   to have a propensity for violence, for example, if --

11   well, strike that.  If someone was in the jail because

12   they are accused of a sexually-based crime and

13   kidnapping and assault, would you consider, in

14   classifications and booking, that that person has -- is

15   a risk for violence in the jail?

16            MR. BOGAN:  Object to form.

17            THE WITNESS:  They would be housed as a sex

18       offender with the sex offender inmates.

19            BY MS. HARTON:

20       Q.   Okay.  Even if -- even if there are other

21   associated charges with their sex offense that show a

22   heightened level of violence?

23            MR. BOGAN:  Object to form.

24            THE WITNESS:  Yes.

25            BY MS. HARTON:
```

MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   And that's true that if an individual is

 2   housed or is brought into the jail and they are accused

 3   of lewd conduct, that is a sexually-based offense that

 4   they would be put into Gulf Alpha for; is that fair?

 5            MR. BOGAN:  Object to form.

 6            BY MS. HARTON:

 7        Q.   Or any of the other --

 8        A.   No.

 9        Q.   -- sexually -- the other sexually-based

10   sections?

11        A.   I mean, it depends.  Like I said before, it

12   depends on the -- the details of the incident.  They may

13   end up in confinement.

14        Q.   Why?

15        A.   Right?  If -- if they -- if they -- if they

16   come to us or we've known of them previously raping

17   another inmate, even though they may have a sexual

18   offense, they may not go in the general population.  We

19   may put them in -- in confinement, or they may be

20   suicidal.  They may have mental health issues.  They may

21   be escapers, security risk.  So there's other factors to

22   take in account besides just their -- their charges.

23        Q.   But the fact that there are other seriously

24   violent charges associated with an inmate who is also --

25   has a sexually-based crime, that would not necessarily
```

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   change the fact they would be housed in Gulf Alpha as a

2   sexual offender, right?

3          MR. BOGAN:  Form.

4          THE WITNESS:  I mean, it -- no.  It may not.

5      Again, it depends on the situation of the -- the

6      details of the incident.

7          BY MS. HARTON:

8      Q.   The details of --

9      A.   We may decide -- anyone we decide -- we may

10  decide to put them in confinement, depending on the

11  circumstances of the incident.

12     Q.   The circumstances of the underlying crime?

13     A.   Potentially, yes.

14     Q.   Okay.  What kind of circumstances associated

15  with a sexually-based crime might require a booking

16  officer to place someone in confinement as opposed to in

17  general population with the other people accused of

18  sexually-based crimes?

19     A.   Well, if there was a -- a horrendous murders,

20  multiple murders or -- or -- involved, or if they -- if

21  someone -- okay.  They -- they killed their family.

22  Okay.  Well, there's something not right with this guy.

23  We don't want him in general population with everyone

24  else.  We may put him in confinement until the primary

25  classifications can be completed.

MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   If they -- if they rape someone as part of

2  their underlying crime, would they be expected to be

3  placed in one of the general population sexual offense

4  sections?

5    A.   Yes.

6    Q.   If they raped someone while armed with a

7  weapon, would they be expected to be classified in one

8  of the general population sexual offense sections?

9         MR. BOGAN:  Form.  Go ahead.

10        THE WITNESS:  Yes, they could be.

11         BY MS. HARTON:

12    Q.   If they raped someone with a weapon that they

13  had just kidnapped, would they be expected to be placed

14  in the general population sexual offense section?

15        MR. BOGAN:  Object to form.

16        THE WITNESS:  Yes, they could be.

17         BY MS. HARTON:

18    Q.   Do you know the difference between a lewd

19  battery charge and a sexual battery charge?

20        MR. BOGAN:  Object to form.

21        THE WITNESS:  The details?  No.

22         BY MS. HARTON:

23    Q.   Do you have any understanding of the

24  difference between those two charges?

25        MR. BOGAN:  Object to form.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1           THE WITNESS:  Do I understand the defense?  Oh,

 2      difference.  No.  Could you explain?

 3           BY MS. HARTON:

 4      Q.   No, I'm asking you.  Whether someone has

 5  committed a lewd battery versus a sexual battery would

 6  not necessarily go into your -- or the classification

 7  officer's assessment of where that person should be

 8  classified; is that fair?

 9      A.   That's fair.

10           MR. BOGAN:  Object to form..  Go ahead.

11           THE WITNESS:  That's fair.  They're -- they're

12      classified as a high risk inmate with sexual -- with

13      sexual offenses.

14           BY MS. HARTON:

15      Q.   And so they would be put into the general

16  population sexual offense section?

17      A.   Yep.  The high risk sexual offense inmate

18  population.

19      Q.   Is there a low risk sexual offense population?

20      A.   No, ma'am.  All sexual offenders are

21  considered high risk.

22      Q.   And they're all housed together, right?

23      A.   For the most part.

24      Q.   In a -- in a dorm-style area with 80 other

25  sexual offenders, right?
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1              MR. BOGAN:  Object to form.

 2              THE WITNESS:  They could be.

 3               BY MS. HARTON:

 4       Q.   Unless they're put in administrative

 5   confinement, right?

 6              MR. BOGAN:  Object to form.

 7              THE WITNESS:  That's correct, or if they're --

 8       if they're in a different pod within the facility.

 9               BY MS. HARTON:

10       Q.   What other pod in the facility would a high

11   risk sexual offender be put in?

12       A.   Well, referring back to the October 28, 2021,

13   classifications plan, they were in Foxtrot Pod Alpha

14   section, which is, again, an open dorm -- an open dorm

15   setting.  Whereas the -- the documents you presented

16   here earlier today showed -- I believe it was Delta Pod

17   -- echo section of Foxtrot section.  Excuse me.  Those

18   are sections that have cells within them, two-man cells,

19   and then -- and then bunks on the day room room also.

20       Q.   Based on your housing plan that you have in

21   front of you, in November of 2021, all high risk sexual

22   offenders were placed in dorm-style sections, correct?

23       A.   Yes, that's correct.

24       Q.   Okay.  And they were -- in those dorm style

25   sections, there are typically about 80 inmates housed in
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    the same section, correct?

2        A.   No.

3        Q.   Explain.

4        A.   In Foxtrot Alpha section, you can only house

5    about -- I -- I believe it's 72, 72 or 74 inmates per

6    section, I believe.

7        Q.   But in Gulf Alpha, there's about 80 sexual

8    offender -- people who are accused of sexual offenses.

9    Strike that.  Let me just use the nomenclature that

10   you've used.  In Gulf Alpha in November of 2021, you

11   would expect there to have been approximately 80 high

12   risk sexual offense inmates housed in Gulf Alpha?

13          MR. BOGAN:  Object to form.  Go ahead.

14          THE WITNESS:  Yes.

15           BY MS. HARTON:

16       Q.   Okay.  What's the protocol for communicating

17   with arresting officers regarding an individual's entry

18   into custody?

19       A.   When an inmate comes in, every inmate that

20   comes into the facility, the arresting officer,

21   transporting officer has to fill out an inmate

22   activation form with the pertinent information on there.

23   And there's a series of questions on there that the --

24   that the arresting or transporting officer has to

25   answer, and then any communication that may happen

MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

 1  between the arresting officer and the -- and the booking

 2  officer.

 3       Q.   Does the inmate activation form detail

 4  specifics about the underlying offense of the inmate who

 5  is being brought in?

 6       A.   Yes.  Their most serious -- it asks for their

 7  most serious charge.

 8       Q.   Does it ask for like the underlying facts

 9  associated with the charge?  Like, for example, the fact

10  that they had a weapon on them during a sexual assault

11  or anything like that?

12          MR. BOGAN:  Form.  Go ahead.

13          THE WITNESS:  It's -- it's just the basics,

14      asking for the charge.  If the officer puts it

15      there, if it's a sex battery with a weapon and they

16      put it on there, then it's -- then that's when it's

17      relayed.  They may just put sex battery and -- and

18      leave off that.  We wouldn't get that -- all that

19      detail until we get the arrest affidavit.

20          BY MS. HARTON:

21       Q.   Okay.  The arrest affidavit has sort of the

22  facts of the underlying crime?

23       A.   That's correct.

24       Q.   Okay.  Thank you.  What's -- so a lot of times

25  with these jails and prisons, there is a distinction



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

132201 Peterson Brian 09-13-2024          Page 80

1   amongst the inmates between minimum security, medium

2   security, and maximum security.  Does that sound

3   familiar to you?

4        A.   Yes, ma'am.

5        Q.   Okay.  Is there any sort of distinction like

6   that at the Marion County Jail?

7        A.   Yes.

8        Q.   Okay.  Do you have min, med, and max inmates?

9        A.   Yes.

10       Q.   Okay.

11       A.   Or we -- you know, we could call them high --

12   high risk inmates, medium -- medium level, and then low

13   -- low level.

14       Q.   Okay.  So you would -- you would consider the

15   high risk inmates to be maximum security; is that fair?

16       A.   Repeat that again for me?

17       Q.   So a high risk inmate would be a maximum

18   security inmate?

19       A.   No, not necessarily.

20       Q.   Okay.  Explain that.

21       A.   So our high risk are any inmates, again, that

22   have sexual offenses or violent felonies.  A maximum

23   risk inmate could be those that are a security risk, a

24   -- a risk to security for the facility, escape risk.  So

25   it's almost like the maximum that -- is a subsection of

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 | a high risk inmate.

2 |     Q.   Okay.  So some high risk inmates are maximum

3 | security inmates, but not all high risk inmates are

4 | maximum security inmates?

5 |     A.   Correct.

6 |     Q.   Okay.  What about in Gulf Alpha?  Is that a

7 | maximum security section, or is it only high risk?

8 |     A.   In Gulf Pod, Alpha section is the sex

9 | offenders, and Bravo -- and Bravo and Charlie section is

10 | the mediums, and then the Delta section was the pre-

11 | class.

12 |     Q.   Okay.  And based on your understanding of the

13 | term maximum security, that does not necessarily apply

14 | to Gulf Alpha?

15 |     A.   That's correct.

16 |     Q.   Okay.  What -- with maximum security inmates,

17 | what measures are taken as part of the -- that maximum

18 | security protocol?

19 |        MR. BOGAN:  Object to form.  Go ahead.

20 |        THE WITNESS:  I -- I guess I don't understand

21 |    the -- what's -- what do we do with the maximum

22 |    security inmates?  Is that --

23 |        BY MS. HARTON:

24 |     Q.   Yeah.  Like, what's different about how you

25 | treat the maximum security inmates?

**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

13230T Petersen Brandt 09-13-2024                      Page 82

1       A.   Okay.  So the maximum security inmates are

2   kept in what we call Alpha Pod Echo section.  They're

3   one-man cells.  There's an officer stationed in that

4   section at all times.  The inmate does not come out of

5   the cell unless they're handcuffed.  Their cell gets

6   searched daily, twice by each shift.  So twice a day.

7   They get strip-searched every day.  The --  risk [sic]

8   searched every night -- strip searched.  It's a just --

9   a higher security area.  There's a cage that they get

10  secured in when they need to use the phone or -- or be

11  on the kiosk for a visitation.

12      Q.   And what about high risk versus medium risk

13  inmates?  Is there any difference between what

14  supervision or security measures are taken between those

15  two groups of inmates?

16      A.   The high -- the high risk are violent felons

17  are red and white.  They're housed in sections together.

18  So they're just -- all those inmates are just housed

19  together, and -- and they're managed just like a general

20  population area.  Of -- of course, with more attention,

21  with -- that they're violent inmates, they require more

22  observation just to help maintain security.

23      Q.   Yeah.  So that's kind of what I'm getting at.

24  They require more observation.  So what policies and

25  procedures are in place to implement more observation



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1  for high risk inmates?

2      A.   I mean, they're just given more attention.

3  They're -- you have a little more -- go ahead.  You had

4  a question?

5      Q.   Nope.  Go ahead.

6      A.   Oh.  Yes, they -- they just require a little

7  more attention to when you're interacting with them, a

8  little more precaution when you're interacting with

9  them.  You always want to make sure that you're not

10  doing anything -- that you always have backup in there.

11     Q.   I see.

12     A.   The detention assistants are kind of watching

13  over that section a little more, just because of their

14  past violent tendencies.

15     Q.   Is there -- is there a written policy anywhere

16  in the Marion County Jail policies that explains that,

17  the little more attention component of what you're

18  saying?

19     A.   I believe so.

20     Q.   Okay.  Do you know which one it is?

21     A.   No, ma'am.

22     Q.   And I'm looking for specifics on what -- on --

23  you know, on a day to day basis, what more attention

24  looks like for these high risk inmates.  Are there more

25  -- are there more head counts?  Are there more checks?


**MILESTONE** | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   Are there -- specifically, what is the difference?

2           MR. BOGAN:  Object to form.

3           THE WITNESS:  No, there's no more additional

4       head counts or -- or checks, but you -- you know,

5       you --

6           BY MS. HARTON:

7       Q.   Go ahead.

8       A.   Go ahead.

9       Q.   Go ahead.

10      A.   No, I'm just saying you -- as a -- as a

11  detention assistant, you may -- you just pay more

12  attention to that -- to that population of inmates.

13      Q.   Yeah.  I don't know what that means on the

14  ground.  Like, what does that actually look like for a

15  detention deputy?

16          MR. BOGAN:  Object to form.

17          THE WITNESS:  You're just -- you're just more

18      aware of their -- of their -- of their charges and

19      their capability.

20          BY MS. HARTON:

21      Q.   You said there's no more additional checks.

22  Do you understand what I -- what I mean, by -- what do

23  you understand the word check to mean?

24      A.   A documented check.

25      Q.   Where the officer is physically walking into

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1  the pod or the section and checking on the wellbeing of

 2  each inmate?

 3       A.   Correct.

 4       Q.   Okay.  So there's the same amount of checks

 5  occur in high risk versus medium risk; is that fair?

 6       A.   Yes.

 7       Q.   Do the same amount of checks --

 8       A.   In the general population areas.

 9       Q.   Okay.  In the general population areas, do the

10  same amount of checks occur in high risk and low risk

11  areas?

12       A.   Yes.

13       Q.   In Gulf Alpha, what kind of -- what is the

14  frequency of these physical checks that are expected of

15  the detention deputies to conduct every shift?

16       A.   After lockdown, they have their -- they have

17  to do documented one -- one-hour checks.

18       Q.   And what does that mean?

19       A.   That every hour, at least within an hour, they

20  have to go walk through that section and check on the

21  inmates.

22       Q.   They have to physically walk through?

23       A.   Yes.

24       Q.   Okay.  But that's only during the lockdown

25  period?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Peterson, Brian 09-13-2024                                    Page 86

```
 1              MR. BOGAN:  Object to form.

 2              THE WITNESS:  That's only within the lockdown

 3      period and -- and as long as there's another -- as

 4      long as their partner or another staff member is in

 5      the pod at the same time with them.

 6              BY MS. HARTON:

 7       Q.   If there is not another partner in the pod

 8  with them, is that an excuse for them to not conduct

 9  their hourly checks?

10              MR. BOGAN:  Form.

11              THE WITNESS:  They may open the door, stick

12      their head in the section, but they do not walk

13      through the section with the inmates if they're --

14      if they're there in the pod by themselves.

15              BY MS. HARTON:

16       Q.   So during a -- so to fulfill the requirements

17  of these one-hour checks, an officer may just poke his

18  head into the section instead of actually walking the

19  floor; is that fair?

20       A.   Well, that's -- you know, that's on a rare

21  occasion.  If -- if there's -- for some reason, they're

22  not -- they're home alone, they're by themselves,

23  they'll -- they could document, check delayed because of

24  whatever.  If there's an emergency in the jail and their

25  partner has to respond and they -- if they call -- if
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  they're home alone, sometimes they'll call a supervisor

2  and say, hey, can you come down here and help me with a

3  check?  But if that supervisor is tied up also an

4  emergency and they can't respond, then they may poke

5  their head into that -- into that section, take a quick

6  look around, and then as soon as they're -- as soon as

7  they get someone else in -- in there, then they would do

8  a -- a security check, and then document that in their

9  daily logs.

10     Q.   So there's no discipline for a detention

11  deputy who fulfills his one-hour check after lockdown by

12  poking his head in to observe the inmates rather than

13  walking the floor?

14          MR. BOGAN:  Form.

15          THE WITNESS:  No, because like I said, it may

16      be on the circumstance of -- of what's given at that

17      time that they -- you know, they may have -- that

18      may be the best they could do at that time until

19      they get someone there to assist them with the

20      check.

21          BY MS. HARTON:

22     Q.   Are there specific written policies and

23  procedures governing the supervision and monitoring

24  inmates in G Pod?

25     A.   In specific G Pod or population --



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

3:23cv661 Petersen Brian 03-13-2024        Page 88

```
 1        Q.    G Pod.

 2        A.    There's the post orders.

 3        Q.    Okay.  Is that the only policy and procedure

 4   that is specific to Gulf Pod?

 5            MR. BOGAN:  Object to form.

 6            THE WITNESS:  Yes, to the best of my knowledge.

 7        I don't think there's anything else that would be

 8        inclusive to G Pod.

 9              BY MS. HARTON:

10        Q.    How often do those post orders change?

11        A.    I don't know how often they change.  They're

12   reviewed annually.

13        Q.    Okay.  It's -- I guess what I'm getting at,

14   it's not, you know, every month or so, you know, you're

15   updating the policy to address -- to address new things

16   happening in the pod or anything like that?

17            MR. BOGAN:  Object to form.

18            THE WITNESS:  No, they're -- they're at least

19        reviewed annually.  If there's something that comes

20        up in -- in a procedure that we're changing in G Pod

21        or the jail altogether, then yeah, the -- the

22        policies may be revised prior to that annual review.

23        So as needed, they could be changed and revised.

24              BY MS. HARTON:

25        Q.    So I understand the layout of G Pod to sort of
```

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Captel Petersen Brian 09-13-2024          Page 89

1  be, you know, in the middle, there is the rover area and

2  then coming out from there, there are four sections; is

3  that fair?

4      A.   There's -- yeah, there's four sections.

5  There's two rec yards.  There's a classroom.  There's a

6  nurse's office.  There's a -- another classroom.  There's

7  a hallway.

8      Q.   And how many head counts are -- happen per

9  shift in Gulf Pod?

10     A.   It depends.

11     Q.   What does it depend on?

12     A.   On the shift that's -- that's working.

13     Q.   Okay.  So explain that to me.

14     A.   Day shift will do one head count in the

15 morning when they come on duty.  Night shift will do a

16 head count when they come on duty and then they will do

17 a lockdown head count at around 10:00 when they -- when

18 the inmates go into lockdown.  What we consider

19 lockdown.

20     Q.   Are there -- are there any like random head

21 counts where the detention deputy will surprise the

22 inmates by performing a head count?

23     A.   There could be.

24     Q.   Okay.  Are they expected to?

25     A.   No, not unless it's requested by a supervisor.



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

1      Q.   When might a supervisor request an additional

2   head count?

3      A.   Usually if there's a -- it could be really

4   anything.  If -- if -- if the head count is off for that

5   section or that pod I should say.  You know, because the

6   head counts get called into booking.  So if -- if the

7   numbers don't match.  If an inmate had gotten moved to

8   an infirmary or another area and it wasn't just moved in

9   the computer then they may ask for another -- another

10  head count.  If there's any kind of -- I mean, we've

11  done one where there's a report of a -- of someone

12  walking around the perimeter of the jail.  You know, it

13  wasn't an inmate or anything, but that's a quick way to

14  -- to do a head count to make sure all your people are

15  in the jail.  So it could be for security reasons, I

16  should say.

17     Q.   How often -- so, strike that.  There's a

18  sergeant on -- assigned to multiple pods per shift,

19  right?

20     A.   Usually.

21     Q.   Yeah.

22     A.   I mean, that's not always the case.

23     Q.   Okay.  And why is that not always the case,

24  explain that to me?

25     A.   Because there may be a sergeant that's



**MILESTONE** | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1   assigned solely to classifica- -- I mean, to booking on

 2   a -- on a particular shift.  So they don't have any

 3   pods.  They don't have the responsibility of pods.  But

 4   there is a - - there is a sergeant assigned to each pod.

 5          MS. HARTON:  I'm just going to make this easier

 6      and show you Exhibit 32.

 7          (EXHIBIT 32 MARKED FOR IDENTIFICATION)

 8          BY MS. HARTON:

 9      Q.   You see this document?

10      A.   Yes.

11      Q.   I know it's small type I can zoom in for you.

12   So this -- oh, or maybe I can't.  It's -- okay.  There

13   we go.  Okay.  You see that here Sergeant Dukes -- so,

14   first of all, can you just identify what this document

15   looks like to you?

16      A.   It's our post assignment.

17      Q.   Okay.  And this was the post assignment for

18   November 6, 2021, Shift A2, right?

19      A.   That appears to be correct.

20      Q.   So this is essentially the assignments for the

21   night shift that goes from November 6, 2021, into the

22   early morning of November 7, 2021?

23      A.   I would assume so, yes.

24      Q.   Okay.  And here it says Sector 1 is assigned

25   to Sergeant Dukes, correct?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

32201 Peterson Brian 09-13-2024        Page 92

```
 1        A.   That's correct.

 2        Q.   And it shows that he's assigned to G Dorm, H

 3   Dorm, Medical Dorm, Infirmary, Med Ops, Video

 4   Visitation, Clinic, and Staff Dining, correct?

 5        A.   That's correct.

 6        Q.   Okay.  So as the sergeant over all of those

 7   different housing sections or housing areas, how often

 8   is he expected by Marion County to conduct a physical

 9   check into those -- each of those areas?

10        A.   Each -- he's expected to visit each one of

11   those pods at least once throughout his -- throughout

12   his shift.

13        Q.   Are there any roles or responsibilities that

14   detention deputies have when supervising and monitoring

15   these sex offense sections as opposed to other sections?

16        A.   Do they have any additional responsibilities?

17   No.

18        Q.   They surveil them as they would any other

19   section in G Pod, right?

20        A.   That's correct.

21        Q.   Do they receive any -- do officers receive any

22   training regarding specifically how to supervise and

23   monitor inmates in a sexual offense section as opposed

24   to another general population section?

25        A.   To the best of my knowledge, no.  But all
```



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

Peterson Brian 09-13-2021                                    Page 93

```
 1  training is coordinated through the training division

 2  here at the jail, or at the sheriff's office.

 3       Q.   There are surveillance cameras in Gulf Alpha,

 4  correct?

 5       A.   Correct.

 6       Q.   How many cameras are there in Gulf Alpha?

 7       A.   As of now or as of the date of November --

 8       Q.   November --

 9       A.   Whatever --

10       Q.   November 2021?

11       A.   To the -- to the best of my knowledge, I think

12  there was two in there at the time.  And they're

13  different quality.  We've -- since then we've been

14  upgrading our camera system.  As the technology has

15  advanced we've been able to go to digital cameras, so --

16       Q.   Sorry, you said two at the time?

17       A.   I believe so.  I believe.  I -- I know now I

18  think it's there's three or four in there.  I -- I

19  believe back in --

20       Q.   At the time of the -- of November 2021, did

21  those cameras give a full view of the section or where

22  the parts that the cameras could not see?

23            MR. BOGAN:  Object to form.

24            THE WITNESS:  There's parts that it cannot see.

25             BY MS. HARTON:
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   And where exactly were those cameras fixed
 2   onto the section?
 3        A.   That I don't know.
 4        Q.   Is there anything about the layout of the Gulf
 5   Pod and Gulf Alpha that affects the rovers' ability to
 6   surveil inmates from the rover station?
 7             MR. BOGAN:  Object to form.
 8             THE WITNESS:  Without the utilization of
 9        cameras?  You're talking about just visually looking
10        into the section?
11             BY MS. HARTON:
12        Q.   Yeah, visually looking into the section?
13        A.   Yes, there's -- there's multiple rows of bunks
14   in -- in each section down there in -- in Gulf Pod.
15        Q.   And those bunks pretty significantly obstruct
16   views into certain parts of the section; is that fair?
17             MR. BOGAN:  Form.
18             THE WITNESS:  They could.
19             BY MS. HARTON:
20        Q.   And that's even more true at night when the
21   lights go down, correct?
22             MR. BOGAN:  Form.
23             THE WITNESS:  When the lights are dimmed?
24        That's -- I don't know.  That would be an opinion.
25             BY MS. HARTON:
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1       Q.   That would be an opinion, you said?

2       A.   Yes.

3       Q.   I mean, I'm asking your opinion?

4            MR. BOGAN:  Object to form.

5            THE WITNESS:  I -- I would have to go down

6       there and look.  Sometimes it's -- to be honest with

7       you. it's easier to see in a section when the lights

8       are off than when the lights are on.

9            BY MS. HARTON:

10      Q.   Why is that?

11      A.   It just depends on -- because there's --

12   depending on the windows or because you can see -- it's

13   easier to pick up movement.  I -- there's just different

14   things.  But in -- in Gulf Pod it would probably be

15   harder to see when the lights are dimmed.

16      Q.   Are there any challenges that you believe are

17   associated with monitoring inmates in a dorm-style pod?

18           MR. BOGAN:  Form.

19           THE WITNESS:  Is there any challenges --

20           BY MS. HARTON:

21      Q.   Yeah?

22      A.   -- with monitoring?

23      Q.   Yeah?

24      A.   No, not -- not in particular.  I mean, every -

25   - every situation has its pros and cons.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Q.   Yeah, what are the -- what are the cons of the

dorm-style pod?

MR. BOGAN:  Form.  Go ahead.

THE WITNESS:  The cons in -- in monitoring is

that they're all out in the day room.  They're not -

- you don't have the option to secure them in a

cell.

BY MS. HARTON:

Q.   Anything else?

A.   I mean, there's -- you've got -- like I said

before the -- the only -- maybe the obstruction of the

multiple rows of -- of bunks.

MR. BOGAN:  Is there a point where we can take

a comfort break soon or --

MS. HARTON:  I'm almost done.  So I think it

would be --

MR. BOGAN:  Oh, okay.

MS. HARTON:  -- a good idea for me to take a

break, and go through my outline, and just see what

else I have left.  And then I think I'm almost done.

MR. BOGAN:  Okay.  Well, then let's do a

comfort break and stuff like that.

MS. HARTON:  Yeah.  That would probably be good

for Jessica.  Sorry, Jessica --

THE REPORTER:  It's okay.  One second.  I'll

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    take us off record.

2              (OFF THE RECORD)

3              THE REPORTER:  Okay.  We're back on record.

4              MS. HARTON:  I am going to show you Exhibit 24

5       -- or, no.  No, that's even close to the number.

6       51.

7              (EXHIBIT 51 MARKED FOR IDENTIFICATION)

8              BY MS. HARTON:

9       Q.    Can you see this document?

10      A.    Yes.

11      Q.    Okay.  What -- do you recognize this document?

12      A.    A post order for Gulf Pod.

13      Q.    So these are sort of the procedures that

14   govern how supervisor -- or not supervisors, detention

15   deputies should operate and carry out their duties in

16   Gulf Pod; is that fair?

17      A.    That's fair.

18      Q.    The guidelines set out in these post orders

19   are mandatory, correct?

20             MR. BOGAN:  Object to form.

21             BY MS. HARTON:

22      Q.    I can clarify if you need me to?

23      A.    Are they mandatory?

24      Q.    Let me -- let me clarify.  Detention deputies

25   don't have discretion to disregard or deviate from the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          Toll Free **855-MYDEPOS**

1  expectations laid out in this order, correct?

2      A.   Well, they should follow that -- the post

3  orders.

4      Q.   And they're required to as part of their job,

5  right?

6      A.   Right, unless there's a -- unless there's

7  something that comes up that prevents them from doing

8  so --

9      Q.   What could come up to prevent them from doing

10 so?

11         MR. BOGAN:  Object to form.

12         THE WITNESS:  A number of -- a number of

13     reasons.

14         BY MS. HARTON:

15     Q.   Like what?

16     A.   Well, an emergency in the facility.  If it --

17 I'm -- I haven't read that whole document completely.

18 But if it says that they need to do a -- a -- a -- a

19 lockdown head count at -- at 10:00 or a security check

20 every hour and they're not able to, like we spoke about

21 before, that would be a circumstance that they would not

22 be able to follow that post order.

23     Q.   But unless there is some sort of extenuating

24 circumstance detention deputies are required to follow

25 the direction of this post order, fair?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Peterson, Brian   09-13-2024   Page 99

1      A.    Yes.

2      Q.    Okay.  On Page 1 is under Description it says,

3  "The Gulf Pod post will be defined as any area in the

4  pod and surrounding area occupied by inmates.  The post

5  is manned 24 hours a day, seven days a week."  What does

6  the post is manned mean?

7      A.    That there's someone working that pod 24/7, 24

8  hours a day, seven days a week.

9      Q.    There's a human being in the pod who is

10 employed by the Marion County Sheriff's Office, correct?

11     A.    That's correct.

12     Q.    Going down to D it says, "Maintain the

13 security of the facility at all times."  Can you explain

14 sort of what your understanding, more specifically, that

15 means?

16     A.    My interpretation would be the -- the

17 security. Make sure that doors are secured.  Make sure

18 no one's trying to escape.

19     Q.    Okay.  And then same question as to Number 2,

20 "Maintain vigilance of all inmates assigned to the

21 unit"?

22     A.    Keeping an eye on what's going on in a pod.

23     Q.    So the detention deputies are expected to keep

24 an eye on what's going on in their pod for their entire

25 shift, fair?



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

542307 Peterson Brian 10-13-2024                Page 100

1        A.   They're expected to maintain the vigilance of

2   the inmates assigned to the unit.

3        Q.   And that means keeping an eye on what's going

4   on in the pod, right?

5             MR. BOGAN:  Object to form.

6             THE WITNESS:  Yes.

7             BY MS. HARTON:

8        Q.   And --

9        A.   May not be at all times but --

10       Q.   At what times are they not expected to keep an

11  eye on what's going on in the pod?

12       A.   Well, there's no way that you can keep --

13  maintain vigilance of all inmates assigned to the unit.

14  If you're responding to an emergency in Gulf Pod Alpha

15  section obviously you can't tell what's going on in the

16  three remaining sections, right?

17       Q.   And that's especially true considering there's

18  upwards of 200 inmates in Gulf Pod and only two

19  detention deputies typically assigned to Gulf Pod; is

20  that true?

21            MR. BOGAN:  Form.  Go ahead.

22            THE WITNESS:  I don't -- I don't -- I don't

23       understand that question.  What's -- what's --

24            BY MS. HARTON:

25       Q.   Yeah.  I mean, it's especially difficult -- I

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

542901 Peterson Brian 10-18-2024         Page 100

```
 1  mean, it -- would you agree with me that it -- it's
 2  difficult for two detention deputies to keep an eye on
 3  and maintain vigilance of all inmates in their unit when
 4  there are more than 200 inmates in their unit and only
 5  two detention deputies?
 6          MR. BOGAN:  Form.
 7          THE WITNESS:  I mean, that statement could be
 8      said for more than two inmates with two deputies.
 9          BY MS. HARTON:
10      Q.   Okay.  So on Page 5, Number 24, "Pod detention
11  deputies will continuously monitor the inmate workers'
12  activities and whereabouts as well as supervise him/her
13  as cleaning materials are placed into or taken out of
14  sections."  Do you see that?
15      A.   Yes, ma'am.
16      Q.   Okay.  Inmate workers are not housed in Gulf
17  Pod, right?
18      A.   No, ma'am.
19      Q.   But they come into Gulf Pod to perform various
20  functions for the pod, right?
21      A.   Yes, that's correct.
22      Q.   How often per shift are these inmate workers
23  coming into the section or into the pod?
24      A.    Into the pod?  I don't know exactly.  I -- I
25  want to -- they're pretty much there -- there's an
```

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  inmate worker there all the time.  They swap out.  They

2  have shifts that they work.

3      Q.   Okay.  So the detention deputies, in addition

4  to monitoring the individuals in the pod, they're also

5  pretty much the entire shift also having to monitor at

6  least one inmate worker, right?

7      A.   Yes, unless they assign that inmate worker to

8  -- they have -- the inmate workers have a little area

9  with chairs and their equipment that they could be

10 seated at.

11     Q.   The Number 25, it says, "Security checks will

12 be accomplished every hour between the hours of 22:00

13 and 6:00.  These checks will be logged and maintained by

14 the pod officer in the computer's daily activity log."

15 Do you see that?

16     A.   I do.

17     Q.   Those security checks those are the checks

18 that we were discussing earlier?

19     A.   Yes, ma'am.  That happen after lockdown.  The

20 ones that are done with -- within every hour.  With the

21 -- with the exception of any kind of emergency or

22 they're -- or they don't have a partner there in the pod

23 with them.

24     Q.   What is the purpose of the security check?  I

25 know that's a very basic question.  But just give me a



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

542901 Peterson Bryan   9-13-2024   Page 103

```
 1   general understanding of the purpose of why officers are
 2   required to conduct these security checks?
 3        A.   Because the inmates are confined to -- they're
 4   -- they're supposed to be confined to their beds.  To
 5   make sure that the -- again, that the security is
 6   maintained within the pod and within each section.  So
 7   it's for the wellbeing of the inmates and to maintain
 8   security.
 9        Q.   So those -- you'd agree that those checks are
10   important to maintain the wellbeing and security of the
11   inmates?
12        A.   That's correct.  And of the facility.
13        Q.   What was that last part you said?
14        A.   And of the facility.
15        Q.   Have you ever heard of something in the Marion
16   County Jail called Friday Night Fight Nights?
17        A.   No.
18             MS. HARTON:  That's all I have.
19             MR. BOGAN:  You said that's all your questions?
20             MS. HARTON:  Yes.
21             MR. BOGAN:  Okay.  Yeah, he'll reserve reading
22        and signing.  And I have no questions.
23             THE REPORTER:  Okay.  Did you want to order
24        today, Ms. Harton?
25             MS. HARTON:  Please.  Thank you.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1        THE REPORTER:  Regular turnaround?

2        MS. HARTON:  That's fine.

3        THE REPORTER:  And electronic's fine?

4        MS. HARTON:  That's fine.

5        THE REPORTER:  Okay.  Did you want a copy, Mr.

6    Bogan?

7        MR. BOGAN:  Yeah.  So you can e-mail me my copy

8    and if you could send me a PDF?  Also, then I will

9    arrange to have him read and sign after I get my

10   copy of the transcript.

11       THE REPORTER:  Yes, sir.  Okay.  One second.

12   I'll take us off record.  Okay.  We're off record.

13          (DEPOSITION CONCLUDED AT 12:56 P.M.ET)

14

15

16

17

18

19

20

21

22

23

24

25

 MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

342901 Peterson Brian 09-18-2024    Page 105

```
 1                        CERTIFICATE OF OATH

 2

 3   STATE OF FLORIDA

 4   COUNTY OF ORANGE

 5

 6        I, the undersigned, certify that the witness in the

 7   foregoing transcript personally appeared before me and

 8   was duly sworn.

 9

10   Identification:  Produced Identification

11

12

13

14

15            _____

16            Jessica Ethridge

17            Court Reporter, Notary Public

18            State of Florida

19            Commission Expires: 09/21/2026

20            Commission Number:  #HH 314140

21

22

23

24

25
```



**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

542901 Peterson Brian 09-13-2024    Page 106

```
 1                    C E R T I F I C A T E

 2

 3   STATE OF FLORIDA)

 4   COUNTY OF ORANGE)

 5

 6        I, Jessica Ethridge, Court Reporter and Notary

 7   Public for the State of Florida at Large, do hereby

 8   certify that I was authorized to and did report the

 9   foregoing proceeding, and that said transcript is a true

10   record of the said proceeding.

11

12        I FURTHER CERTIFY that I am not of counsel for,

13   related to, or employed by any of the parties or

14   attorneys involved herein, nor am I financially

15   interested in said action.

16

17   Submitted on: October 1, 2024.

18

19

20

21

22        _____

23        Jessica Ethridge

24        Court Reporter, Notary Public

25
```



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

54290T Peterson Brian 09-13-2024                    Page 108

                                    ERRATA


PAGE      LINE                          CHANGE      REASON















I have read the entire transcript of my deposition taken

in the captioned matter or the same has been read to

me.I request that the following changes be entered upon

the record for the reasons indicated. I have signed my

name to the Errata Sheet and authorize you to attach the

changes to the original transcript.



_____        _____
Date                            NAME



**MILESTONE** | **REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

**M I L E S T O N E I R E P O R T I N G C O M P A N Y**

TOMORROW'S TECHNOLOGY TODAY

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

**October 01, 2024**

**Bruce Bogan, Esquire**
Hilyard, Bogan & Palmer, P.A.
105 East Robinson Street
Suite 201
Orlando, FL 32801

RE:    Deposition of **Captain Brian Peterson (Corporate Designee) (RC+)** taken on **9/18/2024**
       Krysti Merchant et. al. v. Billy Woods, Sheriff of Marion County et. al.

Dear Mr. **Bogan**,

### IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN
It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter,
as considered reasonable under Federal Rules*.

 X     **Attorney - Copy of Transcript Enclosed:**  Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

___     **Attorney - No Copy Ordered:**  Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

___     **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

___     **Deponent:**   At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

___     The attached executed copies of the Errata Sheet(s) are sent to you for your files.  If you have any questions, please call our offices.

Thank you for your attention to this matter.

No. 342981

cc:


Waiver:
I, Captain Brian Peterson**,** hereby waive the reading and signing of my deposition transcript.

_____          _____
Deponent Signature                                                    Date

*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)

400 North Ashley Drive, Suite 2600                    315 East Robinson Street, Suite 510                    4651 Salisbury Road, 4th Floor
**TAMPA, FL 33602**                              **ORLANDO, FL 32801**                              **JACKSONVILLE, FL 32256**
                                                          **CORPORATE**
                                              **WWW.MILESTONEREPORTINGCOMPANY.COM**

Sifani Peterson dated 04-19-2024    Page 109

---

**0**

**09/21/2026**
 105:19

---

**1**

**1** 13:23 91:24
 99:2 106:17

**10** 3:8 21:9
 48:14

**10:00** 89:17
 98:19

**10:02** 4:7 5:7

**10-23-2022** 16:4

**105** 2:18

**12:56** 104:13

**13** 3:10

**15** 21:2 25:18

**18** 1:22 25:25
 35:7

**1800** 26:3

**1840** 25:25

**18th** 4:6 5:6

**19** 3:11 20:9,11
 31:6 48:13

---

**2**

**2** 99:19

**20** 3:12
 24:12,16

**200** 100:18
 101:4

**2002** 20:3

**201** 2:19

**2016** 20:8

---

**2018** 19:19

**2019** 19:19

**2020** 15:25 16:1

**2021** 12:6
 15:1,3,22,25
 16:2
 18:12,14,24
 19:1 23:8
 27:22 28:16,20
 29:2,4 31:24
 43:7 77:12,21
 78:10
 91:18,21,22
 93:10,20

**2022** 12:7 15:25
 16:2 19:9

**2023** 18:9

**2024** 1:22 4:7
 5:6 106:17

**22:00** 102:12

**24** 48:24 99:5,7
 101:10

**24/7** 99:7

**25** 102:11

**265** 21:14,15
 22:16,22 24:24
 25:4,7

**28** 12:6 29:4
 77:12

---

**3**

**3** 13:23

**30(b)(6** 3:9 4:2
 7:17 29:23
 30:12

**300** 22:8

---

**312** 2:10

**314140** 105:20

**315** 4:4

**32** 3:13 91:6,7

**321** 2:7

**32801** 2:20 4:5

**352**
 22:11,15,16,23

---

**4**

**4** 12:7

**407** 2:21

**425-4251** 2:21

**458-1000** 2:10

**47** 3:9
 13:15,16,23

**49** 3:8 10:21,22

---

**5**

**5** 3:3 13:23
 101:10

**5:23-CV-00661**
 1:3 5:15

**50** 71:7

**51** 3:15 97:6,7

**510** 4:4

---

**6**

**6** 91:18,21

**6:00** 102:13

**60** 24:12

**6011** 12:8

**60654** 2:9

---

**67** 12:3

**6720** 11:21

**6721** 12:3

**6723** 12:4

**6766** 12:8

---

**7**

**7** 3:4 91:22

**70** 24:13,17

**72** 48:20 49:23
 78:5

**74** 78:5

---

**8**

**8** 21:2

**80** 23:23
 24:15,20 76:24
 77:25 78:7,11

**88** 22:4,8,15,22
 23:21 26:19

---

**9**

**9** 28:2

**900** 2:8

**91** 3:14

**9-13-20** 16:3

**97** 3:16

---

**A**

**a.m** 4:7 5:7

**A2** 91:18

**ABC** 23:21

**ability** 8:25
 94:5

**able** 10:1 25:8

---

**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

63:20,21 68:12
93:15 98:20,22

**access** 42:7
50:6,7 58:23
65:11
68:14,18,20,21

**accomplished**
102:12

**according**
28:5,6 31:11
40:2

**account** 50:4,5
51:13,14,16
53:9 71:25
72:2 73:22

**accurate** 28:4

**accused** 26:20
27:2 35:23
54:10 71:10
72:8,12 73:2
74:17 78:8

**Act** 65:1

**action** 106:15

**activate** 33:22

**activated** 32:18
33:25

**activation** 32:7
78:22 79:3

**activities**
101:12

**activity** 102:14

**actually** 8:8
17:20 21:24
22:11 38:9
52:9 84:14
86:18

**add** 25:9 39:10
68:8

**added** 38:3

**addition** 71:22
102:3

**additional**
35:20 84:3,21
90:1 92:16

**address** 88:15

**adjudication**
26:24

**administrative**
16:11 18:21
45:15 49:21
54:3,4
57:8,9,13 77:4

**admit** 12:20

**admits** 12:21

**advanced** 93:15

**advises** 9:19

**affects** 94:5

**affidavit**
34:22,25 35:3
64:9 79:19,21

**affiliated**
35:10

**affirm** 7:3

**against** 57:1
65:2 66:10

**agency** 10:19
11:21 35:18
41:24 57:14,15
58:12,14
64:11,18,22,25

**aggravated**

52:14

**ago** 25:24 26:6

**agreed** 4:11

**agreeing** 30:2,8

**ahead** 7:1 9:12
11:18 12:17,22
13:11 23:10
24:18 27:11
34:6,20 36:24
38:22 43:1
45:25 46:14
47:4 55:21
61:15 62:21
63:22 72:3
75:9 76:10
78:13 79:12
81:19 83:3,5
84:7,8,9 96:3
100:21

**al** 2:15 5:13

**alerts** 69:25

**alone** 86:22
87:1

**Alpha** 23:21
24:14,19 26:19
27:15,17 28:1
31:12,21 73:4
74:1 77:13
78:4,7,10,12
81:6,8,14 82:2
85:13 93:3,6
94:5 100:14

**already** 37:17

**altercations**
36:7

**altogether**
88:21

**am** 60:1 97:4
106:12,14

**amongst** 52:23
80:1

**amount** 24:2
62:10
85:4,7,10

**and/or** 18:17
30:3

**annual** 88:22

**annually**
88:12,19

**answer** 7:24
8:4,6,24
9:1,2,12,18,19
12:16 13:2
15:6 20:19,22
21:8,9,17
23:2,15 24:8
25:20 38:11
39:6 50:12
68:8 78:25

**answered** 58:5

**answering** 40:2
58:8

**answers** 3:11
8:7,14,16,23
20:18 21:1
43:25

**anyone** 13:25
74:9

**anything** 32:10
45:14 50:3
52:15 54:7
69:15 79:11
83:10 88:7,16
90:4,13 94:4



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

96:9

anywhere 24:16
65:10 83:15

appearance 5:17

APPEARANCES 2:1

appeared
2:12,23 105:7

appears 91:19

applied 28:16

applies 27:22

apply 81:13

appropriate
30:11 47:20,22
70:9,12

appropriately
53:21 62:16

approved 17:2

approximate
8:22

approximately
4:7 78:11

area 44:18 49:8
67:17 76:24
82:9,20 89:1
90:8 99:3,4
102:8

areas 85:8,9,11
92:7,9

arises 62:7

armed 75:6

arrange 104:9

arrest 34:22,25
35:3 40:18
64:8 79:19,21

arrested 35:9
41:16 59:13
60:22

arrestee 32:8

arresting 60:23
78:17,20,24
79:1

arrests 41:17

arrives 32:2
48:21,24

articulated
59:19

assault 72:13
79:10

assaultive
50:13

assessed 71:12

assessment
43:21
44:20,21,25
45:1 49:25
76:7

assign 45:23
102:7

assigned
19:23,25 21:6
61:21 68:3
90:18
91:1,4,24 92:2
99:20
100:2,13,19

assigning 15:21
45:12 48:8

assignment
68:23 91:16,17

assignments

3:13 15:13
91:20

assist 87:19

assistance
66:25

assistant
42:19,21 43:20
84:11

assistants
83:12

associated 7:21
11:12 52:5
68:16
69:10,14,22
72:21 73:24
74:14 79:9
95:17

assume 9:12
14:3 91:23

assuming 32:6
44:13

attach 107:20

attempt 41:22

attended 4:6

attending 5:17

attention 32:9
82:20
83:2,7,17,23
84:12

attorney 35:2

attorneys
106:14

audio 6:1

augment 25:8

authorize

107:20

authorized
106:8

await 44:20

awaiting 26:24

aware 8:1 84:18

away 38:3,9,22
39:8 65:2,9,16
66:14 67:4
69:24 70:4

aways 37:25
63:25 65:8
66:1,10,15
67:6

_____

B

background
41:22

backup 83:10

bad 23:6 52:10

Baker 65:1

based 24:22
28:10 45:13,21
71:11,14,15
72:8 77:20
81:12

basic 102:25

basically 35:13

basics 79:13

basis 24:1
83:23

bathroom 30:20

battered 57:16

battery 52:15
59:3 62:24



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

63:6,9,15,24
75:19 76:5
79:15,17

**bbogan@hilyardl**
**awfirm.com**
2:22

**Beacon** 69:6,7

**beds** 21:21,23
22:2 25:7
103:4

**beginning** 32:1
61:20

**behalf** 2:2,14
12:10,13
13:6,9 18:25
54:21

**behavior** 47:6
71:11,16

**believe** 19:8
22:12 77:16
78:5,6 83:19
93:17,19 95:16

**believed** 72:9

**belt** 32:10

**bench** 34:6

**besides** 13:25
59:18 71:5
73:22

**best** 8:24 30:16
43:12 61:11
68:6,7 87:18
88:6 92:25
93:11

**better** 66:9

**Billy** 1:13 2:14
3:11 5:12

20:18

**bit** 16:8 46:25

**black** 57:24

**Blandin** 2:6

**body** 32:13

**Bogan** 2:16,17
5:21,23
6:3,6,9,15,16
12:16,22
13:2,11,25
14:18 15:16
21:17 22:18
23:2,10,15
24:18,25
25:13,20
27:3,11,18
29:8 30:1
32:23 33:1,3,6
38:11 40:20
43:1 46:14
47:4 51:22
52:18,25 53:16
54:13,17 55:16
56:2,16
57:2,22 61:15
62:2,21 63:22
66:3,19 69:17
71:1,13
72:3,16,23
73:5 74:3
75:9,15,20,25
76:10 77:1,6
78:13 79:12
81:19 84:2,16
86:1,10 87:14
88:5,17 93:23
94:7,17,22
95:4,18
96:3,13,17,21
97:20 98:11

100:5,21 101:6
103:19,21
104:6,7

**bond** 64:22

**book** 34:18
39:16 59:13

**booked** 32:4
45:2

**booking** 10:13
11:13,16,20,24
12:4,5
14:12,16,23
15:9
16:9,10,12,15,
16,22,24,25
17:6,13,15
18:1,8,16,17,1
9,20,21
19:2,5,11,24
26:11
32:12,14,19
33:25
34:6,13,14,16,
21,23
41:9,20,25
42:20
43:10,13,15,16
,23,25
44:8,11,12,18,
20 45:10,11
46:2,15,25
47:13,15,16
48:6,7,8,19
49:1,7,10 50:5
60:24 61:8
64:8,18
68:16,21,22
70:22 71:12
72:14 74:15
79:1 90:6 91:1

**bottom** 70:1

**bounced** 15:8

**Bravo** 23:21
24:14,19 81:9

**break**
30:13,18,20
96:14,19,22

**Brian** 1:21 4:2
5:10 6:24
38:13

**Briefly** 20:15

**bring** 30:9
32:12

**broadly** 36:16

**brought** 30:10
32:14 73:2
79:5

**Bruce** 2:16 6:16
29:11

**bunks** 21:7,16
22:4,16,22,23
23:8,13 25:9
26:19 77:19
94:13,15 96:12

**bureau** 11:17,19

---
C
---

**cage** 82:9

**calculator**
22:13

**camera** 93:14

**cameras**
93:3,6,15,21,2
2 94:1,9

**cap** 21:14 25:4

**capability**



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    Toll Free 855-MYDEPOS

84:19

**capacity** 1:14
2:15 21:6
22:21

**captain** 1:21
4:2 5:10 6:19
7:10 13:5,8
14:7,23 15:2
16:9,14
17:22,25
18:4,5,7,11,13

**captain's** 17:7

**captioned**
107:17

**career** 26:17

**carry** 97:15

**case** 1:3 5:15
16:24 37:20
53:8 90:22,23

**cell** 34:1 68:21
82:5 96:7

**cells** 21:8
77:18 82:3

**Central** 5:7

**certain** 16:24
94:16

**CERTIFICATE**
105:1

**certify** 105:6
106:8,12

**chairs** 102:9

**challenges**
95:16,19

**change** 26:1
28:10 34:1
68:21 74:1

88:10,11 107:3

**changed** 88:23

**changes**
107:18,21

**changing** 88:20

**charge** 68:9
75:19
79:7,9,14

**charged** 51:11
53:5 58:18

**charges** 35:9
41:17 42:3
45:13,21 47:9
50:13 53:10
56:19 64:21,25
71:15 72:21
73:22,24 75:24
84:18

**Charlie** 23:21
24:15,20 81:9

**check** 84:23,24
85:20 86:23
87:3,8,11,20
92:9 98:19
102:24

**checking** 85:1

**checklist** 44:8

**checks** 83:25
84:4,21
85:4,7,10,14,1
7 86:9,17
102:11,13,17
103:2,9

**Chicago** 2:9

**chosen** 14:15

**circumstance**

87:16 98:21,24

**circumstances**
66:5,8
74:11,12,14

**Civil** 3:9 4:9

**civilian**
42:1,2,5,9,12,
22 43:14
47:1,13 67:9

**clarification**
66:9

**clarify** 9:11
41:14 97:22,24

**Clark** 2:7

**class** 49:8
81:11

**classed** 49:9

**classifica** 91:1

**classification**
10:13 12:5
17:8 35:4
39:18,19 41:15
44:14 45:1
47:24
48:5,15,17,18,
19,20,23
49:4,12 50:11
60:4 61:9 62:5
67:8,16 68:17
70:19 76:6

**classifications**
11:13 14:23
15:9,13 18:19
19:5,7,24,25
23:19 36:1
39:1 43:25
44:5,7
46:3,18,19

47:13 48:4,8
49:9,24 50:4,7
60:6 61:5
62:9,14 64:9
65:10,18,20,25
66:7,17
70:5,7,22,24
71:5,19
72:6,14 74:25
77:13

**classified**
44:22,23,24
47:24 51:19
55:14 61:14
75:7 76:8,12

**classify** 49:10
52:12,17 59:14

**classifying**
47:2 54:25
55:11 70:13,25

**classroom**
89:5,6

**cleaning** 101:13

**Clear** 66:9

**Clinic** 92:4

**close** 23:22
97:5

**clothing** 32:20
34:2

**combined** 21:25

**comes** 31:25
33:20 37:5
39:20 41:4,7
43:4 45:9
57:14 59:3,12
60:5 71:10
78:19,20 88:19



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**       **www.MILESTONEREPORTING.com**       Toll Free 855-MYDEPOS

98:7

**comfort**
96:14,22

**comfortable**
30:11

**coming** 9:8
12:14 16:23
89:2 101:23

**command** 14:9
17:3 19:8,10

**commanders** 17:9

**Commission**
105:19,20

**committed** 60:12
76:5

**communicate**
67:11

**communicating**
78:16

**communication**
78:25

**Company** 4:4 5:5

**comparing** 52:15

**complete** 35:15
43:14,15,17
44:11 46:25

**completed** 4:14
35:12 39:18,19
41:25 74:25

**completely** 9:1
10:2 98:17

**Completing**
34:19,21

**component** 44:4
83:17

**comprised** 34:24

**computer**
38:3,23 39:8
42:17,23 90:9

**computers** 42:8

**computer's**
102:14

**CONCLUDED**
104:13

**conduct** 49:24
73:3 85:15
86:8 92:8
103:2

**conducting**
39:11 41:8,9
44:8

**confined**
103:3,4

**confinement**
11:19 45:15
49:21
54:3,4,5,6
57:8,10,13
63:1 64:5
73:13,19
74:10,16,24
77:5

**confirmed** 63:24

**confiscated**
32:20 34:2

**confused** 9:10

**cons** 95:25
96:1,4

**consent** 13:5,8

**consider** 43:15
45:22 46:12,17

51:1 54:10
55:13 65:20
72:13 80:14
89:18

**consideration**
45:16,19
46:6,8
47:6,12,17
53:13 57:11

**considered**
46:11 47:23
49:19 55:10,25
65:23 70:4
76:21

**considering**
51:6,20 52:13
55:1,6,8
100:17

**contains** 21:8

**continuing** 30:8

**continuously**
101:11

**contraband**
32:14

**convened** 5:9

**conversation**
8:2,3

**convicted** 9:24
27:1 35:24
46:10 59:22

**conviction**
40:18 46:5

**convictions**
41:5,10 45:22
51:2,4,6,21

**coordinated**
93:1

**copy** 104:5,7,10

**CORPORATE** 1:21
4:3

**correct** 14:5
16:7 20:20
26:18 27:24
36:11 37:10,22
39:9 40:7 41:2
43:24 44:6
51:23,25
52:1,19 54:22
55:3 56:10
59:17 61:23
63:16 65:7,14
77:7,22,23
78:1 79:23
81:5,15 85:3
91:19,25
92:1,4,5,20
93:4,5 94:21
97:19 98:1
99:10,11
101:21 103:12

**Corrections**
57:21 58:13,16
59:15 60:7,8

**Cory** 1:7 2:3
5:12 7:22

**counsel** 5:18
6:18 106:12

**count**
89:14,16,17,22
90:2,4,10,14
98:19

**counter** 32:14

**counts** 83:25
84:4 89:8,21
90:6



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

County 1:13
2:15 3:15 5:13
12:11,15,21
13:1,6,9 14:4
20:2 21:4 26:6
43:10 46:21
51:6
54:9,20,22
55:13 56:11
59:5 66:16
80:6 83:16
92:8 99:10
103:16 105:4
106:4

course 35:17
37:6 82:20

court 1:1 4:12
5:4 8:8 59:7
105:17
106:6,24

courts 35:16

created 17:1
64:8,12

crime 38:19
59:12,22 60:13
72:12 73:25
74:12,15 75:2
79:22

crimes 52:5
56:6 72:9
74:18

criminal
41:19,22
42:4,6,17,24,2
5 43:2,5
51:14,16,21
59:7 64:21

CT 4:7

current 5:7
14:6 35:5

currently
14:7,14,17
69:5

custody 32:6
46:7 64:24
78:18

cut 50:25

———————
D
———————

daily 82:6 87:9
102:14

danger 54:8,11
55:1

dark 33:5

date 1:22
28:8,25 93:7
107:25

dated
29:4,14,15

daughter 37:6

day 4:7 5:6
53:14 77:19
82:6,7 83:23
89:14 96:5
99:5,8

days 99:5,8

dealing 53:8,25

deals 34:25
68:1

deceased 1:8
2:4 5:12

decide 74:9,10

decides 17:20

deciding 51:7

decision 50:8,9

decreased 25:23

Defendant 2:14
3:11

defendants 1:18
6:17 7:15

defender
35:2,15 64:10

defense 76:1

defined 99:3

delayed 86:23

delineation
52:2

Delta 23:24,25
24:16 28:2,3
49:16 77:16
81:10

denies 12:21

deny 12:20

department
40:6,24 48:4
50:7 57:21
58:13,16 59:15
60:7,8

depend 89:11

depending 39:6
74:10 95:12

depends 23:20
24:9 38:12
63:5 66:4,20
73:11,12 74:5
89:10 95:11

DEPONENT 1:21

deposition

4:2,8 5:10
7:11,21
10:7,10 28:20
29:19,22,23
30:8 104:13
107:16

depositions
7:13

deputies 34:11
42:1,13 67:21
85:15 92:14
97:15,24 98:24
99:23 100:19
101:2,5,8,11
102:3

deputy 1:15,16
20:5
26:5,8,11,18
32:5,9 67:17
71:15 84:15
87:11 89:21

deputy's 39:24

describe 16:20
21:3

describes 21:10

Description
99:2

descriptions
31:4

design 25:6

designates
37:11

designating
11:7

designation
36:21 38:7

designations



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

21:6

**designed** 21:22
25:6

**DESIGNEE** 1:21
4:3

**detail** 21:3
79:3,19

**details** 58:19
67:13 73:12
74:6,8 75:21

**detainees** 22:25
26:24 27:16

**detention** 3:13
11:17,19 20:5
26:5,8,11 32:5
42:19,20
67:17,21 83:12
84:11,15 85:15
87:10 89:21
92:14 97:14,24
98:24 99:23
100:19
101:2,5,10
102:3

**determination**
50:17

**determine** 37:2
47:19,22
49:1,25 50:9
56:12 57:18
58:19 67:5

**determines**
37:14,16 45:3

**determining**
45:19,22 46:12
49:5 52:16
57:5 61:25
65:20 66:8

70:9

**develop** 17:5

**developed** 17:15

**developing**
16:15,21

**deviate** 97:25

**difference**
27:12,13 31:19
48:16 75:18,24
76:2 82:13
84:1

**differences**
52:22

**different** 23:18
31:5,7,19
46:25 52:11,23
61:22 62:19
64:4,16 66:15
77:8 81:24
92:7 93:13
95:13

**differently**
29:15 38:16

**differs** 34:9

**difficult** 30:5
100:25 101:2

**digital** 93:15

**dimmed** 94:23
95:15

**Dining** 92:4

**DIRECT** 3:4 7:8

**direction** 98:25

**Directives**
10:16,19

**disciplinary**

62:25 63:1,7
64:4

**discipline**
87:10

**discrepancy**
60:10

**discretion** 39:6
97:25

**discussing**
39:22,24
102:18

**discussion**
17:1,4,19

**discussions**
17:5,21 18:2

**disregard** 97:25

**distinction**
27:7,9 28:7
41:13 79:25
80:5

**District** 1:1,2
5:14

**divert** 9:7

**division** 1:2
5:15 93:1

**DOC** 58:23,25
59:20,21
60:13,15,18,21
61:4,10

**document** 10:21
13:14,15,20
17:2 20:10,14
28:5,6
29:3,5,12
30:2,6 31:11
64:12 68:20
86:23 87:8

91:9,14
97:9,11 98:17

**documented**
37:24 84:24
85:17

**documents** 10:9
11:14 29:24
30:9 31:16
64:7
68:14,16,18
77:15

**done** 39:21,23
43:19 45:10,11
46:18
48:5,19,20,23,
24,25 49:1
90:11 96:15,20
102:20

**door** 86:11

**doors** 99:17

**dorm** 21:8
77:14,24
92:2,3

**dorm-style**
76:24 77:22
95:17 96:2

**dress** 32:19

**Dukes** 1:17
91:13,25

**duly** 105:8

**during** 47:6,7
60:4 63:23
66:15 71:12
79:10 85:24
86:16

**duties** 16:8,11
18:21 97:15



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

duty 89:15,16

---

E

earlier 25:5
43:13 77:16
102:18

early 91:22

easier 91:5
95:7,13

East 2:18 4:4

echo 28:3 77:17
82:2

education 35:5

effect 45:6

eight 66:15

either 34:5,6
38:8

electronic's
104:3

else 13:25
35:16 53:19
65:19 68:25
71:22 72:1
74:24 87:7
88:7 96:9,20

e-mail 2:11,22
30:15 104:7

emergency 86:24
87:4 98:16
100:14 102:21

employed 99:10
106:13

enemies 35:11
36:2
37:18,23,24

enemy

36:4,13,16,21
37:12
38:2,7,13,15,2
5 39:3

Enforcement
40:6,25

ensure 63:19

entered 107:18

enters 42:2,23

entire 99:24
102:5 107:16

entitled 30:6

entry 78:17

equipment 102:9

Errata 107:1,20

escape 45:16
46:5 51:15
54:6 80:24
99:18

escape-risk
49:20

escapers 73:21

escorted 32:19
33:25

especially
100:17,25

Esquire 2:5,16

essentially
91:20

established
28:1 54:23

establishing
17:19

estate 1:7 2:3

5:12 7:22

estimate 8:22
19:18

et 2:15 5:13

Ethridge 1:23
4:11 5:3
105:16
106:6,23

everyone 9:23
17:12 74:23

everything 8:9
33:4,5 68:25
71:22

exact 35:13

exactly 22:11
71:6 94:1
101:24

EXAMINATION 3:4
7:8

example 37:4
51:19 72:10
79:9

Excel 3:13

exception
102:21

excuse 34:1
69:5 77:17
86:8

Exhibit 3:7
10:21,22
13:15,16,23
20:9,11 31:5
48:13 91:6,7
97:7

Exhibit 19
31:14

Exhibit 24 97:4

EXHIBITS 3:6

expect 78:11

expectations
98:1

expected 65:25
66:17 67:4
68:4 70:7,24
75:2,7,13
85:14 89:24
92:8,10 99:23
100:1,10

Expires 105:19

explain 25:12
42:10 44:16
46:23 48:1,15
51:9 52:10
60:10 61:24
64:19 76:2
78:3 80:20
89:13 90:24
99:13

explained 25:5

explains 83:16

explore 69:13

extent 41:5
46:4 54:11

extenuating
98:23

eye 99:22,24
100:3,11 101:2

---

F

facility 14:11
53:5,12 59:3
77:8,10 78:20
80:24 98:16



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

99:13
103:12,14

**fact** 65:25
73:23 74:1
79:9

**factors** 73:21

**facts** 79:8,22

**fair** 9:13,20
12:15,21
13:1,10 17:16
18:3
22:6,9,13,16
24:17,22
26:16,21 27:10
36:8 39:8 41:1
44:14 49:13
50:1 51:7
52:7,17,24
54:9 55:2
57:21 59:16
60:22 65:3,21
68:5 71:24
73:4 76:8,9,11
80:15 85:5
86:19 89:3
94:16 97:16,17
98:25 99:25

**falls** 17:22

**familiar** 80:3

**family** 74:21

**farm** 14:10

**FDLE** 32:17
40:5,8,13,16

**Federal** 3:9

**feels** 62:6

**felonies** 80:22

**felons** 82:16

**felony** 9:24
28:1,3
31:9,13,17
46:11

**felt** 30:10

**females** 54:1

**fight** 63:12,24
103:16

**file**
42:1,16,22,23
43:14,20 44:12
47:1
59:14,21,24
60:6,15
61:3,10
65:10,18 67:6
68:16

**fill** 34:14
78:21

**filled**
35:19,21,22
39:20 43:17
65:15

**filling** 34:7,15
39:25 44:5

**financially**
106:14

**finding** 58:20

**fine** 9:1 33:9
104:2,3,4

**finger** 32:16

**fingerprinted**
43:18

**fingerprints**
32:16 34:12

**finished** 8:6,7

**first** 45:8
91:14

**fit** 62:15

**five** 25:19

**fixed** 94:1

**floor** 86:19
87:13

**Florida** 1:2,14
2:15,20
4:5,8,12
5:6,13,14
40:6,24 41:1
57:21
58:6,12,16
59:15 105:3,18
106:3,7

**flow** 8:3

**fluctuate** 24:16

**fluctuates** 24:9

**fly** 9:8

**focus** 68:12

**foregoing** 105:7
106:9

**forget** 35:13

**form** 12:16,22
13:2,11 14:18
21:17 22:18
23:2,10,15
24:18,25
25:13,20
27:3,11,18
32:7
35:4,12,14,15,
19,21 36:1
38:11 39:1,19
40:20 41:15
43:1 44:5,7

**first** 45:8
45:25 46:14
47:4 51:22
52:18,25 53:16
54:13,17
56:2,16
57:2,22 61:15
62:2,21 63:22
64:9,10,11,18
65:15 66:3,19
67:12 69:17
71:1,13
72:3,16,23
73:5 74:3
75:9,15,20,25
76:10 77:1,6
78:13,22
79:3,12 81:19
84:2,16
86:1,10 87:14
88:5,17 93:23
94:7,17,22
95:4,18 96:3
97:20 98:11
100:5,21 101:6

**forms** 12:5
34:14,16,21,23
35:17 39:18
44:1 64:16

**Foxtrot** 28:3
31:12,21
77:13,17 78:4

**frequency** 85:14

**Friday** 103:16

**front** 11:11
28:22 77:21

**fulfill** 86:16

**fulfills** 87:11

**full** 6:23



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

23:9,14 93:21

**function** 26:8

**functions**
101:20

**FYI** 57:15

---
G
---

**gangs** 35:10

**garbled** 8:9

**gather** 66:23

**gathered** 42:2
66:24

**gathers** 32:9

**general** 8:3
49:15,16 57:12
73:18 74:17,23
75:3,8,14
76:15 82:19
85:8,9 92:24
103:1

**generally** 11:2
17:5 31:23

**gets** 17:14
42:22 43:14
44:12 47:1
62:18 82:5

**getting** 42:16
58:15 59:6
82:23 88:13

**given** 7:10,13
42:1 68:11
83:2 87:16

**gives** 40:12
50:17 61:5

**gotten** 90:7

**govern** 97:14

**governing** 87:23

**granted** 65:9

**great** 8:13
30:21 33:23

**ground** 7:20
84:14

**groups** 82:15

**guess** 15:13
19:19 42:21
56:3,17 81:20
88:13

**guidelines**
97:18

**Gulf** 3:15 12:7
21:12,16,24
22:2,4,6,21,23
23:7,14,17
24:14,15,24
25:3 26:19
27:15,17 28:1
31:1,3,21
49:12 51:19
52:12 73:1
74:1
78:7,10,12
81:6,8,14
85:13 88:4
89:9 93:3,6
94:4,5,14
95:14 97:12,16
99:3
100:14,18,19
101:16,19

**guy** 37:5
57:12,16 61:1
74:22

**guys** 5:20 32:23

---
H
---

**hallway** 89:7

**hand** 7:2

**handcuffed** 82:5

**Handful** 7:14

**happen** 16:25
31:25 78:25
89:8 102:19

**happened**
58:21,22

**happens** 16:12
33:20

**happy** 30:14

**harassment**
35:14 64:9

**harder** 95:15

**harm** 32:11
63:21

**Harton** 2:5 3:4
5:19 6:2,10
7:9,22 10:24
12:19,24
13:4,13,18
14:21 15:18
20:13 21:19
22:20
23:5,12,16
24:21 25:2,17
26:4
27:6,14,20
29:11,17
30:17,24
33:8,18 38:24
40:22 43:6
45:25 46:9,16
47:10 51:24
52:20 53:2,18

54:15,19 55:20
56:7,21 57:4
58:2 61:18
62:17 63:3
64:6 66:6 67:2
69:20 71:9,18
72:7,19,25
73:6 74:7
75:11,17,22
76:3,14 77:3,9
78:15 79:20
81:23 84:6,20
86:6,15 87:21
88:9,24 91:5,8
93:25
94:11,19,25
95:9,20
96:8,15,18,23
97:4,8,21
98:14 100:7,24
101:9
103:18,20,24,2
5 104:2,4

**haven't** 98:17

**having** 28:17
102:5

**hazard** 69:15

**head** 8:17 19:17
35:8 64:14
70:16 83:25
84:4 86:12,18
87:5,12
89:8,14,16,17,
20,22
90:2,4,6,10,14
98:19

**health** 45:17
47:8 49:19
51:17 53:23



MILESTONE REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

hear 5:22 33:6
 54:7

heard 103:15

heightened
 72:22

held 24:1

he'll 103:21

Hello 32:25

help 25:9 39:15
 50:9 82:22
 87:2

helpful 48:12

hereby 106:7

herein 106:14

he's 68:4
 92:2,10

hey 37:5 57:15
 60:25 66:10
 87:2

HH 105:20

hierarchy 52:6

high
 76:12,17,21
 77:10,21 78:11
 80:11,12,15,17
 ,21 81:1,2,3,7
 82:12,16
 83:1,24
 85:5,10

higher 17:14
 22:16 56:14
 82:9

high-risk 49:20
 50:18,20

73:20

Hilyard 2:17

him/her 101:12

history 41:19
 42:4,6,17,24,2
 5 43:2,5 50:12
 51:1,2,14,16
 57:9

hit 57:24

hold 14:25 29:5
 35:18 57:23
 59:6
 64:10,18,21

home 86:22 87:1

honest 95:6

horrendous
 74:19

hospital 26:13

hour 85:19
 98:20
 102:12,20

hourly 86:9

hours 48:20,24
 49:23 99:5,8
 102:12

house 31:9,12
 38:16 45:19
 47:20,22
 48:13,14
 49:2,8 57:19
 65:21 68:25
 78:4

housed 37:7
 45:4,6 46:13
 49:5,6 50:1,10
 53:7,21,22
 56:19 72:17
 73:2 74:1

76:22 77:25
 78:12 82:17,18
 101:16

housing
 11:16,20
 12:5,6
 21:3,4,5,7
 28:9,17,19
 29:3 30:25
 31:8,15 36:19
 49:7 56:8
 68:23 69:23
 70:9 77:20
 92:7

human 99:9

hurt 62:18
 63:14

_____
        I
_____
ID 32:15
 40:4,11,12,14

idea 96:18

identification
 10:22 13:16
 20:11 32:17
 40:12 91:7
 97:7 105:10

identified 7:1
 36:13

identifies 36:4

identify 91:14

I'll 37:4 39:9
 96:25 104:12

Illinois 2:9

I'm 5:3 6:4
 7:20,23 8:20
 9:8,12

10:20,25 13:14
 14:7 20:9 21:9
 22:14 25:21
 27:25 28:7
 29:17,18,19,20
 30:2,5,7 38:4
 42:12 44:13
 46:23 52:9,10
 57:25 59:25
 64:12,13 76:4
 82:23 83:22
 84:10 88:13
 91:5 95:3
 96:15,20 98:17

immigration
 64:15

implement 82:25

implementing
 18:1

important
 8:5,14,20
 103:10

incarcerations
 40:9 41:6

incident
 58:18,19,21,24
 62:10,11 69:23
 70:3 71:4 72:4
 73:12 74:6,11

incidents
 50:7,14 58:25

include 14:12
 40:9 41:10
 51:2 56:25

includes 50:12

including 21:4
 42:3



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

inclusive 88:8

increased
  25:10,11,15,22

index 3:1 32:16

indicated
  107:19

individual
  36:15 42:25
  44:13 45:20
  47:20,23 49:25
  61:25 63:20
  65:21 69:10
  70:10 73:1

individuals
  37:18 48:9
  102:4

individual's
  51:6 78:17

infirmary 53:23
  90:8 92:3

information 3:8
  32:7 36:25
  37:8
  40:5,8,9,24
  42:2 47:17
  57:14,15,17,20
  58:10,11,16
  59:10,23
  60:11,13,16,20
  62:7 64:20
  66:18,22,23,24
  67:3 69:24
  70:3,8,23
  71:17 78:22

information's
  37:10

initial 46:1,2
  48:5,18,23

49:3 50:5
51:10

initially 49:2

inmate 3:8
  11:17,19
  14:9,10,24
  21:6 28:10
  31:25
  32:2,6,17,19,2
  1 33:20,24
  35:14 36:6
  37:11 38:16,25
  39:20,21,23,25
  40:1 41:7
  43:17,18,20,22
  ,23 44:21
  45:9,12 46:7
  47:1,3
  48:21,24,25
  49:2,5,15
  50:9,18,19,21
  51:10 52:12
  53:21,23
  54:8,25 55:2
  56:12
  57:1,10,16,17,
  19 58:11
  59:2,4,5,12
  60:5,18,25
  61:4,10,13
  62:4,8,18,19,2
  3 63:15 64:21
  65:2,3,15,16,1
  7,18
  66:1,9,11,14,2
  1
  67:5,11,15,18
  68:2,13,24,25
  69:10,11,12,14
  ,22
  70:16,17,18,19

,25 71:16
73:17,24
76:12,17
78:19,21
79:3,4
80:17,18,23
81:1 82:4 85:2
90:7,13
101:11,16,22
102:1,6,7,8

inmates 16:25
  23:21,23,25
  24:2,8,15,17,2
  0,24 26:16
  27:16 28:1,3
  31:10,13
  36:8,12,22
  38:9 39:15
  42:14 48:15
  49:8,17,19,20,
  21,22 51:17
  53:25 54:10,12
  55:24
  56:1,15,18
  59:4 60:12,13
  61:20 62:12,14
  64:1
  66:2,11,15
  67:10 68:5,10
  70:13 72:18
  77:25 78:5,12
  80:1,8,12,15,2
  1
  81:2,3,4,16,22
  ,25
  82:1,13,15,18,
  21 83:1,24
  84:12 85:21
  86:13 87:12,24
  89:18,22 92:23
  94:6 95:17

99:4,20
100:2,13,18
101:3,4,8
103:3,7,11

inmate's 40:2
  41:18 47:6
  50:12 59:21
  65:10 68:23

input 16:19
  17:14 45:3,18

inquire 39:3
  41:5

inquiring 36:20
  39:5

inquiry 39:12
  41:10

instead 8:16
  86:18

intake 11:20,24
  14:12,16
  16:9,11,12,14,
  16,21
  17:6,13,15,25
  18:7,16,18,19,
  20,22
  19:2,5,12,24
  32:4 38:5,6
  39:12 41:4,9
  43:10 70:22

inter 44:2

interact 64:2

interacting
  83:7,8

interactions
  42:14 47:7
  67:10 71:14

interested



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

Jessi Peterson - June 04, 2024    Page 122

106:15

**internal** 12:4

**interpretation**
99:16

**interrogatories**
3:12
20:18,20,22

**interrogatory**
21:2

**interview**
44:3,4,9 47:7

**interviewed**
43:17,22,23

**inventoried**
34:5

**inventory** 34:4

**investigation**
63:23

**investigations**
37:12,15 38:9
39:7

**investigator**
37:19,21

**investigators**
37:1,9 38:21

**involved**
17:9,13 43:10
62:24 74:20
106:14

**issue** 29:18
38:17
62:6,7,12

**issued** 20:18
32:21 34:3

**issues** 49:20

53:22,24 73:20

**I've** 11:16,21
12:3 69:7

---
### J

**jail** 14:7,10
15:20 20:2
21:4 26:6
31:25 32:3,18
33:21,22 36:25
37:9,19,23,25
38:17 39:20
41:4,7 43:4,11
45:9 46:21,24
51:3,7 59:20
62:15 66:16
69:1,2,9,10
70:23 72:11,15
73:2 80:6
83:16 86:24
88:21 90:12,15
93:2 103:16

**jails** 79:25

**January** 12:7

**JEROME** 1:17

**Jessica** 1:23
4:11 5:3 33:8
96:24 105:16
106:6,23

**jewelry** 32:10

**job** 7:24 8:13
42:16,18 98:4

**Joe** 37:5

**JOSEPH** 1:16

**JUSTIN** 1:15

---
### K

**kidnapped** 75:13

**kidnapping**
72:13

**killed** 61:1
74:21

**kin** 35:1 69:24

**kiosk** 82:11

**kitchen** 14:10

**knew** 59:21

**knowledge** 18:25
43:12
60:23,24,25
61:2,11 88:6
92:25 93:11

**known** 71:16
73:16

**KOSINSKI** 1:15

**Krysti** 1:5 2:2
5:11 7:23

---
### L

**laid** 98:1

**Large** 106:7

**largely** 70:21

**last** 10:4 18:9
25:18,19 33:16
54:3 61:1
103:13

**Law** 40:6,24

**lawyer** 9:15,18

**lawyers** 9:6

**layout** 11:5,6
21:3 25:8
29:14 88:25
94:4

**lead** 62:11

**least** 23:22
56:4 64:3
85:19 88:18
92:11 102:6

**leave** 79:18

**let's** 15:14
18:9 45:15
61:19,20 96:21

**Letter** 108:5

**letterhead**
29:16

**level** 17:7 71:5
72:22 80:12,13

**lewd** 52:14 73:3
75:18 76:5

**lieutenant** 15:9
16:10 17:8
18:15,16,17,18
19:4,7,11,20

**lights** 94:21,23
95:7,8,15

**limited** 42:14
49:4

**LINE** 107:3

**list** 16:1,2,3,4
38:15

**listed** 16:1,5
64:7

**lists** 38:25

**little** 9:23
16:8 46:24
83:3,6,8,13,17
102:8

**living** 35:6

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

LLC 2:6

located 5:5

location 57:18

lockdown
  85:16,24 86:2
  87:11
  89:17,18,19
  98:19 102:19

lodging 9:16

log 102:14

logged 102:13

logs 87:9

long 6:6 9:2
  19:4 35:5 43:9
  86:3,4

lot 9:9 25:25
  68:15 79:24

low 76:19
  80:12,13 85:10

lower 25:25

low-risk
  50:19,20

---

**M**

ma'am
  7:6,12,16,19
  8:12,15 9:3
  10:17 11:9
  12:1,12 20:12
  21:18 34:17
  42:7 50:22,24
  76:20 80:4
  83:21
  101:15,18
  102:19

mainly 16:11

maintain 82:22
  99:12,20
  100:1,13 101:3
  103:7,10

maintained
  102:13 103:6

male 31:12
  48:15 49:22
  53:25

males 31:17

managed 82:19

management
  32:18 33:22
  37:25 69:1,2,9
  70:24

mandatory
  97:19,23

manipulate
  36:19

manned 99:5,6

manual 12:4

Marion 1:13
  2:15 3:15 5:13
  12:10,15,21
  13:1,6,9 14:3
  20:1 21:3 26:5
  43:10 46:21
  51:5
  54:9,20,22
  55:12 56:11
  59:5 66:16
  80:6 83:16
  92:8 99:10
  103:15

marital 35:2

MARKED 10:22
  13:16 20:11

91:7 97:7

match 90:7

materials
  101:13

math 22:14

matter 5:10
  39:2 51:5
  107:17

max 21:14 22:21
  25:3,4 80:8

maximum 21:15
  80:2,15,17,22,
  25
  81:2,4,7,13,16
  ,17,21,25 82:1

may 4:12 7:7
  9:15 16:25
  17:12 25:22
  36:9,10,16,18,
  24 38:19,21
  45:3,6 47:8
  53:6,10,22,24
  54:4 57:14,23
  58:14 62:7,11
  66:10,25
  67:14,16 68:12
  69:23 70:11
  73:12,17,18,19
  ,20 74:4,9,24
  78:25 79:17
  84:11 86:11,17
  87:4,15,17,18
  88:22 90:9,25
  100:9

maybe 10:2
  48:12 52:4
  57:14 91:12
  96:11

me.I 107:18

mean 6:3 14:8
  16:23 21:15,20
  25:14,21 29:17
  30:13 40:17,25
  42:10 46:2
  48:7 54:21
  62:3 65:5
  67:22,25 68:9
  71:6 73:11
  74:4 83:2
  84:22,23 85:18
  90:10,22 91:1
  95:3,24 96:10
  99:6 100:25
  101:1,7

means 9:7,9
  12:20,25 21:21
  48:2 84:13
  99:15 100:3

measures 56:11
  63:19 81:17
  82:14

med 80:8 92:3

medical 14:24
  43:21
  44:20,21,24
  45:18 53:22
  69:15,18 92:3

medication 10:3

medium 80:1,12
  82:12 85:5

medium-risk
  50:18,20

mediums 81:10

meeting 11:19

member 86:4



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

memo
  15:17,19,20,21
  ,24

mental 45:17
  47:8 49:19
  51:17 53:23
  73:20

mentioned
  11:12,23 40:4

Merchant 1:5,7
  2:2,3 5:11,12
  7:22,23

middle 1:2 5:14
  32:16 58:8
  89:1

Milestone 4:3
  5:5

MILLER 1:16

min 80:8

minimum 80:1

minute 50:25

miscellaneous
  12:5

missing 28:7
  64:12

mitigated 52:5

money 32:10

monitor 26:16
  68:5 92:23
  101:11 102:5

monitoring
  87:23 92:14
  95:17,22 96:4
  102:4

month 18:10

24:10 88:14

morning 89:15
  91:22

mostly 14:16

mouth 12:14

move 62:12,14

moved 19:7,10
  61:13,17,22
  62:4,19,22
  64:3 90:7,8

movement 95:13

movements 11:20

multiple
  26:12,13 31:16
  62:11 64:16
  66:1,11 68:10
  69:13 74:20
  90:18 94:13
  96:12

murder 46:7
  53:11 59:4

murdered 37:5
  57:16 59:5

murders
  74:19,20

mutual 63:8

myself 22:14

_____

N

name's 7:21

nature 67:14

necessarily
  37:13 40:25
  44:23 46:12
  51:13,15,20
  52:13 65:5

73:25 76:6
  80:19 81:13

night 10:4 82:8
  89:15 91:21
  94:20 103:16

Nights 103:16

nodding 8:17

nomenclature
  78:9

Nope 83:5

nor 30:9 106:14

normal 8:1

North 2:7

Northpointe
  50:8

Notary 4:11
  105:17
  106:6,24

note 15:16
  64:17

notes
  15:7,11,14,17

nothing 7:4
  70:18

notify 39:10

notifying 37:21

November 14:25
  15:3,22
  18:9,12,24
  19:1 23:7
  27:22 28:16,19
  29:2 31:24
  43:7 77:21
  78:10
  91:18,21,22

93:7,8,10,20

numerous 10:14
  62:10

nurse 44:20
  45:2 47:2

nurse's 89:6

_____

O

OATH 105:1

object 9:15
  12:16,22
  13:2,11 14:18
  21:17 22:18
  23:2,10,15
  24:18,25
  25:13,20
  27:3,11,18
  38:11 40:20
  43:1 45:25
  46:14 47:4
  51:22 52:18,25
  53:16 54:13,17
  56:2,16
  57:2,22 61:15
  62:2,21
  66:3,19 69:17
  71:1,13
  72:3,16,23
  73:5
  75:15,20,25
  76:10 77:1,6
  78:13 81:19
  84:2,16 86:1
  88:5,17 93:23
  94:7 95:4
  97:20 98:11
  100:5

objection 9:17
  55:16



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

**objects** 9:18

**observation**
82:22,24,25

**obstruct** 94:15

**obstruction**
96:11

**obvious** 25:24

**obviously** 30:10
49:22 59:24
100:15

**Ocala** 1:2 5:15

**occasion** 86:21

**occupied** 99:4

**occur** 85:5,10

**October** 12:6
29:4 77:12
106:17

**offender**
35:20,22,25
51:12 52:13
64:11 72:18
74:2 77:11
78:8

**offenders** 26:20
27:8 49:17
51:18 52:4
53:8 56:9
76:20,25 77:22
81:9

**offense** 31:20
35:23,24 51:11
52:14,16
53:10,12,15
56:13,14 72:21
73:3,18
75:3,8,14
76:16,17,19

78:12 79:4
92:15,23

**offenses**
26:21,25 27:1
28:2,4
31:10,13,17
52:5,7,23
54:11 71:11
76:13 78:8
80:22

**office** 14:4
17:3
54:10,20,22
55:13 56:12
89:6 93:2
99:10

**officer**
11:20,24 32:8
38:5,6,14,17
39:12,22,23
41:5,12 43:23
44:8
47:13,15,16
49:10,24
60:23,24 62:5
65:25 66:7,17
68:1,22,24
74:16
78:20,21,24
79:1,2,14 82:3
84:25 86:17
102:14

**officers** 42:13
50:4,5 67:8
78:17 92:21
103:1

**officer's** 39:24
76:7

**OFFICIAL** 1:14

2:15

**oh** 6:22 28:15
57:23,25
58:7,10 63:10
76:1 83:6
91:12 96:17

**okay** 5:2
6:11,14
7:7,13,15
8:13,20
9:4,15,22
10:18,20,25
11:10,25
12:2,9
13:14,22 14:15
15:11,14,24
16:8,14,18
17:4,18
18:5,14
19:4,10,15
20:17,25
21:8,11,14,23
22:1,8,11,15,1
6,21,25 24:7
25:3,18
26:14,23 27:7
28:12,15,22,24
29:17
31:3,14,23
33:10,12 34:18
36:1,4,10
37:14
39:5,11,17
40:4,8,16,23
41:3,13,18,21
42:9,15
43:13,22
44:2,16 45:5
46:17,20,21,22
47:16
48:1,7,12,18,2

2 49:10,23
50:3,16,25
51:5,9
52:3,9,21
53:3,19
54:16,20,24
55:6,11,19
56:11,22,25
57:5 58:10
59:9,18
60:5,10
61:8,12,19,24
62:18 63:10,14
65:19,24
67:3,24 69:12
71:21 72:20
74:14,21,22
77:24 78:16
79:21,24
80:5,8,10,14,2
0 81:2,6,12,16
82:1 83:20
85:4,9,24
88:3,13
89:13,24 90:23
91:12,13,17,24
92:6
96:17,21,25
97:3,11
99:2,19
101:10,16
102:3
103:21,23
104:5,11,12

**one-hour** 85:17
86:17 87:11

**one-man** 82:3

**ones** 10:14 27:5
70:14 102:20

**one's** 99:18



**MILESTONE** | **REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    Toll Free 855-MYDEPOS

online 5:3

onto 94:2

open 49:7 77:14
86:11

operate 97:15

opinion 94:24
95:1,3

opportunity
44:19

opposed 31:21
48:5 74:16
92:15,23

Ops 92:3

option 96:6

ORANGE 105:4
106:4

order 3:15
11:16,21,22
12:7 63:19
97:12
98:1,22,25
103:23

orders 10:13
88:2,10 97:18
98:3

original 25:6
107:21

originally
21:22

Orlando 2:20
4:4 5:5

outcome 63:1

outline 9:4,7
96:19

overall 25:21

---

P

P.A 2:17

P.M.ET 104:13

page 3:2,7
21:2,9 28:2
48:13 69:10
99:2 101:10
107:3

Palmer 2:17

paperwork
34:8,15
43:16,18

participants
4:6

particular
37:16 61:5
63:21 69:3
71:2 91:2
95:24

particularly
56:14

parties 5:16
106:13

partner
86:4,7,25
102:22

passed 60:14,16

passes 32:9

past 37:17,22
40:15 41:10
46:11 50:7,13
51:1,2,4,6,16
54:2 59:22
71:15,16 72:4
83:14

pat 32:12

---

pay 84:11

PC 57:24

PDF 104:8

pending 5:14
48:15 57:13
63:1 64:25

people 55:12,13
71:10 72:8
74:17 78:8
90:14

per 21:7
22:4,22 78:5
89:8 90:18
101:22

perform 101:19

performing
89:22

perimeter 90:12

period 28:18
63:18 85:25
86:3

periodically
28:10

permission's
66:24

perpetrator
55:9,14
63:4,20

person 37:16
39:2,3,11
40:25 43:4
47:14 72:14
76:7

personal 1:6
2:3 5:11

personally

---

105:7

Personnel 3:13

pertaining 32:7

pertinent 67:19
78:22

Peterson 1:21
4:2 5:10
6:19,24 7:10
13:5,8 38:13

phone 22:13
34:8 44:19
82:10

physical 36:7
85:14 92:8

physically
39:20 84:25
85:22

pick 95:13

pictured 43:18

pictures 34:12

placed 31:17
56:13 64:1
75:3,13 77:22
101:13

places 26:13
31:16

placing 51:10

plaintiff 1:9
2:2 5:20 20:19

Plaintiff's
5:18

plan 12:6
28:9,17,19
29:3 30:25
31:8,15

---



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

77:13,20

**plans** 28:9

**please** 5:16
6:21 9:11 13:7
23:4 60:10
67:12 103:25

**pod** 3:16 12:7
21:12,16,22,24
22:2,5,6,23
23:7,14,17
24:24
25:3,6,7,9
26:12 27:8
31:1,3 36:6
45:12 49:12
51:19 52:12
55:12,18
56:14,15 61:13
62:4
68:1,2,4,5,11,
24
77:8,10,13,16
81:8 82:2 85:1
86:5,7,14
87:24,25
88:1,4,8,16,20
,25 89:9 90:5
91:4 92:19
94:5,14
95:14,17 96:2
97:12,16
99:3,4,7,9,22,
24
100:4,11,14,18
,19
101:10,17,19,2
0,23,24
102:4,14,22
103:6

**pods** 22:22

26:9,15 31:9
55:14 67:21
90:18 91:3
92:11

**point** 34:4
40:11 41:20,21
43:15,19 44:17
46:17 47:21,24
58:17 62:12
96:13

**poke** 86:17 87:4

**poking** 87:12

**police** 40:18
41:23

**policies**
10:11,12,16
11:1,3,10
16:15,21 17:6
18:24 19:1
82:24 83:16
87:22 88:22

**policy** 10:13,14
11:13,21
12:3,7,8 17:20
18:2 51:5
83:15 88:3,15

**pop** 49:16

**population**
25:10,11,14,25
28:11 49:16
57:12 68:2,13
73:18 74:17,23
75:3,8,14
76:16,18,19
82:20 84:12
85:8,9 87:25
92:24

**position**

14:6,17,20,22,
25 15:3 18:14
19:8,17,21

**Possibly** 64:10

**post** 3:13,15
10:13
11:16,21,22
12:7 15:22
64:22 88:2,10
91:16,17
97:12,18
98:2,22,25
99:3,4,6

**post-conviction**
27:10,16

**potential** 55:14
60:19

**potentially**
32:17 55:8
63:25 74:13

**pre** 44:13 47:23
49:7,11 81:10

**precaution**
45:17 49:18
53:20 83:8

**precautionary**
36:24 38:20

**pre-class** 23:25
49:6

**pre-
classification**
47:25
48:2,9,14,16

**predator** 53:4,5

**preparation**
10:6,10

**prepared** 13:22

**present** 68:4

**presented** 77:15

**pretrial** 26:24
27:10,16

**pretrials** 27:4

**pretty** 14:11
94:15 101:25
102:5

**prevent** 98:9

**prevents** 98:7

**previous**
53:4,12 71:5

**previously**
14:19 30:3,4
35:24 37:23
73:16

**primary** 46:19
48:3,15,17,19
49:24 50:3
60:4,6 61:4
65:19,24 72:6
74:24

**prior** 40:9
41:5,17
44:22,23
45:14,16,22
46:5,6 51:7,20
58:11 88:22

**prison** 27:5
40:10
41:1,11,23
61:1

**prisons** 79:25

**probably** 23:22
30:22 71:7



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

95:14 96:23

**problem** 30:7

**procedure** 3:9
4:9 39:2 61:24
88:3,20

**procedures**
10:11,12 14:16
19:1 82:25
87:23 97:13

**proceed** 7:7

**proceeded** 17:2

**proceeding**
106:9,10

**PROCEEDINGS** 3:3
5:1

**process**
16:20,24 31:24
33:20 34:7,10
38:5 41:9,25
43:14,15
44:3,11
45:9,10,11
46:15,25
47:3,7 59:8
61:9,12 64:8
71:12

**processed** 32:3

**processes** 14:13
16:13 17:15
46:24

**produced** 30:4
105:10

**production**
29:19,25

**programs** 14:11

**promoted**

19:14,17,20
20:7

**propensity** 57:1
72:10

**proper** 34:8,15
57:18

**property** 34:4
70:17,18

**property's**
43:19

**pros** 95:25

**protect** 56:4

**protocol** 78:16
81:18

**provide** 66:12
67:12

**public** 4:12
35:2,15 64:10
105:17
106:7,24

**pull** 28:24
67:18

**purpose** 25:4
102:24 103:1

**pursuant** 4:8

**puts** 79:14

**putting** 27:8

---
Q
---

**qualifier** 68:8

**quality** 93:13

**question** 8:4,8
9:11,12,13,18,
19 10:8 15:5,6
19:13 23:3,6
31:18 33:16

36:15
52:10,11,21
54:18 55:22
56:18 58:5,6,7
83:4 99:19
100:23 102:25

**questions** 7:24
8:5,24
9:6,8,9,16,22
21:1 29:23
30:22 35:7,8
40:1
50:10,14,15
67:19 78:23
103:19,22

**quick** 6:8 87:5
90:13

**quickly** 40:12

**quiz** 8:23

---
R
---

**race** 35:2

**raise** 7:2

**ran** 43:2,5

**random** 89:20

**range** 24:11,12

**rank** 17:14

**rape** 75:1

**raped** 75:6,12

**rapid** 32:15,17
40:4,11,12

**raping** 73:16

**rare** 86:20

**rather** 87:12

**ratio** 27:15,23

**reading** 4:13
103:21

**real** 6:8

**really** 8:5
52:3,10 62:14
90:3

**reason** 10:1
31:20 38:15
56:4 61:6
66:12 86:21
107:3

**reasons** 36:3
61:22 62:3
90:15 98:13
107:19

**rec** 89:5

**recall** 7:19 9:1
19:6,16 23:11

**recap** 24:14

**receive** 62:25
92:21

**received** 29:25
61:2

**recognize** 97:11

**recollection**
15:15

**record** 5:2
6:8,12,13,14,2
3 7:1 9:17
20:17 22:12
29:21 30:1
33:8,12,13,14
67:25 97:1,2,3
104:12 106:10
107:19

**red** 82:17


MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

**refer** 15:7
38:20,21

**referred**
37:12,15

**referring** 14:22
15:11,15 34:16
77:12

**refers** 67:20

**reflect** 31:16

**reflected** 31:5

**refresh** 15:15

**regarding** 58:11
64:18 70:22
78:17 92:22

**regardless**
63:14

**registered**
35:25

**Regular** 104:1

**relate** 19:2
70:12

**related** 38:18
54:7 106:13

**relay** 37:8

**relayed**
59:10,23,25
60:20 71:17
79:17

**release** 12:4

**released**
64:23,24

**relevant** 32:7

**relying** 41:18
46:23

**remaining**

**remember** 19:13
33:16 35:7
50:14 64:14
69:25

**remotely** 4:6

**reopen** 29:22

**repeat** 10:8
13:7 20:21
23:3 33:15
48:11 55:22
58:4 80:16

**report** 11:20
38:8 39:7 43:3
58:18,25 62:25
63:2,7 90:11
106:8

**reported** 67:15

**reporter** 1:23
4:12 5:2,4,22
6:5,7,11,14,18
,21,23,25 7:7
8:8 32:24
33:2,10,14
96:25 97:3
103:23
104:1,3,5,11
105:17
106:6,24

**reporting** 4:3
5:5 41:19

**reports**
58:23,24
62:10,11 69:23
70:3 71:4 72:4

**represent** 7:22

**representative**

**representing**
5:4

**request** 59:21
60:1,2,6 61:10
65:2,4,8,15
66:20 67:11
90:1 107:18

**requested**
66:1,14 89:25

**requesting**
59:14 61:3

**requests**
65:9,12,17

**require** 74:15
82:21,24 83:6

**required**
98:4,24 103:2

**requirements**
86:16

**reserve** 29:21
103:21

**residence**
35:5,6

**resources** 49:4

**respond** 67:12
86:25 87:4

**responding**
100:14

**response** 15:4
30:12 38:13
40:3

**responsibilitie
s** 92:13,16

**responsibility**
26:15 42:3,6

**representing**
91:3

**responsible**
18:1

**responsive**
29:24

**rest** 24:9 32:20

**review** 10:6,9
28:19 57:13
70:8,24 88:22

**reviewed** 10:15
11:2,3
88:12,19

**reviews** 35:14

**revised**
88:22,23

**Rider** 3:10

**risk** 45:16,17
51:15 54:5
55:25 56:14
71:11 72:15
73:21
76:12,17,19,21
77:11,21 78:12
80:12,15,17,21
,23,24
81:1,2,3,7
82:7,12,16
83:1,24
85:5,10

**risks** 54:6

**Robinson** 2:18
4:4

**role** 16:15,18

**roles** 92:13

**Romanucci** 2:6

**room** 13:25

---



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   Toll Free 855-MYDEPOS

Braden Peterson Volume II 07/16/2024

```
29:10 32:19
77:19 96:5
roughly 22:3
rover
  26:9,12,15,18
  67:20 89:1
  94:6
rovers 68:14,17
  94:5
rows 94:13
  96:12
rude 9:23
rules 3:9 4:8
  7:21
run 42:4,6
  62:15 69:3
```
_____
                S
_____
```
safety 69:15
Sam 2:5 5:19
  7:21
scan
  30:14,17,20
scanned 32:13
scanner 32:13
scenario
  59:18,20
scenarios 58:25
screen 29:6
scroll 21:9
search 42:17,23
  69:11,12
searched 32:21
  34:3 82:6,8
seat 34:5 44:17
```

```
seated 102:10
second 6:11
  10:20 11:22
  30:18 33:11
  57:24 96:25
  104:11
secretary 15:20
section 22:4,22
  23:1,7,8,23,24
  24:3,5
  31:1,3,5,12
  48:13,14
  49:6,12 51:19
  52:3,4,12
  53:15,24
  56:15,20
  61:13,14,21,22
  62:1,8,20
  67:15 75:14
  76:16 77:14,17
  78:1,4,6
  81:7,8,9,10
  82:2,4 83:13
  85:1,20
  86:12,13,18
  87:5 90:5
  92:19,23,24
  93:21
  94:2,10,12,14,
  16 95:7 100:15
  101:23 103:6
sections 21:25
  22:6
  23:19,20,22
  24:20 31:9,19
  44:14 48:10
  49:12,17
  55:18,23,25
  64:4 73:10
  75:4,8
```

```
77:18,22,25
82:17 89:2,4
92:7,15 100:16
101:14
Sector 91:24
secure 96:6
secured 82:10
99:17
security 45:16
54:4 73:21
80:1,2,15,18,2
3,24
81:3,4,7,13,16
,18,22,25
82:1,9,14,22
87:8 90:15
98:19 99:13,17
102:11,17,24
103:2,5,8,10
seek 29:22
60:14 66:25
seems 5:23
35:16
seen 13:15
20:14 47:1
69:7
self 41:18
self-reported
42:25
send 30:21
37:19 104:8
sense 8:11,18
9:2,10 27:15
37:19 70:16
sent 15:20
44:13 66:21
separate
```

```
36:6,9,10,12,2
2,25 37:7,20
38:19,20
separated 53:7
62:23 63:15
64:3
separately 53:7
separation 36:3
September 1:22
4:7 5:6
sergeant 1:17
19:22,23,25
20:7 90:18,25
91:4,13,25
92:6
sergeants
17:8,10
series 40:1
50:10 78:23
serious
36:21,24 37:3
38:8 55:1
67:13 79:6,7
seriously 52:3
73:23
serve 44:8
services
14:7,11
setting 77:15
seven 99:5,8
severity
52:16,22 67:6
sex 26:20 27:8
31:17
35:20,22,23,24
,25 49:17
```



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

51:11,12,18
52:5,6
53:5,8,10,11,1
5 56:9,18
64:11
72:17,18,21
79:15,17 81:8
92:15

**sex-offender**
55:18,23,24

**sex-offense**
55:12 56:19

**sexual** 26:21,25
27:1 28:2,4
31:10,13,20
35:14
52:4,12,14,23
53:4 54:11
56:13 64:9
73:17 74:2
75:3,8,14,19
76:5,12,13,16,
17,19,20,25
77:11,21
78:7,8,12
79:10 80:22
92:23

**sexually** 71:10
72:8 73:9

**sexually-based**
72:12
73:3,9,25
74:15,18

**shaking** 8:17

**sharton@rblaw.n**
**et** 2:11

**sheet** 3:14
68:17 107:20

**sheriff** 1:13
2:14 3:11,15
5:13
12:12,13,15,21
13:1,6,9 20:18

**sheriff's** 14:4
17:3 29:15
54:9,20,22
55:13 56:12
93:2 99:10

**shift** 17:9 82:6
85:15
89:9,12,14,15
90:18
91:2,18,21
92:12 99:25
101:22 102:5

**shifts** 102:2

**shoes** 32:10

**showed** 77:16

**shows** 31:11
92:2

**sic** 82:7

**sign** 104:9
108:5

**signed** 107:19

**significantly**
94:15

**signing** 4:13
103:22

**signs** 35:14

**sir** 15:5 104:11

**sister** 7:23

**situation** 74:5
95:25

**sleep** 10:4

**small** 91:11

**Smith** 37:5

**software** 69:3

**solely** 68:12
91:1

**solemnly** 7:2

**somehow** 64:23

**someone**
30:14,19 31:20
36:4,16,17
37:4,11 41:4
42:16 45:23
46:9,10 49:11
61:5 63:14
72:11 74:16,21
75:1,6,12 76:4
87:7,19 90:11
99:7

**sorry** 13:8 38:6
39:18 41:3
42:12 50:23,25
51:25 58:1
93:16 96:24

**sort** 10:3
17:12,14 40:17
44:7 46:23
52:2,6,22
69:8,15 79:21
80:5 88:25
97:13 98:23
99:14

**sound** 80:2

**sounds** 17:12

**special** 21:5
53:24

**specialist**

42:20 44:12
50:11 67:16

**specialized**
42:21

**special-needs**
49:19

**specific** 11:1,4
87:22,25 88:4

**specifically**
11:12 19:23
84:1 92:22
99:14

**specifics** 40:14
79:4 83:22

**speculate** 8:21

**speculation**
36:23 37:2

**spoke** 72:5
98:20

**staff** 17:3
42:12 43:21
47:2
48:6,19,20
60:24 67:9
86:4 92:4

**staffing** 15:13

**Standard** 5:7

**start** 20:1,4
34:6,13 59:7
61:19,20

**starting** 5:17

**starts** 32:5

**state** 4:12 5:16
6:21 29:20
40:9,14,18
41:23 105:3,18



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     Toll Free 855-MYDEPOS

106:3,7

**statement** 28:4
101:7

**STATES** 1:1

**station** 94:6

**stationed** 82:3

**status** 35:2
45:17 47:8
64:15

**step** 15:14 47:3

**stick** 86:11

**STIPULATION** 4:1

**stored** 65:9

**street** 2:7,18
4:4 59:13
60:22

**strike** 26:23
38:6 39:18
41:3 61:19
68:15 72:11
78:9 90:17

**strip** 32:21
34:3 82:8

**strip-searched**
82:7

**stuff** 96:22

**style** 21:8
77:24

**subject** 15:25
32:9 40:13
43:3 55:4,7

**Submitted**
106:17

**subsection**
80:25

**sufficient**
18:24

**sufficiently**
36:21 37:3
38:8

**suicidal** 51:17
53:21 73:20

**suicide** 45:17
49:18 53:20

**Suite** 2:8,19
4:4

**supervise** 26:16
68:5 92:22
101:12

**supervising**
68:9 92:14

**supervision**
82:14 87:23

**supervisor**
39:10,13,14
67:1 87:1,3
89:25 90:1
97:14

**supervisors**
16:1,2,3,4,6
39:15 97:14

**supposed** 103:4

**sure** 6:2,4,10
8:15 9:5 12:13
15:7 24:12
26:11 37:7
42:11 56:5
64:1,13 70:2
83:9 90:14
99:17 103:5

**surprise** 89:21

**surrounding**

68:13 99:4

**surveil** 92:18
94:6

**surveillance**
93:3

**swap** 102:1

**swear** 4:13 7:2

**sworn** 42:13
67:8 105:8

**system** 32:18
33:22 37:25
40:13,16,19
41:1,23
69:1,2,9 70:24
93:14

---

T

**tab** 69:18

**tabs** 69:13,22
70:1,3,8,11,12
,19 71:3,6,7

**taking**
47:5,11,12

**talk** 67:4

**talked** 56:23
68:15

**talking** 8:10
11:4 54:1
60:12 63:4
94:9

**technician** 5:4

**technology**
93:14

**Telephone**
2:10,21

**temporary** 24:1

**ten** 25:18,24
26:6

**tend** 9:7

**tendencies**
83:14

**term** 36:16
81:13

**testified** 24:23

**testify** 10:2
13:5,9,22
14:16 18:25
70:21

**testifying**
12:10 54:21

**testimony** 7:3

**Thank** 6:18,25
12:9 33:10
55:11 79:24
103:25

**that'll** 46:7

**themselves**
32:11 67:5
86:14,22

**there's** 8:23
9:10 10:14
17:4 21:15
22:4,6,21
23:18 24:2
25:11 26:12,13
27:7,9,13
34:8,9
35:2,4,6,15,17
,19,20 36:23
37:16,18 39:14
50:10,15
52:2,6 56:23
60:19 62:3,6,9



**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

Case 5:23-cv-00661-JSM-PRL   Document 50-13   Filed 06/27/25   Page 133 of 157
Joseph Peterson vs... on 06-13-2024   Page 133
PageID 1004

64:13,15,17
66:21,22 67:3
68:10 69:24
70:1,16 71:7
73:21 74:22
78:7,23 82:3,9
84:3,21 85:4
86:3,21,24
87:10
88:2,7,19
89:4,5,6
90:3,10,11,17
93:18,24 94:13
95:11,13 96:10
98:6 99:7,9
100:12,17
101:25

**they'd** 41:16

**they'll** 49:11
53:21 86:23
87:1

**they're** 26:20
32:13,14,20,22
33:25 34:2
35:18,19,20,25
37:7 38:18
42:13,16,19
47:5,25 48:3
49:6,8,9
51:11,13,14
53:14,20,23
55:7 56:5
58:17 59:19
61:17 64:3
65:5 67:7,8,9
68:2,9 69:14
70:17 72:9
76:11,22
77:4,7,8
82:2,5,17,18,1

9,21 83:2,3
86:13,14,21,22
87:1,6
88:11,18 93:12
96:5 98:4,20
100:1 101:25
102:4,22
103:3,4

**they've** 27:1
35:6 37:23
44:24 50:13
60:7,12 61:14

**thoroughly**
20:16

**throughout**
25:7,15 92:11

**tied** 87:3

**title** 35:13
42:18,21

**titled** 10:16

**today** 5:4
7:18,24 10:2
12:10 18:25
23:13 26:1
28:13 30:9
77:16 103:24

**Today's** 5:6

**top** 19:16 28:8
35:8 64:14
69:25 70:1,15

**topics** 13:19,23
70:21

**total** 22:23

**totally** 22:13

**towards** 55:25

**training** 92:22

93:1

**transcript** 4:14
104:10 105:7
106:9
107:16,21

**transferred**
59:19 60:21
61:25

**transport** 27:5

**transportation**
14:24 15:9

**transporting**
78:21,24

**treat** 81:25

**tree** 50:8,9

**true** 27:21
43:7,9 73:1
94:20
100:17,20
106:9

**truth** 7:4,5,25
9:2

**truthfully** 10:2

**try** 6:4

**trying** 30:5
38:4 99:18

**turnaround**
104:1

**twice** 82:6

**two-man** 77:18

**type** 91:11

**types** 11:2
52:23

**typical** 24:6,8

**typically** 22:25

23:8,14,18
24:1,4,15
60:16 62:19,22
77:25 100:19

——————————
U
——————————

**uh** 8:16

**uh-huhs** 8:16

**uhs** 8:17

**Ultimately**
17:22

**underlying**
74:12 75:2
79:4,8,22

**undersigned**
105:6

**understand** 12:9
38:4 54:18
56:18 67:21,25
70:2 76:1
81:20 84:22,23
88:25 100:23

**understanding**
20:25 75:23
81:12 99:14
103:1

**understood** 9:13

**uniform** 32:21
34:1,3

**unit** 21:5,6,7
51:12 99:21
100:2,13
101:3,4

**UNITED** 1:1

**units** 21:4

**unless** 9:19
56:23 61:5

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

77:4 82:5
89:25 98:6,23
102:7

**unsure** 25:21

**updating** 88:15

**upgrading** 93:14

**upon** 107:18

**upwards** 100:18

**usually** 17:7
24:2 43:19
44:18 48:25
58:17 90:3,20

**utilization**
94:8

**utilize** 36:18
50:8 71:23
72:1

**utilized** 57:18

---
V
---

**various** 62:3
101:19

**verbal** 8:13
15:4

**verbalizing**
8:16

**verification**
38:5 41:22

**verified** 37:17
38:2

**verify** 37:9

**verifying** 38:7

**versus** 52:14
76:5 82:12
85:5

**via** 2:12,23 4:5
63:15 67:11

**victim** 38:19
55:4 56:5
63:6,21

**victimization**
55:5,7

**video** 5:3 92:3

**videoconference**
2:12,23 4:5
5:9

**view** 93:21

**views** 94:16

**vigilance** 99:20
100:1,13 101:3

**violence**
55:9,15,25
56:14 57:1,10
58:11 59:1
72:10,15,22

**violent** 46:11
50:14 52:4
60:12,18 71:11
73:24 80:22
82:16,21 83:14

**visit** 92:10

**visitation**
82:11 92:4

**visually**
94:9,12

---
W
---

**wait** 8:5,6

**waiting** 27:5
43:20 48:3

**waived** 4:14

**walk** 31:23
45:7,8,9 46:20
47:3 61:12
85:20,22 86:12

**walking** 33:19
84:25 86:18
87:13 90:12

**warrants** 14:24
15:10

**wasn't** 90:8,13

**watch** 17:9
19:8,10

**watching** 83:12

**ways** 16:23

**weapon** 75:7,12
79:10,15

**WEDNESDAY** 4:6

**week** 61:1
99:5,8

**weekend** 24:10

**weight** 65:24

**Welfare** 3:8

**we'll** 37:8
58:18

**wellbeing** 85:1
103:7,10

**we're** 5:2,9
6:6,11,14 8:10
29:9 33:12,14
37:6 38:16
54:1 69:5
88:20 97:3
104:12

**we've** 54:23
59:4 73:16

90:10 93:13,15

**whatever** 30:10
37:6 57:17
86:24 93:9

**whatever's** 69:1

**whatnot** 63:25

**Whenever** 18:4

**whereabouts**
101:12

**Whereas** 77:15

**whether** 11:1
21:7 27:9
36:20 37:14
38:7 39:6 43:3
54:8 55:1,6,8
56:12 57:11
59:25 76:4

**white** 82:17

**whoever** 39:5

**whole** 7:4 98:17

**who's** 17:13
43:22 56:13

**whose** 42:18

**windows** 95:12

**witness** 4:13,14
5:16,25
6:20,22,24
7:6,17 10:23
12:18,23
13:3,12,17
14:19 20:12
21:18 22:12,19
23:3,11 24:19
25:1,14,21
27:4,12,19
29:9,13 30:22



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CASE NO.:  5:23-cv-00661

KRYSTI MERCHANT, as Personal
Representative for the Estate of
Cory Merchant, Deceased,

Plaintiff,

v.

BILLY WOODS, Sheriff of Marion County,
Florida, in his official capacity;
Deputy Justin Kosinski;
Deputy Joseph Miller,
Sergeant Jerome Dukes,

Defendants.

_____/

## <u>DEFENDANT, BILLY WOODS ANSWERS TO INTERROGATORIES</u>

1. State the name and address of the person or persons answering these interrogatories, including the following biographical information:

   a. Name;
   b. Address;
   c. Current Place of Employment;
   d. Current Rank;
   e. Length of time involved with Marion County Sheriff's Office or Marion County Jail;
   f. Duties on day in question;
   g. Date of any interaction with Plaintiff's Decedent.

**ANSWER: Marissa Duquette, General Counsel, Marion County Sheriff's Office c/o Bruce R. Bogan, Esq., Hilyard Bogan & Palmer, 105 E. Robinson Street, Suite 201, Orlando, FL 32801. The Sheriff is sued in his official capacity.**

**The below responses are not based upon personal knowledge, but affirmed upon the information of the Marion County Sheriff's Office and Counsel engaged to represent the Sheriff in this matter.**

2. Are you aware of any statement made by Plaintiff, his sister, Krysti Merchant, or his brother, Tommie Merchant, regarding the incident at issue in this case, whether oral, written, or

EXHIBIT
19

recorded in any way, including, but not limited to, a stenographic, mechanical, electrical, audio, video, motion picture, photograph or other recording, or transcription thereof, and, if so, state the following:

   a. Date, place, and time taken;
   b. Name and address of the person or persons connected with taking it;
   c. Names and addresses of all persons present at the time it was taken;
   d. Whether the statement was oral, written, shorthand, recorded, taped, etc.,
   e. Was it signed?
   f. Names and addresses of the persons or organizations under whose direction and upon whose behalf it was taken or made;
   g. Attach an exact copy of the original of said statement, interview, report, film, or tape to your answers to these interrogatories; if oral, state verbatim the contents thereof.

**ANSWER: This Defendant is sued in the official capacity, No.**

   3. State the names and addresses of every person known by any defendant, defendant's representatives or defendant's attorney(s) to have witnessed the occurrence mentioned in the complaint, who was present at the scene within sixty (30) minutes prior to or following the occurrence or who has knowledge relevant to the incident. Designate the name and title and/or position of each person listed in addition to the proximate time each person arrived at the scene.

**ANSWER:**

Deputy Justin Kosinski
Marion County Sheriff's Office
c/o Bruce R. Bogan, Esq.
105 E. Robinson Street
Orlando, FL 32801

Deputy Joseph Miller
Marion County Sheriff's Office
c/o Bruce R. Bogan, Esq.
105 E. Robinson Street
Orlando, FL 32801

Sergeant Jerome Dukes
Marion County Sheriff's Office
c/o Bruce R. Bogan, Esq.
105 E. Robinson Street
Orlando, FL 32801

Deputy Craig Savage
Marion County Sheriff's Office

Deputy Kristofer Valdez
Marion County Sheriff's Office

Nurse John Michael Little
3310 Boy Circle
Oxford, FL 34484

Nurse Natasha Lafaye Sanders
1096 West Clower Street
Bartow, FL 33830

Nurse Carrol Lindsay
Marion County Jail

Eric Lutterloah, Inmate
Inmate Marion County Jail
700 NW 30th Ave.
Ocala, FL 34475

Angel Acosta-Cruz
3719 Grand Blvd.
East Chicago, IN 46312

Jason Ronald Santore
5267 W. Homosassa Trail
Homosassa, FL 34448

Robert Benjamin Furr
10115 SE 125th Place
Belleview, FL 34420

Ryan Jackson Glover
3121 SE 42nd Ave.
Ocala, FL 34480

Frank Louis Calabria
8675 SW 52nd Street
Ocala, FL 34481

Rafael Antonio Rodriguez
5380 SW 38th Place
Ocala, FL 34474

Leo Allen McFatten, Jr.
610 NW 19th

Ocala, FL 34475

John Robert McDowell
3310 Boy Circle
Oxford, FL 34484

David James Riedle
7110 NE 14th Place
Ocala, FL 34470

Cory Merchant's medical providers

Discovery continues.

    4. State whether or not statements have been obtained from any persons mentioned in the answers to Interrogatory Number 3 above with regard to the facts or circumstances surrounding the occurrence mentioned in these pleadings. If so, state the following:

    a. The names, addresses and employers of persons whose statements were obtained;
    b. The date, time, and place of the taking of each statement;
    c. Names and addresses of all persons present at the time each statement was taken;
    d. Whether the statement was oral, written, or recorded;
    e. Whether the statement was signed;
    f. Names and addresses of persons or organizations under whose direction and upon whose behalf each statement was taken; and,
    g. Name, address, employer, and job title of the person presently having control or custody of each statement.

**ANSWER:**

Deputy Justin Kosinski
Marion County Sheriff's Office
c/o Bruce R. Bogan, Esq.
105 E. Robinson Street
Orlando, FL 32801

Sergeant Jerome Dukes
Marion County Sheriff's Office
c/o Bruce R. Bogan, Esq.
105 E. Robinson Street
Orlando, FL 32801

John Robert McDowell (inmate)
3310 Boy Circle
Oxford, FL 34484
David James Riedle

7110 NE 14th Place
Ocala, FL 34470

Nurse John Michael Little
3310 Boy Circle
Oxford, FL 34484

Nurse Natasha Lafaye Sanders
1096 West Clower Street
Bartow, FL 33830

Ryan Jackson Glover (inmate)
3121 SE 42nd Ave.
Ocala, FL 34480

Jason Ronald Santore (inmate)
5267 W. Homosassa Trail
Homosassa, FL 34448

    5.  Identify by author, addresses, date written and such other information as would be
necessary in order to obtain the requested item; all memos, correspondence, e-mails, notes, minutes
and any and all conversations, discussions, and public forums or communications that were
recorded in any form, regarding the occurrence involving Plaintiff, including social media
and text messages.

**ANSWER: Objection; overly broad in time and scope. Without waiving, Defendant agrees
to provide a list of emails between Plaintiff and Defendant that have been previously
provided in response to request for production.**

    6.  Identify the timeline of the occurrence at issue and the corresponding actions of
Defendant Correctional Officers and/or any other agents of Florida Department of Corrections or
the Marchant County Jail, including what Defendant Correctional Officers, including yourself,
were doing in the ten minutes immediately preceding the attack, when and how Defendant
Officers and/or agents, including yourself, were alerted to injury or potential injury to
Plaintiff, the time or times Defendant Officers and/or any other agent of Marion County
arrived at or checked on the location where Plaintiff was located and attacked, the time(s)
Defendant officers called for any other Defendants, agents Marion County, physicians or
nurses, or emergency medical professionals to examine Plaintiff, the time Defendant officers
called for an ambulance; and the time the ambulance arrived.

**ANSWER:**

**1:10 a.m. Kosinkski Alerted by inmate Frank Calabria "man down" in Alpha section,
while Kosinski was working Gulf Pod Rover. Kosinski immediately called for code red.**

**1:13 a.m. Nurse Little, Sgt. Dukes, Sgt. Konopinski, Dep. Savage, Deputy Valdez responded with stretcher and back board. Merchant was observed with blood in his ear. Merchant was also observed to be breathing but non-responsive.**
**1:16 a.m. EMS contacted by Jerome Dukes.**
**1:24 a.m. EMS arrived in booking.**

**Discovery is continuing.**

7. Describe the internal investigation(s), if any, that Marion County initiated and/or conducted regarding any of the occurrences described in Plaintiff's complaint and Defendant Correctional Officers' involvement therein. Please include date(s) of the investigation(s), a description of the investigation(s), a list of individuals questioned or interviewed, and list any and all employees of Florida Department of Corrections or the Marion County that were involved in the investigation(s) including their roles.

**ANSWER: This interrogatory is objectionable on the grounds that it is not a standard interrogatory, it is compound, irrelevant, immaterial, overly broad, not limited as to time, overly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and possibly requesting contact information of law enforcement officers which is confidential and protected by statute. Without waiving, all investigative reports by Marion County Sheriff's Office and Marion County Criminal Investigation have been provided to the Plaintiff previously in response to request for production. Discovery is continuing.**

8. State what steps were taken to check in on, monitor, or assess the physical, medical, mental, emotional or psychological condition of Plaintiff, during the time of his assault or any time after, including what actions were taken, who performed the actions, and when the actions were performed.

**ANSWER: Immediately following inmate notification, detention officers were alerted, a Code Red was dispatched, and nurse staff and officers were immediately responsive. EMS was contacted and Mr. Merchant was transported to boking to await EMS arrival.**

9. State whether any individual who responded to the fatal attack on Cory Merchant or was otherwise responsible for the supervision of Cory Merchant's pod on the day of his death has ever been the subject(s) of a civil and/or criminal lawsuit and/or civil and/or criminal investigation and if so, state:

    a. the date of each civil and/or criminal lawsuit and/or civil and/or criminal investigation;
    b. the source of each civil and/or criminal lawsuit and/or civil and/or criminal investigation;
    c. the outcome of each civil and/or criminal lawsuit and/or civil and/or criminal investigation; and
    d. where and by whom each civil and/or criminal lawsuit and/or civil and/or criminal investigation is documented.

**ANSWER: Unknown.**

10. State whether Marion County or the Marion County Sheriff's Office has ever been involved in a civil lawsuit involving the death of an inmate in the last five years. If so, state for each lawsuit:

      a. The date the lawsuit was filed;
      b. The case name;
      c. The case number;
      d. The court it was filed in;
      e. The plaintiff's name;
      f. Any co-defendants;
      g. The outcome (i.e. settlement, verdict);

**ANSWER: The Sheriff does not maintain separate lists of such lawsuits involving deaths of inmates, however these records would be matters of public records available equally to all parties through a review of the court dockets of the 5th judicial circuit in and for Marion County, Florida, and the United States District Court for the Middle District of Florida.**

11. For provide a summary of your police, jail and criminal justice experience that begins with your first police, jail or criminal justice related training or your first being hired by any police department or criminal justice agency, whichever came first, and continues to present and which states for each police department, jail or criminal justice agency that you have worked for, including:

      a. The date of hire, the date of separation and the reason therefore;
      b. A chronological listing of all ranks and all positions held and a description of duties for each rank and position held;
      c. A complete list of all police and criminal justice training that you have attended, the dates you attended and the address of the facilities that you attended;
      d. A list of assignments from your respective start date with MCSO to present; and,
      e. The reason for the change in assignment(s), if any, previously mentioned in subsection (d) above.

**ANSWER: This does not apply to Sheriff Woods in his official capacity and is irrelevant to this case. This interrogatory is objectionable on the grounds that it is not a standard interrogatory, it is compound, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.**

12. State whether Cory Merchant had ever provided any information regarding his well-being, state of mind, or feeling of safety inside of the Marion County Jail, including whether he was being threatened, blackmailed, extorted, or was otherwise emotional, upset, in pain, injured, in pain, fearful, or in need of medical attention to any of the Defendant Correctional Officers' at any time, including what time the request was made, to whom the request was made, what response was made, and who responded to such request.

**ANSWER: Objection as this request is overly broad in time and scope. Without waiving, this this information was already produced. Cory Merchant was investigated and was evaluated by a nurse.**

13. State all information that you had received prior to Cory Merchant's death regarding the inmate Eric Lutterloah, including but not limited to his criminal background, prior incidents in the jail, and his reputation amongst other employees and detainees.

**ANSWER: No incident of inmate violence by Lutterloah occurred prior to his attack on Merchant. All subsequent incident reports involving Eric Lutterloah have been provided to the Plaintiff previously in response to Requests for Production.**

14. Identify and explain any and all training MCSO provides to its agents, including documentation of what training, if any, was received by Defendant Correctional Officers, including frequency of training, length of training, whether training was optional or mandatory, and whether and when re-training is required, relating to the following topics and/or rules, guidelines, procedures, policies, or regulations on the following topics:

    a. The supervision and monitoring of inmates;
    b. The housing of inmates;
    c. Video Surveillance of housing units;
    d. Fights, assaults, attacks or disturbances in housing units and correctional officer responsibility thereto;
    e. The handling, movement, or treatment of inmates who are suspected to be threatened or experiencing a threat of violence from another inmate;
    f. The creation by agents and employees of treatment or reports of incidents in housing units;
    g. Inmate lockdown;
    h. Screening of inmates as potential risks for violence;
    i. Any and all procedures relevant to the occurrence such as the one detailed in Plaintiff's Complaint at Law.

**ANSWER: All Detention Training and Policies for the Marion County Sheriff's Office has been provided previously to Plaintiff in response to Requests for Production. Additionally, the training file for each of the Defendant Officers have been provided.**

15. Describe in detail the housing layout at the Marion County Jail, including how many housing units there are, the names for each housing unit, any special designations assigned to any unit (such as medical units, segregations units, booking units), the inmate capacity and number of bunks per unit, whether each housing unit contains cells or is dorm-style.

**ANSWER: The Marion County Jail housing is as shown below:**

**11 housing units, Maximum Capacity 1924**

**Alpha Pod - Max cap 176**

**1. Section A-** will house male inmates who are placed in Administrative and Disciplinary Confinement.
**2. Section B-** will house male inmates who have been placed in Disciplinary Confinement.
**3. Section C-** will house male inmates who are placed in Administrative and Disciplinary Confinement.
**4. Section D-** will house High Medium and Maximum-Security population male inmates with Custody Levels 2 and 3.
**5. Section E-** will house male inmates who have been placed in Maximum Security Administrative Confinement.
**6. Section F-** will house male inmates who are place in Administrative Confinement.

**Bravo Pod - Maxcap192**

**1. Section A-** will house Pre-Classification female inmates pending Primary Classification and will house overflow minimum security female inmates.
**2. Section B-** will house male Medium Security Inmates with a Custody Level 4 and 5.
**3. Section C -** will house male High Medium Security inmates with a Custody Level3-High Medium.
**4. Section D -**will house male High Medium Security inmates with a Custody Level3-High Medium.
**5. Section E-** will house male Medium Security Inmates with a Custody Level 4 and 5.
**6. Section F-** will house female inmates placed on Suicide Step Down, and Special Needs

**Charlie Pod - Max cap 192**

**1. Section A-** will house female inmate workers and Minimum-Security Inmates.
**2. Section B-** will house female Medium Security inmates with custody levels 3,4 and 5.
**3. Section C-** will house female Medium Security inmates with custody levels 3,4 and 5.
**4. Section D-** will house female Pre-Classification housing and Medium Security Inmates, custody level 3,4 and
**5. 5. Section E-** will house Female Medium inmates with custody levels 2,3, and 4.
**6. Section F-** will house female inmates who have been placed on Disciplinary Confinement and Administrative Confinement.

**Delta Pod – Max cap 192**

**1. Section A-** will house male Medium Security Inmates with a Custody Level 4and 5.
**2. Section B-** will house male Medium Security Inmates with a Custody Level 4and 5.
**3. Section C-** will house male Medium Security Inmates with a Custody Level 4and 5.
**4. Section D-** will house male Medium Security Inmates with a Custody Level 4and 5.
**5. Section E-** will house male Felony inmates with Sexual Offenses.
**6. Section F-** will house male Felony inmates with Sexual Offenses.

**Echo Pod- Max cap 256 Currently Empty Foxtrot Pod – Max Cap 256**

**1. Section A-** will house male Minimum Security (Green and White) Outside Inmate Workers.
**2. Section B-** will house male Minimum Security inmates, custody levels 6-9.
**3. Section C-** will house male Medium Security Inmates with a Custody Level 4 and 5.
**4. Section D-** will house male Medium Security Inmates with a Custody Level 4 and 5.

**Gulf Pod Max cap 265**

**1. Section A-** will house male felony inmates with Sexual Offenses.
**2. Section B-** will house male Medium Security Inmates, Custody Level4 and 5.
**3. Section C-** will house male Medium Security Inmates, Custody Level 4 and 5.
**4. Section D-** will house Pre-Classification male inmates pending Primary Classification.

**Hotel Pod– Max cap 256**

**1. Section A-** will house male Inside and Kitchen Inmate Workers.
**2. Section B-** will house male Inside Inmate Workers.
**3. Section C-** will house male will house male Medium Security Inmates with a Custody Levelof4 and5, and overflow of Low-Level Low Bunk Minimum Security Inmates.
**4. Section D-** will house Kitchen Inmate Workers.

**Juvenile Pod 20**

**1.** Will house male Juvenile Inmates who have been Direct Filed into adult court.

**Infirmary**

**1.** The Infirmary will house segregated male and female inmates with medical problems that require close supervision by medical staff.

**Medical pod 128**

**1. Section A-** will house female inmates placed on Suicide Precaution.
**2. Section B-** will house male inmates with medical issues that require close supervision by medical staff.
**3. Section C-** will house male Inmates who are placed on Suicide Step-Down or Special Needs. **4. Section D-** will house male inmates placed on Suicide Precaution.

Pursuant to 28 U.S.C §1746, I declare under penalty of perjury that the foregoing is true and correct. Also pursuant to Florida Statute 92.525 under penalty of perjury, I declare that I have read the foregoing document and that the facts stated in it are true to the best of my knowledge and belief.

*/s/ Marissa Duquette*
**Marissa Duquette, General Counsel**
**Marion County Sheriff's Office**

# *SHERIFF* - Marion County
## DETENTION PERSONNEL POST ASSIGNMENTS

| DATE: 11-06-21 | SHIFT: A-2 | WATCH COMMANDER: LT JOHNSON | |
|---|---|---|---|
| SECTOR 1 | SECTOR 2 | SECTOR 3 | SECTOR 4 |
| SERGEANT | SERGEANT | SERGEANT | SERGEANT |
| SGT DUKES | SGT. KONOPINSKI | SGT.KONOPINSKI | SGT FLARHERTY |
| G-DORM ROVER (*2) | ALPHA CONTROL (*2) | DELTA CONTROL (*1) | BOOKING (DD) (*2) |
| MILLER | SALINAS | CLOSED | VALDEZ |
| KOSINSKI | ITURREY | | COUNTS |
| | | | RAFFERTY L/D |
| | | | |
| | | | |
| H- DORM ROVER (*2) | ALPHA ROVER (*3) | DELTA ROVER (*2) | BOOKING (DA) (*1) |
| SAVAGE | WELLS | CLOSED | RIVERA |
| DESANDO | POTTS | | GATSYS(1800-2200) |
| | ENCHAUTEQUI | | |
| | | | BOOKING HOUSING (DD) (*2) |
| | | | CLOSED |
| MEDICAL DORM ROVER (*4) | BRAVO CONTROL (*1) | E/F CONTROL (*1) | |
| WASHINGTON | FISHER | LOFTON(1800-0000) | CLASSIFICATIONS (*2) |
| WELCH(1800-2300) | | GATSYS(2300-0600) | BENITEZ/FOREMAN |
| DAVISON | | | HOSENDOVE |
| YANCEY | BRAVO ROVER (*3) | ECHO DORM ROVER (*2) | PROPERTY (*1) |
| | GREENE | MCCLURE | RICHARSON |
| | JAMES | BROWN | |
| INFIRMARY ROVER (*1) | | | INTAKE CONTROL (*1) |
| DENARDIS | | | PEREZ |
| | | | |
| | CHARLIE CONTROL (*1) | FOXTROT DORM ROVER (*2) | MASTER CONTROL (*1) |
| MED OBS | HAMILTON | COUTURE (1800-0000) | TUCKER |
| CONDRON | | NELSON | |
| | | | |
| | | | FIRST APPEARANCE (Dayshift) |
| | CHARLIE ROVER (*2) | | |
| | LALL | ENTRY SECURITY (7AM-7PM) (*1) | HOSPITAL/CENTERS |
| VIDEO VISITATION (I & A) (*1) | RUSHING | ZIMMERMAN | AHO- MCCARTHEY |
| CARTER | | | WHITE 1800-0000)KING |
| | | | WELCH/COUTURE(0000-060 |
| | JUVENILE (*2) | CENTRAL CONTROL (*1) | SHANDS-NORTH #11-520 |
| CLINIC | COLEMAN | QUAYE | I/M PLAZA |
| | MARTINI | | BEEHLER |
| STAFF DINING (NIGHTS) (*1) | | | AHO-FUTCH ICU-312 |
| CARTER | | | JEAN |
| LEAVE COMMENTS: | LEAVE COMMENTS: | BREAKS/OTHER: | AHO-HOBBS-ICU111 |
| V-D.D.BOWLEY | SC- ELLSWORTH | (NO JUVENILES IN BRAVO | STRICKLAND |
| V-D.D.HENSON | SC -JENTSCH | 2 D.D. ASSIGNED) | |
| V-D.A. BLOUNT | | | |
| V-SGT FOILES | | CPOD-INF/MED OPS/C | MANDATORY OVERTIME: |
| S-PARSON | | APOD RM 431 | D.D.BEEHLER |
| | | BRAVO MASTER/CENT | D.D.GREENE |
| FMLA- D.D. CASILLAS. | | E POD E/FCONTROL | D.A.ITURREY |
| | | VISITATION-C/1 ACONTROL | OTHER OVERTIME: |
| | | PROPERTY- INTAKE | P.D.WHITE(1800-0000) |
| | | | BAIL T.KING.(1800-0000) |
| | | | D.A.QUAYE |
| | | | |
| | | | |
| | | | |
| | | | |

**PREA 115.13 REQUIRES WRITTEN JUSTIFICATION FOR ANY DEVIATION FROM THE (*) ASTERICK STAFFING PLAN.**

| | | | |
|---|---|---|---|
| AL-ADMIN LEAVE | H-HOSPITAL | OTP-OT PAID | V-ANNUAL LEAVE |
| B-BEREAVEMENT | M-MILITARY | S-SICK LEAVE | WC-WORKER'S COMP |
| C-COMP LEAVE | O-OTHER | SC-SCHOOL | Z-LEAVE WITHOUT PAY |
| F-FLEX TIME | OTC-OT COMP | T-TRAINING | |

EXHIBIT
32

## FED. R. CIV. P. 30(B)(6) RIDER
## MARION COUNTY

1. Any and all Marion County Sheriff's Office or Marion County Jail (herein "Marion County") policies, procedures, and training on the intake and booking process, including but not limited to documents created in the booking process, interviews conducted with the incoming detainee, medical and mental health screening, screening for violent behavior, communications with the arresting officers regarding the individual entering custody, and review of records pertaining to prior arrests or incarcerations.

2. Any and all Marion County Sheriff's Office or Marion County Jail (herein "Marion County") policies, procedures, and training on the supervision and monitoring of detainees. The scope of this topic includes but is not limited to how detention deputies are assigned to a particular pod, including G-POD, what their duties are regarding supervision, monitoring, and prevention of violent altercations, any technology associated with their duties such as surveillance cameras and devices used for communication, procedures which would apply to circumstances where inmates engage in violent altercations, and relevant chains of command.

3. Any and all Marion County Sheriff's Office or Marion County Jail (herein "Marion County") policies, procedures, and training regarding G-POD, including the number of detainees typically housed there, the number of bunks in G each section of G-POD, how G-POD is similar or different to other pods within the jail, the detainee makeup of G-POD, the occurrence of violence within G-POD, the physical layout of G-POD, and the detention deputies typically assigned to surveil G-POD.

4. Any and all Marion County Sheriff's Office or Marion County Jail (herein "Marion County") policies, procedures, and training regarding "trustees," including but not limited to how an individual may be assigned a trustee positions, how trustees are trained, and the duties and responsibilities of a trustee.

5. Any and all Marion County policies, procedures, and training on housing assignments for inmates, including but not limited to referral to medical personnel, assignment to holding cells, assignment to general population cells, assignment to cells with video monitoring, assignment to and withing the Health Services Building, assignment to intake or booking cells, housing assignments specifically designated for individuals with special housing needs, correlation between housing assignments and levels of supervision, designations requiring detainees to be housed with another individual, visual and audio surveillance within certain cell designations, and housing options that may be available for individuals in Marion County custody who have a history of violent behavior.

6. Identification of the Marion County policymaker or individual with the most knowledge about the training and supervision of officers with the Marion County Jail as of the dates of the incident at issue.

7. The duties, responsibilities, expectations, chains of command, of Marion County employees, and how those vary amongst detention deputies, post officers, sergeants,

EXHIBIT
47

lieutenants, counselors, nurses and any other employees relevant to the incident at issue.

8. Any and all Marion County policies, procedures, and training pertaining to medical emergencies, including how employees may learn that a medical emergency has occurred, communicate with each other regarding a medical emergency, and ensure that appropriate medical services are dispatched to the location.

9. Any and all complaints, lawsuits, internal reviews, administrative investigations, or other actions regarding failures and alleged failures on the part of Marion County to adequately supervise detainees and/or protect detainees from violence. The scope of this topic includes but is not limited to lawsuits relating to these allegations and occurrences, the number of violent detainee-on-detainee altercations and associated injuries in Marion County custody, any and all investigations conducted into violent detainee-on-detainee altercations and associated injuries, discipline and remedial measures carried out in response to those detainee-on-detainee altercations and associated injuries, the names and circumstances of all individuals who been a party to detainee-on-detainee altercations and associated injuries, the dates on which these individuals experienced detainee-on-detainee altercations and associated injuries, changes made to policies, procedures, and training in order to address the occurrence of detainee-on-detainee altercations and associated injuries at Marion County, and discussions had amongst Marion County employees regarding such changes to policies, procedures, and training.

| 6634.00 | Reference: |
|---|---|
| **INMATE WELFARE INFORMATION** | |
| **Effective Date:  06/03/09** | **Revision Date:  02/15/17** | |

## 6634.00  POLICY

**A.** It is the policy of the Marion County Sheriff's Office that we provide an avenue for the families and those seeking information about the treatment of inmates or those wishing to complain about the treatment of an inmate while housed in the Marion County Jail.

**Note:** This policy is in addition to the inmate grievance process already in place.

## 6634.10   PUBLIC ACCESS

**A.** An avenue available will be maintained on the public web page with the capability of someone sending a typed message concerning inmate welfare.  This message will be sent to all Detention Watch Commanders as well as the Bureau Chief and Division Commanders of the Detention Bureau.

## 6634.20   RESPONSIBILITY

**A.** The Watch Commander will make every attempt to resolve the concerns of the reportee within a reasonable time and shall be responsible for ensuring that the issue is documented and all parties have been satisfied prior to closing out the incident. A copy of the Watch Commander's response will be forwarded to the Jail Administrator's secretary who will save for later viewing.

## 6634.30  REVIEW PROCESS

**A.** The reported issue will be reviewed by the Bureau Chief and Division Commanders prior to being filed into the respective inmates file.

**-END-**

EXHIBIT
49

32:25 33:4,15
38:12 40:21
43:2 46:1,15
47:5 51:23
52:19 53:1,17
54:14,18 55:17
56:3,17
57:3,23 61:16
62:3,22 63:23
66:4,20 69:18
71:2,14
72:4,17,24
74:4
75:10,16,21
76:1,11 77:2,7
78:14 79:13
81:20 84:3,17
86:2,11 87:15
88:6,18 93:24
94:8,18,23
95:5,19 96:4
98:12 100:6,22
101:7 105:6

**witnesses** 8:1

**Woods** 1:13 2:14
3:11 5:13
20:18

**work** 14:3,10
17:11 18:19
26:11,12,14
29:8 46:21,24
102:2

**worked** 26:17

**worker** 70:17,18
102:1,6,7

**workers**
101:11,16,22
102:8

**working** 20:1

67:17 89:12
99:7

**works** 68:1

**would've** 18:1

**writer** 30:12

**writes** 68:22

**writing** 18:23

**written**
16:15,21
17:19,20 18:2
83:15 87:22

**wrong** 8:23
36:17

---
Y
---

**yards** 89:5

**Yep** 33:24 76:17

**yet** 22:22 70:18

**yourself** 20:20

**you've** 43:9
78:10 96:10

---
Z
---

**zoom** 91:11



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

*SHERIFF* - Marion County
**POST ORDER**

**POST: Gulf Pod**

**PURPOSE:**   The purpose of this Post Order is to outline the duties and responsibilities of those detention deputies assigned to the Gulf Pod post. This Post Order supersedes all previous Gulf Pod Post Orders and will not be changed without the approval of the Detention Bureau Chief or his/her designee.

**DESCRIPTION:**   The Gulf Pod post will be defined as any area in the pod and surrounding area occupied by inmates. This post is manned 24 hours a day, seven days a week.

The Gulf Pod housing unit consists of minimum and medium custody inmates who are sentenced, awaiting court, or transfer to another facility.

**A.  General Information**
All employees will be thoroughly familiar with all policies, procedures, directives, and special orders of the Marion County Sheriff's Office and the Detention Bureau.

**B.  Special Equipment**
Each person assigned to this post is issued certain items of equipment to assist him/her in the performance of his/her duties. Employees are not authorized to be in possession of any item of equipment not issued or approved by Purchasing, the Detention Bureau Chief, or his/her designee.

**C.  Supervising Officer**
A Sector Sergeant is assigned as area supervisor. All employees are required to obey all written, verbal, or signified orders given by their superior without hesitation. If an employee does not understand the supervisor's instruction, it is his/her responsibility to immediately ask for clarification. Disobeying orders, insubordination, or slow response will not be tolerated.  Sector Sergeants will be responsible for ensuring all inventory is correct and accurate.

**D.  General Responsibilities**
1. Maintain the security of the facility at all times.
2. Maintain vigilance of all inmates assigned to the unit.
3. Be thoroughly familiar with the Jail's emergency procedures.
4. Maintain a clean and orderly operation of the post during tour of duty.

**E.  Specific duties and Responsibilities**

1. On coming officers shall visually inspect all assigned equipment and be briefed by the off-going detention deputies. Any equipment that is inoperable will be reported to the Sector Sergeant and recorded in the computer's daily activity log.

   a. The list of equipment will not be changed when a piece of equipment is out for repair. It will be logged out and an incident report made.

2. Inventory and sign for all keys, equipment, and radios. Any discrepancies in the number of keys or equipment will be reported immediately to the Sector Sergeant and recorded in the computer's daily activity log.

---

**EXHIBIT**
**51**

*SHERIFF* - **Marion County**
**POST ORDER**

    **a.** Keys are to be worn on the key clip at all times when not in use.

    **b.** The inventory of the keys will include a visual inspection of the keys and secured rings. If any of the keys and/or rings are missing or broken, an annotation will be recorded in the computer's daily activity log and an Incident Report will be completed and forwarded through the chain-of-command with a copy to the Key Control Officer.

**3.** Check the temperature in the refrigerator and record the temperature in the computer daily activity log. Temperature range in the refrigerator will be maintained between 35 and 40 degrees Fahrenheit.

**4.** Ensure work area is kept clean at all times.

**5.** Conduct headcounts as follows:

    **a.** A random standing headcount, with I.D., will be accomplished by each shift.

    **b.** An additional lockdown headcount will be conducted as the inmates are locked-down each evening at 2200 hours.

    **c.** Report results of headcount to Booking.

    **d.** Discrepancies shall be reported immediately to the Watch Commander.

    **e.** Procedures for conducting physical and lock down headcounts are outlined in Operational Procedures 6164.00, Headcount of Inmates.

**6.** Meals shall be served as soon as they arrive in the pod. They will be served by an detention deputies, or by an inmate worker directly supervised by an detention deputies, from the food cart, through the open door.

    **a.** All cups and sporks provided to the inmates will be picked up each morning and returned to the Kitchen for cleaning. They will be returned with the lunch meal.

**7.** Mail will be passed out as soon as possible after it is received in the pod. Mail will be given to the inmate it is addressed to, not placed on bunks or tables. If the inmate has been reassigned to another pod, the inmate's mail will be forwarded to that pod.

**8.** Inmate Grievances should be handled by a Sector Sergeant by Operational Directive 6633.00.

**9.** Inmate supply procedures shall be as follows:

    **a.** Toothbrushes and soap are exchanged and issued on Sunday night by the night shift.

    **b.** Razors will be exchanged on Tues, Thurs and Sunday evenings, upon completion the officer will ensure the inmate returns the used razor. The detention deputies will inspect the razor and dispose of accordingly. The razor log will be given to the Sector Sergeant for compliance.

    **c.** Toilet tissue and toothpaste may be issued at any time providing the officer receives the empty

*SHERIFF* - Marion County
**POST ORDER**



container from the inmate.

**10.** Indigent inmates can order two post cards a week and ink pens will be exchanged on a monthly or as needed basis from Indigent Services.  A sign-up sheet shall be placed into each section on a weekly basis.  The supplies will be delivered by the Indigent Services Coordinator during the same week. Post cards, and ink pens will be provided by the Canteen to indigent inmates.

    **a.** See Operational Directive 6677.00, Inmate Mail

**11.** Out going mail shall be screened by the night shift. No mail will be accepted if it is sealed with the exception of privileged mail.  After screening, the place his or her ID#. No mail will be accepted by Pod detention deputies after lockdown.

**12.** The pod detention deputies should screen all inmate requests. In most cases, the pod officer will be able to handle the request. If unable to answer the request, ensure it is sent to the next level of supervision which is capable of handling the situation.

**13.** In the event of a fire alarm, the following procedures shall be implemented:

    **a.** The Pod detention deputies will identify the location of the alarm.

    **b.** The Pod detention deputies will notify Booking and Master Control, via the radio, of the alarm and the location of the alarm.

    **c.** The Pod detention deputies will physically inspect the indicated area and then call an all clear on the area to both Booking and Master Control, via the radio.

    **d.** In the event a fire is visually observed by the officer, evacuation or fire fighting, if deemed necessary, will be in accordance with Operations Procedures 6301.00, Fire Plan - Marion County Jail.

15.  Evacuation in a Fire Emergencies Situation

    a.  Once the decision to evacuate has been made, the staff will do the following:

        1.  Will call for assistance
        2.  Retrieve your head-count sheets for the entire Pod.
        3.  Don the iEvac hood located in the Rovers' Office.
        4.  Move quickly and calmly to the Section with the Fire
        5.  One detention deputy will open the Primary Evacuation Exit, while the other Officer opens the Section door and instruct the inmates to proceed to the Fire Exit. The other detention deputies will instruct the inmates to line up against the wall.
        6.  Once the inmates have evacuated the Section and are secured at the primary evacuation area. Assisting Officers should have arrived at this time. The detention deputies will:
            a.  Retrieve their appropriate Fire Equipment if applicable (ie, Fire Extinguisher and/or Fire Hose), if it is a minor fire as defined in our Fire Plan Directive.



**SHERIFF - Marion County**
**POST ORDER**

      b.     Visual sweep of the entire area for any additional inmates left behind.

      c.     Take the head-count sheet and conduct a headcount of all of the inmates evacuated and then of the entire Pod to ensure accountability of all inmates.

  b.     In the event of an evacuation to the outside perimeter, the staff will do the following:

      1.    The Watch Commander will notify the following:

          a.   The Comm. Center – advising them of the nature of the emergency and request for Road Patrol to assist with securing the outside perimeter fence. Also, all available Officers will assist securing the outside perimeter fence and on the inside of the fence. (AT NO TIME WILL INMATES BE AUTHORIZED ON THE PERIMETER YARD, UNLESS IT IS SECURED WITH PROPER ARMED STAFF ON THE OUTSIDE OF THE FENCE!

          b.   Once the outside perimeter is properly secured, the Watch Commander will then stage Officers in appropriate areas to ensure security and/or prevent any escapes.

**16.** In the event of a medical emergency, contact the Medical Unit using the appropriate ten signals/codes. Provide the appropriate first aid until the nurse arrives.

**17.** Florida State Statute books shall be used as follows:

  a.  They may be used by the inmates at the officer's convenience**.**

  b.  They will not be allowed to be taken into the sections.

  c.  Log the use of the statute books in the computers Daily Activity Log.

  d.  Inmates may sit on the bench provided in the Rover's area when using the law books.

**18.** Recreation shall be conducted as follows:

  a.  At least once on each shift, the pod detention deputies will inspect both recreation yards for contraband and emergency exits security. This check shall be accomplished prior to any inmates using those recreation yards.

  b.  The officer shall log the times each section is permitted outside for recreation in the computers Daily Activity Log. Every effort will be made to ensure each section is afforded the opportunity for outside recreation on a daily basis.

  c.  The total number of inmates participating must be indicated in the log.

  d.  If, for any reason, an inmate is denied access to recreation, an incident report must be completed detailing why the privilege was suspended.

  e.  All recreation doors will remain closed, except when inmates are going to and from the recreation yard.  No door in the pod will be left ajar at anytime.



**SHERIFF - Marion County**
**POST ORDER**

**19.** On laundry days, the laundry exchange will be conducted by laundry personnel and assisted by the pod officers, as required in Charlie and Delta Sections.   The pod officers on the night shift will conduct laundry exchange in Alpha and Bravo Sections every night.  The laundry personnel will deliver the laundry carts to the pod on dayshift for laundry exchange on night shift for sections Alpha and Bravo.

**20.** Canteen forms will be handed out by night shift personnel on the assigned day. Canteen will be accomplished as scheduled.

   a.  If, for any reason, an inmate is denied access to canteen privileges, an incident report must be completed detailing why the privilege was suspended.

**21.** When a nurse is in the pod, he/she will be escorted and assisted at the section(s) door by a pod detention deputy.

**22.** Visitation will be conducted through the Video Visitation Monitors and coordinated through the Visitation Officer at the Information Visitation Center. The following procedures apply for all visits:

   **a.** Visiting hours consist of Sunday through Saturday from 0800-2145 hours, except between the hours of 11:30-1300 hours and 1630-1900 hours.

   **b.** All inmates will be notified of their scheduled visits that day.

   **c.** Any violation(s) of the visitation rules requires immediate notification of the Sector Sergeant, Sector Lieutenant, and Watch Commander.

   **d.** The Public Defender's Office may schedule an appointment with an inmate through the Classification's Office.  The schedule is posted daily on the Scheduled Events Reports.

**23.** Section doors shall only be opened at the discretion of the pod detention deputies or supervisors.

**24.** Pod detention deputies will continuously monitor the inmate worker's activities and whereabouts as well as supervise him/her as cleaning materials are placed into or taken out of the section(s).

**25.** Security checks will be accomplished every hour between the hours of 2200 to 0600. These checks will be logged and maintained by the pod officer in the computers Daily Activity Log.

**26.** Pass out snacks, at the appropriate times, to inmates on special diets and make appropriate entries of each name in the Pod Activity Log and the snack log.

**27.** The night shift detention deputies shall initiate Warehouse Tickets and forward to the supervisor for approval.

   a.  Each shift shall conduct an inventory and maintain an accurate count of all caustics and toxic chemicals at all times. Any time a caustic/toxic chemical is added or removed from the closet, the log will be changed accordingly.



**SHERIFF - Marion County**
**POST ORDER**

    b.  The Caustic Cabinet and/or any other area used to store chemicals shall be locked at all times except when directly supervised by an officer.

**28.** Inspections will be conducted for each section and bunk, at least once each shift and noted in the computers Daily Activity Log. The detention deputies inspecting the bunks and housing areas shall also indicate such action by recording his/her I.D. number in the Pod Computers Daily Activity Log.

    a.  Be alert for maintenance problems. Complete a Maintenance Work Order Request Form when a problem is discovered and forward to Jail Maintenance, via the email system.

    b.  If the problem involves a security breach, or has life threatening potential, notify the Sector Sergeant immediately and observe or isolate the area until it is checked.

**29.** Cleaning Supply Distribution

    a.  The cleaning supplies will be placed in the sections <u>(1) one hour before each meal and left in the sections (1) hours after each meal, then taken out of the sections and then placed back in the sections (1) one hour before lockdown.</u>

    b.  Any time supplies go into a section, or are used by the assigned inmate worker, they will be Reflected in the computer's Daily Activity Log as part of the inventory control procedures.

    c.  During those times the cleaning supplies are in the section, the pod officers are to be especially vigilant of any misuse of the equipment by the inmates.

    d.  Whenever a piece of equipment is broken, it will be noted in the Pod Activity Log along with how it was disposed of. An Inventory Log is maintained in each janitorial room.

    e.  This log will be used to track the equipment inventory which is conducted at the beginning of each shift and anytime something is added or removed from the room.  You will inventory and track the equipment on this log as you do the Caustic Logs.

    f.  Any time the Janitorial Room is not in use, the room will remain locked.  Each time the room is opened, an officer will supervise the addition or removal of equipment and log it in or out.

**30.** Lock checks shall be conducted every night after the inmates have been locked down, the officers will verify that the doors and locks are secure and operational in the respective work areas.

    a.  This will be accomplished by using the keys assigned to pod/area and physically opening the door(s) in the pod/area.

    b.  If the door has a key opening on both sides, the door will be opened using the inside and outside mechanisms.

    c.  The following doors are to be checked:



**SHERIFF - Marion County**
**POST ORDER**

    i.  All Fire/Emergency Doors

    ii.  All Pod Section Doors

    iii.  Recreation Yard Doors, except those that lead to the fenced in perimeter.

    iv.  Public Defender Rooms

d. A record of this check will made in the computers Daily Activity Log and called into Booking for inclusion on the Supervisor Control Sheet.

e. When a door alarm has been activated, immediately check the door that has set off the alarm and notify your immediate supervisor and master control of the reason the alarm was set off.

**31.** Do not allow unauthorized and/or off duty persons on the post.

**32.** Ensure all in house movements of inmates are entered into the pod computer and a Cell Assignment Form is forwarded to Classification. All cell changes must be approved by Classifications, a Sector Sergeant, or above.

a. <u>All inmate worker uniforms will be returned to laundry on the nightshift, before the nightshift is relieved by the dayshift.</u>

b. Whenever an inmate has been removed from Inmate Worker Status ensure he is dressed out in the appropriate uniform. Under no circumstances should an inmate worker, when removed from worker status, be allowed to keep his green/white or black/white uniform.

c. Any time an inmate is transferred from one pod/area to another, that inmate should take all items with them and the bunk area should be cleaned and inspected for the next inmate assigned to it. Search the inmate and his property whenever moved to a new pod. Check ALL items to ensure the inmate takes only those items necessary. Example: Pillows, mattresses, etc. should remain in the pod.

d. When an inmate has been reassigned to inmate worker status or has a job transfer that requires the inmate to move from Gulf Pod, the cell change should be completed on day shift, but if day shift is unable to complete the move, then it will be completed on the night shift.

**33.** Ensure all inmate(s) complaining of being ill are seen by a nurse for verification before being sent out to work details.

**GENERAL:**
This post order will cover most of your duties. However, if there is any doubt as to what you are expected to do, ask your supervisor.

This post order will be reviewed at least annually and updated as needed.

**-END-**