**COPY**



407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

MILESTONE I REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

## CASE NO.: 5:23-CV-00661

### KRYSTI MERCHANT, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF CORY MERCHANT, DECEASED

### V.

### BILLY WOODS, SHERIFF OF MARION COUNTY, FLORIDA, IN HIS OFFICIAL CAPACITY; DEPUTY JUSTIN KOSINSKI; DEPUTY JOSEPH MILLER, SERGEANT JEROME DUKES

### DEPONENT:

### DELLUN MILLER

### DATE:

### SEPTEMBER 20, 2024

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF FLORIDA

3  OCALA DIVISION

4  CASE NO.: 5:23-CV-00661

5

6  KRYSTI MERCHANT, AS

7  PERSONAL REPRESENTATIVE FOR THE

8  ESTATE OF CORY MERCHANT,

9  DECEASED,

10  Plaintiff

11

12  V.

13

14  BILLY WOODS, SHERIFF OF MARION COUNTY,

15  FLORIDA, IN HIS OFFICIAL CAPACITY;

16  DEPUTY JUSTIN KOSINSKI;

17  DEPUTY JOSEPH MILLER,

18  SERGEANT JEROME DUKES,

19  Defendants.

20

21

22

23  DEPONENT:  DELLUN MILLER

24  DATE:      SEPTEMBER 20, 2024

25  REPORTER:  FELICIA STOVALL

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

```
 1                          APPEARANCES

 2

 3   ON BEHALF OF THE PLAINTIFF, KRYSTI MERCHANT, AS PERSONAL
     REPRESENTATIVE FOR THE ESTATE OF CORY MERCHANT,
     DECEASED:
 4   Sam Harton, Esquire
     Romanucci & Blandin, LLC
 5   321 North Clark Street
     Suite 900
 6   Chicago, Illinois 60654
     Telephone No.: (312) 458-1000
 7   E-mail: sharton@rblaw.net
     (Appeared via videoconference)
 8

 9   ON BEHALF OF THE DEFENDANT, BILLY WOODS, SHERIFF OF
     MARION COUNTY, FLORIDA, IN HIS OFFICIAL CAPACITY; DEPUTY
10   JUSTIN KOSINSKI; DEPUTY JOSEPH MILLER, SERGEANT JEROME
     DUKES:
11   Bruce R. Bogan, Esquire
     Hilyard, Bogan & Palmer, PA.
12   105 East Robinson Street
     Suite 201
13   Orlando, Florida 32801
     Telephone No.: (407) 425-4251
14   E-mail: bbogan@hilyardlawfirm.com
     (Appeared via videoconference)
15

16   ALSO PRESENT:
     Jamie Peterson, Romanucci & Blandin Clerk
17

18

19

20

21

22

23

24

25
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

```
 1                           INDEX

 2                                              Page

 3    PROCEEDINGS                                  5

 4    DIRECT EXAMINATION BY MS. HARTON             6

 5    CROSS-EXAMINATION BY MR. BOGAN             100

 6

 7                         EXHIBITS

 8    Exhibit                                    Page

 9    55 - Letter of Counseling                   78

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

STIPULATION

The deposition of DELLUN MILLER was taken at MILESTONE
REPORTING COMPANY, 315 EAST ROBINSON STREET, SUITE 510,
ORLANDO, FLORIDA 32801, via videoconference in which all
participants attended remotely, on FRIDAY the 20th day
of SEPTEMBER 2024 at 10:01 a.m. (ET); said deposition
was taken pursuant to the FEDERAL Rules of Civil
Procedure.

It is agreed that FELICIA STOVALL, being a Notary Public
and Court Reporter for the State of FLORIDA, may swear
the witness and that the reading and signing of the
completed transcript by the witness is not waived.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
407.423.9900          www.MILESTONEREPORTING.com
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
Toll Free 855-MYDEPOS

```
 1              PROCEEDINGS
 2        THE REPORTER:  We are now on record.  Will all
 3   parties, except for the witness, please state your
 4   appearance, how you're attending, and your location,
 5   starting with the plaintiff's counsel?
 6        MS. HARTON:  This is Sam Harton for the
 7   plaintiff, and also Jamie Peterson from our firm is
 8   here, as well.  And also --
 9        MR. BOGAN:  And this is Bruce --
10        MS. HARTON:  Sorry.  Sorry.  I'll also state
11   that James Slater, our co-counsel, may jump in at
12   some point.  I'm not sure.
13        MR. BOGAN:  And this is Bruce Bogan, and I
14   represent the defendants in the case.  And I'm
15   appearing here in Ocala, Florida at the Marion
16   County Sheriff's Office.
17        THE REPORTER:  Perfect.  Thank you.  Officer
18   Miller, would you please state your full name for
19   the record?
20        THE WITNESS:  Yes.  My full name is Dellun
21   Curtis Miller.
22        THE REPORTER:  Perfect.  Thank you.
23        Off record, the attorneys have stipulated that
24   Officer Miller is who he says he is.
25        Mister -- Officer Miller, would you please
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        raise your right hand?  Do you solemnly swear or

 2        affirm that the testimony you're about to give will

 3        be the truth, the whole truth, and nothing but the

 4        truth?

 5              THE WITNESS:  Yes, I do.

 6              THE REPORTER:  Thank you.  You may now begin.

 7                   DIRECT EXAMINATION

 8   BY MS. HARTON:

 9        Q.   Officer Miller, have you ever given a

10   deposition before?

11        A.   Only one --

12        Q.   Okay.

13        A.   -- that I'm aware of.

14        Q.   Was that in a lawsuit that you were a

15   defendant, or were you just a witness?

16        A.   No, ma'am.  Matter of fact, let me change

17   that. There was two depositions.  One related to --

18   where I had to go to a deposition on an inmate who tried

19   to introduce contraband, a weapon, into the jail.

20              The other one, which I supplied my attorney

21   with, which was after this incident, was a civil lawsuit

22   that was brought by a pro se inmate, which was later

23   dropped by the judge.  So I don't know what that was

24   about.

25        Q.   Okay.  Do you know if you were a defendant in
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1    either of those lawsuits?

 2         A.    I was a defendant in one of them.

 3         Q.    In the pro se one?

 4         A.    Yes, ma'am.

 5         Q.    Okay.  So you kind of know how this goes,

 6    since you've given two, but I'm still going to walk you

 7    through some ground rules.

 8              My name is Sam Harton.  I represent the family

 9    of Cory Merchant and the estate of Cory Merchant.  And

10    I'm just going to be asking you questions today, and

11    your job is to just answer them and tell the truth.

12              But because this isn't like a normal

13    conversation, right, there are some things I'd like to

14    establish from the beginning.

15              First of all, it is a question and answer

16    format, so when I ask a question, it's very important

17    that you let me finish my answer -- or my question

18    before you answer.  And similarly, it's important that I

19    allow you to finish your answer before I ask my next

20    question.

21              It's very important, because Felicia, our

22    court reporter, is going to be documenting everything

23    that we say, and we can't be talking over each other

24    because everything's going to come out garbled.  Does

25    that make sense?
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
1        A.    Absolutely.
2        Q.    Okay.  And you're doing great with verbal
3   responses.  Very important that, you know, you say yes,
4   no, or whatever answer you have, but uh-uhs, uh-huhs,
5   shaking the head, nodding the head is not going to work
6   for our court reporter, okay?
7        A.    Yes, ma'am.
8        Q.    Okay.  I'm not expecting this deposition to
9   take too terribly long, but if you ever need a break,
10  please let me know (coughs) -- excuse me.
11             You're allowed to take a break for -- at --
12  for any reason at any time.  You just have to -- the
13  only -- the only caveat to that is that if there's a
14  question pending, I'm going to ask that you answer the
15  question before you take the break.
16             I am not going to ask for a break, unless
17  something emergent comes up, so if you need a break,
18  you're going to need to tell me that you want a break.
19  Does that make sense?
20       A.    Yes, ma'am.
21       Q.    Okay.  Sometimes throughout this deposition,
22  your attorney might object to one of my questions.  If
23  that happens, you are still required to answer the
24  question, unless your attorney instructs you not to.
25  Does that make sense?
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1      A.   Yes, ma'am.

 2      Q.   Okay.  On the same note, I have my outline,

 3  but a lot of times, I deviate from my outline.  And that

 4  means that the questions that I'm asking are just

 5  questions that I'm making up as we go, so sometimes that

 6  means that my questions aren't very good, they don't

 7  make a lot of sense and you have to try to figure out

 8  what I'm asking.

 9          If that's the case, please let me know that

10  you don't understand a question.  You can always ask me

11  to clarify or explain what I'm asking, because if you do

12  answer a question, I'm going to go ahead and assume that

13  that means that you understood the question; is that

14  fair?

15      A.   Yes, ma'am.

16      Q.   Okay.  I'm never going to ask you to guess.  I

17  might ask you to approximate or estimate.  But this is

18  not a quiz or a test.  There's no right or wrong answer,

19  and so you -- if you don't know the answer to a

20  question, I don't know, I don't recall is perfectly

21  fine, as long as that's the truth; is that fair?

22      A.   Yes, ma'am.

23      Q.   Okay.  Who is in the room with you?

24

25

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        A.    That'd be my representative, Mr. Bogan.
 2        Q.    And that's it?
 3        A.    I'm sorry, ma'am?
 4        Q.    That's the only person?
 5        A.    Yes, ma'am.
 6        Q.    Okay.  Do you have any documents in front of
 7   you?
 8        A.    Just paperwork I got from human resources.  I
 9   can move them over there, if you want me to.
10        Q.    No.  That's okay.  Is it -- I mean, what is
11   it?
12        A.    It's -- it -- it says paperwork that I -- that
13   I need through human resources, personal information
14   that -- retaining to some financial stuff.
15        Q.    Oh, okay.  It doesn't have anything to do with
16   this case?
17        A.    Oh, no, ma'am.  No, ma'am.
18        Q.    Okay.
19        A.    Because like I said, I can set it over here,
20   if you want me, too.
21        Q.    No, that's fine.  No, you're fine.
22        A.    I had -- I had a little time to burn.
23        Q.    Sure.  Okay.  So this is -- this has nothing
24   to do with this case.  Got it.
25        A.    Correct.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Did you review any documents in preparation

2    for this deposition?

3        A.   The only documents as far as -- can you

4    clarify what kind of documents?

5        Q.   Yes.  Sorry.  Sorry.  I might have

6    misunderstood.

7            I'm just asking if you reviewed any documents

8    in preparation of this deposition, any reports, any

9    personnel information?

10       A.   No, ma'am.  The only documentation that --

11   that I reviewed, anytime that I find any information

12   that's required of me, I just go back and maybe pop up

13   an incident report, you know, see what it's about, that

14   -- therefore I can be prepared to answer questions

15   better.

16       Q.   Did you look up the incident report regarding

17   Cory Merchant on November 7, 2021 in preparation for

18   this deposition?

19       A.   Yeah.  Yes, ma'am, I did.

20       Q.   Okay.

21       A.   Just because I didn't know what -- I didn't

22   know what it was and entail.

23       Q.   I have to ask --

24       A.   So because of the time period -- due -- due to

25   the fact that the time period has been what it's been, I

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1    just want to make sure I get the correct, accurate

2    information that you may be seeking.

3         Q.   So fair to say that the information in that --

4    oh, strike that.

5              We'll go -- we'll talk about that.

6              Do you have -- I have to ask you two questions

7    that are kind of rude, but I ask them of everyone.  Do

8    you have any felonies in your background?

9         A.   Not -- not that I'm aware of.  No, ma'am.

10        Q.   Yeah.  I'm still waiting for one of my law

11   enforcement depositions to answer yes on that one.

12        A.   No, ma'am.

13        Q.   Okay.

14        A.   No, ma'am.  I've never seen the inside of a

15   jail, except for my occupation.

16        Q.   Sure.  And is there any reason today why you

17   would not be able to testify truthfully and fully? Maybe

18   you took -- you have a certain medication that you took,

19   or you didn't get enough sleep last night, or you're

20   sick, anything like that?

21        A.   No, ma'am.

22        Q.   Okay.  Did you graduate from high school?

23        A.   I'm sorry.  Can you say that again?

24        Q.   Did you graduate from high school?

25        A.   Yes, ma'am.  I did.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   Where did you graduate from high school?

 2        A.   It will be in the year of 1987.

 3        Q.   And what high school did you go to?

 4        A.   Zephyrhills High School.

 5        Q.   And did you go to college after that?

 6        A.   No, ma'am.  I joined the United States Army.

 7        Q.   Okay.  When did you join the Army?  1987?

 8        A.   Right after graduation.  In July of '87, yes,

 9   ma'am.

10        Q.   How long were you in the Army for?

11        A.   I believe, approximately, maybe between five

12   and six years.

13        Q.   Were you ever deployed?

14        A.   I -- I wasn't deployed in the combat area, but

15   I was part of the Desert Shield-Desert Storm campaign.

16        Q.   What was your role in the Army?

17        A.   I was a -- a -- a mechanic.

18        Q.   Were you honorably discharged?

19        A.   Yes, I was.

20        Q.   Okay.  What did you do after you left the

21   Army?

22        A.   After I got out of the Army, I worked at a

23   couple car dealerships down in West Palm Beach.  And

24   then shortly after that, I put myself through a -- a --

25   a boat tech school, became an inboard-outboard
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

407.423.9900     www.MILESTONEREPORTING.com

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

Toll Free 855-MYDEPOS

```
 1   technician.
 2            Shortly after that, I didn't like the civilian
 3   life.  I needed something a little bit of a
 4   paramilitary, so I - so I told my wife, who's also a
 5   veteran, that we can go back into the military, or I was
 6   going to seek something in law enforcement.
 7       Q.   Okay.  And so did she go into law enforcement?
 8       A.   She didn't like the law enforcement, as far as
 9   being in LEO, so -- so I decided on corrections.
10       Q.   Okay.  So when did you go into the corrections
11   industry?
12       A.   The -- I started working with juveniles,
13   private sectors.  If you want to call that like a
14   detention.
15            I'm not sure about what year, so about -- if
16   you got time, I'm almost at 25, so it's about 28 years
17   ago.  Three years doing that.
18            And then after that, after the freeze was up
19   with hiring, I joined DOC, Florida Department of
20   Corrections.  I was with them approximately almost four
21   years and then was employed by the Marion County
22   Sheriff's Office, I believe, January of 2005 and been
23   here since.
24       Q.   I should have asked you this in the beginning
25   -
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1              -
 2        A.   Oh, I did leave out -- I'm -- I'm sorry,
 3   ma'am.
 4        Q.   It's okay.
 5        A.   I'm sorry.
 6        Q.   Go ahead.
 7        A.   I did leave out -- I did -- I did leave out
 8   prior to that, that I did do almost four to five years
 9   with the National Guard, as well.
10        Q.   Thank you for all that, that -- you just
11   probably cut 15 minutes out of the depo, so -- by just
12   running me through your history.  So thank you for that.
13             I should have asked you this at the beginning.
14   What is your current rank?  I just want to be respectful
15   when I'm referring to you.
16        A.   Master corporal.
17        Q.   Okay.  Sorry.  Corporal?
18        A.   Master corporal.
19        Q.   Master corporal?  Okay.  Thank you.
20             And -- okay.  So you -- so the only other
21   prison or jail that you've been an officer in has been
22   the DOC; is that fair?
23        A.   Yes, ma'am.  I'd be in Marion CI here in
24   Florida.
25        Q.   Okay.  Did you go to the police academy?
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1        A.    I'm sorry.  Can you repeat that, ma'am?
 2        Q.    Yeah.  Did you go to the police academy?
 3        A.    I went to the FDLE Academy for Corrections.
 4        Q.    Was that in the '90s?
 5        A.    That would've been 2000.
 6        Q.    Okay.  Okay.  So I'm going to move on to the
 7   substance of the depo.  I want to ask you, you know,
 8   some general things about how things work at Marion
 9   County.
10              So you know that all the inmates in Gulf Alpha
11   are either convicted or accused sex offenders, correct?
12        A.    Yes, ma'am.
13        Q.    Okay.  And that was true in November --
14        A.    The classification is -- the classifications
15   are sex offenders.  Yes, ma'am.
16        Q.    Okay.  And that was true in November of 2021?
17        A.    Yes, ma'am.
18        Q.    And on November -- the evening of November 6th
19   through the early morning of November 7, 2021, you were
20   assigned to Gulf Alpha; is that fair?
21        A.    I was assigned to Gulf Pod.  And Gulf Pod has
22   four sections, and they're broken down A, B, C, and D.
23        Q.    Yes.  Thank you.  That -- that's a good
24   clarification.
25              You were assigned to Gulf Pod and your partner
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  was Justin Kosinski, right?

 2      A.  Yes, ma'am.

 3      Q.  You were the only two officers assigned to

 4  Gulf Pod on November 6th and the morning of

 5  November 7, 2021, right?

 6      A.  Yes, ma'am.

 7      Q.  Okay.  And just for clarity and ease, I'm

 8  probably just going to refer to that period as the night

 9  of the incident.

10         If I say, you know, the night of the incident,

11  you understand that I'm talking about the evening of

12  November 6, 2021 through the early morning of

13  November 7, 2021, when Cory Merchant was attacked,

14  right?

15      A.  Yes.  That'll be early in the morning --

16      Q.  Yeah.

17      A.  -- but we was on night shift.  Yes, ma'am.

18      Q.  Right.  So you were assigned to Gulf Pod that

19  night.  At that period, were you being consistently

20  assigned to Gulf Pod, or were you being kind of moved

21  around every shift?

22      A.  No, ma'am.  We're assigned to Gulf Pod, and --

23  and sometimes we will -- it depends on certain areas on

24  coverage.  Sometimes we're responsible for doing a

25  break.  And at that night, during that incident, I was

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1    assigned to master control, which is right down the hall

 2    from Gulf Pod, adjacent, right across, to release

 3    somebody for their lunch.

 4        Q.    Okay.  But for the most part, you were being -

 5    - you -- every time you came in for a shift, you were

 6    assigned to Gulf Pod and you were one of the officers

 7    responsible for Gulf Pod, right?

 8        A.    Yes, ma'am.

 9        Q.    Okay.  Was it always just two officers

10    assigned to Gulf Pod?

11        A.    Not always.  Sometimes we would have a third

12    officer, and that -- they was in training.  I was a

13    senior FTO, which is a field training officer.

14            Officer Kosinski, I don't know when he was a

15    FTO, but officers are assigned FTO, so sometimes you

16    would have somebody who would be on their probation

17    period being trained.

18        Q.    Uh-huh.  But you would never have more than

19    two fully-trained officers responsible for monitoring

20    Gulf Pod, fair?

21        A.    At that time, there was just two of us.

22        Q.    Okay.  Is there more now?

23        A.    I -- I don't know.  I'm not in gulf.  I'm in

24    juveniles.

25        Q.    Okay.  Why were you moved?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    A.   Why was I moved?  I have experience with

2   juveniles.  In my history, I also worked with juveniles.

3   Like I said, when I worked in the private sector, I

4   worked at CDS Secure Court, which dealt with Level 4,

5   and 6, and sometime 8, prior to me going to DOC, so due

6   to my back history and my -- and my knowledge with the

7   juveniles.

8        And also when the Marion County Jail has first

9   started accepting juveniles, which was separate from the

10  building, which is now the training division, they

11  picked certain people who had that background to work

12  with juveniles and the knowledge, and so therefore, I

13  was just moved over there.

14   **Q.   Okay.  How long were you assigned to Gulf Pod?**

15   A.   If I was to take a guess, anywhere from three

16  to four years.

17   **Q.   Okay.**

18   A.   But pretty much, I could be assigned anywhere,

19  but my main place of -- place there was Gulf.

20   **Q.   It was not a new assignment in November of**

21  **2021; is that fair?**

22   A.   Yes, ma'am.

23   **Q.   Okay.  So on the -- walk me through just sort**

24  **of a typical shift on the night shift in Gulf Pod in**

25  **2021.**

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1        A.    Oh, okay.  Night shift or any shift, even
 2   today would consist of -- you would leave the --
 3   outgoing officers, you get debriefed.  You would do
 4   signing of the -- the keys.  Basically, you go in the
 5   JMS system, which is the computer system, then you do
 6   all your logs, which is caustics, inventory, keys.
 7             You make announcement 15 minutes prior to --
 8   for all the inmates to get ready for head count.  Then
 9   after 15 minutes, all the inmates would be getting off
10   the phone.  Another announcement would be made, head
11   count at this time.
12             Then we would go in.  Everybody would be
13   standing by their bunks, adjacent with their ID cards
14   placed on them.  At which time we would go down, account
15   for each inmate using an inmate head count.
16             Once that's done, if I had a question
17   regarding if there's any repairs, usually inmates will
18   tell you toilets, ropes, phones.  So I would verify it,
19   make notes, and then exit.
20             And then once the head count is completed on
21   all four sections, then we call them into booking, let
22   them know our head count is clear.  Then after that, we
23   usually start collecting garbage, trash.
24             See, at night, I -- I believe the meals would
25   have already been served or else we would've came in to
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 serve meals. It all depends on what time they got

2 there. But basically, it would be trash pickup, getting

3 rid of this, that, have two trustees situated in the

4 back, sat around.

5       And then approximately at 10:00, sometime in

6 between, it depends on what day, you could have programs

7 at night, church, also medical, if we had to do

8 transport to medical 9:00, wound care, medication.

9 Because in the night, nurses aren't in Medical Pod. We

10 have the nurses who are located into the infirmary.

11       So you have a charge nurse, infirmary, you

12 also have book nurses. So we would also do releases,

13 cell changes, transportation up and down the halls,

14 receiving. Gulf Pod is mainly the introduction of the

15 inmates who are coming in through booking, that are

16 delta section or those, because they're unclassified.

17       Once they go to court, then classification

18 would then send us out a report using JMS, that we would

19 then print on where, according to their level, which is

20 anywhere from 1 to 8 -- or 9, excuse me, then we would

21 move them from Delta throughout the jail, according to

22 where they're classified.

23       And then -- then another head count would

24 assume. Again, same procedure. 15 minutes prior to

25 that, then another head count, which is called lockdown

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1    head count.  Once everybody's locked down, everybody's

2    to remain in their bunk, unless they're going to the

3    bathroom to and from of their bunk.

4            Then every hour -- I'm not going to say every

5    hour, on the hour.  But every hour, a security check

6    will be conducted.  You walk in, therefore you visually

7    inspect the inmates, and then you walk around from

8    area-to-area, to area, then you come back out.  Then you

9    would do -- you can clean up around the pod.

10           You would make notations in the JMS, which is

11   the computer system that we have, which is electronical

12   log by the computer.  If that's a smooth night, then

13   that's pretty much the routine for that night, until

14   you're relieved in the morning, and then the trays are

15   called.

16           I left that out.  I do apologize.

17           That's usually called between 4:00 or 5:00.

18   It depends on when the kitchen is done.  Officer goes

19   down, collects -- we'll get the trays, bring them in,

20   because usually the night crew is also responsible for

21   the morning in the a.m., which you make -- then, of

22   course, you wake everybody up.

23           Everybody get a single file line.  You'll have

24   a master head count roster alphabetically.  As they come

25   through the line, check their IDs and give them a tray.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    And pretty much when you get done with that and you have

2    new head counts, court paperwork printed out for the

3    oncoming shift, you would debrief them and then get

4    relief.

5         Q.    Did you say after the security checks are

6    conducted you make a log?

7         A.    In other words, inside the log, we have to

8    type down security check complete.  Security check.  And

9    unless there's an insert -- I mean, unless there's a

10   situation, time or whatever, yeah.  You -- but we do log

11   everything into JMS.

12        Q.    And that's in -- so that's -- so that --

13   that's -- that security check log is on the computer?

14        A.    Yes, ma'am.

15        Q.    In JMS?

16        A.    Yes, ma'am.

17        Q.    And remind me what JMS stands for.

18        A.    Jail management system.

19        Q.    Have you ever typed security check into the

20   system when you didn't actually complete your security

21   check?

22        A.    Have I ever typed -- not to the best of my

23   knowledge, no.

24        Q.    Okay.  So if you type security check in the

25   log, that means that you physically walked, you know,

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1    through the area and observed each inmate for their
 2    wellbeing; is that fair?
 3         A.   Yes, ma'am.
 4         Q.   You said you -- during a shift, you might have
 5    to move inmates out of Delta.  Are -- you know, there's
 6    only two in -- two officers in Gulf Pod, so are one of
 7    those officers responsible for physically moving those
 8    inmates to another area?
 9         A.   Either we can do it, or we can contact our
10    supervisor and make arrangements because of the number
11    of inmates.  And we can request assistance or -- or
12    those supervisors will organize where those inmates are
13    moved.
14         Q.   Okay.  So -- and you said that you do after
15    lockdown, you do a security check every hour.  You said
16    it wasn't exactly on the hour, but generally, is it a
17    full, like, 60 minutes until you --
18         A.   Yes, ma'am. --
19         Q.   -- do your next security check -- hold on --
20         A.   Right.
21         Q.   -- until you do your next security check?
22         A.   I'm sorry.
23
24         Q.   Go ahead.
25         A.   I'm sorry about that.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     Q.   No, you're fine.

2     A.   Yes, ma'am.  In other words --

3     Q.   It's just conversational, so I totally

4  understand.

5          Go ahead.

6     A.   Right.  No, basically, let's say that hour

7  goes by and I do my check in Alpha.  Well, because I

8  have four sections, that means by the time I go around

9  doing all the checks, then by the time I get done, it

10  might be, like, six minutes later.

11         Well, let's say that if I found somebody

12  walking around in another section and it was around

13  security check -- I'm just giving you a -- a -- a idea

14  -- I might have to go in there and address that, which

15  might put me a couple minutes back, or it might lead

16  into a situation because these people coming from

17  booking are coming off the streets.  So you will deal

18  with some people with different situations.  So those

19  are circumstances that might put you a couple minutes

20  back, or certain situations.  It -- it -- it's based by

21  -- based -- night -- my night on -- on the current

22  events of what's unfolding inside your pod.

23         So if I start in Delta, then I might go in

24  Charlie, or I might go in Bravo, which would throw me --

25  the time off from one hour -- let's say Alpha, Alpha,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1    Alpha, Alpha or, you know, A, B, C, D, A, B, C, D.  Try
 2    to mix it up because inmates try to learn your pattern
 3    as well.  So if they learn your pattern, some people
 4    like to get up and sneak around at night.
 5            So if they get used to you coming in, oh, he's
 6    going to come in here hour, on the hour, on the hour,
 7    then they -- they can manage to do something.  So
 8    sometimes we mix it up to where they don't know when
 9    we're going to come in, but it is within that 60
10    minutes.  Yes, ma'am.
11        Q.   Okay.  Have you ever heard of, or done this
12    yourself, of officers conducting security checks just by
13    popping their head in, and looking, and then going back
14    into their rover area?
15            MR. BOGAN:  Object to form.  Go ahead.
16            THE WITNESS:  Huh?
17            MR. BOGAN:  I -- I'm just objecting to the
18        characterization of the --
19            THE WITNESS:  I'm -- I'm just trying to
20        picture, but not that I can recall of.  Not saying
21        that it -- it -- there's about -- I can't think of
22        one, unless there is a emergency situation.  Let's
23        say that if there's a confrontation or -- it's like
24        I said, it all depends on the -- the situation.
25            If I got two inmates arguing and my partner's
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1        out, I don't know if that's a setup.  I'll call
 2        using my communications on my radio for assistance.
 3        It -- it's a discretionary thing at that time, so I
 4        really don't know at what format that you're trying
 5        -- that you're referring to, because there's so many
 6        scenarios that that could happen or -- and -- and
 7        couldn't happen, but it depends on the scenario
 8        that's going on.
 9   BY MS. HARTON:
10        Q.   Sure.
11        A.   We have inmates that are -- like, in Medical
12   Delta, they're Signal 20s, which means that they're
13   mentally -- or suicidal, or they could be under a
14   medical claim, which will attack you.  And sometimes
15   you'll call your officer in there to stand in there as
16   observed.
17             Sometimes we might call somebody that I
18   monitor, hey, you know, I'm just going to pop in here
19   real quick.  Just look around.  Can you keep eye on me?
20             Yes.
21             But a lot of times -- the majority of times,
22   depending on the situation, I call my supervisor, he'll
23   come down.  So it depends on the situation.  There's a
24   lot of situations that could call for that or might not
25   call for that.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1     Q.    Call for what?

2     A.    Well, if I have two inmates sitting there

3  fighting, I'm not going to leave the pod if I'm the only

4  one, because I have to be able to call Signal 22, which

5  means it's a disturbance.  And then other officers using

6  that code in order to respond, then I'm going to open

7  the door to let those officers in, and then we'll go in.

8  And at the same time, my supervisor will automatically

9  respond.

10          If it's a normal night and -- and nothing's

11 going on, and I just walk in there, and I walk around,

12 if I hear unusual noises, which I've had sometimes --

13 not within that check.  Sometimes you pop in.  Sometimes

14 it can get loud.  The inmates supposed to be quiet.

15 Sometimes you can open door, walk in a certain way, look

16 around, put out information, hey, cut it down, don't

17 mind you talking, or bring it down, and just kind of

18 look around, and get the feel of stuff, and then walk

19 back out.

20    **Q.    So there are times where, instead of**

21 **conducting a full security check, officers might just**

22 **conduct that security check by popping their head into**

23 **the pod, taking a look around, and then popping out,**

24 **fair?**

25    A.    Yeah.  If you want to consider -- yes, ma'am.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1   If you want to consider that as a security check, which
 2   it would be a security check because there's no
 3   movements that's supposed to be going around.
 4            And we have visitation monitors in there.  And
 5   sometimes inmates get up, and they don't listen to the
 6   rules, which they're given an inmate handbook on the
 7   guidelines, and the rules, and policies.  So sometimes
 8   we might have to walk in there and say, hey, get off the
 9   monitor.  You might have to counsel them.
10            You'll bring them outside or you'll see
11   somebody walk over to another bunk, talking.  If you see
12   that within visual, either monitor, by noise or just by
13   sight -- because inside the pod, all the areas are
14   glass, so you can see from the rows there inside.  So if
15   you see something that is not as normal, that's
16   something that you would want address, yes, ma'am.
17       Q.   So I -- I'm kind of asking a little bit of a
18   different question, so just listen to my question very
19   carefully.
20            I -- I'm at -- so you said that it would be
21   considered a security check -- first -- even if someone
22   just looks into the pod, rather than actually physically
23   walking around the pod or the section and observing each
24   inmate; is that fair?
25       A.   Yes, it --
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

30

```
 1              MR. BOGAN:  Object to form.  Go ahead.
 2              THE WITNESS:  Okay.
 3              Yeah.  It -- it -- it -- it's defined as a
 4       security check, but not in the way that -- that a
 5       security check -- hourly security check done.  That
 6       would be anything that is disruption of the routine
 7       that would require you to go investigate.  You're
 8       just checking on the security to make sure
 9       everything's secured.
10  BY MS. HARTON:
11       Q.  Would that -- would just looking into the pod
12  from the doorway, rather than actually walking through
13  the section, would that suffice as a 60 -- is -- a
14  60-minute security check?
15              MR. BOGAN:  Object to form.  Go ahead.
16              THE WITNESS:  No.  Just -- if I just reached
17       the door and just looked in, I mean, I would have to
18       go in the section, maybe in the day room, walk
19       around where I can see the rows and stuff, and come
20       back out.  Yeah -- yeah, that's fine.  Unless --
21       unless it's over-road, but to my best
22       acknowledgement, at -- at this time, no.
23  BY MS. HARTON:
24       Q.  Earlier you were talking about situations
25  where your partner is out and you're the only one.  Can
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1    you explain what you mean by that?

2        A.   Well, I don't remember me saying that my

3    partner might be out.  I just use the name just with

4    anybody.  But if my partner is out -- and I know Ski

5    usually got called out because he's on the rapid

6    response team, search team, which get called out if

7    there's another incident that's happened in another pod

8    or something like that.

9            Or at booking or if we're out doing --

10   performing a -- a roof check or perimeter check, some --

11   some officers from around the pods are -- are -- are

12   called out to do that.  That's part of their functions.

13   Or if they need assistance in other pods, like I said,

14   other disturbances, booking might need them if some --

15   if -- if -- if they have a combative coming in and you

16   want personnel down there.

17           So it depends on different situations that

18   would pull you outside of the -- side of the pod, but

19   usually you're stationed in the pod.

20       Q.   Both of you?

21       A.   Yes, ma'am.

22       Q.   Okay.  What time does your -- did your shift

23   start on November 6, 2021?

24       A.   If I had exact dates, there's two times that

25   we start.  We have briefing usually on Tuesdays and

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   Saturdays, that's 5:45.  Other days -- but the common of
 2   thing is to be on post by 1800 hours.
 3        Q.   That's 6:00?
 4        A.   I'm sorry.  Yes, ma'am.  6:00 p.m.
 5        Q.   I had to do the math in my head for a minute.
 6   Thank you.
 7        A.   Yes, ma'am.  6:00 p.m., to clarify.
 8        Q.   6:00 p.m. to 5:00 a.m.?
 9        A.   6:00 p.m. until -- yeah.  6:00 -- 6:00 a.m.
10        Q.   Okay.  How many breaks do you get per shift?
11        A.   You're supposed to get a 45-minute break -- a
12   45-minute lunch break.  It -- and sometimes a 15 minute,
13   but that's not guaranteed.  You know, if nothing's going
14   on, you could, but for -- for a lunch break, it's 45
15   minutes.
16        Q.   But you take other breaks throughout your
17   shift?
18        A.   The only time that we might take a -- a break
19   is if -- like, a 15-minute break, or if -- if somebody
20   runs out to the staff dining then comes back.
21        Q.   Prior to -- so when you get on a shift, you've
22   got -- you and your partner, does -- is one of you
23   responsible for doing all the security checks that
24   night, or do you kind of alternate?
25        A.   No.  We can alternate.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    Q.   Who was performing the security checks on the
2    evening of the incident?
3    A.   You're talking about at the time of the
4    incident or during the evening?
5    Q.   Throughout the entire shift, before the
6    incident.
7    A.   That would be both of us, but to give you an
8    accurate thing, I'd have to go on the JMS, and look back
9    on the hourly checks that -- who logged it in, but
10   usually there would be two of us.
11   Q.   Okay.  So --
12   A.   We both --
13   Q.   Go ahead.
14   A.   It'll be both of us.
15   Q.   Okay.  So you were alternating.  One of you
16   wasn't assigned to just do all the checks that night,
17   right?
18   A.   No, ma'am.
19   Q.   Okay.  Do you recall how many checks you did
20   that night before Cory Merchant was attacked?
21   A.   Me personally, or checked in general?
22   Q.   You personally.
23   A.   How many checks I would have done?  I would
24   have done probably -- I -- I don't know if I was out at
25   the -- at the broken stairs, and Ski might have done one

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   and I was checking.  So no, ma'am.  I -- I wouldn't be
 2   able to give you a total number.
 3        Q.   Ski is Kosinski, correct?
 4        A.   Yes, ma'am.
 5        Q.   That's kind of the term that both officers and
 6   inmates refer to him as?
 7        A.   I don't know what the inmates refer to him as.
 8   I know I've known Ski a long time, or Sergeant Kosinski.
 9   Sometimes people mess his name up.  It's just a
10   shortening of his name.  But I don't know if that's what
11   the inmates call him.
12        Q.   Is there a particular way that you decide
13   who's doing which security check or --
14        A.   No, ma'am.  Because the policy states that a
15   security --
16             THE WITNESS:  Whoops.  I think we lost -- lost
17        visual.
18             MS. HARTON:  Are we good?
19             MR. BOGAN:  Hold -- stand by.
20             MS. HARTON:  Oh, you're fine.  I just wanted to
21        make sure that I didn't -- that you guys weren't
22        waiting on me.
23             THE WITNESS:  No.  Our screen went black.
24             MR. BOGAN:  Okay.  Stay on.  There it goes.
25             THE WITNESS:  Okay.  There we go.  We're back.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1              MR. BOGAN:  If that happens again, we -- we've
 2       got to push that PC.
 3              THE WITNESS:  Okay.
 4              MS. HARTON:  We're good?
 5              THE WITNESS:  Yes, ma'am.
 6              MS. HARTON:  Okay.  Sorry.  Felicia, would you
 7       mind reading the last question that I asked?  I
 8       forget what it was.
 9              THE REPORTER:  Yeah.  Give me one moment.
10              MS. HARTON:  Thank you.
11              (REPORTER READS BACK REQUESTED QUESTION)
12  BY MS. HARTON:
13       Q.   Can you answer that question?
14       A.   Yes, ma'am.  I believe the question was, is
15  there some way the security check is performed?
16       Q.   No.  No.  My question is: Like, you both
17  perform security checks, so how do you decide who's
18  doing the security check, who's doing the next security
19  check?  Do you just kind of, like, in the moment decide,
20  or is there an -- a formal assignment?
21       A.   No, ma'am.  As long as the check is to be
22  performed on the hour every hour, except other than if a
23  -- a -- a certain situation comes up that requires you
24  -- that might cause you a little late.  But no,
25  sometimes I might take A and B, or sometimes we walk in
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

```
 1   together, or -- as long as the security check is being
 2   done within that hour.  Sometimes he might be on the
 3   phone with a sergeant or a situation, or I might be on
 4   there, or a situation causes us to not to be able to do
 5   one, but one officer can go around and -- and perform
 6   the security check.
 7        Q.   So after lockdown, when these security checks
 8   are being performed, they're being performed every hour,
 9   so there's only physical presence by an officer in that
10   dorm once every hour generally, right?
11        A.   No.  The -- no, ma'am.  The officer present in
12   that pod is all night.  It would be manned at least by
13   one officer.
14        Q.   But he would be in another section or in the
15   rover area.  I'm -- right?
16        A.   Oh, yes, ma'am.  Yes, ma'am.
17        Q.   Okay.
18        A.   Yes, ma'am.
19        Q.   I'm talking about if an officer only
20   physically -- unless there's some other emergent reason,
21   an officer will only physically walk into the -- each
22   section once every hour --
23        A.   Yes, ma'am.
24        Q.   -- as a general matter?  Sorry.  Go ahead.
25        A.   Yes.  Yes, ma'am.  You're correct.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

```
 1        Q.    Sorry.  There might be a little bit of a
 2   delay.
 3              Do officers ever miss their security checks?
 4        MR. BOGAN:  Object to form.  Go ahead and
 5   answer.
 6        THE WITNESS:  No.  Not -- not that I'm aware
 7   of.  We do have cameras, so that's something that
 8   could be checked by our supervisors, so checks will
 9   be done, unless, you know, there is a -- a certain
10   circumstances that -- that violate or bring to
11   security that could be questionable, then you could
12   call for backup or whatever, but no, ma'am.  That --
13   it will be done every hour.
14   BY MS. HARTON:
15        Q.    Okay.  And you said that a supervisor can
16   review video footage.  Do you know how often supervisors
17   review that video footage to make sure that the checks
18   are being done?
19        MR. BOGAN:  Object to form.  You can answer.
20        THE WITNESS:  Okay.
21        No, ma'am.  I do know that everybody has access
22   to the computer, to look at the video, and that's
23   for investigation reasons, as well as us -- for us
24   to go back to check and see if something happens
25   that's outside of our view, or it was brought up to
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1        us for investigation reasons, to do our reports so
 2        they're accurate.  And then we forward that to the
 3        sergeant.  So yeah, but they have that capability.
 4  BY MS. HARTON:
 5        Q.   Okay.  Everyone has access to the computers,
 6  even deputies?
 7        A.   Not deputies.  That would be anybody that --
 8  you have to assigned to the jail, and you're given an ID
 9  and a passcode to get in -- to get in -- into the
10  computer system.  And that would be the cameras for that
11  pod.  But supervisors do have -- if they're in their
12  offices -- supervisors aren't stationed in one place,
13  they have many roles.  And they have pods that they got
14  too, and their own routine that they have to do.  But if
15  I was to call a supervisor to let him know of an
16  incident, then he can go on the computer in another pod
17  or in his office and pop up -- as long as in the report
18  I had the time and the date, and then -- and he agrees
19  to that right there, then he can look at it himself.
20        Q.   On the night of Cory -- the attack on Cory
21  Merchant, you were responsible for surveilling and
22  monitoring inmates in Gulf Pod; is that fair?
23        A.   The night that that happened or early in the
24  morning -- could you repeat -- repeat the question
25  again, just so I can --
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   Sure.  On the evening of the incident,
 2   throughout your entire shift, you were responsible for
 3   surveilling and monitoring inmates in Gulf Pod, fair?
 4        A.   Yes, ma'am.
 5        Q.   Okay.  You were responsible for maintaining
 6   the wellbeing of inmates in Gulf Pod, fair?
 7        A.   And -- and could you speculate on the
 8   wellbeing part?  Are we talking about medically, or are
 9   we talking about -- it's my job to monitor, and do
10   headcounts, and survey the area, and address problems,
11   or questions, or some headcounts, feeding, transport. If
12   you're talking about that, yes, ma'am.
13        Q.   When the attack happened on Cory Merchant,
14   where were you?
15        A.   I was in master control, I believe when
16   somebody pulled a lunch break, adjacent right down the
17   hall -- the main hall straight across from Gulf Pod.
18        Q.   Master control, where is that?  Is that in
19   Gulf Pod?
20        A.   It's -- it's right across from Gulf Pod.  So
21   we have a hallway that goes from one end of the jail
22   down to the other end of the jail, that breaks off to
23   different areas of the jail to different pods.  So
24   master control would be in that hallway, at -- not in
25   Gulf Pod hallway, going into -- there's two hallways.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1   You had the pod itself, then you had the hallway that

 2   goes down into the main hallway, and master control is

 3   located in the main hallway.  And then those two

 4   walkways are adjacent and takes you down to booking, and

 5   every direction takes you to a different location of the

 6   jail.

 7        Q.   You did not have visibility into Gulf Pod at

 8   the time that the incident occurred; is that fair?

 9        A.   Well, I had monitors.  If a code was called,

10   there's an alarm that goes off.  If -- that late in the

11   morning and in there, if something was going on, it

12   would have been my responsibility.  If I heard a -- if I

13   heard a Code 46, I would let the officers respond, along

14   with the -- along with the nurses down there, but

15   because the function of master control, I'm not looking

16   directly into one -- any area of the jail.  It's mainly

17   watching the entrance, exit, people coming and going,

18   performing the functions in which I described later,

19   which could have been medical emergencies, people

20   entering in and out of the jail.  Master controls

21   control all of the slider gates, front gates.  You also

22   have inmate workers that are probably getting up at

23   2:00, officers coming in and out for any paperwork.

24             So master control controls all the doors of

25   the security of each pod.  And they do have monitors up

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  there, that if a code is called, that the master control
 2  can -- has a -- or letting everybody in, can monitor in
 3  at that time to see what's going on, to try to divert,
 4  or if EMS is coming in, to direct them to the right
 5  spot.  But usually there's going to be officer --
 6  officers already know where everything is when a code is
 7  called, and people respond to that certain area.
 8          But at that certain time, if other functions
 9  are going on in master control at the time, as -- such
10  as people upstairs trying to get in, or other officers
11  on the other end of the far jail trying to get in, or --
12  or -- or booking, or this, then master control has the
13  sole responsibility of pushing those buttons -- those
14  buttons to unlock those doors to let those people out,
15  to respond or get in, or to report.
16      Q.   So my question was: In master control you
17  could not see into Gulf Pod, fair?
18          MR. BOGAN:  Object to form.  Go ahead.
19          THE WITNESS:  I would -- I would -- I could
20      look into Gulf Pod, if that was my main
21      responsibility of master control, such as to look
22      there and watch.  But master control's
23      responsibilities are cameras that are located around
24      the whole compound, including inside of the jail.
25  BY MS. HARTON:
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   So you could have looked into Gulf Pod via a
 2   video monitor?
 3        A.   Yes, ma'am.
 4        Q.   You do not have any --
 5        A.   I'd have to -- do your thing.
 6        Q.   You did not have a window into Gulf Pod from
 7   master control, like you do in the rover area, fair?
 8        A.   Fair.
 9        Q.   And you were not, in fact, at the time that
10   Cory Merchant was attacked, watching the video monitor
11   of Gulf Pod, fair?
12        A.   No, ma'am.  I -- fair.  I was not in Gulf Pod
13   at the time.
14        Q.   Okay.  So that means Justin Kosinski was still
15   in Gulf Pod, right?
16        A.   Yes, ma'am.
17        Q.   Okay.  So that means that Justin Kosinski was
18   -- at the time of Cory Merchant's attack was solely
19   responsible for surveilling and monitoring the inmates
20   and in that moment, fair?
21        A.   Yes, ma'am.
22        Q.   Okay.
23             MR. BOGAN:  Objection.
24             THE WITNESS:  I'm sorry.
25   BY MS. HARTON:
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      Q.   And there is, you know, 200, maybe 300 inmates

2   in Gulf Pod at any given time, right?

3      A.   Correct.

4      Q.   Okay.  So there's two people assigned to Gulf

5   Pod, and sometimes there's only one person actually --

6   one -- sorry.  Strike that.  Let me start over.

7           There's two deputies assigned to Gulf Pod, and

8   sometimes there's only one deputy physically in Gulf Pod

9   monitoring and surveilling the inmates, fair?

10      A.   Yeah.  There could be certain situations at

11   that time, as I mentioned.  Yes, ma'am.

12      Q.   Is there ever a time where there are no

13   deputies in Gulf Pod surveilling and monitoring, where

14   you're -- where you're -- they're both off doing

15   something else?

16      A.   No, ma'am.

17      Q.   Okay.  You've never heard of that happening?

18      A.   No, ma'am.

19      Q.   Okay.  Would you agree that two deputies to

20   200 to 300 inmates, you're a little outnumbered?

21           MR. BOGAN:  Object to form.  Go ahead.

22           THE WITNESS:  Yeah.  I mean that's a large

23      number.

24   BY MS. HARTON:

25      Q.   Yeah.  As a, you know, detention deputy in

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1  Gulf Pod, did you ever feel like you wish you had more

2  staff to help you surveil and monitor the inmates?

3            MR. BOGAN:  Object to form.  Go ahead.

4            THE WITNESS:  With what we have in -- in place,

5      that would be anybody's ideal place of work. Is more

6      -- I mean -- you know?  But as far as the policies,

7      and statutes, and stuff that covers under the model

8      jail system, we're sufficient with what we have.

9      Now, if you're asking me would it be nice to have

10     more, personally?  Yes.  It's always nice to have

11     more.

12  BY MS. HARTON:

13     Q.   Have you ever felt overwhelmed while

14  surveilling and monitoring Gulf Pod, due to just the

15  number of things that you have to do, in relationship to

16  the amount of staff there to do it?

17            MR. BOGAN:  Object to form.  Go ahead.

18            THE WITNESS:  No, ma'am.  I've -- I've been

19     doing this 25 years, so I'm kind of like what they

20     call an old dog, so I pretty much know the routine.

21     And -- and after a while, you become seasoned, as

22     well as being experienced.  So it's just you have a

23     certain amount of time to do a certain amount of

24     things within the routine, so everything is already

25     scheduled out for you to have that done.  It's not

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1          overwhelming.  The only thing that makes it
 2          overwhelming is when other situations falls in that
 3          kind of put you behind, other than your normal
 4          duties.
 5     BY MS. HARTON:
 6          Q.    What do they call you?
 7          A.    Corporal Miller.
 8          Q.    I think you said they -- you're at a point in
 9     your  tenure that they have -- they call you something.
10     I missed --
11          A.    No, no.  No, no.  I didn't say they call me
12     something, I said -- you know, I've been doing this for
13     20 something years, I'm kind of like an old dog.
14          Q.    Old dog.
15          A.    Yeah.  It's a -- yeah.  It's kind of like an
16     expression that I got tenure, you know.  You know, I'm
17     experienced, you know, as far as doing this career
18     compared to somebody who's new.  I'm just using it as a
19     metaphor.
20          Q.    No.  I just didn't recall what you had said.
21          A.    No.  No.  Nobody calls me old dog.  No, ma'am.
22          Q.    That wouldn't be very polite.
23          A.    It wouldn't be very professional.
24          Q.    What are the -- are you aware of any written
25     policies or procedures regarding monitoring inmates in
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1   Gulf Pod?
 2        A.   That would be in our post-order.  It's pretty
 3   much broken down what -- and there's a post-order in all
 4   the pods, as far a what your routine or the way that
 5   it's set up.  It's policies stating how headcounts will
 6   be done.  You're responsible for -- for medication,
 7   transportation, headcounts.  It gives a general routine
 8   of what takes place in that pod and what you're
 9   responsible of.
10        Q.   Besides the post order, is there anything else
11   that gives you a directive on your responsibilities in
12   Gulf Pod?
13        A.   No, ma'am.  Those would be the directives for
14   that post-order.
15        Q.   So the --
16        A.   I mean, it is the post-order.
17        Q.   Go ahead.
18        A.   No.  That is the post-order.
19        Q.   Okay.  You -- you've received administrative
20   directives for the whole jail, right?
21        A.   Yes, ma'am.
22        Q.   Okay.  And you've reviewed those written
23   directives, right?
24        A.   Yes, ma'am.  We review them daily.  We have
25   operation directives that we review, because if anything
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1    changes, as far as policies or anything that's reviewed,

 2    then -- then we're to look at -- at our operations'

 3    directives.  We have courses.  We review policies, and

 4    we review them, and then we sign off on them,

 5    acknowledging that we would read them.  And that's also

 6    located through the JMS, as well.

 7         Q.   Would you agree with me that inmates get into

 8    physical altercations at the Marion County Jail?

 9         A.   Yes, ma'am.  It is a correctional thing.

10    People come from all walks of life, and yes, there are

11    physical altercations that happen.

12         Q.   When you're surveilling and monitoring

13    inmates, do physical altercations ever occur without an

14    officer being made aware of it?

15              MR. BOGAN:  Object to form.  You can answer. Go

16         ahead.

17              THE WITNESS:  Yes, ma'am.  Because they watch

18         us to see what you're doing, and if you're vigilant,

19         they don't -- they're not going to do it right in

20         front of you.  It usually happens spontaneous, and

21         then that's where you go into your training and what

22         your responses are going to be, and how to deal with

23         that situation at the time.

24    BY MS. HARTON:

25         Q.   But you can't respond to an incident, unless

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

JAMES MILLER - 09-23-2024

1  you know about it, right?

2       A.   I can't respond to an incident, unless there

3  actually is an incident.  But then again, the responding

4  thing depends on the security part of it so --

5       Q.   Okay.  Can you explain that?

6       A.   Yes, ma'am.  Like earlier, like I said, if I

7  see a fight that's -- let's say it's in the day room

8  over a card game.  If my partner is down the hall or if

9  he's somewhere, am I going to breach that door and go in

10  there and do it?  That's at the discretion of the

11  officer.  I personally would call -- call for backup

12  first.  You have other officers adjacent, booking, this.

13  Usually with a 22 call, which you call, people respond.

14  So -- and -- and people have a thing, you tell them the

15  location, and which section of that pod you're in, to

16  see what's going on.  Because inmates sometimes, in this

17  line of work, take the opportunity to learn the

18  officer's weaknesses or our strong points on who will do

19  what and who will not -- won't do.

20          So you -- you have to use a little common

21  sense.  But a lot of the time a lot of the experience

22  comes with it.  But a lot of it is the -- the -- the

23  seriousness of the situation, but -- but you will call,

24  and use your signal codes, you will get backup.  You

25  will resort to your training.  You will make sure that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1    -- that is taken care of, and that the incident is -- is

2    dissolved and -- and resolved.

3        **Q.   You said that inmates sometimes learn who will**

4    **do -- you know, who will do what, who won't do what, in**

5    **response to a physical altercation.  Can you explain**

6    **that a little bit for me?**

7        A.   Well, what I mean by that is, the inmates just

8    learn you.  They have 24 hours to know your character.

9    They know your weak spots, your strong spots.  This is

10   just basic schooling, and which I'm -- I'm giving you

11   right now.  I mean if you take somebody who's been doing

12   it ten years, sometimes I can go in there -- I learn the

13   inmates as much as they learn me.  A brand new officer

14   may not learn them right away.  Everybody has a

15   different character.

16          So you can pretty much feel what's going on in

17   your house, and a lot of time it's by talking with

18   inmates, through common passing, just walking through,

19   checking out maintenance, this.  Listen to what their

20   complaints are.  Sometimes you can hear people when they

21   come back from court.  Not everybody's in there for the

22   same reasons.  Some people are career criminals.  Some

23   people are first-timers.  Some people are mentally

24   challenged, special needs.

25          So you -- doing this line of work, as -- as

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1    far as a new officer, they might not be able to

2    experience this.  They might act according to their --

3    straight across the board one way, where I might have to

4    make a judgment call, according to me knowing their

5    history, their criminal charges, their background, maybe

6    a couple incidents they had before, if they're in and

7    out all the time.  They don't change character, so you

8    kind of get used to that, and you can kind of decipher

9    on -- on how you're going to do it -- do it.

10           But -- but it's within the -- you're always

11   going to react, according to your training and according

12   to policy when dealing with a situation.  That's not

13   going to change.  It ain't like you give somebody a

14   break.  You're still going to bring them out.  You're

15   still going to separate them.  You're still going to

16   write a -- a disciplinary report.  You're -- you're

17   still going to review the video at -- at the time.  See

18   if there was a victim, see if there was an aggressor.

19   See if both of them was -- was the aggressor when they

20   come together.  You can go back and through, and

21   sometimes get information you hear, that helps you

22   establish exactly what happened, to determine what kind

23   of incident report you're going to move forward to your

24   supervisor so he knows, as well.

25        Q.   Is it fair to say that some officers respond

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

 1    to physical altercations differently than other

 2    officers?

 3              MR. BOGAN:  Object to form.  You can answer.

 4              THE WITNESS:  I would say yes.  Everybody's --

 5         everybody's different.

 6         It's like I said, I used to be an FTO, and I

 7         used to tell my trainees, don't try to imitate an

 8         officer.  Learn from your experience.  People will

 9         react to you different than they'll react to me.

10         Stay within your policy.  Stay within the

11         guidelines.  Stay within your training.

12         You know, the -- some people act differently

13         until they get more experience, and that comes

14         through that way.  But everybody has a different

15         character, so I can't speak for everybody on the way

16         that they're going to react.  But to me, that --

17         yeah.  I mean everybody has a different personality,

18         so I will sum up with that, the -- as far as the way

19         they do it.

20         Now, you can have different personalities and

21         characters, but if -- but the guideline -- the

22         bottom guideline here is, are you within -- in your

23         training and policy?  And that's what we have to

24         stick with.

25    BY MS. HARTON:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1      Q.   Are there any officers who will -- that you've

2  seen will witness a physical altercation between two

3  inmates and just kind of let it go on?

4      A.   No, ma'am.

5      Q.   Okay.  But you said all your --

6      A.   Because I would address it.

7      Q.   Go ahead.

8      A.   Because I would address it, if I -- if I knew

9  that they knew something, because I would address it.

10  But I've never witnessed anybody not address that and

11  kind of let it go.  No, ma'am.

12      Q.   But you said earlier that you might -- if you

13  witness a fight or an altercation, you might let it

14  continue while you call for backup, fair?

15          MR. BOGAN:  Object to form.  Go ahead.

16          THE WITNESS:  Well, if I take a situation that

17      there was one time, where there was a -- now this

18      was years ago.  Let's say you had ten -- ten people

19      fighting or whatever.  Am I going to run in there?

20      No, ma'am. I'm going to call a Signal 22.  I'm going

21      to get the correct amount of response people coming

22      through, to have backup.  At the same time, I'm

23      going to use the PA system.  If I'm in a tower --

24      remember, each section's different.  The old part of

25      the jail, you have tower officers.  They can put up

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1     on the PA system, we have flaps, we have different
 2     ways.
 3          If the fight's in there, can I go to the
 4     doorway, and open up, and yell?  Once they see the
 5     present officer, sometimes they stop.  You -- you
 6     kind of look at it -- it's kind of you're -- you're
 7     giving orders.  So it's like I said, different
 8     places in the jail, different surroundings,
 9     different environments, different scenarios.
10          So am I going to do something?  Absolutely.
11     Absolutely.  Do I have to do it right then and
12     there? No.  The first thing I'm going to do is make
13     sure I have backup, unless it's a life and death
14     thing, but at least I made sure that the information
15     was got -- was aired out, was made on the monti- --
16     on my radio.  Usually, somebody's there within
17     seconds, like said.  There's officers all around the
18     jail that -- that -- that are there at a reasonable
19     -- at a reasonable time or a quick response time.
20          You -- you have to use discretion, you know? Is
21     it mandatory that we run in there?  No.  No, it's
22     not.  Not until we have proper coverage.
23  BY MS. HARTON:
24     Q.  You said you have to use your discretion.  Is
25  there anything that you can -- you do not have
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1   discretion on when responding to a physical altercation?

 2   Anything that you are required to do in that situation?

 3             MR. BOGAN:  Object to form.  Go ahead.

 4             THE WITNESS:  Okay.  So again, different

 5        situations.  If I had an inmate -- let's say there

 6        was an altercation that happened in the back out of

 7        camera ways, because these guys know -- it's what

 8        you call the blind spots, and -- and sometimes

 9        they'll put up blankets or sheets, and this is stuff

10        that you -- that you notice after you start

11        reviewing the tapes, or it rings into your time

12        tents.  Or some inmates will tell you days later,

13        you might not have even been on the shift, but it

14        all -- it all depends on the situation. Or you might

15        have some people yelling and arguing, or you might

16        have a situation -- but sometimes they hide in the

17        back.  That's what I mean.  So it all depends on the

18        environment, and the situation, and what's going on.

19   BY MS. HARTON:

20        Q.   Okay.  I'm really asking a very simple

21   question.  So please listen to my question carefully.

22        A.   Okay.

23        Q.   You keep saying that you have discretion, and,

24   you know, it depends on the situation.  But when there

25   is an altercation, is there anything that a -- the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1   policy and training at Marion County requires you to do?
 2   No discretion.  Requires you, by policy and training?
 3        A.   The only thing in our policy that requires us,
 4   is how to deal with the incident after it -- it has
 5   occurred and what to do during.  So if there's an
 6   altercation, the policy states that you will go in there
 7   and give direct orders for it to cease, halt, or if it
 8   has already halted, you will separate the two
 9   individuals.  You will either rehouse, if it was an
10   argument and stuff, if it was a fight.  Regardless,
11   somebody's going to get rehoused and separated away from
12   one another.  An incident report's going to be written.
13   A disciplinary report's going to be written to go to the
14   DR people.  Somebody can go to -- to lockdown, if they
15   was the aggressor, if it was found out this person was
16   hit behind, and they didn't retaliate.
17        The inmates are given inmate handbooks to try
18   to deter any aggressions brought against each other, and
19   the proper way of addressing to bring it to the
20   officer's attention before it happens.  So that
21   information is supplied to the inmates, to try to help
22   them to avoid an altercation, as -- as you would say.
23   But also, it gives them a set of rules not to do to get
24   additional charge, whether it's inside or outside.
25        Q.   So the only thing that policy and training
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   requires of officers, when it comes to inmate
 2   altercations is how to handle it after it's over, the
 3   report writing, and the rehousing, and all of that; is
 4   that fair?
 5           MR. BOGAN:  Form.  Go ahead.
 6           THE WITNESS:  No, ma'am.  If I'm standing --
 7       talking to an inmate and he becomes aggressive, I
 8       can use a verbal command.  If he puffs up his chest,
 9       I can -- the policy also states that I can do other
10       things in a situation like that.
11   BY MS. HARTON:
12       Q.   And I -- sir, I --
13       A.   They give us different rules --
14       Q.   I need you to listen to --
15       A.   I'm sorry.  Go ahead.
16       Q.   I need you to listen to my questions very
17   carefully, or we're going to be here all day.  I am
18   asking you not about what you can do under policy.
19           I'm asking the things that you are required to
20   do in response to an inmate altercation by policy and
21   training, fair?
22       A.   Yes.
23       Q.   Do you understand that question?
24       A.   Yes.
25       Q.   Okay.  Please answer that question.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1          A.    Okay.   The answer to that question would be

 2   yes, ma'am.

 3          Q.    **Yes what?  What does it require?**

 4          A.    Yes.   Yes.   There's training to deal with

 5   incidents and disturbances.

 6          Q.    **Okay.   I'm going to ask the question one more**

 7   **time.   What does your policy and training require you,**

 8   **as a detention deputy, to do when you learn of an inmate**

 9   **altercation?**

10               MR. BOGAN:   Object to form.

11               You can answer it again.

12               I think he's answered it already.

13               MS. HARTON:   Okay.   I -- okay.   I don't think

14        that he has, so I would like to get the answer.

15               THE WITNESS:   Okay.   Well, I'll -- I'll sum up

16        -- summarize my answer, if that's all right.

17   BY MS. HARTON:

18          Q.    **Please.**

19          A.    The proper procedure -- okay.   The proper

20   procedure to when there's any -- any incident is that

21   the officer will conduct an incident report, generate a

22   disciplinary report, separation of inmates, rehousing of

23   inmates until the disciplinary officer at some time

24   investigates the incident in which happened.   Now, there

25   you go.   That enough?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    Q.   Is there anything in -- no.  That was great.

2    You answered it.  Thank you.

3         Is there anything in policy or training that

4    requires officers to intervene in a physical altercation

5    between inmates?

6    A.   That requires?

7    Q.   Correct.

8    A.   Okay.  The -- oh.  I'm going to say yes and --

9    and make it a short answer, unless we want to go in

10   detail, but yes.

11   Q.   Okay.  What does policy require an officer, as

12   it requires you to intervene in a -- in an ongoing

13   inmate physical altercation?

14   A.   Okay.  If I see one going on, at the time, I

15   am to give direct verbal orders to cease.  I -- if the

16   inmates do not stop, I have other -- other ways of

17   dealing with it.  I have spray, which -- I have a taser.

18   My objective is not to go hands-on but to use my tools

19   first.  That's in training.  I can spray, which is a --

20   which is a -- a device to separate the two.  Once

21   they're separating, both of them will -- then will be

22   placed in handcuffs.  Again, like I said, the procedure

23   in which I told you that there is one place would be me

24   repeating myself.  That would be the separation,

25   handcuffing.  Also -- also, once they're separating,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  they will automatically -- and this is according to --

2  by policy -- they will be seen by medical for any

3  injuries.

4      **Q.  But you I think you said earlier, though, that**

5  **you are not required by policy and training to intervene**

6  **in the moment on a -- an inmate altercation; is that**

7  **fair?**

8          MR. BOGAN:  Object to form.

9          THE WITNESS:  If it's multiple things that

10     could cause harm to the officer, no, ma'am, until

11     proper coverage has arrived.

12  BY MS. HARTON:

13     **Q.  Okay.  So --**

14     A.  And that would be for security.

15     **Q.  So essentially, you as an officer have**

16  **discretion, depending on the situation, to decide**

17  **whether or not you want to get involved in an inmate**

18  **altercation; is that fair?**

19          MR. BOGAN:  Object to form.

20          THE WITNESS:  Yes, ma'am --

21  BY MS. HARTON:

22     **Q.  Okay.**

23     A.  -- because that would determine on what

24  procedures I would follow after that to follow through

25  to get that situation under control.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     Q.   Great.  Thank you.  I -- I'm not trying to ask

2    you trick questions.  I really am just trying to --

3     A.   Trust me, there is no trick -- there is no

4    trick questions.  It's just there's so many scenarios

5    that -- that would guide me to either do one, two, or

6    three, and those are dictated by policy.

7     Q.   Okay.  What policy?

8     A.   That'd be under the use-of-force policy.  That

9    would be the use-of-force matrix.  That would be --

10    again, if you go into the Florida mail -- jail

11    standards, or FDLE, you'll have the matrix which tells

12    you the type of use of force.  It may -- can be passive.

13    He can be active.  He can be combative.  So each one of

14    those is an end response to the way I would act, but

15    that -- and that's what I'm getting at.  That is

16    determined on the use-of-force scale, and that would be

17    also part of our training, as well.  Sometimes the

18    interaction could be just verbal, and sometimes it could

19    be command presence.  Then sometimes you have to go with

20    mechanical restraints, chemical restraints, depending on

21    the severity of the incident.  And that would all be

22    part of our training.

23     Q.   What is the point of the security checks?

24    What's the purpose?

25     A.   The part of the security check is insured that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1    all inmates have not escaped, that everybody is in their
 2    assigned area, that the -- that you see flesh, hair,
 3    skin.  It also ensures that nobody has moved to a
 4    different bunk.  It ensures, to sum it up, the
 5    accountability that the inmates are there.
 6         Q.   About how -- in November, October of 2021,
 7    could you estimate to me about how often inmate
 8    altercations in Gulf Pod would occur?
 9              MR. BOGAN:  Object to form.
10              THE WITNESS:  No, ma'am.  I wouldn't have any
11         of that information, unless I went back and checked
12         the JMS.  I wouldn't have any specific number to
13         give you or even a guess.
14    BY MS. HARTON:
15         Q.   Well, the JMS wouldn't really help you,
16    knowing how often they occur, because the JMS only
17    records the ones that are responded to, fair?
18              MR. BOGAN:  Object to form.
19              THE WITNESS:  That -- I can't answer about
20         other people.  I can only answer -- answer about the
21         ones that I was involved.  One, there -- there would
22         be a report.  So no.  I couldn't give you a correct
23         answer on ones that -- that might not have been
24         checked on.  I wouldn't have any of that information
25         on which ones would or would not.  The ones I would,
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1     would be the ones on the JMS, but the ones that

2     you're saying, I wouldn't know any of that

3  BY MS. HARTON:

4     **Q.   Right.   There are altercations that occur --**

5  **that happen without any officer knowing or intervening,**

6  **right?**

7         MR. BOGAN:  Object to form.

8         THE WITNESS:  No, ma'am.  I wouldn't know that.

9  BY MS. HARTON:

10    **Q.   Okay.  Are any steps taken in Gulf Pod to**

11  **prevent inmate-on-inmate violence before it happens?**

12        MR. BOGAN:  Object to form.

13        THE WITNESS:  Before it happens?  Usually,

14     within -- due to past history, if something happens

15     in -- in a house, -- and let's say that I've been on

16     that post for a while, and inmates are housed there

17     for a while, I usually reiterate the inmate handbook

18     rules and regulation, even if it's arguing, or if

19     there's a separation, or if it's this.  Again, that

20     falls on different officers.  Some officers might

21     not say nothing.  Some officers just might do the

22     report.  Some officers just might do this.  I make

23     it a point to let it be known that if anything

24     happens within the house that one person did to the

25     other -- and the inmates know that -- that -- that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

1   something is going to be done.

2      So is anything done?  I stress to them that

3   outside charges can be brought forward, as well as

4   inside charges, lock down.  Some people are new to

5   it. Some people aren't.  It -- it's like I said, the

6   inmates -- I have some inmates that come to me and

7   let me know some stuff.  Anything that inmates let

8   me know -- and I -- and I -- and -- and I'm not one

9   of those -- I look into it to see if there's any

10   seriousness.  But the thing is I've always checked

11   into something that I'm told whether it's true or

12   not, but I -- but I -- but I also got to have facts.

13   I also got to have tangible stuff to make sure it's

14   right, but there will be some sort of looking into

15   it to verify it or not verify it.

16      So as far as I can tell you, each person is

17   different, but that's the reason we had the briefing

18   amongst different shifts, as well.  If something

19   happened on our shift, we'll let the other shift

20   know. That way, it -- if it's made aware of, you

21   know, keep an eye on it so it doesn't spark up

22   again, if the incident did happen.  So a lot of

23   stuff can be -- can be taken care of just through

24   mutual conversation, or people -- or inmates giving

25   you information, or following up on an actual event.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

BY MS. HARTON:

    Q.   You said earlier some officers may not say anything.  What did you mean by that?

    A.   No.  What I -- no.  I didn't say that.  I said I don't know of -- of those incidents, if the officers don't.  In other words -- wait a minute.  I know what you're saying now.  Okay.  So -- so in other words, every officer is different.  Every -- every person is -- has a different character, okay?  I could be a quiet officer.  The inmates learn the officers.  I might be one that they can address.  They might not feel comfortable going to that officer that -- or this might be a non-talker, a talker, someone who is really diverse into experience, dealing with the inmate situations where somebody is not -- not diverse in it, brand new. So a lot of it comes from the inmates, as far as conversating with them, being observant, looking at the -- the -- the incident reports, finding out what happened in the last couple days that you might've been off, taking the information from other officers of situations, keeping an eye on them.

       Sometimes it's a simple something as listening to an inmate on a situation that might cause them to be removed.  Some people -- it's like I said.  Some people are Signal 37s.  Some people go SP.  Some people want to

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

 1   go PC.  There's certain guidelines on -- on different

 2   formats that that can take.  Each one has a different

 3   avenue, so as far as officers talking, I would just say,

 4   be diligent in your -- in your routine.  Me, I can only

 5   speak for me.  I try to conversate with the inmates, not

 6   on a friendly level, but on a professional level, as far

 7   as detention to inmate.  If they have a concern, inmate

 8   request forms.  If they have the question, where can I

 9   get this taken care of, directing them in a right way.

10   That's part of my job.  Is it to get personal with them?

11   Absolutely not.  That is against policy.

12        Q.   Would you -- how would you characterize the

13   level of violence that occurs in -- or occurred in 2021

14   in Gulf Pod compared to other pods in the facility?

15             MR. BOGAN:  Object to form.

16             THE WITNESS:  Again, ma'am, I don't have the

17        record of the numbers of so-called incidents in --

18        in Gulf Pod, alone.  Again, if I wanted that

19        information, I could go and look up incident

20        reports.  I can look up and find out what type of

21        incident reports.  The only ones that -- that --

22        that -- really, that would be concerning to me would

23        be the ones that I write or the ones I have

24        knowledgeable on or that another officer that was on

25        another shift that -- that is on the same post might

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1      have written that pertains to my post.  I would take
 2      up a whole bunch of time, if I had looked at every
 3      post and every incident that might have or could
 4      have happened, and that's not my responsibility.  My
 5      responsibility is the post that I'm on at that time,
 6      and the more information I have, that we have a good
 7      day, that we have a bad day?  Is there something I
 8      need to be looked out for or not looked out for?
 9      But any incident has occurred that I -- that -- that
10      I'm aware of, I check into.  I write an incident
11      report.  The factuals are facts and notified a
12      supervisor.  And I know that, as well as my partner,
13      because that are situations that you both would be
14      knowledgeable to.
15           But to answer your question, I don't know how
16      many incidents within that pod has happened in that
17      -- in that certain -- at that certain time.  No,
18      ma'am.
19 BY MS. HARTON:
20      Q.   Can't give me an approximation or an
21 estimation?
22           MR. BOGAN:  Object to form.
23           THE WITNESS:  I couldn't.  I -- can't give you
24      something that ain't based on a factual -- a number.
25 BY MS. HARTON:
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

1     Q.   If I told you that in September of 2021 there

2   were three fights that occurred in Gulf Pod over the

3   course of two days, would that surprise you?

4        MR. BOGAN:  Object to form.

5        THE WITNESS:  It wouldn't surprise me if one

6      happened on mine and it was a report that's there.

7     Three within a month?  There's four shifts, so --

8  BY MS. HARTON:

9     Q.   Sorry.  Sorry.  No.

10    A.   -- that'd be one --

11    Q.   Let me stop you because I said, "three within

12  two days."

13    A.   Oh.  Three within two days.  Are the days

14  consecutive or they within --

15    Q.   Yes.  They are consecutive.

16    A.   That -- that would surprise me.  But then

17  again, it really wouldn't surprise me because I don't

18  know what the situation or what shift it involved.  A1,

19  A2, B1, B2.  I don't understand the -- situations.  Or

20  it -- could it have occurred around canteen?  I --

21  again, these are situationals there.  But to answer your

22  question -- and I -- I know I can see I'm kind of

23  getting to you.  To answer your question, I wouldn't

24  know.

25    Q.   No.  I -- I'm not asking if you know.  I'm not

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

```
 1   asking if you know.
 2        A.   Okay.
 3        Q.   So if -- you were in -- you were working in
 4   Gulf Pod consistently every shift for two to four years,
 5   right?
 6        A.   Yes, ma'am.
 7        Q.   You know generally how the inmates conducted
 8   themselves, and interacted with each other, and
 9   interacted with you, right?
10        A.   Yes, ma'am.
11        Q.   Okay.  And you watched during your shifts
12   events unfold in the different sections of Gulf Pod,
13   right?
14        A.   Yes, ma'am.
15        Q.   Okay.  So if I told you that over the course
16   of two days, there were three fights between inmates, it
17   -- what -- is that unusual to you in the context of what
18   usually goes on during a shift?
19             MR. BOGAN:  Object to form.
20             THE WITNESS:  Again, it -- I wouldn't -- it --
21        I wouldn't know of those incidents because it's like
22        I said, sometimes inmates find blind spots, and they
23        go, and nobody says nothing.  So would -- would that
24        shock me?  In that type of environment, no, it
25        doesn't shock me, if it did occur.  So no, I
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1          wouldn't be shocked.
 2    BY MS. HARTON:
 3          Q.    Okay.  If another inmate testified that
 4    typically fights occur in Gulf Pod four to five times a
 5    week, would that surprise you?
 6               MR. BOGAN:  Object to form.
 7               THE WITNESS:  That would -- surprise me if it
 8          happened during my shift.  I can't speak about other
 9          officers' shifts or the -- or the situations because
10          that -- I'm not there.  But that would surprise me
11          if it happened while I was there.
12    BY MS. HARTON:
13          Q.    I'm not asking if you were there.  You
14    understand generally the level of violence that occurs
15    within the Marion County Jail because you worked there
16    and you've worked there for a long time, right?
17          A.    I am aware that violence does occur at the
18    Marion County Jail, as any other institutions.  Yes,
19    ma'am.
20          Q.    And you witnessed these incidents, and you are
21    -- you go to work every day.  And you are kind of aware
22    of the level of violence that occurs, right?
23               MR. BOGAN:  Object to form.
24               THE WITNESS:  There's different levels.  I
25          would say yes.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

BY MS. HARTON:

    Q.   Oh.   Okay.   And so you have a general
understanding of whether there's a lot of violence
occurring in the Marion County Jail or no violence
occurring in the Marion County Jail, right?

        MR. BOGAN:  Object to form.

        THE WITNESS:  Yes, ma'am.  You're going to have

    some form of violence in a -- at a jail.  Yes,

    ma'am.

BY MS. HARTON:

    Q.   Right.   And so if an inmate says that four to
five fights are happening just in Gulf Pod per week,
based on your work in the Marion County Jail over 20
years, does that sound like a lot of violence happening
in the Marion County Jail compared to your experience?

        MR. BOGAN:  Object to form.

        THE WITNESS:  According to my experience

    working with inmates, if one inmate told me that

    every day, I'm going to look at it, but I'm not

    going to take one inmate's word.  There -- as you

    say, there's 87 people in there.  If I have 86

    people, and I go and review video from this one

    person and there's no evidence, inmates have other

    agendas to want to say that either to get moved.

    There's other situations, which I don't want to get

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1          into because I know it spins in a whole lot of
 2          different directions.  I -- I'm going to listen to
 3          the one person, and I'm going to look in it. Am I
 4          going to dive in it deeply as if it did happen? No,
 5          but it will be checked out.  And there must be
 6          factuals to proceed with anything else.
 7     BY MS. HARTON:
 8          Q.   Does four to five fights per week in Gulf Pod
 9     sound like a lot of violence to you?
10          MR. BOGAN:  Object to form.
11          THE WITNESS:  If you're asking me if it's
12          happening or -- or just the idea of it, then I would
13          say, yeah, that sounds like a lot.
14     BY MS. HARTON:
15          Q.   Okay.
16          A.   Now, do I know that?  I don't know of such,
17     but you asking and answering a question.  If -- if I was
18     to know that there was a lot, let's say, then in my
19     opinion is in two days, yes.  But I would want to know
20     the reasons behind them that they're in a lot, but
21     that's just me, personally.
22          Q.   Would you agree with me that sometimes fights
23     that occur in Gulf Pod are not brought to the officer's
24     attention, unless an inmate does so?
25          MR. BOGAN:  Object to form.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1              THE WITNESS:  That I wouldn't have -- no,
 2       ma'am.  I would have no information about other
 3       officers.  I can only tell you about the ones about
 4       -- with -- with me, but I can't speak on the other -
 5       -
 6  BY MS. HARTON:
 7       Q.   Tell me about the ones with -- tell me about
 8  the ones with you, then.
 9              MR. BOGAN:  Object to form.
10              THE WITNESS:  Okay.  The -- I think it was one,
11       one time.  I think -- and this has to do with
12       canteen. A lot of times when -- when there are
13       fights, it seems like they stem around canteen time
14       or -- it's usually one or two things that I know,
15       which are usually either gang-related or around
16       canteen.  And sometimes people will jump the person
17       or do this, steal their canteen, which is theft.  I
18       believe there might've been an incident.  One that
19       comes to mind is -- I think I had three that -- that
20       jumped this one kid over a canteen, and a lot of the
21       inmates don't say something.  And sometimes it's,
22       you know, I guess, what the inmate calls snitches
23       get stitches.  I look at everything, so when they
24       brought it up, I wasn't even on post.  But I went
25       ahead and looked into it.  Noticed the situation.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1        And I looked into it, and it turned out to be
 2        factual.  What I did is I removed the inmates.  I
 3        wrote the DRs.  I notified jail investigations.  I
 4        also informed my supervisor, and that was taken care
 5        of.  And that was resolved and -- and -- and passed
 6        forward.
 7   BY MS. HARTON:
 8        Q.   Sir, you would agree with me that often the
 9   only way that you, as a detention deputy in Gulf Pod,
10   learn that a fight has occurred is if an inmate notifies
11   you of that fight, right?
12             MR. BOGAN:  Object to form.
13             THE WITNESS:  I'm not going to say just the
14        inmate.  It could happen in front of me.  It could
15        be in a debriefing or if an inmate gives it to me.
16   BY MS. HARTON:
17        Q.   Sir --
18        A.   There is a lot of ways --
19        Q.   -- that is not my question.  That is not my
20   question.
21             MS. HARTON:  Felicia, would you mind reading my
22        question for Corporal Miller?
23             THE REPORTER:  Yes.  He --
24             MR. BOGAN:  I think he answered the question,
25        but go ahead.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1            THE REPORTER:  Hold on.
 2             (REPORTER PLAYS BACK REQUESTED QUESTION)
 3            MR. BOGAN:  Could you play his answer?
 4            THE REPORTER:  I'm sorry.  What'd you say?
 5            MR. BOGAN:  Yeah.  Could you play the answer?
 6            THE REPORTER:  Yeah.  Give me one moment.
 7             (REPORTER PLAYS BACK REQUESTED TESTIMONY)
 8            THE WITNESS:  Okay.  Did my -- I'm sorry.  Go
 9       ahead.
10            MR. BOGAN:  Hold on a second.
11  BY MS. HARTON:
12       Q.   Yeah.  I -- I'm looking for just a simple yes
13  or no.
14       A.   Okay.
15       Q.   That is a way that you can be notified of
16  inmate-on-inmate violence, that an inmate informs you of
17  the incident?
18            MR. BOGAN:  Object to form.  That's a different
19       question now.
20            THE WITNESS:  Yes.
21            MR. BOGAN:  Which one do you want him to
22       answer?
23  BY MS. HARTON:
24       Q.   Answer the first question.
25       A.   The first one, that's the only way?  No.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        Q.   I didn't say that it's the only way.  I'm
 2   asking: Often, is that the way that you learn?
 3            MR. BOGAN:  She -- the word "often" is what she
 4      said.
 5            THE WITNESS:  The answer is still going to be
 6      no.
 7   BY MS. HARTON:
 8        Q.   Okay.  What -- why is the answer no?
 9        A.   Because I'm informed different ways.  The
10   majority of the time is through debriefing.  A lot of
11   times is when a signal is called.  Sometimes an inmate
12   might tell me of an incident that might have happened,
13   or an incident might happen in there and not knowing
14   about it until -- until later.  But that's not the
15   majority of the way or the only way, so my answer has to
16   be no.
17        Q.   Okay.  Would you agree that it's uncommon that
18   you are -- you become aware of a fight because you
19   physically witnessed it yourself?
20            MR. BOGAN:  Object to form.
21            Go ahead.
22            THE WITNESS:  Could you rephrase that or -- or
23      repeat that?
24   BY MS. HARTON:
25        Q.   Sometimes you witness a fight yourself.  You
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1  see it, right?

 2       A.   Okay.

 3       Q.   And that's how you become aware that that

 4  fight occurred, right?

 5       A.   Yes, ma'am.  Yes, ma'am.

 6       Q.   Okay.

 7       A.   Okay.  Yes.

 8       Q.   But that's not as common as being informed of

 9  the fight through an inmate, or a radio call, or another

10  officer; is that fair?

11            MR. BOGAN:  Object to form.

12            THE WITNESS:  Yeah, that's fair to say. There's

13       many ways.

14  BY MS. HARTON:

15       Q.   Okay.  Okay.  I want to talk about the day of

16  the incident.  You said that you were in the master

17  control room when Cory Merchant was attacked, right?

18       A.   Yes, ma'am.

19       Q.   Okay.  Who notified you of the attack?

20       A.   That would be a -- I -- I didn't know that

21  there -- there was actually an attack.  There was a

22  Signal 46 call, which means it was a medical emergency,

23  that Gulf Pod needed.  That's the way that that came

24  out.

25       Q.   And who notified you?
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1      A.   That would've been called over the radio.  It

 2   would be my speculation that Officer Ski, because he was

 3   the officer in there at the time, would have called a

 4   46, which then when officers start responding and they

 5   push the buttons.  Me being a master controller, those

 6   alarms was -- would be -- pop up, and I would open the

 7   doors to allow each responding person out of their areas

 8   to respond into G Pod, as well.

 9      Q.   Okay.  And remind me what you were doing in

10   the control room when you got the notification?

11      A.   I was conducting -- I -- I was conducting a

12   break at the time.

13      Q.   Okay.  So what did you do after you got the

14   call?

15      A.   After the call, I started letting people out

16   of the doors to respond to the call.

17      Q.   Okay.  So did you go back to Gulf Pod?

18      A.   After I completed the break.  At this time, I

19   can't remember if I might have stepped out or -- or --

20   or went straight back.

21      Q.   When you say you completed the break, you're

22   talking about, like, you were on, like, a 15-minute

23   break?

24      A.   No.  I wasn't on a break.  I was relieving

25   someone for their break.  So once they came back, then

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1   their break would've been over.  I can't tell you for
 2   sure what I did at that time.  I -- could have went
 3   back, or I could have maybe went down the -- I don't
 4   know where I was after that --
 5        Q.   Okay.
 6        A.   -- or what I actually did that far back.
 7        Q.   Did you ever see Cory after the incident
 8   happened?
 9        A.   No, ma'am.  He had already been removed from
10   the pod.
11        Q.   Okay.  You never saw him being carried out on
12   a stretcher or anything like that?
13        A.   Yes.  I -- because I would've been in master
14   control, right across from G Pod, so I would've had to
15   let them in.  I let them in, and they -- and I let them
16   out.
17        Q.   Okay.  I'm going to show you Exhibit 55.  Sir,
18   can you see my screen?
19             (EXHIBIT 55 MARKED FOR IDENTIFICATION)
20        A.   Yes, ma'am.
21   BY MS. HARTON:
22        Q.   Okay.  Can you tell me what this document is?
23        A.   Oh.  That'd be a letter of counseling.
24        Q.   Okay.  It's a letter of counseling --
25        A.   Do you mind if I get -- do you mind if I get
```

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

```
 1   up and walk up so I can read it?
 2        Q.   I can zoom in.  I can zoom in for you.  I can
 3   zoom in, if that helps.
 4        A.   Oh.  Yes.  Yes.
 5        Q.   Is that good?
 6        A.   Yes, ma'am.  That's fine.
 7            MR. BOGAN:  That's good.
 8   BY MS. HARTON:
 9        Q.   Okay.  What is this -- is a -- this letter is
10   addressed to you, correct?
11        A.   Yes, ma'am.
12        Q.   Did you --
13        A.   You keep moving it up and down, so I can't
14   read it.
15        Q.   Oh, okay.  Sorry.  I'm going to keep it here
16   for now.  This letter is addressed to you from Sergeant
17   Jerome Dukes, right?
18        A.   Yes, ma'am.
19        Q.   And it's dated April 14, 2021, right?
20        A.   Yes, ma'am.
21        Q.   Okay.  Do you -- have you seen this letter
22   before?
23        A.   I -- I can't recall it.  I'm just letting you
24   know it's been four years ago.
25        Q.   Okay.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        A.   Can you scroll up?
 2        Q.   Yeah, I'll let you read it.
 3        A.   Okay.
 4        Q.   So why don't you --
 5        A.   Okay.
 6        Q.   -- read it into the record for me?  If you
 7   could read it out loud.
 8             THE WITNESS:  Do I need to read it out loud?  I
 9        mean, if she has it.
10             MR. BOGAN:  You can -- if you can read it.  If
11        you can't read it, then don't.
12             THE WITNESS:  I mean, well --
13             MR. BOGAN:  It -- I mean, the document speaks
14        for itself.  Do you really need him to read it?
15             MS. HARTON:  No, he can read it to himself.
16        That's fine.
17             MR. BOGAN:  Okay.  Thank you.
18             THE WITNESS:  Okay.  Yes.  That -- that had a
19        --
20             MR. BOGAN:  No, let her ask --
21             THE WITNESS:  I'm sorry.  Go ahead.  Okay.
22   BY MS. HARTON:
23        Q.   So reading these paragraphs, do you recall
24   receiving this letter at any point?
25        A.   Yes, ma'am.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

 1        Q.    Okay.  This letter is outlining a criticism of

 2   some security checks that you completed, right?

 3        A.    Yes, ma'am.  I'm just -- I'm reading the

 4   bottom part now, but yes, ma'am.  Go ahead.

 5        Q.    Okay.  I need you to read both paragraphs, and

 6   then I'm going to ask you questions about it.

 7        A.    Okay.

 8        Q.    So let me know when you're done.

 9        A.    Okay.  Yes, ma'am.  Go ahead.

10        Q.    Okay.  This document reflects some criticisms

11   of some security checks that you conducted, fair?

12        A.    Yes, ma'am.

13        Q.    Okay.  It says, "At approximately 400 hours, I

14   began reviewing the JMS daily logs for Golf Pod."  First

15   of all, it refers to it as Golf Pod with an O, but it's

16   -- is it golf or gulf with a U?

17        A.    No.  That's probably a typo.

18        Q.    Okay.

19        A.    It's G-U.

20        Q.    I just wanted to make sure it wasn't crazy.

21   Okay.  So the JMS, what are a -- what are JMS daily

22   logs?

23        A.    That would be jail management.  That's a JMS,

24   Jail Maintenance System.

25        Q.    And what are the --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1        A.   That's a computer log.

 2        Q.   **Okay.  What are the --**

 3        A.   It's a computer log.

 4        Q.   **Uh-huh.  So the daily logs, what are they?**

 5        A.   That would be in -- that is what it's called

 6   when it's broken down in the JMS, so if you went in

 7   there, you would have incident reports, you would have

 8   different titles of different things that you would

 9   click on.  That would be called the daily log.

10        Q.   **Uh-huh.**

11        A.   You know it's complete if it's all complete,

12   you know.

13        Q.   **Uh-huh.  So that's where you go in and you**

14   **write, I did my security check, right?**

15        A.   Yes, ma'am.

16        Q.   **Uh-huh.  So it says that you had two entries**

17   **that violated operational directive 6164.35D.  What --**

18   **do you recall what about those two entries violated the**

19   **operational directive?**

20             MR. BOGAN:  Object to form.  You can answer.

21             THE WITNESS:  Yes, ma'am.  At that time, I

22        wouldn't know.  I would have to get with Dukes.  I'm

23        sure back then, he explained to me what it was, but

24        I couldn't really remember or let you know what it

25        was.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

BY MS. HARTON:

Q.   Okay.  The next sentence says, "The first
entry was at 117 hours.  Your entry for a security check
stated, 'Completed at doors, home alone.'"  What is,
"Completed at doors" --

A.   Right.

Q.   Or what does, "Completed at doors, home
alone," mean?

A.   Well --

MR. BOGAN:  Object to form.  Go ahead.

THE WITNESS:  Okay.  Well, I do know that at
one time, they -- they did not want us to type in
home alone because that's not a correct way of
entering into the -- into the system.  "Complete at
doors," means that I could open doors, walked into
the day room, not had walked all the way around, but
walked in, look, and walked out, but at the time --
and -- and then walked out and -- and wrote it in
and then put in,  "home alone."  It's like you said,
there's some things where you could walk in the day
room.  There's some that you could walk close there.
It depends on the security. That's that could be --
it -- let me see, I'm trying to think.  That would
be conducive to the way that maybe the supervisor
wants it written in because you have four or five

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1        different supervisors at -- at different stages

 2        during different posts or different times.

 3             So some supervisor might want it to be logged

 4        this way.  Some might want to be logged that way.  I

 5        know that -- that the home alone part, that wasn't a

 6        correct way of doing it, you know, put out, make

 7        sure that you put this contact.  If I did try to

 8        contact somebody and if they wasn't able to do it, I

 9        still had to do one, so used to walk in the day

10        room.  If partner, you can do it this way, but you -

11        - you got to make sure the check was done.  If the

12        door was breach, I walked in but if -- if I remember

13        and I don't want to take a guess, I would say you

14        would have to get with Sergeant Dukes on this, but I

15        would think it would be the home alone thing because

16        I haven't written that down since.

17   BY MS. HARTON:

18        Q.   What does, "home alone," mean?

19        A.   It means that you're at -- you're in the pod

20   by yourself, and therefore you need to call your

21   supervisor to come and sometimes if you call, it might

22   go to voicemail and -- and you still have that hour that

23   it has to be done, as -- is what the policy calls for so

24   sometimes if I go in there, I might walk through the day

25   room and back.  Come back out but that has to be on
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    there but I think the fact that I put, "home alone,"

2    might have sound a little bit derogatory.  That's just

3    me saying that personally, not that that's what was said

4    so, but unless you get with Sergeant Dukes to actually

5    figure out what happened four years ago, that's the way

6    that -- that -- that I could probably think of it.

7        Q.   So when you write, "Completed at doors, home

8    alone," is it -- does that mean that you are saying in

9    your -- in the daily log, when you say, "Completed at

10   doors, home alone," that I was not able to conduct my

11   full security check because I was alone in the pod,

12   right?

13            MR. BOGAN:  Object to form.

14            THE WITNESS:  It means that security check was

15        done, but yes, ma'am.

16   BY MS. HARTON:

17       Q.   Well, it wasn't done if it was completed at

18   the doors, right?

19       A.   No.  That means that if I had to open the

20   door, walked in, and done that, yes, but no, but -- but

21   I see what you're saying, so my answer is yes.

22       Q.   Okay.  I'm going to ask a yes or no -- okay.

23   Sorry.  Let me just think through how -- I just -- we're

24   having a communication barrier, so I'm just trying to

25   figure out how I can best communicate this -- my

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    question.

2         A.   No.  That's fine.

3         Q.   You say a security check was done.  When you

4    write, "Completed at doors, home alone," you say that

5    that means the security check was still done, right?

6         A.   Yes, ma'am.  The fact that I was home alone

7    and I couldn't walk all the way through or whatever, but

8    again, it -- different sergeant has different ways, and

9    at this time, that could have been that way, but the way

10   that I wrote it, and he might not agree.  Again, I can't

11   answer.  That would be something maybe you can talk to

12   Sergeant Dukes to get detail about, but to answer your

13   question, I'm going to say yes, ma'am.

14        Q.   So you understand this letter to be a

15   criticism of the way you documented your security check?

16        A.   My security check.

17        Q.   Let me finish my question.

18        A.   Okay.

19        Q.   Yeah.  So you understand this letter to be a

20   criticism of the way you documented the security check,

21   not the completeness of the security check itself,

22   right?

23        A.   Yes, ma'am.

24        Q.   Okay.  And so you believe you -- or sorry,

25   strike that.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1            You understand it to be acceptable under the
 2   policies for you to have conducted that security check
 3   in the manner that you did by just walking through the
 4   day room, instead of going through the entire cell and
 5   looking at every inmate, right?
 6            MR. BOGAN:  Object to form.  Go ahead.
 7            THE WITNESS:  No, ma'am, because if that was
 8        acceptable, I wouldn't have got this counseling
 9        statement.  No, this ain't we -- the way that we do
10        it, and then -- and then it was corrected.
11   BY MS. HARTON:
12        Q.   But I thought you said that this was a
13   criticism of the way you documented it, not the way you
14   conducted the check itself?
15            MR. BOGAN:  Object to form.
16            THE WITNESS:  No.  No.  What I'm -- no.  What
17        I'm saying, according to the way that you ask it, is
18        if this is the reason that it -- that it was written
19        up, then the Sergeant found something that he did
20        not agree with, according to the policy, in which he
21        read to me at the time, saying that this ain't the
22        way you're supposed to do it.  And then he probably
23        told me at the time, read the policy back to me,
24        which I corrected and hasn't -- and haven't violated
25        again.  So -- so I can't tell you what the Sergeant
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1        was thinking or what conversation we had him

 2        addressing to what he wanted to say about this, but

 3        the operations directives are specific, so if

 4        they're here and I violated them, then that's the

 5        reason why I got this counseling statement.  Yes,

 6        ma'am.

 7   BY MS. HARTON:

 8        Q.    Okay.  So let me ask this: You say that you

 9   conducted your -- this security check by walking through

10   the day room.  You had physical presence in the day room

11   with a security check, right?

12        A.    I'm saying that if I, according to this -- and

13   I'm reading this.  I'm not going to guess what I did

14   back then.  I'm going by the documentation, which you

15   are laying in front of me.

16        Q.    Okay.  Well, the --

17        A.    If it's saying that I opened the door and --

18   and walked in, and did it, and locked it in house alone,

19   and he wrote down that he counseled me as a result to

20   adhere to the operations directives, as he wrote them

21   out, and at which time, I don't know if they changed or

22   not, but according to the -- the policy at that time, if

23   I was in violation, then he corrected it.  Yes, ma'am.

24        Q.    Where in this document does it say that you

25   walked in through the day room to conduct that security
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  check?

2      A.   I -- I didn't.  No, I didn't say that.  I was

3  using that as an example earlier.  If I open the door --

4  if I open the door -- the day room is -- is right as you

5  open the door and you walk in, you're literally in the

6  day room.

7      Q.   Okay.  This document says that you completed

8  your security check at the doors, right?

9      A.   I reviewed the day log security -- as entry

10 security stated completed at the doors, home alone. Yes,

11 ma'am.  The doors are right there with the -- with the

12 thing -- right -- the door and the doors area goes right

13 into the day room.  I didn't say day room.  I just said

14 at the door.  That means if I reached the door, and I

15 walked in, that would put me in the day room.

16     Q.   Okay.  "The second entry at 222 hours, you

17 entered at door 200, at door" --

18     A.   Again --

19     Q.   -- "home alone."

20     A.   Yeah.

21     Q.   You have to let me answer my question, sir.

22 What --

23     A.   Sorry.

24     Q.   That's okay.  What does that mean?

25     A.   That means I did it first thing the first

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

```
 1   time. That means that when -- when he finally come down,
 2   he asked me.  I'm just guessing here.  Again, if he
 3   found that he saw that, that means that I did it twice.
 4   That means that that's not the way I was supposed to do
 5   it. Therefore, he called it.  He told me I was in
 6   violation. He told me how to correct it, and therefore
 7   it was corrected that or I did not do it the way that --
 8   that according to the way he told me that I wasn't doing
 9   it. So it's -- it's a counts statement to let me know,
10   you know, even though this is what's going on, you don't
11   do it this way, so it's a counts statement, and
12   apparently there was two logs that were in the computer
13   that -- that he saw where I put that, and he questioned
14   it, and then he got with me to correct me on.
15       Q.   Uh-huh.  Had you ever conducted a check like
16   that before -- a security check like that before where
17   you just completed at the doors instead of --
18            MR. BOGAN:  Object to form.  Go ahead.
19   BY MS. HARTON:
20       Q.   -- a full security check through the dorm?
21            MR. BOGAN:  Object to form.
22            THE WITNESS:  That I can think of, no, ma'am.
23   BY MS. HARTON:
24       Q.   Okay.  What about after this?
25            MR. BOGAN:  Object to form.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

```
 1            THE WITNESS:  No, ma'am.
 2  BY MS. HARTON:
 3       Q.   Okay.  Do you know why at the time that you
 4  did these security checks at the doors, you thought it
 5  was appropriate for you to do so?
 6       A.   The -- the -- again, the only thing I can
 7  think of is -- is if I had a different supervisor and
 8  say, hey, you're home alone or if we're short, this,
 9  that, and other.  Okay.  Just make sure you -- I'm just
10  assuming here, I'm just giving you ideal.  Just go in
11  the day room and look around, make sure everything's
12  okay.  Everybody's present and then walk -- and -- and
13  then come out, but some people might -- one -- one
14  supervisor might be, I don't want you to go all the way
15  through and walk through the bunks because you're by
16  yourself but walk through the thing here, call your
17  supervisor.  That is -- that -- that's the only thing I
18  can think of.
19       Q.   So sometimes supervisors will tell you not to
20  do a security check by walking through the bunks?
21       A.   Well, I ain't going to say that they tell me
22  not to do one.  We have to do one, but some supervisors,
23  according to the shift, that's their call on how they
24  want to perform it, and they'll put it out in briefing,
25  or they'll do this to make sure that we're in policy to
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1    make sure we call just like this report here.  I'm
 2    pretty sure -- and I'll take a wild guess.  I'm pretty
 3    sure because I done that, that was brought up in
 4    briefing as a not to, but I'm just speculating.
 5         Q.   But you --
 6         A.   Whenever there's something -- go ahead.
 7         Q.   Go ahead.  No, please.  Go ahead.
 8         A.    No, but the only thing I can think of is if
 9    something like this, it does happen, then the
10    supervisor's doing their job to let us know, hey, I know
11    you're doing one.  I know we're this and I couldn't come
12    down, but you need to do this and did you get letter? If
13    it happens again, then we're going to go to the next
14    level, which -- which we didn't have to go to the next
15    level because it was corrected.
16         Q.   I'm going to stop sharing this because I'm not
17    talking about this particular incident anymore.  I just
18    -- I'm trying to follow up on something you said
19    earlier, which is that a -- you said that a supervisor
20    might say, don't walk through the bunks during your
21    security check.  I'm trying to understand what you meant
22    by that; can you explain?
23              MR. BOGAN:  Object to form.
24              THE WITNESS:  The -- let me see.  If the policy
25         is -- is written this way, and if the supervisor
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1          reads it this way, and then they can put out, make

2          sure that your policy's been followed, this, this,

3          and this. Someone might say the policy is this, and

4          -- and if they see that -- that it is not like this,

5          which is black and white, then they might say this.

6          So it -- it might all depends, but as long as the

7          policy's covered, but the gray -- the gray area here

8          is, how do I implement this on the way that they

9          want me to do it?  And -- and sometimes if it -- if

10         I don't do it the way it was instructed, as such as

11         that letter on the last one, then it's going to be

12         corrected by a supervisor.

13    BY MS. HARTON:

14         **Q.   You said there's gray area as to how the**

15    **policy is implemented.  What do you mean by that?**

16         A.   Well, you might have a policy that gives you

17    the general guidelines of what you're doing but is at

18    discrepancy of the officer at the time.  That would be

19    like my -- my chemical spray or -- or -- or taser or --

20    or -- or excuse me, and my less than lethal force.  I

21    can dictate if I want to use this, not use this, go to

22    verbal, this, that, and the other.  Supervisor might not

23    agree with what my decision was but then look at the

24    policy that said, these tools are what you're supposed

25    to use.  I can go with a escort.  The supervisor might

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1   override, says, no, this is what we want to do here.

 2   Anytime that -- that -- that a violation is violated or

 3   -- or -- or is in question, then it -- then it can be

 4   brought up to the employee's attention with a letter of

 5   counseling saying, this is the way it's supposed to be

 6   done.  And so I rely on their thing -- their seniority

 7   and them being my supervisor that if I don't understand

 8   something and even if I might think that this -- this is

 9   okay, I expect them to correct me, and this is just one

10   form of -- of non-punishment form of communication to

11   ensure that it doesn't before it gets to that point.

12        Q.   Well, so there's a policy that requires you to

13   conduct security checks after lockdown, right?

14        A.   On the hour every hour.  Yes, ma'am.

15        Q.   What are the gray areas in that policy, as far

16   as your understanding?

17        A.   At that time -- I -- I understand them fully

18   now because apparently, I was counseled.  At that time,

19   if -- if I couldn't get a supervisor, it still needs to

20   be checked.  I'm going to walk in, look around.  I can

21   see everybody, check it out, and walked out.  As much as

22   I might attempt to do what I could see that it might

23   have done right, the supervisor did the correction.  The

24   cor- -- excuse me, the correct reaction to okay, I

25   understand you thought you did right, but you did wrong.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
 1    I saw the entry, I saw two of them.  Don't -- and then
 2    correct me on it and -- and advise me of which policy
 3    I'm doing.  Now, if I was to violate anymore, it
 4    would've proceeded to -- to even further, if it's back,
 5    to back, to back on -- on that thing.
 6         Q.   So prior to getting this letter, you
 7    understood the policy regarding security checks during
 8    lockdown --
 9         A.   Will be done.
10         Q.   No, I got to answer [sic] my question, sir.
11    Okay.
12         A.   I'm -- I'm sorry.
13         Q.   That's okay.  That's okay.  At the time --
14    prior to receiving this letter, you understood the
15    policy regarding security checks after lockdown to allow
16    you to conduct that security check by walk -- just
17    walking in the day room and not walking through the
18    entire dorm; is that fair?
19              MR. BOGAN:  Object to form.  Go ahead.
20              THE WITNESS:  Correct.
21    BY MS. HARTON:
22         Q.   Thank you.
23         A.   Because I can see every person flesh, hair,
24    and stuff, walking up and down through the aisle.
25         Q.   Okay.  But you can't see every person in the
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1    dorm from the door, right?
 2              MR. BOGAN:  Object to form.
 3              THE WITNESS:  If I'm in day room, no, ma'am.
 4         That's the reason I was corrected and was told that
 5         that was not the correct way of doing it.
 6    BY MS. HARTON:
 7         Q.   Okay.  But prior to receiving this letter, you
 8    thought that was -- that that was appropriate under the
 9    policy?
10              MR. BOGAN:  Object to form.  Go ahead.
11              THE WITNESS:  At the time of -- of -- of the
12         way it was put, yes, ma'am, that I could walk in
13         there and was told, look, I don't want you all --
14         you know, if it was put out -- I don't know if it
15         was -- do this, call your supervisor.  I had to get
16         done, but at that time, yes, ma'am, but my
17         supervisor corrected me on that.  I assume wrong.
18         Yes, ma'am.
19    BY MS. HARTON:
20         Q.   Yeah.  And so if you believed it was -- if it
21    was policy at the time that you -- it was appropriate
22    under the policy at the time to conduct security checks
23    by just walking in the day room, did you witness other
24    officers doing the same thing?
25              MR. BOGAN:  Object to form.
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

```
 1                THE WITNESS:  No, ma'am.
 2   BY MS. HARTON:
 3        Q.    Okay.
 4        A.    Not -- not to my acknowledgement.  No, ma'am.
 5        Q.    Have you ever heard of something called Friday
 6   night fight nights at the Marion County jail?
 7        A.    Friday night fight nights?  Not -- not that I
 8   recall.
 9        Q.    Are there some physical altercations between
10   inmates that are so minor that you don't need to report
11   them under the policy?
12                MR. BOGAN:  Object to form.
13                THE WITNESS:  If there's a -- could you repeat
14        the question again?
15   BY MS. HARTON:
16        Q.    Sure.  I can clarify it for you.  Some
17   physical altercations between inmates are more serious
18   than others, fair?
19        A.    Okay.  Physical altercation.  Okay.  That's
20   the part I didn't hear the first time.  So go ahead and
21   ask your question.
22        Q.    I may not have said it so --
23        A.    Okay.
24        Q.    So -- but answer this question: It's fair to
25   say that some physical altercations between inmates are
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

1    more serious than others, right?

2        A.   That would be at the medical to determine, but

3    they will seek medical attention, if there's a physical

4    altercation to that degree.  Yes, ma'am.

5        Q.   If you know about it, right?

6        A.   Yes, ma'am.

7        Q.   Even if it's a very minor physical

8    altercation, you would still report it to medical?

9        A.   I have, yes, ma'am.

10       Q.   Okay.  Do you have any, you know, guilt about

11   the fact that Cory Merchant was attacked and on your

12   watch?

13           MR. BOGAN:  Object to form.

14           THE WITNESS:  As a officer, it's -- it's not

15       something that we look forward to because it's

16       always a tragedy, regardless who it is, and that is

17       not the outcome of anything that anybody would wish,

18       I would hope.  I did not know Cory, other than he

19       was inmate that was housed in there.  I didn't have

20       any personal relationship, other than he was a

21       classified inmate in my section, but any news of

22       that, that's the last thing. I mean, I've had people

23       that I've got awards for saving their life for

24       OD-ing.  You don't wish death on anybody in any

25       circumstance.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1   BY MS. HARTON:
 2        Q.   Yeah.  And do you have any guilt about sort,
 3   you know, your failure to prevent it or stop it?
 4             MR. BOGAN:  Object to form.  Asked and
 5        answered.
 6   BY MS. HARTON:
 7        Q.   Go ahead, sir.
 8        A.   Oh, I'm -- I'm sorry.  I didn't know.  I can't
 9   prevent something that I wasn't there to witness or --
10   or -- or was aware of in advance that could have
11   prevented the reason why it happened.  I have no
12   recollection of why it happened, where he was or what
13   situation took place.  This is something that happened
14   afterwards on -- on any incident that can turn from
15   intentional or non-intentional.  These are situations
16   that -- that often occur in institutions all around the
17   world, I mean --
18        Q.   It's inevitable to some degree that someone's
19   going to die by getting attacked by another inmate?
20             MR. BOGAN:  Object to form.
21             THE WITNESS:  I ain't going to say it's
22        inevitable because it -- could be -- there's a lot
23        of ways people can demise, and it could be
24        intentional, and some of it could be non-
25        intentional.  A push, a shove. Again, you don't ever
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1          know what the circumstances is that's going on at
 2          the time, if -- if it's not brought up to you or,
 3          you know, until after the fact, and I'm not aware of
 4          any of that as -- as far as what occurred or what
 5          took place.
 6               MS. HARTON:  Okay.  Sir, that is all -- those
 7          are all the questions I have for you today.  We got
 8          through it.  I really appreciate --
 9               THE WITNESS:  Okay.
10               MS. HARTON:  -- all of your time.  And now your
11          attorney's going to have the opportunity to ask
12          questions, if he wants.
13               THE WITNESS:  Okay.
14                    CROSS-EXAMINATION
15     BY MR. BOGAN:
16          Q.   Yeah.  So I'm just going to have a couple
17     questions, actually circling back to the letter of
18     counseling issue.  So during the security check that you
19     performed on April 7th of 2021, where I believe your
20     assumption is that you walked into the day room or at
21     least breached the door to some degree, and you walked
22     into the day room to perform the security check.
23               To the best of your knowledge, during that
24     security check that you performed on that day, did you
25     observe any condition or incident that was going on in

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    the pod or the section at that time?

2         A.   No, sir.

3         Q.   Was there any inmate fights that were

4    happening in this section at that time on the

5    April 7, 2021 incident?

6         A.   No, sir.

7         Q.   Did -- was there some sort of an incident that

8    may have occurred, to your knowledge, on the

9    April 7, 2021 date that precipitated this sort of look

10   by the sergeant related to this case?

11        A.   No, sir.

12        Q.   And in terms of -- you know, hypothetically

13   speaking, let me just tell you this: Once you perform a

14   security check in that manner and you walk into the

15   door, if you do observe that there's a condition, either

16   a safety condition or an incident of some time -- type,

17   you know, between inmates, do you have the option and

18   ability at that point to call for radio assistance and

19   make sure that the situation gets handled?

20        A.   Yes, sir.

21        Q.   Okay.  And so up until that, you know,

22   memorandum that you received from your supervisor, did

23   you believe that these security checks were, when they

24   were performed in that manner, still were providing a

25   minimum of, you know, the process of performing a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    security check, you know, during that shift and making

2    sure that the inmates were doing what they were supposed

3    to be doing?

4         A.   Yes, sir.

5         Q.   Okay.  And at this -- and at that point, I

6    guess after that letter of counseling, you're no longer,

7    I guess, performing the security checks in that manner

8    as of April 7, 2021 through the point in time that we

9    are here today, in terms of you're not doing security

10   checks like that, in other words?

11        A.   No, sir.

12        Q.   Okay.

13        A.   No, sir.

14        Q.   So from the point of -- and, in fact, using

15   November 7th of 2021, during the incident that we're

16   here about, you were not performing security checks that

17   night, as far as you're aware, in that manner, by not

18   walking into the pod or --

19        A.   No, sir.

20        Q.   -- as required?

21        A.   No, sir.

22             MR. BOGAN:  Okay.  Those are all the questions

23        I have.

24             MS. HARTON:  I'm good, as well.  Thank you,

25        Corporal Miller, and thank you, Felicia.  Do you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  have any spellings that you need?

2       THE REPORTER:  I just have to ask about read

3  and waive first.  Is this going to be a read or

4  waive?

5       MR. BOGAN:  He's going to read and sign.  And

6  so if she's ordering it, I'll take a copy, and then

7  I'll arrange to get him a copy for reading and

8  signing.

9       THE REPORTER:  Perfect.  Ms. Harton, would you

10  like to order?

11       MS. HARTON:  Yeah.  I'll take a copy.  Thank

12  you.

13       THE REPORTER:  Perfect.  Electronic, regular

14  delivery?

15       MS. HARTON:  Electronic, please.  PDF.

16       THE REPORTER:  Perfect.  And then for the read,

17  do you want me to just send it to you, Mr. Bogan?

18       MR. BOGAN:  Yeah.  So if you can send it to me,

19  my copy, in a PDF as well and -- with the errata

20  sheet, and I'll make sure that he gets a copy to

21  read and sign, and then get you back the errata.

22       THE REPORTER:  Perfect.  Just give me one

23  second.  Let me get us off.

24          (DEPOSITION CONCLUDED AT 12:10 P.M. ET)

25

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

```
 1                      CERTIFICATE OF OATH
 2
 3   STATE OF FLORIDA
 4   COUNTY OF ORANGE
 5
 6       I, the undersigned, certify that the witness in the
 7   foregoing transcript personally appeared before me and
 8   was duly sworn.
 9
10   Identification:  Produced Identification
11
12
13
14
15   _____
16            Felicia Stovall
17            Court Reporter, Notary Public
18            State of Florida
19            Commission Expires: 04/24/28
20            Commission Number: HH 519942
21
22
23
24
25
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1                   C E R T I F I C A T E

2

3    STATE OF FLORIDA

4    COUNTY OF ORANGE

5

6        I, Felicia Stovall, Court Reporter and Notary

7    Public for the State of Florida at Large, do hereby

8    certify that I was authorized to and did report the

9    foregoing proceeding, and that said transcript is a true

10   record of the said proceeding.

11

12       I FURTHER CERTIFY that I am not of counsel for,

13   related to, or employed by any of the parties or

14   attorneys involved herein, nor am I financially

15   interested in said action.

16

17   Submitted on: October 1, 2024.

18

19

20

21

22   _____

23       Felicia Stovall

24       Court Reporter, Notary Public

25

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

**1**

**1** 21:20

**10:00** 21:5

**117** 83:3

**12:10** 103:24

**14** 79:19

**15** 15:11 20:7,9
21:24 32:12

**15-minute**
32:19 77:22

**1800** 32:2

**1987** 13:2,7

**2**

**20** 45:13 70:13

**200** 43:1,20
89:17

**2000** 16:5

**2005** 14:22

**2021** 11:17
16:16,19 17:5,
12,13 19:21,25
31:23 61:6
65:13 67:1
79:19 100:19
101:5,9 102:8,
15

**20s** 27:12

**22** 28:4 48:13
52:20

**222** 89:16

**24** 49:8

**25** 14:16 44:19

**28** 14:16

**2:00** 40:23

**3**

**300** 43:1,20

**37s** 64:25

**4**

**4** 19:4

**400** 81:13

**45** 32:14

**45-minute**
32:11,12

**46** 40:13 76:22
77:4

**4:00** 22:17

**5**

**55** 78:17,19

**5:00** 22:17 32:8

**5:45** 32:1

**6**

**6** 17:12 19:5
31:23

**60** 24:17 26:9
30:13

**60-minute**
30:14

**6164.35D**
82:17

**6:00** 32:3,4,7,8,
9

**6th** 16:18 17:4

**7**

**7** 11:17 16:19
17:5,13 101:5,9
102:8

**7th** 100:19
102:15

**8**

**8** 19:5 21:20

**86** 70:21

**87** 13:8 70:21

**9**

**9** 21:20

**90s** 16:4

**9:00** 21:8

**A**

**a.m.** 22:21
32:8,9

**A1** 67:18

**A2** 67:19

**ability** 101:18

**Absolutely** 8:1
53:10,11 65:11

**academy**
15:25 16:2,3

**acceptable**
87:1,8

**accepting** 19:9

**access** 37:21
38:5

**account** 20:14

**accountability**
61:5

**accurate** 12:1
33:8 38:2

**accused** 16:11

**acknowledge
ment** 30:22
97:4

**acknowledgin
g** 47:5

**act** 50:2 51:12
60:14

**active** 60:13

**actual** 63:25

**additional**
55:24

**address** 25:14
29:16 39:10

**52**:6,8,9,10
64:11

**addressed**
79:10,16

**addressing**
55:19 88:2

**adhere** 88:20

**adjacent** 18:2
20:13 39:16
40:4 48:12

**administrative**
46:19

**advance** 99:10

**advise** 95:2

**affirm** 6:2

**agendas** 70:24

**aggressions**
55:18

**aggressive**
56:7

**aggressor**
50:18,19 55:15

**agree** 43:19
47:7 71:22 73:8
75:17 86:10
87:20 93:23

**agrees** 38:18

**ahead** 9:12
15:6 24:24 25:5
26:15 30:1,15
33:13 36:24
37:4 41:18
43:21 44:3,17
46:17 47:16
52:7,15 54:3
56:5,15 72:25
73:25 74:9
75:21 80:21
81:4,9 83:10
87:6 90:18
92:6,7 95:19
96:10 97:20
99:7

**aired** 53:15

**aisle** 95:24

**alarm** 40:10

**alarms** 77:6

**allowed** 8:11

**alone.'** 83:4

**Alpha** 16:10,20
25:7,25 26:1

**alphabetically**
22:24

**altercation**
49:5 52:2,13
54:1,6,25 55:6,
22 56:20 57:9
58:4,13 59:6,18
97:19 98:4,8

**altercations**
47:8,11,13 51:1
56:2 61:8 62:4
97:9,17,25

**alternate**
32:24,25

**alternating**
33:15

**amount** 44:16,
23 52:21

**announcemen
t** 20:7,10

**answering**
71:17

**anybody's**
44:5

**anymore**
92:17 95:3

**anytime** 11:11
94:2

**apologize**
22:16

**apparently**
90:12 94:18

**appearance**
5:4

**appearing**
5:15

**approximate**
9:17

**approximately**
13:11 14:20

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

21:5 81:13

**approximation**
66:20

**April** 79:19
100:19 101:5,9
102:8

**area** 13:14 22:8
24:1,8 26:14
36:15 39:10
40:16 41:7 42:7
61:2 89:12
93:7,14

**area-to-area**
22:8

**areas** 17:23
29:13 39:23
77:7 94:15

**arguing** 26:25
54:15 62:18

**argument**
55:10

**Army** 13:6,7,
10,16,21,22

**arrange** 103:7

**arrangements**
24:10

**arrived** 59:11

**assigned**
16:20,21,25
17:3,18,20,22
18:1,6,10,15
19:14,18 33:16
38:8 43:4,7
61:2

**assignment**
19:20 35:20

**assistance**
24:11 27:2
31:13 101:18

**assume** 9:12
21:24 96:17

**assuming**
91:10

**assumption**
100:20

**attack** 27:14

38:20 39:13
42:18 76:19,21

**attacked** 17:13
33:20 42:10
76:17 98:11
99:19

**attempt** 94:22

**attending** 5:4

**attention**
55:20 71:24
94:4 98:3

**attorney** 6:20
8:22,24

**attorney's**
100:11

**attorneys** 5:23

**automatically**
28:8 59:1

**avenue** 65:3

**avoid** 55:22

**awards** 98:23

**aware** 6:13
12:9 37:6 45:24
47:14 63:20
66:10 69:17,21
75:18 76:3
99:10 100:3
102:17

———

**B**

**B1** 67:19

**B2** 67:19

**back** 11:12
14:5 19:6 21:4
22:8 25:15,20
26:13 28:19
30:20 32:20
33:8 34:25
35:11 37:24
49:21 50:20
54:6,17 61:11
74:2,7 77:17,
20,25 78:3,6
82:23 84:25
87:23 88:14
95:4,5 100:17
103:21

**background**
12:8 19:11 50:5

**backup** 37:12
48:11,24 52:14,
22 53:13

**bad** 66:7

**barrier** 85:24

**based** 25:20,21
66:24 70:13

**basic** 49:10

**basically** 20:4
21:2 25:6

**bathroom** 22:3

**Beach** 13:23

**began** 81:14

**begin** 6:6

**beginning**
7:14 14:24
15:13

**believed** 96:20

**bit** 14:3 29:17
37:1 49:6 85:2

**black** 34:23
93:5

**blankets** 54:9

**blind** 54:8
68:22

**board** 50:3

**boat** 13:25

**Bogan** 5:9,13
10:1 26:15,17
30:1,15 34:19,
24 35:1 37:4,19
41:18 42:23
43:21 44:3,17
47:15 51:3
52:15 54:3 56:5
57:10 59:8,19
61:9,18 62:7,12
65:15 66:22
67:4 68:19
69:6,23 70:6,16
71:10,25 72:9
73:12,24 74:3,
5,10,18,21
75:3,20 76:11

79:7 80:10,13,
17,20 82:20
83:10 85:13
87:6,15 90:18,
21,25 92:23
95:19 96:2,10,
25 97:12 98:13
99:4,20 100:15
102:22 103:5,
17,18

**book** 21:12

**booking** 20:21
21:15 25:17
31:9,14 40:4
41:12 48:12

**bottom** 51:22
81:4

**brand** 49:13
64:15

**Bravo** 25:24

**breach** 48:9
84:12

**breached**
100:21

**break** 8:9,11,
15,16,17,18
17:25 32:11,12,
14,18,19 39:16
50:14 77:12,18,
21,23,24,25
78:1

**breaks** 32:10,
16 39:22

**briefing** 31:25
63:17 91:24
92:4

**bring** 22:19
28:17 29:10
37:10 50:14
55:19

**broken** 16:22
33:25 46:3 82:6

**brought** 6:22
37:25 55:18
63:3 71:23
72:24 92:3 94:4
100:2

**Bruce** 5:9,13

**building** 19:10

**bunch** 66:2

**bunk** 22:2,3
29:11 61:4

**bunks** 20:13
91:15,20 92:20

**burn** 10:22

**buttons** 41:13,
14 77:5

———

**C**

**call** 14:13
20:21 27:1,15,
17,22,24,25
28:1,4 34:11
37:12 38:15
44:20 45:6,9,11
48:11,13,23
50:4 52:14,20
54:8 76:9,22
77:14,15,16
84:20,21 91:16,
23 92:1 96:15
101:18

**called** 21:25
22:15,17 31:5,
6,12 40:9 41:1,
7 75:11 77:1,3
82:5,9 90:5
97:5

**calls** 45:21
72:22 84:23

**camera** 54:7

**cameras** 37:7
38:10 41:23

**campaign**
13:15

**canteen** 67:20
72:12,13,16,17,
20

**capability** 38:3

**car** 13:23

**card** 48:8

**cards** 20:13

**care** 21:8 49:1
63:23 65:9 73:4

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

career 45:17
49:22

carefully 29:19
54:21 56:17

carried 78:11

case 5:14 9:9
10:16,24
101:10

caustics 20:6

caveat 8:13

CDS 19:4

cease 55:7
58:15

cell 21:13 87:4

challenged
49:24

change 6:16
50:7,13

changed 88:21

character
49:8,15 50:7
51:15 64:9

characterizati
on 26:18

characterize
65:12

characters
51:21

charge 21:11
55:24

charges 50:5
63:3,4

Charlie 25:24

check 22:5,25
23:8,13,19,21,
24 24:15,19,21
25:7,13 28:13,
21,22 29:1,2,21
30:4,5,14 31:10
34:13 35:15,18,
19,21 36:1,6
37:24 60:25
66:10 82:14
83:3 84:11
85:11,14 86:3,
5,15,16,20,21

87:2,14 88:9,11
89:1,8 90:15,
16,20 91:20
92:21 94:21
95:16 100:18,
22,24 101:14
102:1

checked 33:21
37:8 61:11,24
63:10 71:5
94:20

checking 30:8
34:1 49:19

checks 23:5
25:9 26:12
32:23 33:1,9,
16,19,23 35:17
36:7 37:3,8,17
60:23 81:2,11
91:4 94:13
95:7,15 96:22
101:23 102:7,
10,16

chemical
60:20 93:19

chest 56:8

church 21:7

CI 15:23

circling 100:17

circumstance
98:25

circumstance
s 25:19 37:10
100:1

civil 6:21

civilian 14:2

claim 27:14

clarification
16:24

clarify 9:11
11:4 32:7 97:16

clarity 17:7

classification
16:14 21:17

classifications
16:14

classified
21:22 98:21

clean 22:9

clear 20:22

click 82:9

close 83:21

co-counsel
5:11

code 28:6 40:9,
13 41:1,6

codes 48:24

collecting
20:23

collects 22:19

college 13:5

combat 13:14

combative
31:15 60:13

comfortable
64:12

command
56:8 60:19

common 32:1
48:20 49:18
76:8

communicate
85:25

communicatio
n 85:24 94:10

communicatio
ns 27:2

compared
45:18 65:14
70:15

complaints
49:20

complete 23:8,
20 82:11 83:14

completed
20:20 77:18,21
81:2 83:4,5,7
85:7,9,17 86:4
89:7,10 90:17

completeness
86:21

compound
41:24

computer 20:5
22:11,12 23:13
37:22 38:10,16
82:1,3 90:12

computers
38:5

concern 65:7

CONCLUDED
103:24

condition
100:25 101:15,
16

conducive
83:24

conduct 28:22
57:21 85:10
88:25 94:13
95:16 96:22

conducted
22:6 23:6 68:7
81:11 87:2,14
88:9 90:15

conducting
26:12 28:21
77:11

confrontation
26:23

consecutive
67:14,15

considered
29:21

consist 20:2

consistently
17:19 68:4

contact 24:9
84:7,8

context 68:17

continue 52:14

contraband
6:19

control 18:1

39:15,18,24
40:2,15,21,24
41:1,9,12,16,21
42:7 59:25
76:17 77:10
78:14

control's
41:22

controller 77:5

controls
40:20,24

conversate
65:5

conversating
64:17

conversation
7:13 63:24 88:1

conversationa
l 25:3

convicted
16:11

copy 103:6,7,
11,19,20

cor- 94:24

corporal
15:16,17,18,19
45:7 73:22
102:25

correct 10:25
12:1 16:11 34:3
36:25 43:3
52:21 58:7
61:22 79:10
83:13 84:6
90:6,14 94:9,24
95:2,20 96:5

corrected
87:10,24 88:23
90:7 92:15
93:12 96:4,17

correction
94:23

correctional
47:9

corrections
14:9,10,20 16:3

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

**Cory** 7:9 11:17
17:13 33:20
38:20 39:13
42:10,18 76:17
78:7 98:11,18

**coughs** 8:10

**counsel** 5:5
29:9

**counseled**
88:19 94:18

**counseling**
78:23,24 87:8
88:5 94:5
100:18 102:6

**count** 20:8,11,
15,20,22 21:23,
25 22:1,24

**counts** 23:2
90:9,11

**County** 5:16
14:21 16:9 19:8
47:8 55:1
69:15,18 70:4,
5,13,15 97:6

**couple** 13:23
25:15,19 50:6
64:19 100:16

**courses** 47:3

**court** 7:22 8:6
19:4 21:17 23:2
49:21

**coverage**
17:24 53:22
59:11

**covered** 93:7

**covers** 44:7

**crazy** 81:20

**crew** 22:20

**criminal** 50:5

**criminals**
49:22

**criticism** 81:1
86:15,20 87:13

**criticisms**
81:10

**CROSS-
EXAMINATIO
N** 100:14

**current** 15:14
25:21

**Curtis** 5:21

**cut** 15:11 28:16

———

**D**

**daily** 46:24
81:14,21 82:4,9
85:9

**date** 38:18
101:9

**dated** 79:19

**dates** 31:24

**day** 21:6 30:18
48:7 56:17 66:7
69:21 70:19
76:15 83:16,20
84:9,24 87:4
88:10,25 89:4,
6,9,13,15 91:11
95:17 96:3,23
100:20,22,24

**days** 32:1
54:12 64:19
67:3,12,13
68:16 71:19

**deal** 25:17
47:22 55:4 57:4

**dealerships**
13:23

**dealing** 50:12
58:17 64:14

**dealt** 19:4

**death** 53:13
98:24

**debrief** 23:3

**debriefed** 20:3

**debriefing**
73:15 75:10

**decide** 34:12
35:17,19 59:16

**decided** 14:9

**decipher** 50:8

**decision** 93:23

**deeply** 71:4

**defendant**
6:15,25 7:2

**defendants**
5:14

**defined** 30:3

**degree** 98:4
99:18 100:21

**delay** 37:2

**delivery**
103:14

**Dellun** 5:20

**delta** 21:16,21
24:5 25:23
27:12

**demise** 99:23

**Department**
14:19

**depending**
27:22 59:16
60:20

**depends** 17:23
21:1,6 22:18
26:24 27:7,23
31:17 48:4
54:14,17,24
83:22 93:6

**deployed**
13:13,14

**depo** 15:11
16:7

**deposition**
6:10,18 8:8,21
11:2,8,18
103:24

**depositions**
6:17 12:11

**deputies** 38:6,
7 43:7,13,19

**deputy** 43:8,25
57:8 73:9

**derogatory**
85:2

**Desert** 13:15

**detail** 58:10
86:12

**detention**
14:14 43:25
57:8 65:7 73:9

**deter** 55:18

**determine**
50:22 59:23
98:2

**determined**
60:16

**deviate** 9:3

**device** 58:20

**dictate** 93:21

**dictated** 60:6

**die** 99:19

**differently**
51:1,12

**diligent** 65:4

**dining** 32:20

**direct** 6:7 41:4
55:7 58:15

**directing** 65:9

**direction** 40:5

**directions**
71:2

**directive** 46:11
82:17,19

**directives**
46:13,20,23,25
47:3 88:3,20

**directly** 40:16

**discharged**
13:18

**disciplinary**
50:16 55:13
57:22,23

**discrepancy**
93:18

**discretion**
48:10 53:20,24
54:1,23 55:2
59:16

**discretionary**
27:3

**disruption**
30:6

**dissolved** 49:2

**disturbance**
28:5

**disturbances**
31:14 57:5

**dive** 71:4

**diverse** 64:13,
15

**divert** 41:3

**division** 19:10

**DOC** 14:19
15:22 19:5

**document**
78:22 80:13
81:10 88:24
89:7

**documentatio
n** 11:10 88:14

**documented**
86:15,20 87:13

**documenting**
7:22

**documents**
10:6 11:1,3,4,7

**dog** 44:20
45:13,14,21

**door** 28:7,15
30:17 48:9
84:12 85:20
88:17 89:3,4,5,
12,14,17 96:1
100:21 101:15

**doors** 40:24
41:14 77:7,16
83:4,5,7,15
85:7,10,18 86:4
89:8,10,11,12
90:17 91:4

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900     www.MILESTONEREPORTING.com

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

Toll Free 855-MYDEPOS

**doorway** 30:12
53:4

**dorm** 36:10
90:20 95:18
96:1

**dropped** 6:23

**DRS** 73:3

**due** 11:24 19:5
44:14 62:14

**Dukes** 79:17
82:22 84:14
85:4 86:12

**duties** 45:4

———————

**E**

**earlier** 30:24
48:6 52:12 59:4
64:2 89:3 92:19

**early** 16:19
17:12,15 38:23

**ease** 17:7

**Electronic**
103:13,15

**electronical**
22:11

**emergencies**
40:19

**emergency**
26:22 76:22

**emergent** 8:17
36:20

**employed**
14:21

**employee's**
94:4

**EMS** 41:14

**end** 39:21,22
41:11 60:14

**enforcement**
12:11 14:6,7,8

**ensure** 94:11

**ensures** 61:3,4

**entail** 11:22

**entered** 89:17

**entering** 40:20
83:14

**entire** 33:5
39:2 87:4 95:18

**entrance**
40:17

**entries** 82:16,
18

**entry** 83:3
89:9,16 95:1

**environment**
54:18 68:24

**environments**
53:9

**errata** 103:19,
21

**escaped** 61:1

**escort** 93:25

**essentially**
59:15

**establish** 7:14
50:22

**estate** 7:9

**estimate** 9:17
61:7

**estimation**
66:21

**evening** 16:18
17:11 33:2,4
39:1

**event** 63:25

**events** 25:22
68:12

**everybody's**
22:1 49:21
51:4,5 91:12

**everything's**
7:24 30:9 91:11

**evidence**
70:23

**exact** 31:24

**EXAMINATIO
N** 6:7

**excuse** 8:10
21:20 93:20
94:24

**exhibit** 78:17,
19

**exit** 20:19
40:17

**expect** 94:9

**expecting** 8:8

**experience**
19:1 48:21 50:2
51:8,13 64:14
70:15,17

**experienced**
44:22 45:17

**explain** 9:11
31:1 48:5 49:5
92:22

**explained**
82:23

**expression**
45:16

**eye** 27:19
63:21 64:21

———————

**F**

**facility** 65:14

**fact** 6:16 11:25
42:9 85:1 86:6
98:11 100:3
102:14

**facts** 63:12
66:11

**factual** 66:24
73:2

**factuals** 66:11
71:6

**failure** 99:3

**fair** 9:14,21
12:3 15:22
16:20 18:20
19:21 24:2
28:24 29:24

38:22 39:3,6
40:8 41:17
42:7,8,11,12,20
43:9 50:25
52:14 56:4,21
59:7,18 61:17
76:10,12 81:11
95:18 97:18,24

**falls** 45:2 62:20

**family** 7:8

**FDLE** 16:3
60:11

**feeding** 39:11

**feel** 28:18 44:1
49:16 64:11

**Felicia** 7:21
35:6 73:21
102:25

**felonies** 12:8

**felt** 44:13

**field** 18:13

**fight** 48:7 52:13
55:10 73:10,11
75:18,25 76:4,9
97:6,7

**fight's** 53:3

**fighting** 28:3
52:19

**fights** 67:2
68:16 69:4
70:12 71:8,22
72:13 101:3

**figure** 9:7 85:5,
25

**file** 22:23

**finally** 90:1

**financial** 10:14

**find** 11:11
65:20 68:22

**finding** 64:18

**fine** 9:21 10:21
25:1 30:20
34:20 79:6
80:16 86:2

**finish** 7:17,19
86:17

**firm** 5:7

**first-timers**
49:23

**flaps** 53:1

**flesh** 61:2
95:23

**Florida** 5:15
14:19 15:24
60:10

**follow** 59:24
92:18

**footage** 37:16,
17

**force** 60:12
93:20

**forget** 35:8

**form** 26:15
30:1,15 37:4,19
41:18 43:21
44:3,17 47:15
51:3 52:15 54:3
56:5 57:10
59:8,19 61:9,18
62:7,12 65:15
66:22 67:4
68:19 69:6,23
70:6,8,16
71:10,25 72:9
73:12 74:18
75:20 76:11
82:20 83:10
85:13 87:6,15
90:18,21,25
92:23 94:10
95:19 96:2,10,
25 97:12 98:13
99:4,20

**formal** 35:20

**format** 7:16
27:4

**formats** 65:2

**forms** 65:8

**forward** 38:2
50:23 63:3 73:6
98:15

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

**found** 25:11
55:15 87:19
90:3

**freeze** 14:18

**Friday** 97:5,7

**friendly** 65:6

**front** 10:6
40:21 47:20
73:14 88:15

**FTO** 18:13,15
51:6

**full** 5:18,20
24:17 28:21
85:11 90:20

**fully** 12:17
94:17

**fully-trained**
18:19

**function** 40:15

**functions**
31:12 40:18
41:8

---

**G**

---

**G-U** 81:19

**game** 48:8

**gang-related**
72:15

**garbage** 20:23

**garbled** 7:24

**gates** 40:21

**general** 16:8
33:21 36:24
46:7 70:2 93:17

**generally**
24:16 36:10
68:7 69:14

**generate**
57:21

**give** 6:2 22:25
33:7 34:2 35:9
50:13 55:7
56:13 58:15
61:13,22 66:20,

23 74:6 103:22

**giving** 25:13
49:10 53:7
63:24 91:10

**glass** 29:14

**golf** 81:14,15,
16

**good** 9:6 16:23
34:18 35:4 66:6
79:5,7 102:24

**graduate**
12:22,24 13:1

**graduation**
13:8

**gray** 93:7,14
94:15

**great** 8:2 58:1
60:1

**ground** 7:7

**guaranteed**
32:13

**Guard** 15:9

**guess** 9:16
19:15 61:13
72:22 84:13
88:13 92:2
102:6,7

**guessing** 90:2

**guide** 60:5

**guideline**
51:21,22

**guidelines**
29:7 51:11 65:1
93:17

**guilt** 98:10 99:2

**gulf** 16:10,20,
21,25 17:4,18,
20,22 18:2,6,7,
10,20,23 19:14,
19,24 21:14
24:6 38:22
39:3,6,17,19,
20,25 40:7
41:17,20 42:1,
6,11,12,15
43:2,4,7,8,13

44:1,14 46:1,12
61:8 62:10
65:14,18 67:2
68:4,12 69:4
70:12 71:8,23
73:9 76:23
77:17 81:16

**guys** 34:21
54:7

---

**H**

---

**hair** 61:2 95:23

**hall** 18:1 39:17
48:8

**halls** 21:13

**hallway** 39:21,
24,25 40:1,2,3

**hallways**
39:25

**halt** 55:7

**halted** 55:8

**hand** 6:1

**handbook**
29:6 62:17

**handbooks**
55:17

**handcuffing**
58:25

**handcuffs**
58:22

**handle** 56:2

**handled**
101:19

**hands-on**
58:18

**happen** 27:6,7
47:11 62:5
63:22 71:4
73:14 75:13
92:9

**happened**
31:7 38:23
39:13 50:22
54:6 57:24
63:19 64:19

66:4,16 67:6
69:8,11 75:12
78:8 85:5
99:11,12,13

**happening**
43:17 70:12,14
71:12 101:4

**harm** 59:10

**Harton** 5:6,10
6:8 7:8 27:9
30:10,23 34:18,
20 35:4,6,10,12
37:14 38:4
41:25 42:25
43:24 44:12
45:5 47:24
51:25 53:23
54:19 56:11
57:13,17 59:12,
21 61:14 62:3,9
64:1 66:19,25
67:8 69:2,12
70:1,10 71:7,14
72:6 73:7,16,21
74:11,23 75:7,
24 76:14 78:21
79:8 80:15,22
83:1 84:17
85:16 87:11
88:7 90:19,23
91:2 93:13
95:21 96:6,19
97:2,15 99:1,6
100:6,10
102:24 103:9,
11,15

**he'll** 27:22

**head** 8:5 20:8,
10,15,20,22
21:23,25 22:1,
24 23:2 26:13
28:22 32:5

**headcounts**
39:10,11 46:5,7

**hear** 28:12
49:20 50:21
97:20

**heard** 26:11
40:12,13 43:17
97:5

**helps** 50:21

79:3

**hey** 27:18
28:16 29:8 91:8
92:10

**hide** 54:16

**high** 12:22,24
13:1,3,4

**hiring** 14:19

**history** 15:12
19:2,6 50:5
62:14

**hit** 55:16

**hold** 24:19
34:19 74:1,10

**home** 83:4,7,
13,19 84:5,15,
18 85:1,7,10
86:4,6 89:10,19
91:8

**honorably**
13:18

**hope** 98:18

**hour** 22:4,5
24:15,16 25:6,
25 26:6 35:22
36:2,8,10,22
37:13 84:22
94:14

**hourly** 30:5
33:9

**hours** 32:2
49:8 81:13 83:3
89:16

**house** 49:17
62:15,24 88:18

**housed** 62:16
98:19

**human** 10:8,13

**hypothetically**
101:12

---

**I**

---

**ID** 20:13 38:8

**idea** 25:13
71:12

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

ideal 44:5
91:10

IDENTIFICATI
ON 78:19

IDS 22:25

imitate 51:7

implement
93:8

implemented
93:15

important
7:16,18,21 8:3

inboard-
outboard
13:25

incident 6:21
11:13,16 17:9,
10,25 31:7
33:2,4,6 38:16
39:1 40:8 47:25
48:2,3 49:1
50:23 55:4,12
57:20,21,24
60:21 63:22
64:18 65:19,21
66:3,9,10 72:18
74:17 75:12,13
76:16 78:7 82:7
92:17 99:14
100:25 101:5,7,
16 102:15

incidents 50:6
57:5 64:5 65:17
66:16 68:21
69:20

including
41:24

individuals
55:9

industry 14:11

inevitable
99:18,22

infirmary
21:10,11

information
10:13 11:9,11
12:2,3 28:16
50:21 53:14

55:21 61:11,24
63:25 64:20
65:19 66:6 72:2

informed 73:4
75:9 76:8

informs 74:16

injuries 59:3

inmate 6:18,22
20:15 24:1
29:6,24 40:22
54:5 55:17
56:1,7,20 57:8
58:13 59:6,17
61:7 62:17
64:14,23 65:7
69:3 70:11,18
71:24 72:22
73:10,14,15
74:16 75:11
76:9 87:5
98:19,21 99:19
101:3

inmate's 70:20

inmate-on-
inmate 62:11
74:16

inmates 16:10
20:8,9,17 21:15
22:7 24:5,8,11,
12 26:2,25
27:11 28:2,14
29:5 34:6,7,11
38:22 39:3,6
42:19 43:1,9,20
44:2 45:25
47:7,13 48:16
49:3,7,13,18
52:3 54:12
55:17,21 57:22,
23 58:5,16
61:1,5 62:16,25
63:6,7,24
64:10,16 65:5
68:7,16,22
70:18,23 72:21
73:2 97:10,17,
25 101:17
102:2

insert 23:9

inside 12:14
23:7 25:22

29:13,14 41:24
55:24 63:4

inspect 22:7

institutions
69:18 99:16

instructed
93:10

instructs 8:24

insured 60:25

intentional
99:15,24,25

interacted
68:8,9

interaction
60:18

intervene
58:4,12 59:5

intervening
62:5

introduce 6:19

introduction
21:14

inventory 20:6

investigate
30:7

investigates
57:24

investigation
37:23 38:1

investigations
73:3

involved 59:17
61:21 67:18

issue 100:18

_____

J

jail 6:19 12:15
15:21 19:8
21:21 23:18
38:8 39:21,22,
23 40:6,16,20
41:11,24 44:8
46:20 47:8
52:25 53:8,18

60:10 69:15,18
70:4,5,8,13,15
73:3 81:23,24
97:6

James 5:11

Jamie 5:7

January 14:22

Jerome 79:17

JMS 20:5 21:18
22:10 23:11,15,
17 33:8 47:6
61:12,15,16
62:1 81:14,21,
23 82:6

job 7:11 39:9
65:10 92:10

join 13:7

joined 13:6
14:19

judge 6:23

judgment 50:4

July 13:8

jump 5:11
72:16

jumped 72:20

Justin 17:1
42:14,17

juveniles
14:12 18:24
19:2,7,9,12

_____

K

keeping 64:21

keys 20:4,6

kid 72:20

kind 7:5 11:4
12:7 17:20
28:17 29:17
32:24 34:5
35:19 44:19
45:3,13,15
50:8,22 52:3,11
53:6 67:22
69:21

kitchen 22:18

knew 52:8,9

knowing 50:4
61:16 62:5
75:13

knowledge
19:6,12 23:23
100:23 101:8

knowledgeabl
e 65:24 66:14

Kosinski 17:1
18:14 34:3,8
42:14,17

_____

L

large 43:22

late 35:24
40:10

law 12:10 14:6,
7,8

lawsuit 6:14,21

lawsuits 7:1

laying 88:15

lead 25:15

learn 26:2,3
48:17 49:3,8,
12,13,14 51:8
57:8 64:10
73:10 75:2

leave 15:2,7
20:2 28:3

left 13:20 22:16

LEO 14:9

lethal 93:20

letter 78:23,24
79:9,16,21
80:24 81:1
86:14,19 92:12
93:11 94:4
95:6,14 96:7
100:17 102:6

letting 41:2
77:15 79:23

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

**level** 19:4
21:19 65:6,13
69:14,22 92:14,
15

**levels** 69:24

**life** 14:3 47:10
53:13 98:23

**listen** 29:5,18
49:19 54:21
56:14,16 71:2

**listening** 64:22

**literally** 89:5

**located** 21:10
40:3 41:23 47:6

**location** 5:4
40:5 48:15

**lock** 63:4

**lockdown**
21:25 24:15
36:7 55:14
94:13 95:8,15

**locked** 22:1
88:18

**log** 22:12 23:6,
7,10,13,25
82:1,3,9 85:9
89:9

**logged** 33:9
84:3,4

**logs** 20:6
81:14,22 82:4
90:12

**long** 8:9 9:21
13:10 19:14
34:8 35:21 36:1
38:17 69:16
93:6

**longer** 102:6

**looked** 30:17
42:1 66:2,8
72:25 73:1

**lost** 34:16

**lot** 9:3,7 27:21,
24 48:21,22
49:17 63:22
64:16 70:3,14

**71:**1,9,13,18,20
72:12,20 73:18
75:10 99:22

**loud** 28:14
80:7,8

**lunch** 18:3
32:12,14 39:16

———————

**M**

**made** 20:10
47:14 53:14,15
63:20

**mail** 60:10

**main** 19:19
39:17 40:2,3
41:20

**maintaining**
39:5

**maintenance**
49:19 81:24

**majority** 27:21
75:10,15

**make** 7:25
8:19,25 9:7
12:1 20:7,19
22:10,21 23:6
24:10 30:8
34:21 37:17
48:25 50:4
53:12 58:9
62:22 63:13
81:20 84:6,11
91:9,11,25 92:1
93:1 101:19
103:20

**makes** 45:1

**making** 9:5
102:1

**manage** 26:7

**management**
23:18 81:23

**mandatory**
53:21

**manned** 36:12

**manner** 87:3
101:14,24

102:7,17

**Marion** 5:15
14:21 15:23
16:8 19:8 47:8
55:1 69:15,18
70:4,5,13,15
97:6

**MARKED**
78:19

**master** 15:16,
18,19 18:1
22:24 39:15,18,
24 40:2,15,20,
24 41:1,9,12,
16,21,22 42:7
76:16 77:5
78:13

**math** 32:5

**matrix** 60:9,11

**matter** 6:16
36:24

**meals** 20:24
21:1

**means** 9:4,6,
13 23:25 25:8
27:12 28:5
42:14,17 76:22
83:15 84:19
85:14,19 86:5
89:14,25 90:1,
3,4

**meant** 92:21

**mechanic**
13:17

**mechanical**
60:20

**medical** 21:7,
8,9 27:11,14
40:19 59:2
76:22 98:2,3,8

**medically** 39:8

**medication**
12:18 21:8 46:6

**memorandum**
101:22

**mentally** 27:13
49:23

**mentioned**
43:11

**Merchant** 7:9
11:17 17:13
33:20 38:21
39:13 42:10
76:17 98:11

**Merchant's**
42:18

**mess** 34:9

**metaphor**
45:19

**might've** 64:19
72:18

**military** 14:5

**Miller** 5:18,21,
24,25 6:9 45:7
73:22 102:25

**mind** 28:17
35:7 72:19
73:21 78:25

**mine** 67:6

**minimum**
101:25

**minor** 97:10
98:7

**minute** 32:5,12
64:6

**minutes** 15:11
20:7,9 21:24
24:17 25:10,15,
19 26:10 32:15

**missed** 45:10

**Mister** 5:25

**misunderstoo
d** 11:6

**mix** 26:2,8

**model** 44:7

**moment** 35:9,
19 42:20 59:6
74:6

**monitor** 27:18
29:9,12 39:9
41:2 42:2,10
44:2

**monitoring**
18:19 38:22
39:3 42:19
43:9,13 44:14
45:25 47:12

**monitors** 29:4
40:9,25

**month** 67:7

**monti-** 53:15

**morning** 16:19
17:4,12,15
22:14,21 38:24
40:11

**move** 10:9 16:6
21:21 24:5
50:23

**moved** 17:20
18:25 19:1,13
24:13 61:3
70:24

**movements**
29:3

**moving** 24:7
79:13

**multiple** 59:9

**mutual** 63:24

———————

**N**

**National** 15:9

**needed** 14:3
76:23

**news** 98:21

**nice** 44:9,10

**night** 12:19
17:8,10,17,19,
25 19:24 20:1,
24 21:7,9
22:12,13,20
25:21 26:4
28:10 32:24
33:16,20 36:12
38:20,23 97:6,7
102:17

**nights** 97:6,7

**nodding** 8:5

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

noise 29:12

noises 28:12

non- 99:24

non-intentional 99:15

non-punishment 94:10

non-talker 64:13

normal 7:12
28:10 29:15
45:3

notations 22:10

note 9:2

notes 20:19

nothing's 28:10 32:13

notice 54:10

Noticed 72:25

notification 77:10

notified 66:11
73:3 74:15
76:19,25

notifies 73:10

November 11:17 16:13,16,
18,19 17:4,5,
12,13 19:20
31:23 61:6
102:15

number 24:10
34:2 43:23
44:15 61:12
66:24

numbers 65:17

nurse 21:11

nurses 21:9,
10,12 40:14

---

## O

object 8:22
26:15 30:1,15
37:4,19 41:18
43:21 44:3,17
47:15 51:3
52:15 54:3
57:10 59:8,19
61:9,18 62:7,12
65:15 66:22
67:4 68:19
69:6,23 70:6,16
71:10,25 72:9
73:12 74:18
75:20 76:11
82:20 83:10
85:13 87:6,15
90:18,21,25
92:23 95:19
96:2,10,25
97:12 98:13
99:4,20

objecting 26:17

Objection 42:23

objective 58:18

observant 64:17

observe 100:25 101:15

observed 24:1
27:16

observing 29:23

Ocala 5:15

occupation 12:15

occur 47:13
61:8,16 62:4
68:25 69:4,17
71:23 99:16

occurred 40:8
55:5 65:13 66:9
67:2,20 73:10
76:4 100:4
101:8

occurring 70:4,5

occurs 65:13
69:14,22

October 61:6

OD-ING 98:24

offenders 16:11,15

office 5:16
14:22 38:17

officer 5:17,24,
25 6:9 15:21
18:12,13,14
22:18 27:15
36:5,9,11,13,
19,21 41:5
47:14 48:11
49:13 50:1 51:8
53:5 57:21,23
58:11 59:10,15
62:5 64:8,10,12
65:24 76:10
77:2,3 93:18
98:14

officer's 48:18
55:20 71:23

officers 17:3
18:6,9,15,19
20:3 24:6,7
26:12 28:5,7,21
31:11 34:5 37:3
40:13,23 41:6,
10 48:12 50:25
51:2 52:1,25
53:17 56:1 58:4
62:20,21,22
64:2,5,10,20
65:3 72:3 77:4
96:24

officers' 69:9

offices 38:12

oncoming 23:3

ongoing 58:12

open 28:6,15
53:4 77:6 83:15
85:19 89:3,4,5

opened 88:17

operation 46:25

operational 82:17,19

operations 88:3,20

operations' 47:2

opinion 71:19

opportunity 48:17 100:11

option 101:17

order 28:6
46:10 103:10

ordering 103:6

orders 53:7
55:7 58:15

organize 24:12

outcome 98:17

outgoing 20:3

outline 9:2,3

outlining 81:1

outnumbered 43:20

over-road 30:21

override 94:1

overwhelmed 44:13

overwhelming 45:1,2

---

## P

p.m. 32:4,7,8,9
103:24

PA 52:23 53:1

Palm 13:23

paperwork
10:8,12 23:2
40:23

paragraphs 80:23 81:5

paramilitary 14:4

part 13:15 18:4
31:12 39:8 48:4
52:24 60:17,22,
25 65:10 81:4
84:5 97:20

parties 5:3

partner 16:25
30:25 31:3,4
32:22 48:8
66:12 84:10

partner's 26:25

passcode 38:9

passed 73:5

passing 49:18

passive 60:12

past 62:14

pattern 26:2,3

PC 35:2 65:1

PDF 103:15,19

pending 8:14

people 19:11
25:16,18 26:3
34:9 40:17,19
41:7,10,14 43:4
47:10 48:13,14
49:20,22,23
51:8,12 52:18,
21 54:15 55:14
61:20 63:4,5,24
64:24,25 70:21,
22 72:16 77:15
91:13 98:22
99:23

Perfect 5:17,22
103:9,13,16,22

perfectly 9:20

perform 35:17
36:5 91:24
100:22 101:13

performed
35:15,22 36:8
100:19,24
101:24

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32206
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

**performing** 31:10 33:1 40:18 101:25 102:7,16

**perimeter** 31:10

**period** 11:24, 25 17:8,19 18:17

**person** 10:4 43:5 55:15 62:24 63:16 64:8 70:23 71:3 72:16 77:7 95:23,25

**personal** 10:13 65:10 98:20

**personalities** 51:20

**personality** 51:17

**personally** 33:21,22 44:10 48:11 71:21 85:3

**personnel** 11:9 31:16

**pertains** 66:1

**Peterson** 5:7

**phone** 20:10 36:3

**phones** 20:18

**physical** 36:9 47:8,11,13 49:5 51:1 52:2 54:1 58:4,13 88:10 97:9,17,19,25 98:3,7

**physically** 23:25 24:7 29:22 36:20,21 43:8 75:19

**picked** 19:11

**pickup** 21:2

**picture** 26:20

**place** 19:19 38:12 44:4,5 46:8 58:23 99:13 100:5

**places** 53:8

**plaintiff** 5:7

**plaintiff's** 5:5

**play** 74:3,5

**PLAYS** 74:2,7

**pod** 16:21,25 17:4,18,20,22 18:2,6,7,10,20 19:14,24 21:9, 14 22:9 24:6 25:22 28:3,23 29:13,22,23 30:11 31:7,18, 19 36:12 38:11, 16,22 39:3,6, 17,19,20,25 40:1,7,25 41:17,20 42:1, 6,11,12,15 43:2,5,7,8,13 44:1,14 46:1,8, 12 48:15 61:8 62:10 65:14,18 66:16 67:2 68:4,12 69:4 70:12 71:8,23 73:9 76:23 77:8,17 78:10, 14 81:14,15 84:19 85:11 101:1 102:18

**pods** 31:11,13 38:13 39:23 46:4 65:14

**point** 5:12 45:8 60:23 62:23 80:24 94:11 101:18 102:5,8, 14

**points** 48:18

**police** 15:25 16:2

**policies** 29:7 44:6 45:25 46:5 47:1,3 87:2

**policy** 34:14 50:12 51:10,23 55:1,2,3,6,25 56:9,18,20 57:7 58:3,11 59:2,5 60:6,7,8 65:11 84:23 87:20,23 88:22 91:25 92:24 93:3,15, 16,24 94:12,15 95:2,7,15 96:9, 21,22 97:11

**policy's** 93:2,7

**polite** 45:22

**pop** 11:12 27:18 28:13 38:17 77:6

**popping** 26:13 28:22,23

**post** 32:2 46:10 62:16 65:25 66:1,3,5 72:24

**post-order** 46:2,3,14,16,18

**posts** 84:2

**precipitated** 101:9

**preparation** 11:1,8,17

**prepared** 11:14

**presence** 36:9 60:19 88:10

**present** 36:11 53:5 91:12

**pretty** 19:18 22:13 23:1 44:20 46:2 49:16 92:2

**prevent** 62:11 99:3,9

**prevented** 99:11

**print** 21:19

**printed** 23:2

**prior** 15:8 19:5

20:7 21:24 32:21 95:6,14 96:7

**prison** 15:21

**private** 14:13 19:3

**pro** 6:22 7:3

**probation** 18:16

**problems** 39:10

**procedure** 21:24 57:19,20 58:22

**procedures** 45:25 59:24

**proceed** 71:6

**proceeded** 95:4

**PROCEEDINGS** 5:1

**process** 101:25

**professional** 45:23 65:6

**programs** 21:6

**proper** 53:22 55:19 57:19 59:11

**providing** 101:24

**puffs** 56:8

**pull** 31:18

**pulled** 39:16

**purpose** 60:24

**push** 35:2 77:5 99:25

**pushing** 41:13

**put** 13:24 25:15,19 28:16 45:3 52:25 54:9 83:19 84:6,7 85:1 89:15 90:13 91:24

93:1 96:12,14

---

**Q**

**question** 7:15, 16,17,20 8:14, 15,24 9:10,12, 13,20 20:16 29:18 35:7,11, 13,14,16 38:24 41:16 54:21 56:23,25 57:1,6 65:8 66:15 67:22,23 71:17 73:19,20,22,24 74:2,19,24 86:1,13,17 89:21 94:3 95:10 97:14,21, 24

**questionable** 37:11

**questioned** 90:13

**questions** 7:10 8:22 9:4,5, 6 11:14 12:6 39:11 56:16 60:2,4 81:6 100:7,12,17 102:22

**quick** 27:19 53:19

**quiet** 28:14 64:9

**quiz** 9:18

---

**R**

**radio** 27:2 53:16 76:9 77:1 101:18

**raise** 6:1

**rank** 15:14

**rapid** 31:5

**reached** 30:16 89:14

**react** 50:11

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32206**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

51:9,16

**reaction** 94:24

**read** 47:5 79:1,
14 80:2,6,7,8,
10,11,14,15
81:5 87:21,23
103:2,3,5,16,21

**reading** 35:7
73:21 80:23
81:3 88:13
103:7

**reads** 35:11
93:1

**ready** 20:8

**real** 27:19

**reason** 8:12
12:16 36:20
63:17 87:18
88:5 96:4 99:11

**reasonable**
53:18,19

**reasons** 37:23
38:1 49:22
71:20

**recall** 9:20
26:20 33:19
45:20 79:23
80:23 82:18
97:8

**received** 46:19
101:22

**receiving**
21:14 80:24
95:14 96:7

**recollection**
99:12

**record** 5:2,19,
23 65:17 80:6

**records** 61:17

**refer** 17:8 34:6,
7

**referring** 15:15
27:5

**refers** 81:15

**reflects** 81:10

**regular** 103:13

**regulation**
62:18

**rehouse** 55:9

**rehoused**
55:11

**rehousing**
56:3 57:22

**reiterate** 62:17

**related** 6:17
101:10

**relationship**
44:15 98:20

**release** 18:2

**releases** 21:12

**relief** 23:4

**relieved** 22:14

**relieving** 77:24

**rely** 94:6

**remain** 22:2

**remember**
31:2 52:24
77:19 82:24
84:12

**remind** 23:17
77:9

**removed**
64:24 73:2 78:9

**repairs** 20:17

**repeat** 16:1
38:24 75:23
97:13

**repeating**
58:24

**rephrase**
75:22

**report** 11:13,16
21:18 38:17
41:15 50:16,23
56:3 57:21,22
61:22 62:22
66:11 67:6 92:1
97:10 98:8

**report's** 55:12,
13

**reporter** 5:2,
17,22 6:6 7:22
8:6 35:9,11
73:23 74:1,2,4,
6,7 103:2,9,13,
16,22

**reports** 11:8
38:1 64:18
65:20,21 82:7

**represent** 5:14
7:8

**representative**
10:1

**request** 24:11
65:8

**REQUESTED**
35:11 74:2,7

**require** 30:7
57:3,7 58:11

**required** 8:23
11:12 54:2
56:19 59:5
102:20

**requires** 35:23
55:1,2,3 56:1
58:4,6,12 94:12

**resolved** 49:2
73:5

**resort** 48:25

**resources**
10:8,13

**respectful**
15:14

**respond** 28:6,
9 40:13 41:7,15
47:25 48:2,13
50:25 77:8,16

**responded**
61:17

**responding**
48:3 54:1 77:4,
7

**response** 31:6
49:5 52:21
53:19 56:20

60:14

**responses** 8:3
47:22

**responsibilitie
s** 41:23 46:11

**responsibility**
40:12 41:13,21
66:4,5

**responsible**
17:24 18:7,19
22:20 24:7
32:23 38:21
39:2,5 42:19
46:6,9

**restraints**
60:20

**result** 88:19

**retaining**
10:14

**retaliate** 55:16

**review** 11:1
37:16,17 46:24,
25 47:3,4 50:17
70:22

**reviewed** 11:7,
11 46:22 47:1
89:9

**reviewing**
54:11 81:14

**rid** 21:3

**rings** 54:11

**role** 13:16

**roles** 38:13

**roof** 31:10

**room** 9:23
30:18 48:7
76:17 77:10
83:16,21 84:10,
25 87:4 88:10,
25 89:4,6,13,15
91:11 95:17
96:3,23 100:20,
22

**ropes** 20:18

**roster** 22:24

**routine** 22:13
30:6 38:14
44:20,24 46:4,7
65:4

**rover** 26:14
36:15 42:7

**rows** 29:14
30:19

**rude** 12:7

**rules** 7:7 29:6,7
55:23 56:13
62:18

**run** 52:19 53:21

**running** 15:12

**runs** 32:20

—————

**S**

—————

**safety** 101:16

**Sam** 5:6 7:8

**sat** 21:4

**Saturdays**
32:1

**saving** 98:23

**scale** 60:16

**scenario** 27:7

**scenarios**
27:6 53:9 60:4

**scheduled**
44:25

**school** 12:22,
24 13:1,3,4,25

**schooling**
49:10

**screen** 34:23
78:18

**scroll** 80:1

**search** 31:6

**seasoned**
44:21

**seconds** 53:17

**section** 21:16
25:12 29:23

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900          www.MILESTONEREPORTING.com

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

Toll Free 855-MYDEPOS

Case 5:23-cv-00661-JSM-PRL    Document 50-23    Filed 06/27/25    Page 118 of 218
J.M. vs. Miller, et al. - 06-10-2021                                PageID 1901
117

30:13,18 36:14,
22 48:15 98:21
101:1,4

**section's**
52:24

**sections** 16:22
20:21 25:8
68:12

**sector** 19:3

**sectors** 14:13

**Secure** 19:4

**secured** 30:9

**security** 22:5
23:5,8,13,19,
20,24 24:15,19,
21 25:13 26:12
28:21,22 29:1,
2,21 30:4,5,8,
14 32:23 33:1
34:13,15 35:15,
17,18 36:1,6,7
37:3,11 40:25
48:4 59:14
60:23,25 81:2,
11 82:14 83:3,
22 85:11,14
86:3,5,15,16,
20,21 87:2
88:9,11,25
89:8,9,10
90:16,20 91:4,
20 92:21 94:13
95:7,15,16
96:22 100:18,
22,24 101:14,
23 102:1,7,9,16

**seek** 14:6 98:3

**seeking** 12:2

**send** 21:18
103:17,18

**senior** 18:13

**seniority** 94:6

**sense** 7:25
8:19,25 9:7
48:21

**sentence** 83:2

**separate** 19:9
50:15 55:8

58:20

**separated**
55:11

**separating**
58:21,25

**separation**
57:22 58:24
62:19

**September**
67:1

**sergeant** 34:8
36:3 38:3 79:16
84:14 85:4
86:8,12 87:19,
25 101:10

**seriousness**
48:23 63:10

**serve** 21:1

**served** 20:25

**set** 10:19 46:5
55:23

**setup** 27:1

**severity** 60:21

**sex** 16:11,15

**shaking** 8:5

**sharing** 92:16

**sheet** 103:20

**sheets** 54:9

**Sheriff's** 5:16
14:22

**Shield-desert**
13:15

**shift** 17:17,21
18:5 19:24 20:1
23:3 24:4 31:22
32:10,17,21
33:5 39:2 54:13
63:19 65:25
67:18 68:4,18
69:8 91:23
102:1

**shifts** 63:18
67:7 68:11 69:9

**shock** 68:24,25

**shocked** 69:1

**short** 58:9 91:8

**shortening**
34:10

**shortly** 13:24
14:2

**shove** 99:25

**show** 78:17

**sic** 95:10

**sick** 12:20

**side** 31:18

**sight** 29:13

**sign** 47:4
103:5,21

**signal** 27:12
28:4 48:24
52:20 64:25
75:11 76:22

**signing** 20:4
103:8

**similarly** 7:18

**simple** 54:20
64:22 74:12

**single** 22:23

**sir** 56:12 73:8,
17 78:17 89:21
95:10 99:7
100:6 101:2,6,
11,20 102:4,11,
13,19,21

**sitting** 28:2

**situated** 21:3

**situation** 23:10
25:16 26:22,24
27:22,23 35:23
36:3,4 47:23
48:23 50:12
52:16 54:2,14,
16,18,24 56:10
59:16,25 64:23
67:18 72:25
99:13 101:19

**situationals**
67:21

**situations**
25:18,20 27:24
30:24 31:17
43:10 45:2 54:5
64:14,21 66:13
67:19 69:9
70:25 99:15

**Ski** 31:4 33:25
34:3,8 77:2

**skin** 61:3

**Slater** 5:11

**sleep** 12:19

**slider** 40:21

**smooth** 22:12

**sneak** 26:4

**snitches** 72:22

**so-called**
65:17

**sole** 41:13

**solely** 42:18

**solemnly** 6:1

**somebody's**
53:16 55:11

**someone's**
99:18

**sort** 19:23
63:14 99:2
101:7,9

**sound** 70:14
71:9 85:2

**sounds** 71:13

**SP** 64:25

**spark** 63:21

**speak** 51:15
65:5 69:8 72:4

**speaking**
101:13

**speaks** 80:13

**special** 49:24

**specific** 61:12
88:3

**speculate** 39:7

**speculating**
92:4

**speculation**
77:2

**spellings**
103:1

**spins** 71:1

**spontaneous**
47:20

**spot** 41:5

**spots** 49:9
54:8 68:22

**spray** 58:17,19
93:19

**staff** 32:20
44:2,16

**stages** 84:1

**stairs** 33:25

**stand** 27:15
34:19

**standards**
60:11

**standing** 20:13
56:6

**stands** 23:17

**start** 20:23
25:23 31:23,25
43:6 54:10 77:4

**started** 14:12
19:9 77:15

**starting** 5:5

**state** 5:3,10,18

**stated** 83:4
89:10

**statement**
87:9 88:5 90:9,
11

**states** 13:6
34:14 55:6 56:9

**stating** 46:5

**stationed**
31:19 38:12

**statutes** 44:7

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

**Stay** 34:24
51:10,11

**steal** 72:17

**stem** 72:13

**stepped** 77:19

**steps** 62:10

**stick** 51:24

**stipulated**
5:23

**stitches** 72:23

**stop** 53:5 58:16
67:11 92:16
99:3

**Storm** 13:15

**straight** 39:17
50:3 77:20

**streets** 25:17

**stress** 63:2

**stretcher**
78:12

**strike** 12:4
43:6 86:25

**strong** 48:18
49:9

**stuff** 10:14
28:18 30:19
44:7 54:9 55:10
63:7,13,23
95:24

**substance**
16:7

**suffice** 30:13

**sufficient** 44:8

**suicidal** 27:13

**sum** 51:18
57:15 61:4

**summarize**
57:16

**supervisor**
24:10 27:22
28:8 37:15
38:15 50:24
66:12 73:4
83:24 84:3,21

91:7,14,17
92:19,25 93:12,
22,25 94:7,19,
23 96:15,17
101:22

**supervisor's**
92:10

**supervisors**
24:12 37:8,16
38:11,12 84:1
91:19,22

**supplied** 6:20
55:21

**supposed**
28:14 29:3
32:11 87:22
90:4 93:24 94:5
102:2

**surprise** 67:3,
5,16,17 69:5,7,
10

**surroundings**
53:8

**surveil** 44:2

**surveilling**
38:21 39:3
42:19 43:9,13
44:14 47:12

**survey** 39:10

**swear** 6:1

**system** 20:5
22:11 23:18,20
38:10 44:8
52:23 53:1
81:24 83:14

---

**T**

**takes** 40:4,5
46:8

**taking** 28:23
64:20

**talk** 12:5 76:15
86:11

**talker** 64:13

**talking** 7:23
17:11 28:17

29:11 30:24
33:3 36:19
39:8,9,12 49:17
56:7 65:3 77:22
92:17

**tangible** 63:13

**tapes** 54:11

**taser** 58:17
93:19

**team** 31:6

**tech** 13:25

**technician**
14:1

**tells** 60:11

**ten** 49:12 52:18

**tents** 54:12

**tenure** 45:9,16

**term** 34:5

**terms** 101:12
102:9

**terribly** 8:9

**test** 9:18

**testified** 69:3

**testify** 12:17

**testimony** 6:2
74:7

**that'd** 10:1
60:8 67:10
78:23

**That'll** 17:15

**theft** 72:17

**thing** 27:3 32:2
33:8 42:5 45:1
47:9 48:4,14
53:12,14 55:3,
25 63:10 84:15
89:12,25 91:6,
16,17 92:8 94:6
95:5 96:24
98:22

**things** 7:13
16:8 44:15,24
56:10,19 59:9
72:14 82:8

83:20

**thinking** 88:1

**thought** 87:12
91:4 94:25 96:8

**throw** 25:24

**time** 8:12 10:22
11:24,25 14:16
18:5,21 20:11,
14 21:1 23:10
25:8,9,25 27:3
28:8 30:22
31:22 32:18
33:3 34:8 38:18
40:8 41:3,8,9
42:9,13,18
43:2,11,12
44:23 47:23
48:21 49:17
50:7,17 52:17,
22 53:19 54:11
57:7,23 58:14
66:2,5,17 69:16
72:11,13 75:10
77:3,12,18 78:2
82:21 83:12,17
86:9 87:21,23
88:21,22 90:1
91:3 93:18
94:17,18 95:13
96:11,16,21,22
97:20 100:2,10
101:1,4,16
102:8

**times** 9:3 27:21
28:20 31:24
69:4 72:12
75:11 84:2

**titles** 82:8

**today** 7:10
12:16 20:2
100:7 102:9

**toilets** 20:18

**told** 14:4 58:23
63:11 67:1
68:15 70:18
87:23 90:5,6,8
96:4,13

**tools** 58:18
93:24

**total** 34:2

**totally** 25:3

**tower** 52:23,25

**tragedy** 98:16

**trained** 18:17

**trainees** 51:7

**training** 18:12,
13 19:10 47:21
48:25 50:11
51:11,23 55:1,
2,25 56:21
57:4,7 58:3,19
59:5 60:17,22

**transport** 21:8
39:11

**transportation**
21:13 46:7

**trash** 20:23
21:2

**tray** 22:25

**trays** 22:14,19

**trick** 60:2,3,4

**true** 16:13,16
63:11

**Trust** 60:3

**trustees** 21:3

**truth** 6:3,4 7:11
9:21

**truthfully**
12:17

**Tuesdays**
31:25

**turn** 99:14

**turned** 73:1

**type** 23:8,24
60:12 65:20
68:24 83:12
101:16

**typed** 23:19,22

**typical** 19:24

**typically** 69:4

**typo** 81:17

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

## U

**Uh-huh** 18:18 82:4,10,13,16 90:15

**uh-huhs** 8:4

**uh-uhs** 8:4

**unclassified** 21:16

**uncommon** 75:17

**understand** 9:10 17:11 25:4 56:23 67:19 69:14 86:14,19 87:1 92:21 94:7,17,25

**understanding** 70:3 94:16

**understood** 9:13 95:7,14

**unfold** 68:12

**unfolding** 25:22

**United** 13:6

**unlock** 41:14

**unusual** 28:12 68:17

**upstairs** 41:10

**use-of-force** 60:8,9,16

## V

**verbal** 8:2 56:8 58:15 60:18 93:22

**verify** 20:18 63:15

**veteran** 14:5

**victim** 50:18

**video** 37:16,17, 22 42:2,10 50:17 70:22

**view** 37:25

**vigilant** 47:18

**violate** 37:10 95:3

**violated** 82:17, 18 87:24 88:4 94:2

**violation** 88:23 90:6 94:2

**violence** 62:11 65:13 69:14,17, 22 70:3,4,8,14 71:9 74:16

**visibility** 40:7

**visitation** 29:4

**visual** 29:12 34:17

**visually** 22:6

**voicemail** 84:22

## W

**wait** 64:6

**waiting** 12:10 34:22

**waive** 103:3,4

**wake** 22:22

**walk** 7:6 19:23 22:6,7 28:11, 15,18 29:8,11 30:18 35:25 36:21 79:1 83:20,21 84:9, 24 86:7 89:5 91:12,15,16 92:20 94:20 95:16 96:12 101:14

**walked** 23:25 83:15,16,17,18 84:12 85:20 88:18,25 89:15 94:21 100:20, 21

**walking** 25:12 29:23 30:12

49:18 87:3 88:9 91:20 95:17,24 96:23 102:18

**walks** 47:10

**walkways** 40:4

**wanted** 34:20 65:18 81:20 88:2

**watch** 41:22 47:17 98:12

**watched** 68:11

**watching** 40:17 42:10

**ways** 53:2 54:7 58:16 73:18 75:9 76:13 86:8 99:23

**weak** 49:9

**weaknesses** 48:18

**weapon** 6:19

**week** 69:5 70:12 71:8

**wellbeing** 24:2 39:6,8

**West** 13:23

**What'd** 74:4

**white** 93:5

**Whoops** 34:16

**wife** 14:4

**wild** 92:2

**window** 42:6

**witnessed** 52:10 69:20 75:19

**word** 70:20 75:3

**words** 23:7 25:2 64:6,7 102:10

**work** 8:5 16:8 19:11 44:5 48:17 49:25 69:21 70:13

**worked** 13:22 19:2,3,4 69:15, 16

**workers** 40:22

**working** 14:12 68:3 70:18

**world** 99:17

**would've** 16:5 20:25 77:1 78:1,13,14 95:4

**wound** 21:8

**write** 50:16 65:23 66:10 82:14 85:7 86:4

**writing** 56:3

**written** 45:24 46:22 55:12,13 66:1 83:25 84:16 87:18 92:25

**wrong** 9:18 94:25 96:17

**wrote** 73:3 83:18 86:10 88:19,20

## Y

**year** 13:2 14:15

**years** 13:12 14:16,17,21 15:8 19:16 44:19 45:13 49:12 52:18 68:4 70:14 79:24 85:5

**yell** 53:4

**yelling** 54:15

## Z

**Zephyrhills** 13:4

**zoom** 79:2,3

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

407.423.9900          www.MILESTONEREPORTING.com

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

Toll Free 855-MYDEPOS



# MARION COUNTY ⬥ SHERIFF'S OFFICE

**TO:**      **DETENTION DEPUTY DELLUN MILLER #4614**

**FROM:**   **Sergeant Jerome Dukes #5469**

**DATE:**    **April 14, 2021**

**SUBJECT:**  **LETTER OF COUNSELING**


On 04/07/2021, at approximately 0005 hours I arrived in Golf Pod to assist you with the hourly security check. After assisting with the security check, I advised you call me if you needed any assistance with the upcoming security checks, due to Corporal Kosinski conducting lunch breaks at the hospital. At approximately 0400 hours I began reviewing the JMS Daily logs for Golf Pod. I discovered two entries you made that violated Operational Directive 6164.35(D), Security Checks. The first entry was at 0117 hours, your entry for the security check stated, "Completed at Doors, Home alone." The second entry at 0222 hours, you entered "at door 0200 at door home alone."


Detention Deputy Miller, this Letter of Counseling is a result of your failure to adhere to Operational Directives and could have resulted in a serious incident taking place and going undetected for three hours. The Marion County Sheriff's Office relies on your adherence to all policies and procedure to maintain the secure safe operation of the Marion County Jail.
It is my hope that this Letter of Counseling will be viewed as a valuable learning tool to ensure these types of incidents do not happen again.

Sergeant J. Dukes


Cc:   Sheriff B. Woods
      Chief Deputy R. Douglas
      Major C. Bowen
      Captain R. Burnett
      Lieutenant Johnson
      Human Resources

PLAINTIFF'S
EXHIBIT
1

## Billy Woods, Sheriff

P.O. Box 1987 • Ocala, FL 34478-1987 • Main Office: (352) 732-8181 • Civil: (352) 402-6025 • Emergency Management: (352) 369-8100 • Jail: (352) 351-8077



# MARION COUNTY     SHERIFF'S OFFICE

**TO:**     **MAJOR BOWEN**

**FROM:**     Captain Walters

**DATE:**     December 29, 2020

**SUBJECT:**     **SERGEANT DELLUN MILLER #4614**

This memo is to inform you of the issues that Sergeant Miller is currently experiencing in the Detention Supervisor's Training Program.

As a reference, the average time spent in the Detention Supervisor Training Program is from seven to fourteen days for a supervisor to get their training completed. Operations Directive 3522.20(F)(2) states that extensions in the field training program for deputies will normally be limited to one-third the full time allowed which would be 19 days for the supervisor training, with exceptions as needed, if we allotted the same time frame. As of December 29, 2020, Sergeant Miller has completed 37 working days in the Detention Supervisor's Program.

Sergeant Miller has maintained a positive attitude during his training, but the areas that he is weak in reoccur almost every shift and at times he seems overwhelmed. In reading his DOR's, some of the reoccurring issues are: failure to effectively communicate instructions to subordinates, sending orders through other deputies, not communicating with other supervisors about scheduling issues, and scheduling itself. Sergeant Miller's inability to retain and remember information hinders his ability to make sound decisions and communicate clearly. It appears that he often seems unsure of himself of what to do along with being weary of making decisions. At times he is argumentative and has a hard time accepting responsibility.

Billy Woods, Sheriff

P.O. Box 1987 • Ocala, FL 34478-1987 • Main Office: (352) 732-8181 • Civil: (352) 402-6025 • Emergency Management: (352) 369-8100 • Jail: (352) 351-8077

MARION COUNTY    SHERIFF'S OFFICE

MEMO TO:  Major Bowen
RE:        SERGEANT DELLUN MILLER #4614
December 29, 2020
Page 2


It is my opinion that Sergeant Miller is not able to perform his duties as a Sergeant in a solo status without constant supervision.

It is my recommendation at this time, that it is in the best interest of the Agency that Sergeant Miller be returned to his previous position as a Corporal.


_____
Captain Robert Walters

c:    Sheriff Woods
      Chief Douglas
      Captain Burnett
      Human Resources


Billy Woods, Sheriff

P.O. Box 1987 • Ocala, FL 34478-1987 • Main Office: (352) 732-8181 • Civil: (352) 402-6025 • Emergency Management: (352) 369-8300 • Jail: (352) 351-8077



# MARION COUNTY    SHERIFF'S OFFICE

**TO:**       C.O. DELLUN MILLER #4614

**FROM:**   Sergeant Steve Walker #477

**DATE:**   July 7, 2014

**SUBJECT:**   LETTER OF REPRIMAND

COPY SENT TO
INTERNAL AFFAIRS
DATE 7/8/14

On June 29, 2014, you were on duty in the Juvenile Barracks. During your tour of duty, you were responsible for maintaining confinement logs for Charlie Section which contained two (2) direct files and four (4) pre-trial Youths. At approximately 2130 hours, Captain Burnett came to the Juvenile Barracks and discovered that the confinement logs for Charlie Section had not been updated since 1730 hours. When questioned, you advised that you had completed all of your checks but had failed to document them.

Corrections Officer Miller, you are in violation of MCSO Juvenile Detention Facility Operating Procedure **J-4-13- YOUTH HOUSING AND MOVEMENT** which states, "All youth shall be observed and will be *documented* on a Youth Observation Log with the JCO's initials and identification number.  This will be completed either by an electronic scanner or manually."  Your failure to properly document these checks placed undue liability on the Marion County Sheriff's Office, yourself and your co-workers and this will not be tolerated.  Future incidents of this nature will result in heightened disciplinary action.

Sergeant Steve Walker #477

**C:**       Sheriff C. Blair
Chief Deputy F. LaTorre
Major P. Laxton
Captain M. Rolls
Captain R. Burnett
Employee Services



RECEIVED
JUL - 8 2014

## Chris Blair, Sheriff

P.O. Box 1987 • Ocala, FL 34478-1987 • Main Office: (352) 732-8181 • Civil: (352) 620-3606 • Emergency Management: (352) 369-8100 • Jail: (352) 351-8077

# SHERIFF
## Marion County

TO:       OFFICER DELLUN MILLER #4614

FROM:    Sergeant Mark P. Kelly #738

DATE:    March 6, 2008

SUBJECT: LETTER OF REPRIMAND

Officer Miller, recently a 'Chain Mail Letter' circulated throughout the departmental e-mail. It was sent to you, and on March 3, 2008 at 11:59pm, you sent it to numerous other employees. It is against policy to utilize the e-mail system for anything other than official business.

You are in direct violation of Operational directive 2035.55 which states:

**A.** Use of e-mail (electronic mail), local and via the Internet, as well as other electronic media (pagers, mobile data terminals, etc.), should be for official use only. Therefore, the following uses of agency e-mail and electronic media are prohibited:

   **3.** The utilization of e-mail/electronic media in any manner that could bring discredit to the Agency.

In the future, if you receive any other e-mail that does not relate to official business, you need to delete it immediately. Any additional violations of this type will result in further disciplinary actions.

Sgt. M P Kelly 738
Sergeant Mark P. Kelly #738

Cc: Sheriff Dean
    Chief Bigelow
    Chief Kuhn
    Chief Wilder
    Major Laxton
    Captain Bowen
    Captain Burnett
    Human resources

# MARION COUNTY SHERIFF'S OFFICE

## *Lifesaver Award*

### CORPORAL
### DELLUN MILLER

In July of this year, Corporals Desando and Miller responded to a medical emergency at the Jail in G-pod. They found an unresponsive inmate that was barely breathing. They quickly notified medical staff as they began CPR when the inmate stopped breathing. Nurse Ramos responded and began treating the inmate. After two doses of Narcan, the inmate regained consciousness and was taken to the hospital for further treatment where he made a full recovery. Thanks to your fast response and immediate treatment, the inmate's life was saved.

Thank you for your hard work and dedication!



Sheriff Billy Woods

**Tessaglia, Yaneira**

| | |
|---|---|
| **From:** | Miller, Dellun |
| **Sent:** | Saturday, November 15, 2014 4:21 AM |
| **To:** | Human Resources |

**Subject:** FW: Citizens Academy tours

Could you place a copy of this in my personnel file. Per policy 3030.10 D. 1. Thank you. 4614  Cpl. D. Miller

**From:** Fender, Carolyn
**Sent:** Thursday, November 13, 2014 4:28 PM
**To:** Thorsberg, Donald; Johnson, Kristin; Miller, Dellun; Vereen, Shatara; Moats, Thomas; Nix,Bryan
**Subject:** Citizens Academy tours

I wanted to thank each of you for the great job you did on the two tours you did for the Citizens Academy program.  I know if takes a lot of extra effort, especially coming in on your time off, but I really appreciated all you did☺  I should be getting some evaluations back from the groups next week sometime and I'll try to remember to scan them and share them with you all.  We are done for this year and will start again in January.  I love working with you guys…..at least if we have to be in jail, it's nice we can have a little fun!!!

11/17/2014



# CERTIFICATE OF APPRECIATION

DELLUN C MILLER

I am pleased to acknowledge your 5 years of continuous and faithful service with the Marion County Sheriff's Office. It is gratifying to know that such loyalty exists.

JANUARY 2010

ED DEAN
**SHERIFF**
MARION COUNTY, FLORIDA

Excellent Job
Ed Dean        CC: Jul
                                H/R

R.E. Mr. Ed Dean:                                    Dec 18, 2007

I am writing this letter to you to express mine and my families deepest appreciation for two of your corrective officer's Mr. J.C. Graig I.D. #4292 and Mr. D.M. Miller 4614 On Nov 31, 2007. I had recieved word that my sister Nancy Careaga had been Rush to the hospital in Key West Fl in very critical condition due to complication of Cancer. And might not make it through the weekend. So Mr. Graig and Mr. Miller arrainge for me to make a phone call so that I could speak to my sister thanks to your two officer's I was to speak to her before she pass away. My family wanted to express there deepest graditude for what they did because if it wasn't for them I would have not been able to say good bye to her She died died the following day on Dec 1, 2007. You probably don't hear this very much but I want to be the first to say thank you for having such a caring Staff. They truly showed there professionalism and Caring heart it was a very difficult time in my life but thanks to your two officer's they didn't see a prisoner but a human being that was hurting there are not enough words to express how grateful I am, on that day Nov 31, 2007 they put there Badge down and went above and beyond there call of duty. And I want to thank you personaly for having such 2 wonderful officer's working for you regardless of what happens to me I will forever will grateful for what they did for me and my family. Please Mr. Dean if you can pleas reconize them for they Kind heart and gentle spirit may God Bless them and you and your entire team of officers. Thank you and may god allways Bless them all.

→

Sincerly

Julio Barroso (0040469 H-C)

Julio BARROSO

**Rike, Julie**

| | |
|---|---|
| **From:** | Ross, Stanley |
| **Sent:** | Monday, September 17, 2007 4:20 AM |
| **To:** | Rike, Julie |
| **Cc:** | Laxton, Paul; Bowen, Clinton |
| **Subject:** | Eagle Eye Recommendation- Cpl. Miller; Cpl. Craig |

Ref : JR0034060

On 09/16/2007 Corporal Miller # 4614 and Corporal Craig # 4292 were alerted to inmates tampering with the section water cooler. Inmate's Lewis and Rivera were found to be tampering with the water cooler trying to light a home made cigarette. Upon further investigation of Inmate Lewis property, wires were found under his mattress. Both inmate's were counseled by Officer's Miller and Craig. Their investigation revealed there was marijuana in the section. A total of five homemade marijuana cigarettes were retrieved. I would like to recommend Officer's Miller and Craig for an Eagle Eye Award for their persistance and thoroughness in this matter. Job well done !!

Sgt. S. Ross # 448

1

*JEB BUSH*
GOVERNOR

*James T. Moore*
JAMES T. MOORE, COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

## STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

DELLUN CURTIS MELLER

BASIC RECRUIT CERTIFICATE
CERTIFICATE OF COMPLIANCE
CORRECTIONAL OFFICERS
530 HOURS

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

PATRICK M. KELLY, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

ROD CASWELL, PROGRAM DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM PROGRAM

June 27, 2001

19764



# CENTRAL FLORIDA COMMUNITY COLLEGE
## CRIMINAL JUSTICE INSTITUTE  № 17681
### This Certifies That

*DELLUN C. MILLER*

*has successfully completed the 530 hour course on*

## CORRECTIONS BASIC RECRUIT TRAINING

*Held from November 14, 2000 through April 2, 2001*

*and in recognition thereof is*

*Presented this Certificate on this*

**2nd day of Aapril 2001**

*at Ocala, Florida*

DIRECTOR
CRIMINAL JUSTICE
INSTITUTE

PRESIDENT
CENTRAL FLORIDA
COMMUNITY COLLEGE

04-2000-502-03



# The Grosso Institute of Security

Presents This Certificate
to

DELLUN C. MILLER

for having fulfilled the requirements for training
as prescribed in Chapter 493
of Florida Statutes

**Basic Training Certificate
Unarmed Security Officer
Class "D" License**

Completed ___16___ Hours Instruction

___11th___ day of ___MARCH___ 19_93_

Instructor D.I. # 91-00049

Director

Lic. # DS91-00026

# Certificate of Completion

*This is to certify that*

## DELLUN MILLER

*has successfully completed Use of Force Training (40 Hours)*

*presented by*

### The Florida Department of Juvenile Justice

NOVEMBER 1998

Secretary, Department of Juvenile Justice

Staff Development Administrator

Certificate Number: 4056.01

Certificate issued: 12/30/98



**CAREER SYSTEMS DEVELOPMENT CORPORATION REDIRECTION DIVISION**

# Certificate of Completion

## Dellun Miller

*On: 5/22/00 to 6/5/00*

*Attended 40 Hours of Use of Force & Crisis Prevention and Intervention Training*

*Corporate Trainer*



*Project Director*



MARION YOUTH DEVELOPMENT CENTER
TRAINING CERTIFICATE

DELLUN CURTIS MILLER

HAS SUCCESSFULLY COMPLETED 3.5 HOURS IN:

Expectations/Team Building; Behavior Management; Resident
Handbook; BHOS; Operations, and Treatment Services.

APRIL 11, 2000

4/17/2000
DATE

PROJECT DIRECTOR

This

# Certificate of Completion

Is Hereby Awarded To

# Dellun C. Miller

For Completing The MYDC 40-Hour

# Staff Orientation Training

On This, The 5th Day Of June, 2000.   Presented By The

# Marion Youth Development Center

So Say The Undersigned



_____
Project Director

_____
Trainer



# CENTRAL FLORIDA COMMUNITY COLLEGE
## CRIMINAL JUSTICE INSTITUTE Nº 19202
### This Certifies That

*DELLUN C. MILLER*

*has successfully completed the 40 hour course on*

## HOSTAGE NEGOTIATIONS

*Held from March 25, 2002 through April 4, 2002*

*and in recognition thereof is*

*Presented this Certificate on this*

*4th day of April 2002*

*at Ocala, Florida*

PRESIDENT
CENTRAL FLORIDA
COMMUNITY COLLEGE

DIRECTOR
CRIMINAL JUSTICE
INSTITUTE

© 1998 GOES 3910
All Rights Reserved

LITHO IN U.S.A.

JEB BUSH
GOVERNOR

JAMES T. MOORE, COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

## STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

DELLUN CURTIS MILLER

ADVANCED TRAINING CERTIFICATE
HOSTAGE NEGOTIATIONS
40 HOURS

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

PATRICK M. KELLY, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

ROD CASWELL, PROGRAM DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM PROGRAM

April 4, 2002

04-2002-093 1

# CENTRAL FLORIDA COMMUNITY COLLEGE
## CRIMINAL JUSTICE INSTITUTE № 19988

**This Certifies That**

*DELLUN C. MILLER*

*has successfully completed the 40 hour course on*

## SEX CRIMES INVESTIGATION

*Held from October 7, 2002 through October 17, 2002*

*and in recognition thereof is*

*Presented this Certificate on this*

*17th day of October 2002*

*at Ocala, Florida*

PRESIDENT
CENTRAL FLORIDA
COMMUNITY COLLEGE

DIRECTOR
CRIMINAL JUSTICE
INSTITUTE

LITHO. IN U.S.A.

© 1998 GOES 3910
All Rights Reserved



JEB BUSH
GOVERNOR

JAMES T. MOORE, COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

### STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

**DELLUN CURTIS MILLER**

**ADVANCED TRAINING CERTIFICATE**
**SEX CRIMES INVESTIGATIONS**
**40 HOURS**

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

DARON D. DIECIDUE, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

ROD CASWELL, PROGRAM DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM PROGRAM

October 17, 2002                                                04-2002-033-1



# CENTRAL FLORIDA COMMUNITY COLLEGE
## CRIMINAL JUSTICE INSTITUTE

### This Certifies That

*DELLUN C. MILLER*

has successfully completed the  40  hour course on

*SPECIAL TACTICAL PROBLEMS*

Held from March 31, 2003  through April 10, 2003

and in recognition thereof is

Presented this Certificate on this

**10th day of April 2003**

at Ocala, Florida

PRESIDENT
CENTRAL FLORIDA
COMMUNITY COLLEGE

DIRECTOR
CRIMINAL JUSTICE
INSTITUTE

04-2003-032-01

No. 20655

LITHO. IN U.S.A.

© 1998 GOES 3910
All Rights Reserved

JEB BUSH
GOVERNOR

JAMES T. MOORE, COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

**DELLUN CURTIS MILLER**

**ADVANCED TRAINING CERTIFICATE
SPECIAL TACTICAL PROBLEMS
40 HOURS**

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

DARON D. DIECIDUE, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

ROD CASWELL, PROGRAM DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM PROGRAM

April 10, 2003

04-2003-032-1



# CENTRAL FLORIDA COMMUNITY COLLEGE
## CRIMINAL JUSTICE INSTITUTE

This Certifies That

*DELLUN C. MILLER*

has successfully completed the 40 hour course on

## CASE PREPARATION AND COURT PRESENTATION

Held from May 12, 2003 through May 22, 2003

and in recognition thereof is,

Presented this Certificate on this

22nd day of May 2003

at Ocala, Florida

_____
PRESIDENT
CENTRAL FLORIDA
COMMUNITY COLLEGE

_____
DIRECTOR
CRIMINAL JUSTICE
INSTITUTE

No. 21927

LITHO. IN U.S.A.

© 1998 GOES 3910
All Rights Reserved

JEB BUSH
GOVERNOR

JAMES T. MOORE, COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

**DELLUN CURTIS MILLER**

**ADVANCED TRAINING CERTIFICATE**
**CASE PREPARATION AND COURT PRESENTATION**
**40 HOURS**

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

DARON D. DIECIDUE, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

ROD CASWELL, PROGRAM DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM PROGRAM

May 22, 2003

04-2003-020-1



# CENTRAL FLORIDA COMMUNITY COLLEGE
## CRIMINAL JUSTICE INSTITUTE

### This Certifies That

*DELLUN C. MILLER*

*has successfully completed the 40 hour course on*

### DOMESTIC INTERVENTION

*Held from July 21, 2003 through July 31, 2003*

*and in recognition thereof is*

*Presented this Certificate on this*

**31st day of July 2003**

*at Ocala, Florida*

PRESIDENT
CENTRAL FLORIDA
COMMUNITY COLLEGE

DIRECTOR
CRIMINAL JUSTICE
INSTITUTE

© 1998 GOES 3910
All Rights Reserved

LITHO. IN U.S.A.



JEB BUSH
GOVERNOR

DARYL G. McLAUGHLIN,
INTERIM COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

## STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

### DELLUN CURTIS MILLER

**ADVANCED TRAINING CERTIFICATE**
**DOMESTIC INTERVENTION**
**40 HOURS**

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

DARON D. DIECIDUE, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

ROD CASWELL, PROGRAM DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM PROGRAM

July 31, 2003

04-2003-091-1



# CENTRAL FLORIDA COMMUNITY COLLEGE
## CRIMINAL JUSTICE INSTITUTE

**This Certifies That**

*DELLUN C. MILLER*

*has successfully completed the 40 hour course on*

*BUILDING AND MAINTAINING SOUND BEHAVIORAL CLIMATE*

*Held from August 18, 2003 through August 28, 2003*

*and in recognition thereof is*

*Presented this Certificate on this*

*28th day of August 2003*

*at Ocala, Florida*

DIRECTOR
CRIMINAL JUSTICE
INSTITUTE

PRESIDENT
CENTRAL FLORIDA
COMMUNITY COLLEGE

© 1998 GCES 3910
All Rights Reserved

LITHO. IN U.S.A.



JEB BUSH
GOVERNOR

DARYL G. McLAUGHLIN,
INTERIM COMMISSIONER
FLORIDA DEPARTMENT OF
LAW ENFORCEMENT

STATE OF FLORIDA

# THE COMMISSION ON CRIMINAL JUSTICE STANDARDS AND TRAINING

Hereby awards to

**DELLUN CURTIS MILLER**

**ADVANCED TRAINING CERTIFICATE**
**BUILDING AND MAINTAINING SOUND BEHAVIORAL CLIMATE**
**40 HOURS**

For having fulfilled the requirements for training
as prescribed in Chapter 943
of Florida Statutes

DARON D. DIECIDUE, CHAIRMAN
CRIMINAL JUSTICE STANDARDS
AND TRAINING COMMISSION

ROD CASWELL, PROGRAM DIRECTOR
CRIMINAL JUSTICE
PROFESSIONALISM PROGRAM

August 28, 2003                                        04-2003-013-1



CERTIFICATE OF RECOGNITION

DELLUN C. MILLER

In recognition of your service during the period of the Cold War (2 September 1945 - 26 December 1991) in promoting peace and stability for this Nation, the people of this Nation are forever grateful.



SECRETARY OF DEFENSE

DD FORM 2774, 1 JUL 98

# Certificate of Enlistment



Be it known that _____ DELLUN CURTIS MILLER _____ has

enlisted in the Florida National Guard

for a period of ___ 3 ___ years

this _24th_ day of _JANUARY_ in the year _1998_ AD

_Ronald Harrison_

RONALD O. HARRISON
Major General, Line
Florida Army National Guard
The Adjutant General



# THE STATE OF FLORIDA

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING:

THIS IS TO CERTIFY THAT THE GOVERNOR OF THE STATE OF FLORIDA HAS AWARDED

## THE FLORIDA COMMENDATION MEDAL

TO    SPECIALIST CURTIS MILLER
DET 1 325TH MAINTENANCE COMPANY (NONDIV DS)

FOR    MERITORIOUS SERVICE AND OUTSTANDING ACHIEVEMENT WHILE PARTICIPATING IN THE NATIONAL GUARD BATTLE FOCUS MATCHES 20-21 MARCH 1999. SPECIALIST MILLER'S DEDICATION AIDED THE TEAM IN WINNING FIRST PLACE AT THE STATE LEVEL. DUE TO HIS PERFORMANCE, HIS TEAM COMPETED IN THE NATIONAL COMPETITION AT CAMP ROBINSON, ARKANSAS. HIS DEDICATION TO THE TEAM AND WILL TO SUCCEED MADE HIM A VALUABLE ASSET TO THE TEAM. HIS SOUND JUDGMENT AND PERFORMANCE BRING CREDIT UPON HIMSELF, THE FLORIDA ARMY NATIONAL GUARD, AND THE UNITED STATES ARMY.



JOSEPH M. DUREN
LTC, QM, FLARNG
COMMANDING

Dated    14 FEBRUARY 2001

# Certificate of Appreciation

Presented To

*Dellun Miller*

For your superior efforts toward
the achievement of
American Correctional Association

Re-Accreditation · January 28, 2004

MARION CORRECTIONAL INSTITUTION

February 19, 2004

Date

Gus Mazorra, Assistant Warden

Don S. Gladish, Warden

Hunter Page, Assistant Warden

Central Florida Community College
Criminal Justice Institute

# FIRST PLACE
# FIREARMS AWARD

PRESENTED TO

# DELLUN C. MILLER

CRIMINAL JUSTICE ACADEMY CLASS #216

April 2, 2001

_W. A. Lancaster, Jr._
COORDINATOR

DIRECTOR







CORRECTIONAL PEACE OFFICERS FOUNDATION, INC.

# Certificate of Membership

## Dellun C Miller

In recognition of your supporting membership in the Correctional Peace Officers Foundation, Inc., this Certificate has been provided with sincere appreciation by the Foundation's Board of Directors, administration and staff. Your donations, participation and support are what make it possible for the Correctional Officers Foundation, the only national charity in existence for the professional Correctional Officer and Family, to continue to grow and keep on taking care of our own.

PRESENTED BY THE CORRECTIONAL PEACE OFFICERS FOUNDATION BOARD OF DIRECTORS

Glenn Mueller        Edgar W. Barcliff, Jr.        Larry Corby        Sal Osuna        Richard Waldo



# MARION COUNTY ★ SHERIFF'S OFFICE

TO:     Chaplain Vernon Phillips

FROM:   Corporal Vernon Phillips

DATE:   February 20, 2024, 2022

REF:    Peer Support Team Member

Sir, I am interested in becoming a member of the support team. I have 24 years in this career and have seen pretty much everything in this line of work that has even tested me at times. I've seen many situations, such as the passing of a loved one, divorce, financial troubles, depression, addictions, etc. I know firsthand what it means to be able to turn to someone not for just advice but just an ear for someone to listen to too, or just receiving a phone call just to see how you're doing and meaning it. "Most important" are people I can trust to keep what most of us consider our weaknesses confidential, and this speaks volumes when you know that you are considered trustworthy. I have seen a lot and have been there for many in this agency, and when asked, I have shared knowledge, which I hope has helped. I am older than most of those that work here, but I believe that most have come to respect me and trust me through daily contact with me on a day-to-day routine or just in passing. I'll be the first one to tell you I'm by no way perfect, but what I am is loyal and true to my word, and to some, I am a person they can turn to without being judged or weak to confide in. I consider it an honor to assist those in need, just as I have turned to others in my own time of need. Thank you for your consideration.

Sincerely,

-----------------------------------------------------------
Corporal Dellun C. Miller 4614

Sheriff:  William Woods
Chief:    Robert Douglas
Major:    Clint Bowen
Captain:  Matthew McNeeley
Lieutenant: Ashley Snodgrass
Human Resources

Billy Woods, Sheriff

# MARION COUNTY      SHERIFF'S OFFICE

TO:        Director R. Englebright

FROM:    Corporal Dellun C. Miller

DATE:     3-31-2021

SUBJECT:  Sergeant Exam

Sir, I am requesting to take the Sergeant Exam. I meet all requirements.

Sincerely,

_____

Corporal Dellun C. Miller (4614)

CC:
Sheriff W. Woods
Chief R. Douglas
Major C. Bowen
Captain R. Burnett
Lieutenant K. Johnson
Human Resources

# Form W-4 (2004)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct Federal income tax from your pay. Because your tax situation may change, you may want to refigure your withholding each year.

**Exemption from withholding.** If you are exempt, complete only lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2004 expires February 16, 2005. See **Pub. 505,** Tax Withholding and Estimated Tax.

**Note:** *You cannot claim exemption from withholding if:* **(a)** *your income exceeds $800 and includes more than $250 of unearned income (e.g., interest and dividends) and* **(b)** *another person can claim you as a dependent on their tax return.*

**Basic instructions.** If you are not exempt, complete the **Personal Allowances Worksheet** below. The worksheets on page 2 adjust your withholding allowances based on itemized deductions, certain credits, adjustments to income, or two-earner/two-job situations. Complete all worksheets that apply. **However, you may claim fewer (or zero) allowances.**

**Head of household.** Generally, you may claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See line E below.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the **Personal Allowances Worksheet** below. See **Pub. 919,** How Do I Adjust My Tax Withholding? for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using **Form 1040-ES,** Estimated Tax for Individuals. Otherwise, you may owe additional tax.

**Two earners/two jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others.

**Nonresident alien.** If you are a nonresident alien, see the **Instructions for Form 8233** before completing this Form W-4.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 919 to see how the dollar amount you are having withheld compares to your projected total tax for 2004. Especially if your earnings exceed $125,000 (Single) or $175,000 (Married).

**Recent name change?** If your name on line 1 differs from that shown on your social security card, call 1-800-772-1213 to initiate a name change and obtain a social security card showing your correct name.

---

## Personal Allowances Worksheet (Keep for your records.)

A   Enter "1" for **yourself** if no one else can claim you as a dependent . . . . . . . . . . . . .   **A** _____

B   Enter "1" if: { • You are single and have only one job; or
               • You are married, have only one job, and your spouse does not work; or
               • Your wages from a second job or your spouse's wages (or the total of both) are $1,000 or less. } . .   **B** _____

C   Enter "1" for your **spouse.** But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . . . . . .   **C** _____

D   Enter number of **dependents** (other than your spouse or yourself) you will claim on your tax return . . . . . . . .   **D** _____

E   Enter "1" if you will file as **head of household** on your tax return (see conditions under **Head of household** above) .   **E** _____

F   Enter "1" if you have at least $1,500 of **child or dependent care expenses** for which you plan to claim a credit .   **F** _____

     **(Note:** *Do not include child support payments. See Pub. 503, Child and Dependent Care Expenses, for details.)*

G   **Child Tax Credit** (including additional child tax credit):
     • If your total income will be less than $52,000 ($77,000 if married), enter "2" for each eligible child.
     • If your total income will be between $52,000 and $84,000 ($77,000 and $119,000 if married), enter "1" for each eligible child plus "1" **additional** if you have four or more eligible children. . . . . . . . . . . . . .   **G** _____

H   Add lines A through G and enter total here. **Note:** *This may be different from the number of exemptions you claim on your tax return.* ▶   **H** _____

For accuracy, complete all worksheets that apply.
     • If you plan to **itemize or claim adjustments to income** and want to reduce your withholding, see the **Deductions and Adjustments Worksheet** on page 2.
     • If you have **more than one job** or are **married and you and your spouse both work** and the combined earnings from all jobs exceed $35,000 ($25,000 if married) see the **Two-Earner/Two-Job Worksheet** on page 2 to avoid having too little tax withheld.
     • If **neither** of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 below.

- - - - - - - - - - - - - - - - - - - - - - - - - - - Cut here and give Form W-4 to your employer. Keep the top part for your records. - - - - - - - - - - - - - - - - - - - - -

Form **W-4**
Department of the Treasury
Internal Revenue Service

## Employee's Withholding Allowance Certificate

▶ Your employer must send a copy of this form to the IRS if: (a) you claim more than 10 allowances or (b) you claim "Exempt" and your wages are normally more than $200 per week.

OMB No. 1545-0010

**2004**

| 1   Type or print your first name and middle initial | Last name | 2   Your social security number |
|---|---|---|
| *Dellun C* | *MILLER* | ▓▓▓▓ |

Home address (number and street or rural route)
▓▓▓▓▓▓▓▓

| 3   ☐ Single   ☑ Married   ☐ Married, but withhold at higher Single rate. |
|---|
| **Note:** *If married, but legally separated, or spouse is a nonresident alien, check the "Single" box.* |

City or town, state, and ZIP code
▓▓▓▓▓▓

| 4   If your last name differs from that shown on your social security card, check here. You must call 1-800-772-1213 for a new card. ▶ ☐ |
|---|

| 5 | Total number of allowances you are claiming (from line H above **or** from the applicable worksheet on page 2) | 5 | *O* |
|---|---|---|---|
| 6 | Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . . . | 6 | $ |

7   I claim exemption from withholding for 2004, and I certify that I meet **both** of the following conditions for exemption:
     • Last year I had a right to a refund of **all** Federal income tax withheld because I had **no** tax liability **and**
     • This year I expect a refund of **all** Federal income tax withheld because I expect to have **no** tax liability.
     If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . . ▶ | 7 |

Under penalties of perjury, I certify that I am entitled to the number of withholding allowances claimed on this certificate, or I am entitled to claim exempt status.

**Employee's signature**
(Form is not valid unless you sign it.) ▶ *Dellun C Miller*

Date ▶ *1-3-05*

| 8   Employer's name and address (Employer: Complete lines 8 and 10 only if sending to the IRS.) | 9   Office code (optional) | 10   Employer identification number (EIN) |
|---|---|---|

---

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**      Cat. No. 10220Q      Form **W-4** (2004)



# MARION COUNTY            SHERIFF'S OFFICE

## OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

I do solemnly swear (or affirm) that I will support, protect, and defend the

Constitution and Government of the United States and of the State of Florida; that I am

duly qualified to hold office under the Constitution of the state; and that I will well and

faithfully perform the duties of Sergeant on which I am now about to enter.

So help me God.

**DELLUN MILLER   ID #4614**

*SHERIFF WILLIAM WOODS*

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this 2ND day of OCTOBER, 2020 by
<u>DELLUN MILLER</u> who is personally known to me or who has produced _____N/A
_____ as identification and who did take an oath.

(SEAL)

NICHOLE DODD
Commission # GG 974757
Expires May 1, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

**NOTARY'S SIGNATURE**

Billy Woods, Sheriff

 

# *SHERIFF* - Marion County
## Employee Address Change

Name: Dellun C Miller          SSN: _____

Position: _____       ID#: 4614

Physical Address: ████████████████████████

City: ████████████████████████

Mailing Address: Same

Phone Number: ████████████████

| Persons Living At Address | Relationship |
|---|---|
| ████████████ | Wife |
| | Daughter |
| | Son N Law |
| | Daughter |

**PLEASE PRINT DIRECTIONS TO YOUR HOME. PLEASE USE NORTH, SOUTH, EAST & WEST INSTEAD OF LEFT AND RIGHT. PLEASE START DIRECTIONS FROM S.R. 40 OR HWY 27 NEAR THE SHERIFF'S OFFICE. NO MAPS PLEASE!**

Detailed Instructions: ████████████████████████

**PLEASE PROVIDE NAME AND ADDRESS OF NEXT OF KIN OR OTHER PERSON TO BE CONTACTED IN CASE OF EMERGENCY.**

Name: ████████████████

Address: Same

Home Phone: ████████████    Work Phone: _____

**CC: HUMAN RESOURCES**                    DATE: _____

| Human Resources Use Only: |
|---|
| AFW *RNA*    PERSONNEL *RNA*    BC/BS *RNA* |
| Date: 9/4/15 |

P.O. BOX 1987, Ocala, FL 34478, (352) 732-8181          MCSO Form #14-424 Rev. 01/30/14

# MARION COUNTY     SHERIFF'S OFFICE

TO:          SHERIFF BILLY WOODS

FROM:        CORPORAL DELLUN C. MILLER

DATE:        MAY 31, 2019

SUBJECT:     REQUEST TO INTERVIEW FOR HONOR GUARD


I am respectfully writing you in regards to have the opportunity to interview for the Honor Guard position. I have all of the requirements to include 10 years of prior military experience. Thank you for your consideration.


Sincerely,


_____

Corporal Dellun C. Miller (4614)


cc:   Sheriff W. Woods
      Chief Deputy R. Douglas
      Major C. Bowen
      Captain A. Walters
      Captain C. Durham
      Lieutenant A. Chisholm
      Training Director
      Human Resources


Billy Woods, Sheriff

# MARION COUNTY SHERIFF'S OFFICE

TO:     Sheriff William Woods

FROM:   Corporal Dellun C. Miller

DATE:   10/31/2018

SUBJECT:  Disciplinary Hearing Officer

Sir, I am requesting consideration for the position as the Disciplinary Hearing Officer.  I am willing to help where I can. I have been with the agency for 14 years, along with 5 years with the Department of Corrections.  I would like to put my experience where it would help the agency meet its obligations and by insuring that all policies, directives, and state requirements are followed by the laws and guidelines that are required. Thank you for the opportunity and consideration.

Sincerely,

_____

Corporal Dellun C. Miller (4614)

CC:
Chief Robert
Major Clinton Bowen
Captain Andy Walters
Captain Mike Durham
Lieutenant Alesia Chisolm
Human Resources

# MARION COUNTY  SHERIFF'S OFFICE

## OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

I do solemnly swear (or affirm) that I will support, protect, and defend the

Constitution and Government of the United States and of the State of Florida; that I am

duly qualified to hold office under the Constitution of the state; and that I will well and

faithfully perform the duties of Deputy on which I am now about to enter.  So help me

God.

Print Name            ID#

*SHERIFF WILLIAM WOODS*

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this 23 day of October, 2017 by
Delkin Miller who is personally known to me or who has produced _____ N/A
_____ as identification and who did take an oath.

(SEAL)

GALEN R. PRIEST
Commission # GG 051931
Expires November 30, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

NOTARY'S SIGNATURE

Billy Woods, Sheriff

TRANSMISSION VERIF

Place in

Dellin Miller's

File

':55

DATE,TIME
FAX NO./NAME
DURATION
PAGE(S)
RESULT
MODE

# MassMutual
## FINANCIAL GROUP

# Unforeseeable Emergency Withdrawal Request -Part 1
## 457(b) Plans

Use this form if you want to:
• request a distribution for a financial hardship due to an unforeseeable emergency.

Return the completed form to your Plan Administrator for review and approval.

MassMutual Retirement Services ("MassMutual") will not process this form until it is received in good order. Please see the Important Information Section for information on "Good Order" requirements.

**Questions?**
Call
MassMutual's Customer
Service Center
1-800-528-9009

Fax
877-526-2531 or
800-878-8845

Online
www.massmutual.com/govnp

## Section A - Plan Information

| Group No. 109932 | Plan Name Marion County Sheriff's Office Deferred Compensation Plan |
|---|---|

## Section B - Participant Information

| SSN [redacted] | Participant Name Dellun C Miller | Date of Birth [redacted] |
|---|---|---|

*Legal Address

| City [redacted] | Daytime Phone Number 352 - 817 - 4191 |
|---|---|

*We [redacted]
*State Address* in the *Important Information Section*.

## Section C - Amount Requested for Unforeseeable Emergency Withdrawal

The amount you request may be different than the amount of the available distribution paid to you as a result of the documentation provided, the approval process and the interpretation of the IRS rules and regulations governing Unforeseeable Emergency Withdrawals on 457(b) Plans.

I hereby request a withdrawal from my account due to an unforeseeable emergency. I certify that the amount requested does not exceed the amount required to satisfy the described emergency plus any applicable taxes. I have provided sufficient documentation to my Plan Administrator to support the unforeseeable emergency withdrawal amount indicated below.

**MassMutual**
FINANCIAL GROUP®

# Unforeseeable Emergency Withdrawal Request - Part 1

457(b) Plans

Use this form if you want to:
• request a distribution for a financial hardship due to an unforeseeable emergency.

Return the completed form to your Plan Administrator for review and approval.

MassMutual Retirement Services ("MassMutual") will not process this form until it is received in good order. Please see the *Important Information* Section for information on "Good Order" requirements.

**Questions?**
Call
MassMutual's Customer
Service Center
1-800-528-9009

Fax
877-526-2531 or
800-678-8645

Online
www.massmutual.com/govnp

## Section A - Plan Information

| Group No. 109932 | Plan Name  Marion County Sheriff's Office Deferred Compensation Plan |

## Section B - Participant Information

| SSN ▉▉▉ | Participant Name  Dellun C Miller | Date of Birth ▉▉▉ |

*Legal Address ▉▉▉

City ▉▉▉    Daytime Phone Number  352-817-4191

*We will change your account information to reflect the Legal Address above and all future mailings will be sent to this address unless changed by you or your Plan Administrator as described under "Stale Address" in the *Important Information Section*.

## Section C - Amount Requested for Unforeseeable Emergency Withdrawal

The amount you request may be different than the amount of the available distribution paid to you as a result of the documentation provided, the approval process and the interpretation of the IRS rules and regulations governing Unforeseeable Emergency Withdrawals on 457(b) Plans.

I hereby request a withdrawal from my account due to an unforeseeable emergency. I certify that the amount requested does not exceed the amount required to satisfy the described emergency plus any applicable taxes. I have provided sufficient documentation to my Plan Administrator to support the unforeseeable emergency withdrawal amount indicated below.

Withdrawal amount requested* $  _2100.⁰⁰_   ☑ Gross  ☐ Net  **OR**  ☐ Full amount available

*When a balance exists in more than one investment option or contribution source, payment will be made from all options or sources pro-rata based on existing balances. If you participate in a Self Directed Brokerage Account (SDBA), please note only the funds within your core account at MassMutual are eligible for distribution.

## Section D - Source of Payment (complete if applicable)

Your withdrawal will be processed pro-rata across all of your contribution sources (excluding Roth sources, if any) and investments unless Special Instructions are provided below.

Special Instructions:   _pay by express Mail_

Roth Contribution Source  Election: If your account contains Roth contributions/rollovers you may, but are not required to, elect a percentage to be taken from the Roth source(s) to fulfill your withdrawal request.

I hereby elect MassMutual to take _____ % (whole percentage) of my Roth contribution source(s). I understand that if this percentage does not fulfill my withdrawal request, the remaining portion will be taken pro-rata from all other contribution sources. (Default is zero percent (0%) from your Roth contribution source(s) if no election is made.)

## Section E - Federal Income Tax Withholding Instructions (required)

The taxable portion of your payment is subject to 10% federal income tax withholding, unless you elect not to have withholding apply or elect a different withholding amount. Please note that you are liable for payment of federal income tax on your distribution and you may also be subject to tax penalties under estimated tax payment rules if your payments of estimated tax and withholding, if any, are not adequate.

☐ Do not withhold federal taxes.

☒ I elect to have federal income tax withholding of:    10 % OR $ _____

## Section F - State Income Tax Withholding

Skip this Section if you reside in a state with no income tax or withholding on pensions.

The taxable portion of your payment may also be subject to state income tax withholding. If you do not make an election below, state income taxes will only be withheld if required by state law. (Note: If state income taxes are not withheld you are liable for payment of state income tax on your distribution. In certain states you may also be subject to tax penalties under estimated tax payment rules if your payments of estimated tax and withholding, if any, are not adequate.)

Your options for state tax withholding are: (Note: These rules are subject to change at any time. For current tax information pertaining to your resident state, please contact your tax advisor or your state income tax department.)

| | |
|---|---|
| AR, DC, DE, IA, KS, ME, MD, MA, NC, NE, OK, VT, VA | These states require mandatory state withholding. MassMutual is required to withhold based on state law. You may not elect out of state income tax withholding. |
| CA, OR | These states require mandatory state withholding. MassMutual is required to withhold state income taxes based on state law unless you elect out of withholding:  ☐ I elect no state income tax withholding. |
| MI | This state requires mandatory state withholding. MassMutual is required to withhold state income taxes based on state law unless you provide alternate withholding instructions by completing a Michigan Withholding Certificate (MI W-4P Withholding Certificate for Michigan Pension and Annuity Payments) and submitting it with this form. |
| AL, AZ, CO, CT, GA, ID, IL, IN, KY, LA, MN, MS, MO, MT, NJ, NM, NY, ND, OH, PA, RI, SC, UT, WV, WI | These states permit voluntary income tax withholding. You may voluntarily elect state withholding by providing an election below: <br><br> I voluntarily elect to withhold an amount of: $ _____ |

## Section G - Delivery Instructions

We will mail a check to you at the legal address provided in Section B unless you select an alternative mailing address below. Note: Checks will be mailed within seven days after the processing date.

| Mailing Address | | | |
|---|---|---|---|
| City ███████████████████████ | | State ████ | Zip Code ███████ |

You may also select other means for receiving your distribution. Complete the appropriate section below.

1. ☒ Express mail my check. I understand a $7.00 fee will be deducted from my distribution for this service. Note: Express mail is not available to a PO Box.

2. ☐ Wire transfer my payment. I understand that a $15.00 fee will be deducted from my distribution for this service; your financial institution may also charge a fee. Note: Your wire will be delayed if you provide invalid wire instructions or account numbers.

| Wire Capable ABA No. | Account No. |
|---|---|
| | |

As some ABA routing numbers are NOT federal wire capable, please be sure to check with your financial institution for proper wire instructions. Wires to Credit Unions may take more time and have more detailed instructions. You may include detailed wire instructions below or attach them to this form.

| Name on Account (must include participant's name) | Dellun C Miller |
|---|---|
| Additional Crediting Instructions/ participant's account number | |

## Section H - Participant Certification and Authorization (required)

I hereby instruct the Plan to distribute my account balance in the manner indicated on this form and understand that my election is irrevocable once processed. I certify that all the information I provided in this form is true and accurate to the best of my knowledge and belief. I understand that providing false or misleading information on this form may constitute fraud and be subject to severe penalties. I acknowledge that:

- I believe, in good faith, that I qualify for this  Unforeseeable Emergency Withdrawal. I have exhausted all other resources prior to requesting this Unforeseeable Emergency Withdrawal?

- If the Plan(s) provide for participant loans, I have obtained all available loans under this Plan and any other plan of the employer I participate in to the extent that any additional plan loan would be counterproductive to the relief of the financial need;

- I have obtained all currently available distribution amounts under this Plan and any other plan of the employer that I participate in other than withdrawals due to financial hardship, and acknowledge that those amounts must be paid to me first.

- I have provided the required documentation that evidences my financial need.

- I have reviewed the state income tax withholding rules in Section F and the attached Fraud Warning Statements, as applicable to my state. I understand that the state income tax withholding rules described in Section F may have changed.

- I consent to an immediate distribution and affirmatively waive the minimum 30-day notice waiting period.

Note: If the check associated with this request is returned to MassMutual by the U.S. Postal Service as undeliverable, we are unlikely to resend it until you provide us with your updated address. Failure to provide us with your current and valid address may result in the check being considered abandoned property under the laws of the State where the check was mailed (unless preempted by ERISA).

**Important Note for Participants with a Non-U.S. or Non-U.S. Territory residence address:**
☐ Please check this box if you are _not_ a resident of the United States or a United States Territory.
If the current address is not an address within the U.S. or one of its territories, the Participant or Beneficiary receiving the distribution is required to fill out and return a *Citizenship Statement* form with the distribution request. Failure to provide a *Citizenship Statement* will result in U.S. Federal taxes being withheld at a rate of 30% for recipients with a non-U.S. residence address. Please ask your Plan Sponsor for a *Citizenship Statement* form or call MassMutual's Customer Service Center for a copy.

_Shelley C Miller_ _____     _4/19/17_ _____
Participant's Signature                                          Date

## Section I - Plan Administrator Certification and Authorization (required)

The Plan Administrator certifies that the approved "Unforeseeable Emergency" request for the participant complies with the "Unforeseeable Emergency" provisions under the Plan and is in accordance with Section 457(d)(1)(A)(iii) of the Internal Revenue Code and regulations as defined in Section 1.457-2(h)(4) & (5) of the Code of Federal Regulations.

As Plan Administrator or an authorized representative of the Plan, I hereby direct MassMutual to distribute from the Plan's group annuity contract or funding agreement as a distribution from the participant's account the amount necessary to pay the benefit in the manner indicated in this form in accordance with the terms of the Plan and participant election. I have verified the Participant Information and certify that it is true and accurate to the best of my knowledge. I acknowledge that this form does not constitute a delegation by the Plan Administrator of, and the Plan Administrator has not otherwise delegated, its income tax withholding duties and liabilities under §3405 of the Internal Revenue Code of 1986, as amended, to the Recordkeeper and that the Recordkeeper is acting as independent contractor of the Plan Administrator or Service Provider in making payments in accordance with these instructions. The Plan Administrator confirms that it is responsible for ensuring that state tax is withheld in accordance with current state law, and hereby directs MassMutual to withhold state tax, as applicable, in the manner provided on this form. The Plan Administrator confirms that it has reviewed its Plan document to confirm that the requested distribution is in fact permitted and assumes all responsibility for any consequences that result from such distribution, including any correction or disqualification that results from an impermissible distribution. I have reviewed the Plan document as well as the Plan's group annuity contract or funding agreement, and I, and not MassMutual, have made the determination that the participant is eligible under the terms of the Plan and contract to receive this distribution.  In the event that the distribution is at any time determined to have been impermissible under the terms of the Plan or contract and applicable qualified plan rules, I agree that MassMutual and its affiliates shall have no responsibility, financially or otherwise, for any associated correction, costs, taxes, fees, expenses, charges, fines, penalties, charges, excise taxes or any other related amount. I, as authorized Plan representative and fiduciary and not MassMutual, made any and all fiduciary determinations with respect to this hardship distribution.

The amount requested above will be withdrawn as a gross withdrawal **before** income tax withholding unless the Net Check Amount box is selected.

_David B. Palmer_ _____     _4-20-17_ _____
Authorized Plan Administrator's Signature                    Date

_DAVID B. PALMER_ _____
Authorized Plan Administrator's Name (please print)

Completed and signed forms in "good order" may be Faxed to 877-526-2531 or 800-678-8645 or mailed to:

Regular Mail Address:
MassMutual Retirement Services
P.O. Box 1583
Hartford, CT 06144-1583

Overnight Mail Address:
MassMutual Retirement Services
1 Griffin Road North
Windsor, CT 06095-1512

Note: Duplicate requests for a single distribution, such as a fax followed by a mailed original, may result in multiple distributions. MassMutual will not be responsible for any increase or decrease in account value based on investment performance or charges that arise from duplicate requests for a single distribution.

## Section J - Important Information

Good Order - "Good Order" means that all sections of the form are complete, the participant has provided their signature authorizing the transaction and the Plan Sponsor has provided their signature authorizing MassMutual to process the transaction requested on the form.

Federal and State Tax Withholding - The distributions you receive from the plan are subject to federal income tax withholding unless you elect not to have withholding apply. Withholding will only apply to the portion of your distribution or withdrawal that is included in your income subject to federal income tax. If you elect not to have withholding apply to your distribution, or if you do not have enough federal or state income tax withheld from your distribution, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rule if your withholding and estimated tax payments are not sufficient.

Stale Address - It is important that you notify us if you change your address. Going forward, your address may change in our records either at your or your employer's direction, or as a result of an address confirmation service provided under our agreement with your employer. Under this service, the addresses in our records are compared against and updated quarterly with addresses received from commercial address update services (e.g., the U.S. Postal Service). If your mail is returned to us or your employer tells us your address is incorrect, we are likely to suspend future mailings until a new address is obtained. Unless preempted by federal law, failure to give us a current address may also result in uncashed distributions from your participant account being considered abandoned property under state law, and remitted to the applicable state. To update your address, contact your Plan Administrator or, if permitted by your Plan, log in to our website at www.massmutual.com/govnp and select the "My Profile" tab at the top of the screen.

MassMutual Financial Group is a marketing name for Massachusetts Mutual Life Insurance Company (MassMutual) (of which Retirement Services is a division) and its affiliated companies and sales representatives.

# Unforeseeable Emergency Withdrawal Request - Part 2

**If required by your Plan Sponsor, the applicant must provide the following certification and documentation.**
**To be retained by the Plan Sponsor. Do not submit to MassMutual.**

## Section A - Certification of Unforeseeable Emergency Withdrawal

Check each box that applies.

I certify that the following information is true and accurate to the best of my knowledge. I acknowledge and agree that any false or misleading information submitted on this form may subject me to tax liability. I certify that the Unforeseeable Emergency Withdrawal request is the result of an unforeseeable emergency and a severe financial hardship resulting from:

- [x] Sudden and Unexpected Illness or Accident of the Participant, Spouse, Dependent, Beneficiary resulting in Non-elective medical/ dental expenses including non-refundable deductibles, as well as the cost of prescription drug medication not reimbursed or compensated by insurance or otherwise.
- [ ] Major property loss due to casualty or severe weather (IRS Rev. Ruling 2010-27)
- [ ] Funeral Expenses of a Spouse, Dependent or Beneficiary of the Participant  (IRS Rev. Ruling 2010-27)
- [ ] To prevent eviction or foreclosure from the Participant's primary residence.
- [ ] Other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant or the beneficiary. Please explain; if more space is needed attach a separate sheet and sign it and include any pertinent documentation; for example copies of non-reimbursable bills.

## Section B - Certification that the Hardship Cannot Be Relieved by an Alternative Method

Initial each of the following statements that are true:

*DWP* 1. The hardship cannot be relieved through liquidation of assets including assets of my spouse and minor children, if any, that are reasonably available to me (or the liquidation would itself cause a severe financial hardship).

*DWP* 2. The hardship cannot be relieved by cancelling my contributions to the Deferred Compensation Plan.

*DWP* 3. The hardship cannot be relieved by reimbursement or compensation by insurance or otherwise.

*DWP* 4. The hardship cannot be relieved by borrowing funds from commercial sources on reasonable commercial terms (or the borrowing would itself cause a severe financial hardship).

*DWP* 5. I applied for and have been denied a commercial loan to meet the financial need. If you have not applied for a commercial loan please explain:

*Have loans already, Dept to loan Ratio,*

## Section C - Description of Unforeseeable Emergency

Describe the financial hardship and why you consider it to be an unforeseeable emergency. Attach additional pages if needed.

*Medical Bills, Insurance already paid their share*
*have no means to pay other wise,*

## Section D - Contribution Status

Have you stopped your contributions to the Deferred Compensation Plan?

☐ Yes. If Yes, when? _____

☑ No. If No, explain why: _____

Current Contribution Rate $ _____ ☐ Weekly    ☐ Bi-weekly    ☐ Semi-monthly    ☐ Monthly

## Section E - Credit Applied For

Have you applied for a loan from your bank or credit union to meet your Unforeseeable Emergency need?

☑ No. If No, state reason: _Have loans aready out Credit to loan ratio cant get approved_

☐ Yes. If Yes: Where? _____    Amount Requested $ _____    ☐ Approved    ☐ Denied

If Denied, provide reason: _____

## Section F - Insurance

Will any portion of the expenses incurred as a result of the situation you claim as an Unforeseeable Emergency be covered by insurance?

☑ Yes. If Yes, $ _All_____

☐ No. If No, explain why: _____

## Fraud Warning Statements

The following states require insurance applicants to acknowledge a fraud warning statement specific to that state. Please refer to the specific fraud warning statement for your state as indicated below. If your state is not separately listed, please refer to the NAIC Model Fraud Statement below.

**NAIC Model Fraud Statement:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Alabama** - Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Arkansas** - Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Colorado** - It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Services.

**District of Columbia** - Warning: It is a crime to provide false or misleading information to an insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Florida** - Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Indiana** - A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Kentucky** - Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Louisiana** - Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Maine** - It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**Maryland** - Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Minnesota** - A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire** - Any person who, with a purpose to injure, defraud or deceive any insurance Company, files a statement of claim containing any false, incomplete or misleading Information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20. However, the lack of such a statement shall not constitute a defense against prosecution under RSA 638:20.

**New Jersey** - Any person who knowingly includes any false or misleading information on an application for an insurance policy, or files a statement of claim containing any false or misleading information, is subject to criminal and civil penalties.

**New York** - Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio** - Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement, is guilty of insurance fraud.

**Oklahoma** - Warning: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Pennsylvania** - Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Tennessee** - It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

FWS Rev 9.12



# Unforeseeable Emergency Withdrawal Request - 457(b) Plans

**Explanation of Unforeseeable Emergency**

The Treasury Regulations define "unforeseeable emergency" as "a severe financial hardship of the participant or beneficiary resulting from an illness or accident of the participant or beneficiary, the participant's or beneficiary's spouse, or the participant's or beneficiary's dependent" (as defined in Code section 152 and illustrated in Rev. Rul. 2010 -27); loss of the participant's or beneficiary's property due to casualty (including the need to rebuild a home following damage to a home not otherwise covered by homeowner's insurance, e.g., as a result of a natural disaster);or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant or beneficiary."

The circumstances that will constitute an Unforeseeable Emergency will depend upon the facts of each case. However, the Unforeseeable Emergency must be the result of:

1) Sudden and Unexpected Illness or Accident of the Participant, Spouse, Dependent, Beneficiary resulting in non-elective medical/ dental expenses including non-refundable deductibles, as well as the cost of prescription drug medication not reimbursed or compensated by insurance or otherwise
2) Major property loss due to casualty or severe weather
3) Imminent foreclosure or eviction from a primary residence,
4) Funeral expenses of the participant's spouse, beneficiary or dependent (as defined in IRC § 152 and illustrated in Rev. Rul. 2010 -27).
5) Other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the participant or beneficiary (as illustrated in Rev. Rul. 2010-27)

Circumstances that generally do not constitute a qualifying Unforeseeable Emergency include:

1) payment for an elective medical or dental procedure;
2) payment of educational expenses;
3) purchase of a home or automobile;
4) automobile or home repairs;
5) litigation expenses;
6) payment for marriage costs;
7) payment for divorce, divorce settlement or child support;
8) payment for costs related to bankruptcy (except when bankruptcy is a direct result of an unforeseeable illness or casualty);
9) payment of bills that the Participant knowingly incurred but cannot pay such as loans, large credit card debt, vehicle or house payments, even if needed to prevent repossession (except when payment cannot be made as a direct result of an unforeseeable illness or casualty);
10) refinancing debt;
11) covering a loss not covered by insurance because of failure to retain insurance coverage;
12) payment of income tax, property tax back taxes, or fines associated with back taxes.

The Unforeseeable Emergency does not create a severe financial hardship to the Participant to the extent that any such hardship is or may be relieved:
1) through reimbursement or compensation by insurance or otherwise;
2) by liquidation of the Participant's assets, to the extent the liquidation of such assets would not itself cause severe financial hardship;
3) by cessation of deferrals under the plan if required by the plan document;
4) if the Participant qualifies for a commercial bank loan, where required by the Plan; or
5) if the cessation of deferrals would alleviate the financial need.

In accordance with Treasury regulations, distributions because of an unforeseeable emergency must be limited to the amount reasonably necessary to satisfy the emergency need. However, if the above methods relieve only a portion of the financial need, then payment may be made up to the additional amount reasonably needed to satisfy the emergency need. The amount needed may include amounts necessary to pay federal, state, or local taxes or penalties reasonably anticipated and resulting from this distribution. You are liable for payment of income taxes on your withdrawal. You may also be subject to tax penalties under the estimated tax payment penalties rules if your payment of estimated tax and withholding are not adequate. If you have any questions concerning this matter, you are advised to consult with your tax advisor.

You may retain this page for your records.

**Definition of "Dependent"** as defined by Sections 152 (c) & 152(d) of the Internal Revenue Code shall mean with respect to a participant:

**A qualifying child:** An individual who

    (i) is a child of the participant (or a descendent of such a child), a brother, sister, half-brother, half-sister, stepbrother, or stepsister of the participant or any such descendent of any such relative;

    (ii) who has not attained age 19 as of the close of the calendar year in which the taxable year of the participant (taxpayer) begins or is a student who has not attained age 24 as of the close of such calendar year;

    (iii) who has lived with the participant for more than half of the year;

    (iv) who has not provided more than half of his or her own support; and

    (v) who is not filing a joint return for the year with a spouse (other than only for a claim for refund). The age requirement in (ii) shall be treated as met in the case of a dependent who is permanently and totally disabled at any time during such calendar year.

**A qualifying relative:** An individual

    (i) who is

    (A) a child, stepchild, foster child (or a descendant of a child), brother, sister, half-brother, half-sister, stepbrother, stepsister, father, mother (or ancestor of father or mother), stepfather, stepmother, son or daughter of a brother or sister of the participant, brother or sister of the father or mother of the taxpayer, son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, sister-in-law, or any of the above (without regard to whether each individual lived with the participant for more than half the year); or

    (B) an individual other than a relative mentioned in (A) above, who, for the taxable year of the participant, has the same principal place of the abode as the participant and is a member of the participant's household;

    (ii) with respect to whom the taxpayer provides over one-half of the individual's support for the calendar year taxable year beings; and

    (iii) who is not a qualifying child of such participant or of any other taxpayer for any taxable year beginning in the calendar year in which such taxable year begins.


**Rev. Rul.** 2010 -27

The ruling expands on prior regulatory guidance by providing additional examples of situations that may potentially qualify as unforeseeable emergencies along with an example of a situation that would not. In particular, it discusses three situations involving an eligible 457 plan participant who request an unforeseeable emergency distribution to pay:

    1. For the repair of his/her principal residence after major damage caused by a water leak

    2. Funeral expenses for an adult son who is not a dependent of the participant

    3. Credit card debt not incurred due to any extraordinary or unforeseeable circumstances beyond the participant's control.

The ruling generally provides that the distributions may be made under the facts of situations 1 and 2. Regarding situation 1, the IRS states that the distribution may be made because the need arises based on an event (i.e., water leak) that is beyond the control of the participant and is substantially similar to the need to pay for home damages caused by a natural disaster. This is true even though the participant's situation is not the same as any of the specific examples listed in the regulations. For situation 2, the IRS also states that the distribution can be made for basically the same reasons, i.e., even though the regulations explicitly allow only for the payment of "dependent" funeral costs, this need is unforeseeable and substantially similar to those described in the regulations. Under situation 3, the IRS's position is that the unforeseeable emergency distribution cannot be made since the need does not fit within any of the examples in the regulations or occur because of circumstances beyond the participant's control.


You may retain this page for your records.

## OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

**I DO SOLEMNLY SWEAR OR AFFIRM** that I will support, protect and defend the

Constitution and Government of the United States, and of the State of Florida; that I am

duly qualified to hold office under the Constitution of the State; and that I will well and

faithfully perform the duties of Deputy which I am about to enter in accordance

with the Law Enforcement Code of Ethics which shall govern all of my conduct.  So

help me, God.

_____

_____
Print Name                          ID #

_____
**WILLIAM WOODS, SHERIFF**

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this 3rd day of January, 2017 by
_____ who is personally known to me or who has produced
_____N/A_____ as identification and who did take an oath.

(SEAL)

_____
**NOTARY'S SIGNATURE**

LAURIE REICHARDT
Commission # FF 014526
Expires May 25, 2017
Bonded Thru Troy Fain Insurance 800-385-7019

# OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

**I DO SOLEMNLY SWEAR OR AFFIRM** that I will support, protect and defend the

Constitution and Government of the United States, and of the State of Florida; that I am

Duly qualified to hold office under the Constitution of the State; and that I will well and

Faithfully perform the duties of Corrections Officer  which I am about to enter in

accordance with the Law Enforcement Code of Ethics which shall govern all of my

conduct.  So help me, God.

_____
SIGNATURE

_____
PRINT  NAME                        ID#

_____
EMERY GAINEY, SHERIFF

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this by  __23rd__ **Day of May,**
**2016,** who is personally known to me or who has produced
_____N/A_____ as identification and who did take an oath.


(SEAL)

_____
NOTARY'S SIGNATURE

JAIME M. ROSS
Commission # FF 096568
Expires June 26, 2018
Bonded Thru Troy Fain Insurance 800-385-7019



# MARION COUNTY    SHERIFF'S OFFICE

TO: Training

FROM: Corporal Dellun C. Miller 4614

DATE: 8-27-2014

SUBJECT: Sergeant Exam



I am requesting to take the Sergeant exam schedule for October 2014.


Sincerely

Corporal Dellun C. Miller 4614



Cc: Sheriff Blair

Chief La Torre

Major Laxton

Captain Rolls

Captain Burnett

Human Resources

Training



## Chris Blair, Sheriff





**AMERICAN HERITAGE LIFE INSURANCE COMPANY**
HOME OFFICE:
**1776 AMERICAN HERITAGE LIFE DRIVE
JACKSONVILLE, FLORIDA 32224-6688
(904) 992-1776**

**A Stock Company**

---

## IMPORTANT NOTICE TO PERSONS ON MEDICARE
## THIS INSURANCE DUPLICATES SOME MEDICARE BENEFITS

### This is not Medicare Supplement Insurance

This insurance provides limited benefits, if you meet the policy conditions, for hospital or medical expenses that result from accidental injury. It does not pay your Medicare deductibles or coinsurance and is not a substitute for Medicare Supplement insurance.

**This insurance duplicates Medicare benefits when it pays:**

- Hospital or medical expenses up to the maximum stated in the policy

**Medicare generally pays for most or all of these expenses.**

**Medicare pays extensive benefits for medically necessary services regardless of the reason you need them. These include:**

- Hospitalization
- Physician services
- Outpatient prescription drugs if you are enrolled in Medicare Part D
- Other approved items and services

---

### Before You Buy This Insurance

✓ Check the coverage in **all** health insurance policies you already have.
✓ For more information about Medicare and Medicare Supplement insurance, review the *Guide to Health Insurance for People with Medicare*, available from the insurance company.
✓ For help in understanding your health insurance, contact your state insurance department or state health insurance assistance program (SHIIP).

AWD5262-1
(AWDPKG2)



**Allstate**
Benefits

## AMERICAN HERITAGE LIFE INSURANCE COMPANY (AHL)
### 1776 AMERICAN HERITAGE LIFE DRIVE
### JACKSONVILLE, FLORIDA 32224

### ENROLLMENT AND EVIDENCE OF INSURABILITY FORM

[X] New Certificate    [ ] Change/Increase Certificate # _____

| Remarks: | This box for AHL Home Office use only |
|---|---|
| | |

## GENERAL INFORMATION

Employee's Name (Last, First, M.I.)  *Miller Dellun C*    [X] M  [ ] F    Social Security Number ▮▮▮▮▮

Residence Address ▮▮▮▮▮   City ▮   State ▮   Zip ▮

Date of Birth ▮   Phone Number ▮   Email *DeMiller@Marion.SO.Com*

Employer/Association/Union **Marion County**   Date Hired *1-1-2005*   Occupation *Corrections Officer*   Plant Or Division *Corrections Division*

Primary Beneficiary's Full Name and Address ▮   City ▮   State ▮   Zip ▮   Relationship *wife*

Phone Number ▮   Date of Birth ▮   Social Security Number ▮

Contingent Beneficiary's Full Name and Address ▮   City ▮   State ▮   Zip ▮   Relationship *Daughter*

Phone Number ▮   Date of Birth ▮   Social Security Number ▮

## COMPLETE THIS SECTION FOR PERSONS TO BE INSURED

| Last Name | First Name | Relationship | Sex | Date of Birth | Social Security Number | Tobacco Use* |
|---|---|---|---|---|---|---|
| *Miller* | | Employee | M | ▮ | ▮ | ** [ ] Yes [X] No |
| *Miller* | | Spouse | F | ▮ | ▮ | ** [X] Yes [ ] No |
| | | *Daughter* | F | | | *Y* |
| | | *Daughter* | F | | | *N* |
| | | *Daughter* | F | | | *N* |

*Has anyone to be insured used tobacco in the last 12 months? (**If applying for Critical Illness.)

---

Are you changing any existing coverage due to a qualifying event such as marriage, birth, or adoption?
**Accident**    [ ] Yes [X] No    **Critical Illness**    [ ] Yes [X] No
**Cancer/Specified Disease**    [ ] Yes [X] No

If "Yes", please complete the following:  Qualifying Event _____

Date of Qualifying Event _____   Current Certificate Number(s) _____

Do you currently have any of the following individual coverages with American Heritage Life Insurance Company (AHL)?
Accident [ ] Yes [X] No    Cancer [ ] Yes [X] No    Critical Illness [ ] Yes [X] No

If you answered "Yes" to any of the coverages, please enter the Policy Number. _____

Do you wish to terminate this coverage? [ ] Yes [ ] No    If "Yes", please enter effective date of termination. _____

---

| Premium/Billing Mode | Account Number | Employee ID | Situs State |
|---|---|---|---|
| [X] Monthly [ ] Semi-monthly [✓] Bi-weekly [ ] Weekly [ ] Other | **LG429** | *4614* | **FL** |
| Date of First Deduction **09/01/2014**   Coverage Effective Date **10/01/2014** | | | |

# ENROLLMENT FORM

## SELECTION OF COVERAGE

(Answer Yes or No and complete for each coverage selected)

| **Accident** (GVAP1)<br>(On and Off the Job Accident)<br>☒ Yes ☐ No | Base Units<br>2 | ☐ Employee Only<br>☐ Employee+Spouse<br>☐ Employee+Child(ren)<br>☒ Family | Section 125<br>☒ Yes ☐ No | Total Mode Premium<br>$ 36.96 | **Home Office Use Only** |

| ☒ Benefit Enhancement Rider  Units  2 |

| **Cancer/Specified Disease** (GVCP2)<br>☐ Yes ☒ No | Plan<br>☐ Low<br>☐ High | ☐ Employee Only<br>☐ Family | Section 125<br>☐ Yes ☐ No | Total Mode Premium<br>$ _____ | **Home Office Use Only** |

| Benefits | Hospital | Radiation / Chemotherapy | Surgery Related | Misc. | ☒ Cancer Initial Diagnosis Option | ☒ Cancer Screening Option |
|---|---|---|---|---|---|---|
| **Units**<br>**Low Plan** | 2 | 2 | 1 | 1 | 5 | 3 |
| **High Plan** | 3 | 4 | 3 | 1 | 5 | 4 |

| **Critical Illness** (GVCIP1)<br>(My Lifeline)<br>☐ Yes ☒ No | ☐ Employee Only<br>☐ Employee+Spouse<br>☐ Employee+Child(ren)<br>☐ Family | Section 125<br>☐ Yes ☐ No | Total Mode Premium<br>$ _____ | **Home Office Use Only** |

| Basic Benefit Amount ☐ $10,000 - or - ☐ $20,000<br>If covered, Basic Benefit Amount for spouse or other dependents is 50% of the employee's. | ☒ Recurrence Option | ☒ Wellness Option Units  4 |

**REPRESENTATION.** I have read or had read to me the completed application and understand that any misstatement or misrepresentation in the application may result in loss of coverage. I represent that statements and answers contained in this application are representations, not warranties and are true, complete, and correctly recorded. **UNDERSTANDING.** I understand that: if premiums for the coverage(s) is (are) to be paid by payroll deductions, these deductions may start before the "effective date" of coverage(s) and that this does not change the effective date of coverage; and the "effective date" for health insurance coverages will be the date recorded on the policy/certificate/benefit statement, not the date the application is signed. If the coverage(s) is (are) not issued, American Heritage Life will refund any deductions it receives. I also understand that no agent (producer) has authority to waive any answer or otherwise modify this application, or to bind AHL in any way by making any promise or representation that is not set out in writing in this application. I understand that if I refuse any coverage for which I am eligible, satisfactory proof of insurability may be required, at my own expense, should I desire to apply for it at a later date. Any such application may be declined on the basis of such proof. **PREMIUM DEDUCTION AUTHORIZATION. I AUTHORIZE** my employer to deduct from my salary or wages, if applicable, the necessary premium for the coverages requested. **AUTHORIZATION TO OBTAIN AND DISCLOSE CERTAIN DATA (FOR CRITICAL ILLNESS).** I authorize any physician, medical practitioner, hospital, clinic or other medical facility, Pharmacy Benefit Managers, insurance company, the Medical Information Bureau (MIB, Inc.) or other organization, institution or person, that has records or knowledge of me or my health including my prescription medication history to give to AHL, its subsidiaries or its reinsurers any information. I also authorize AHL, or its reinsurers, to make a brief report of my health information to MIB, Inc. I understand that there is a possibility of redisclosure of any information disclosed pursuant to this authorization and that information, once disclosed, may no longer be protected by federal rules governing privacy and confidentiality. I acknowledge receipt of the Important Notice About Privacy and MIB Notice form. A copy of this authorization is as valid as the original. This authorization applies to any dependent on whom insurance is requested. This authorization is valid for 24 months from the date signed. I understand that I may revoke this authorization at any time by notifying AHL in writing of my desire to do so.

**FRAUD NOTICE: Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.**

Signed at:   City/State   _Ocala, Fla._                          Date Signed   _7/31/14_

Signature of Proposed Insured   _William C. Miller_

Signature of Owner, if other than Insured   N/A

Signature of Employee/Payor, if not Insured or Owner    N/A

**Agent's (Producer's) Statement.** I certify that to the best of my knowledge and belief the information on this form is complete, accurate and correctly recorded.

Signature of Soliciting Florida Agent (Producer) _____

Print Soliciting Agent (Producer) Name _____

Florida Agent License Number _____

To be completed by home office or agent (producer), prior to issue:

| Agent (Producer) Name | Agent (Producer) Number | National Agent (Producer) Number (NPN) | Percentage Credit |
|---|---|---|---|
| Servicing Agent (Producer): | 2YR30 | | 30        % |
| Soliciting Agent (Producer): | 2LG40 | | 70        % |
| | | | % |
| | | | % |
| | | | % |

**Important Notice About Privacy:**

In processing your application, an investigative report may be made.  Information is obtained through interviews with third parties, such as family members, business associates, financial sources, friends, neighbors, or others with whom you are acquainted.  You may request to be interviewed in connection with the report and may also receive a copy of the report upon request. This inquiry includes information as to your character, general information and personal characteristics. In certain limited circumstances, we are allowed by law to disclose necessary items of personal information to third parties without your specific authorization. You have the right to make a written request within a reasonable period of time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation.



**IN/MIB-3**                                                                                              **(2012)**

**MIB Notice:**

Information regarding your insurability is treated as confidential.  We or our reinsurers may, however, make a brief report to MIB, Inc. (MIB), a not-for profit membership organization of life insurance companies, which operates an information exchange for its members.  If you apply to another MIB member company for life or health insurance coverage or a claim for benefits is submitted to such a company, MIB, upon request, will supply such company with the information in its file.  Upon receipt of a request from you, MIB arranges disclosure of any information it may have in your file.  If you question the accuracy of information in the MIB file, contact MIB and seek a correction in accordance with the procedure set forth in the Federal Fair Credit Reporting Act.  The address of MIB's information office is 50 Braintree Hill Park, Suite 400, Braintree, MA 02184-8734, PH. #866-692-6901.  American Heritage Life or its reinsurers may release information in its file to other insurance companies that you apply to for life or health insurance, or submit a claim to for benefits.

**IN/MIB-3**                                                                                              **(2012)**



**AMERICAN HERITAGE LIFE INSURANCE COMPANY**
HOME OFFICE:
1776 AMERICAN HERITAGE LIFE DRIVE
JACKSONVILLE, FLORIDA 32224-6688
(904) 992-1776

A Stock Company

---

### IMPORTANT NOTICE TO PERSONS ON MEDICARE
### THIS INSURANCE DUPLICATES SOME MEDICARE BENEFITS

#### This is not Medicare Supplement Insurance

This insurance provides limited benefits, if you meet the policy conditions, for hospital or medical expenses only when you are treated for one of the specific diseases or health conditions listed in the policy. It does not pay your Medicare deductibles or coinsurance and is not a substitute for Medicare Supplement insurance.

**This insurance duplicates Medicare benefits when it pays:**

- hospital or medical expenses up to the maximum stated in the policy

**Medicare generally pays for most or all of these expenses.**

**Medicare pays extensive benefits for medically necessary services regardless of the reason you need them. These include:**

- hospitalization
- physician services
- hospice
- outpatient prescription drugs if you are enrolled in Medicare Part D
- other approved items and services

---

### Before You Buy This Insurance

✓ Check the coverage in **all** health insurance policies you already have.
✓ For more information about Medicare and Medicare Supplement insurance, review the *Guide to Health Insurance for People with Medicare*, available from the insurance company.
✓ For help in understanding your health insurance, contact your state insurance department or state health insurance assistance program (SHIIP).

AWD3431-1

## ENROLLMENT AND EVIDENCE OF INSURABILITY FORM

## EVIDENCE OF INSURABILITY

(Please complete each question applicable to coverages selected.)

Abbreviations:     EE - Employee     SP - Spouse     CH - Child(ren)     Y - Yes     N - No

| | Eligibility Question | EE | SP | CH |
|---|---|---|---|---|
| Cancer & Critical Illness | 1.   Is any person to be insured actively at work now, for wage or profit, and has he/she worked at least 20 hours each week performing all duties of his/her regular occupation at his/her regular place of employment for at least 3 months except for minor illness or injury of 1 week or less, or normal pregnancy? | ☐Y☐N | N/A | N/A |

**If any of the questions below are answered "yes", please list the required health history in Question 9 below.**

| | Underwriting Questions for Life and Late Enrollment | EE | SP | CH |
|---|---|---|---|---|
| Cancer & Critical Illness | 2.   Has any person to be insured, in the last 10 years, tested positive for exposure to the HIV infection or been diagnosed by a licensed health care practitioner as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) caused by the HIV infection or other sickness or condition derived from such infection? | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| Critical Illness | 3.   Has any person to be insured, in the last year, been diagnosed by a licensed health care practitioner with a systolic blood pressure reading higher than 150 more than once or a diastolic blood pressure reading higher than 100 more than once? | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| Cancer | 4a.  Has any person to be insured ever been diagnosed with or treated by a licensed health care practitioner for any type of cancer, other than basal cell carcinoma? | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| | 4b.  If the answer to 4a. is yes, has that person(s) been diagnosed with or treated by a licensed health care practitioner for Leukemia, Hodgkin's Disease, Lymphoma, or Cancer with any lymph node involvement or more than one metastasis? | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| | 4c.  If the answer to 4a. is yes, has that person(s), in the last 5 years, been diagnosed with or treated by a licensed health care practitioner for any other type of cancer (other than those listed in 4b. and/or basal cell carcinoma)? | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| Critical Illness | 5.   Has any person to be insured, in the last 2 years, had or been diagnosed with or treated by a licensed health care practitioner for any of the following?<br>• Central Nervous System Disease or disorder (to include Multiple Sclerosis or Muscular Dystrophy)  • Liver Disease<br>• Chronic Fatigue Syndrome  • Lung Disease<br>• Diabetes  • Lupus<br>• Emphysema  • Optic Neuritis<br>• Fibromyalgia  • Parkinson's Disease<br>• Heart Disease  • Paralysis<br>  • Rheumatoid Arthritis | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| Critical Illness | 6.   Has any person to be insured, in the last 5 years, had any medical or surgical procedures (including organ transplant) advised or recommended by a licensed health care practitioner, but not done at this time? | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| Cancer | 7.   Has any person to be insured ever been diagnosed with or treated by a licensed health care practitioner for any of the following?<br>• Addison's Disease  • Myasthenia Gravis<br>• Brucellosis  • Osteomyelitis<br>• Cerebrospinal meningitis  • Primary Biliary Cirrhosis<br>• Cystic Fibrosis  • Primary Sclerosing Cholangitis<br>• Encephalitis  • Reye's Syndrome<br>• Hansen's Disease  • Rocky Mountain Spotted Fever<br>• Hepatitis (Chronic B or Chronic C with liver failure or hepatoma)  • Sickle Cell Anemia<br>• Legionnaire's Disease  • Systemic Lupus Erythematosus<br>• Lou Gehrig's Disease (ALS)  • Tetanus<br>• Lyme Disease  • Tuberculosis<br>• Muscular Dystrophy  • Thallasemia<br>• Multiple Sclerosis  • Tularemia<br>  • Typhoid Fever | ☐Y☐N | ☐Y☐N | ☐Y☐N |
| Critical Illness | 8.   Provide Height and Weight of Proposed Insured:<br><br>Height:    Weight: | | | |
| Required Health History | 9.   Provide health history for any "Yes" answers to the Underwriting questions (except question 2). Include physician's (or other licensed health care practitioners) name, address and telephone number: | | | |



# MARION COUNTY          SHERIFF'S OFFICE

# <u>FAX COVER SHEET</u>

**DATE:**    August 1, 2014

**TO:**       **Allstate –Attention Tom Watson**
            **352-29\-6690**

**FROM:**  **MARION COUNTY SHERIFF'S**
            **OFFICE**

**RE:**       **Allstate Paperwork for Dellun**
            **Miller**


**NUMBER OF PAGES:  1-8**

Chris Blair, Sheriff

P.O. Box 1987 • Ocala, FL 34478-1987 • Main Office: (352) 732-8181 • Civil: (352) 620-3606 • Emergency Management: (352) 369-8100 • Jail: (352) 351-8077

TRANSMISSION VERIFICATION REPORT

```
                                    TIME : 08/01/2014 16:09
                                    NAME :
                                    FAX  :
                                    TEL  :
                                    SER.# : U63274H3J469261
```

```
        DATE,TIME              08/01  16:07
        FAX NO./NAME           2916690
        DURATION               00:01:45
        PAGE(S)                08
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

**Capital One**

# URGENT – Please Reply

| To: | MARION CO SHERIFF, Attn: Kim | From: | Capital One Auto Finance |
|---|---|---|---|
| Fax: | 352-369-6773 | Phone: | 1-866-311-1280 |
| Phone: | 352-732-8181 | Date: | 7/5/2013 |

| Employment Verification for: | | Please complete and return to: | |
|---|---|---|---|
| Employee's Name: | Dellun C Miller | Fax: | 1-888-722-5186 |
| Last 4 of SSN: | xxx-xx | Reference # | 91951431 |

*** Please complete this form in its entirety. ***

| Position/Job Title: *Corrections Officer* | Hire Date: *1-1-2005* | End Date: |
|---|---|---|

**Employment Status** (check all that apply):
- [X] Full time
- [ ] Part time
- [ ] Seasonal
- [ ] Temporary

Seasonal or Temporary Assignment:

Start Date: _____
End Date: _____

**Pay Change/Leave of Absences**
Have any of the following scenarios occurred this year?
- [X] Raise
- [ ] Unpaid Leave
- [ ] Temporary to Permanent
- [ ] Part Time to Full Time
- [ ] Payroll started over
- [ ] None

Date(s) of occurrence:
Start Date: _____
End Date: _____

**Pay Stub Type:**
- [ ] Hand written
- [X] Computer Generated

**Employment Type:**
- [X] W2 Employee (Taxes Withheld)
- [ ] 1099 Contract Employee

**Pay Frequency:**
- [ ] Weekly
- [X] Bi-weekly
- [ ] Semi-monthly
- [ ] Monthly

Number of months paid, if less than 12 months: _____

**Pay Amount:**
- [X] Hourly Rate: $ *20.19*
- [ ] Monthly Salary: $ _____
- [X] Annual Salary: $ *41,988.20*
- [ ] Commission: $ _____
- [ ] Cash: $ _____

Number of hours worked on average per week: *40*

YTD Gross Income Amount: $ *25,741.55* as of Pay Period End Date: *7-5* (2013)

Total YTD Gross 2012 $ *52,670.70*

**Seasonal Employees Only:** Last two years YTD gross income at end of year:

Year: _____
Gross: $ _____

Year: _____
Gross: $ _____

Company Name: *Marion County Sheriffs Office*

Your Name and Position: *Dawn AM eith H.R. Manager*

Please call me if you have any questions at the number above. Thank you in advance for your assistance.

Customer _____ Co-Cu

Capital One Confidential -
THE INFORMATION CONTAINED IN THE FACSIMILE MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY ME AT THE PHONE NUMBER LISTED ABOVE AND DESTORY THIS ORIGINAL MESSAGE.

Boardsrv4        7/5/2013 9:15:10 AM    PAGE    1/001    Fax Server

**Capital**One

## URGENT – Please Reply

| To: | MARION CO SHERIFF, Attn: Kim | From: | Capital One Auto Finance |
|---|---|---|---|
| Fax: | 352-369-6773 | Phone: | 1-866-311-1280 |
| Phone: | 352-732-8181 | Date: | 7/5/2013 |

| Employment Verification for: | | Please complete and return to: | |
|---|---|---|---|
| Employee's Name: | Dellon C Miller | Fax: | 1-888-722-5186 |
| Last 4 of SSN: | xxx-xx- | Reference # | 91951431 |

** Please complete this form in its entirety. **

| Position/Job Title: Corrections Officer | Hire Date: 1-1-2005 | End Date: |
|---|---|---|

| **Employment Status** (check all that apply): | **Pay Change/Leave of Absences** Have any of the following scenarios occurred this year? | **Pay Stub Type:** |
|---|---|---|
| ☒ Full time | ☒ Raise | ☐ Hand written |
| ☐ Part time | ☐ Unpaid Leave | ☒ Computer Generated |
| ☐ Seasonal | ☐ Temporary to Permanent | |
| ☐ Temporary | ☐ Part Time to Full Time | **Employment Type:** |
| | ☐ Payroll started over | ☒ W2 Employee (Taxes Withheld) |
| Seasonal or Temporary Assignment: | ☐ None | ☐ 1099 Contract Employee |
| Start Date: _____ | Date(s) of occurrence: | |
| End Date: _____ | Start Date: __ | |
| | End Date: __ | |

| **Pay Frequency:** | **Pay Amount:** | **Seasonal Employees Only:** Last two years YTD gross income at end of year: |
|---|---|---|
| ☐ Weekly | ☒ Hourly Rate: $ 20.19 | |
| ☒ Bi-weekly | ☐ Monthly Salary: $ | Year: _____ |
| ☐ Semi-monthly | ☒ Annual Salary: $ 41,982.20 | Gross: $ _____ |
| ☐ Monthly | ☐ Commission: $ _____ | |
| | ☐ Cash: $ _____ | |
| Number of months paid, if less than 12 months: _____ | Number of hours worked on average per week: 40 | Year: _____ |
| | | Gross: $ _____ |
| | YTD Gross Income Amount: $ 25,746.55 as of Pay Period End Date: 7-5 (2013) | |
| | Total YTD Gross 2012 $ | |

Company Name: Marion County Sheriffs Office

Your Name and Position: Dawn Hesketh H.R. Manager

Please call me if you have any questions at the number above. Thank you in advance for your assistance.

Custodian _____ Co-C

Capital One Confidential -
THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY ME AT THE PHONE NUMBER LISTED ABOVE AND DESTROY THIS ORIGINAL MESSAGE

---

Message Confirmation Report

| | | |
|---|---|---|
| Results | : | [O.K] |
| Mode | : | STD ECM |
| Elapsed Time | : | 00'13" |
| Start Time | : | JUL-08-2013 09:29AM MON |
| Page | : | 1 |
| Name/Number | : | 918887225186 |

| Name | : | HR |
| Fax Number | : | 3523696773 |

JUL-08-2013 09:29 AM MON



# Message Confirmation Report

JUL-08-2013 09:32 AM MON

Fax Number : 3523696773
Name : HR

Name/Number : 918887225186
Page : 1
Start Time : JUL-08-2013 09:31AM MON
Elapsed Time : 00'12"
Mode : STD ECM
Results : [O.K]

---

DOarasrv4 7/5/2013 9:15:10 AM PAGE 1/001 Fax Server

Capital One

## URGENT – Please Reply

| | | | |
|---|---|---|---|
| To: | MARION CO SHERIFF, Attn: Kim | From: | Capital One Auto Finance |
| Fax: | 352-369-6773 | Phone: | 1-866-311-1280 |
| Phone: | 352-732-8181 | Date: | 7/5/2013 |
| Employment Verification for: | | Please complete and return to: | |
| Employee's Name: | Dellun C Miller | Fax: | 1-888-722-5186 |
| Last 4 of SSN: | xxx-xx[redacted] | Reference # | 91951431 |

** Please complete this form in its entirety. **

| | | |
|---|---|---|
| **Position/Job Title:** Corrections Officer | **Hire Date:** 1-1-2005 | **End Date:** |
| **Employment Status (check all that apply):** ☒ Full time ☐ Part time ☐ Seasonal ☐ Temporary Seasonal or Temporary Assignment: Start Date: End Date: | **Pay Change/Leave of Absences** Have any of the following scenarios occurred this year? ☒ Raise ☐ Unpaid Leave ☐ Temporary to Permanent ☐ Part Time to Full Time ☐ Payroll started over ☐ None Date(s) of occurrence: Start Date: End Date: | **Pay Stub Type:** ☐ Hand written ☒ Computer Generated **Employment Type:** ☒ W2 Employee (Taxes Withheld) ☐ 1099 Contract Employee |
| **Pay Frequency:** ☐ Weekly ☒ Bi-weekly ☐ Semi-monthly ☐ Monthly Number of months paid, if less than 12 months: | **Pay Amount:** ☒ Hourly Rate: $ 20.19 ☐ Monthly Salary: $ ☒ Annual Salary: $ 41,988.20 ☐ Commission: $ ☐ Cash: $ Number of hours worked on average per week: 40 **YTD Gross Income Amount:** $ 25,741.55 as of Pay Period End Date: 7-5 (2013) Total YTD Gross 2012 $ 52,670.70 | **Seasonal Employees Only:** Last two years YTD gross income at end of year: Year: Gross: $ Year: Gross: $ |

Company Name: Marion County Sheriff's Office

Your Name and Position: Dawn Haseth H.R. Manager

Please call me if you have any questions at the number above. Thank you in advance for your assistance.

Customer Co-Ci

Capital One Confidential -

THE INFORMATION CONTAINED IN THE FACSIMILE MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY ME AT THE PHONE NUMBER LISTED ABOVE AND DESTROY THIS ORIGINAL MESSAGE.

# *SHERIFF*

**Marion County**

## *CODE OF ETHICS*

As a Deputy Sheriff, Corrections Officer, or employee of the Marion County Sheriff's Office, I recognize that I am given a special trust and confidence by the citizens I serve.  This trust and confidence is my bond to ensure that I shall behave and act according to the highest personal and professional principles.   In furtherance of this pledge, I will abide by the following Code of Ethics.

I shall, in the performance of my duties, enforce and administer the law according to the principles of the United States Constitution, the Florida Constitution, and the applicable laws of the State of Florida and County of Marion, so that equal protection of the law and due process are guaranteed to everyone.  To that end, I shall not permit personal opinions, bias, prejudice, or consideration of the status of others to alter or lessen these principles.

I fully recognize my fundamental duty to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all people to liberty, equality and justice.

I shall abide by the core values and policies regarding the standards of behavior of the Marion County Sheriff's Office, consistent with the responsibilities, duties, obligations and functions of my appointment or my employment.

I shall not engage in nor condone brutal, cruel, or inhumane treatment of others, including inmates in my care and custody, nor shall I employ unnecessary force in the performance of my duties.

I shall adhere at all times to the standards and principles of honesty and integrity, and I shall keep my private life unsullied as an example to all.

I shall not use the Office of Sheriff nor my employment for personal gain or self-aggrandizement, and in all things well and truly behave myself according to the best of my skill and power.

I accept and will adhere to this Code of Ethics.  In doing so, I also accept responsibility for encouraging others under my influence to abide by this Code.

_____    _____
**SIGNATURE**                                          1-11-2013
                                                              **DATE**

_____
Dellon C Miller
**PRINT NAME**

# OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

**I DO SOLEMNLY SWEAR OR AFFIRM** that I will support, protect and defend the

Constitution and Government of the United States, and of the State of Florida; that I am

Duly qualified to hold office under the Constitution of the State; and that I will well and

Faithfully perform the duties of  Corrections Officer  which I am about to enter in

accordance with the Law Enforcement Code of Ethics which shall govern all of my

conduct.  So help me, God.

_____
**SIGNATURE**

_Dellun C Miller 4614_
**PRINT  NAME              ID#**

_____
**CHRIS BLAIR, SHERIFF**

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this _Jan. 8, 2013_
by _Dellun Miller_, who is personally known to me or who has
produced _____N/A_____ as identification and who did take an
oath.



KIMBERLY A. AYERS
Commission # EE 088489
Expires June 6, 2015
Bonded Thru Troy Fain Insurance 800-385-7019

_____
**NOTARY'S SIGNATURE**

# EMPLOYEE ADDRESS CHANGE

NAME: _MILLER, DELLUN C    SS# 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
POSITION:    ___CORRECTIONS    ID# 4614
PHYSICAL ADDRESS: ██████████████████████
MAILING ADDRESS: ██████████████████████
PHONE NUMBER: ████████████████

PERSONS LIVING AT RESIDENCE:              RELATIONSHIP:

████████████████        WIFE
████████████████        DAUGHTER
████████████████        DAUGHTER
████████████████        DAUGHTER

_____        _____

_____        _____

**PLEASE PROVIDE NAME, ADDRESS & PHONE NUMBER OF SPOUSE, FAMILY MEMBER TO BE
CONTACTED IN CASE OF EMERGENCY. (If taking out spouse, please advise)**
## PLEASE ADD BOTH CONTACTS

### CONTACT #1

NAME: ████████████        RELATIONSHIP__WIFE

ADDRESS: ████████████████████████
_____

HOME PHONE: ████████_____        BUSINESS PHONE: 1-353-732-1700
EXT 2207    _____

### CONTACT #2

NAME: _CHARLES M. MILLER        RELATIONSHIP  FATHER
ADDRESS: _____

HOME PHONE:__1-352-797-4864_____        BUSINESS PHONE: 1-352-596-6555
    _____

**CC: HUMAN RESOURCES**            **DATE: _11-01-2011**

SAFE AND SECURE DOCUMENT.  WILL GO IN YOUR PERSONNEL FILE

Personnel Use Only:
AFW _KM_____  PERSONNEL_____  BC/BS_____
    Date: _____

# SHERIFF
## Marion County

January 9, 2012

To Whom It May Concern:

This letter is to verify that Dellun Miller is employed with the Marion County Sheriff's Office.  He was hired on January 1, 2005 and is a Corrections Officer. We have his background, fingerprints and drug screen on file per F.S.S. 943.13 Statute.

If you need any additional information, please contact Human Resources at (352) 368-3526.

Sincerely,

**ED DEAN, SHERIFF**

By: _Harris Bombardier for_
David B. Palmer
Human Resources Director

P/kb



# SHERIFF
## Marion County

## KEY ISSUANCE FORM

**Name:** *Dellun C Miller*

**ID#:** *4614*

### Receiving a Key:

| Gate Key Number: | Date Received: | Issuer Signature: |
|---|---|---|
| Swipe Key Number: 3565 | Date Received: 8/26/11 | Issuer Signature: *JB* |

### Returning a Key:

| Key Number: | Date Returned: | Received By: |
|---|---|---|
| Swipe Key Number: 1011 | Date Returned: 8/26/11 | Received By: *JB* |

*Broken*

**I certify that I have received the above key and I am solely responsible for it.**

Signature: *Dellan C Miller*          Date: *8/26/11*



# SHERIFF
## Marion County

To:      Sheriff, Ed Dean

From:    Corporal, Dellun C. Miller. ID# 4614

Date:    7-21-2011

Subject: Sergeant Exam [Corrections]

Sir, I am requesting to be placed on the Sergeant Exam list. I meet the qualifications for Sergeant as per Operation Directives 3430.00. "I look forward to taking the test and appreciate the opportunity to advance my career".

Sincerely:

Cc:
Sheriff Dean
Chief Wilder
Major Vowinkel
Captain Bowen
Captain Burnett
Sergeant Starling
Human Resources
Training

P.O. Box 1987, Ocala, FL 34478
Ph. (352) 732-8181
Civil (352) 620-3606 • Emergency Management (352) 369-8100 • Jail (352) 351-8077

"PUTTING CITIZENS FIRST"

Marion County Sheriff's Office

## Authorization Agreement for Direct Deposit of Payroll

Employee: _Dellun C Miller_          Employee ID#: _4614_

☐ **START** depositing my net earnings on all payrolls into my checking or savings account(s). (See below)

☐ **STOP** depositing my net earnings on all payrolls into my checking or savings account(s).

☒ **CHANGE** my financial institution(s), (account number(s)) or amount, as shown below.

### Bank Information

Name of Financial Institution: _Florida Credit Union_

Bank Routing Number (ABA): _____      Account Number: ██████████

Type of Account:      Checking ☒      Savings ☐

Amount:      specific amount ☐      entire check ☒      remaining balance ☐
             $_____

---

Name of Financial Institution: _____

Bank Routing Number (ABA): _____      Account Number: _____

Type of Account:      Checking ☐      Savings ☐

Amount:      specific amount ☐      entire check ☐      remaining balance ☐
             $_____

***Please attach a deposit slip or a voided check.**

I certify that I am the owner, or joint owner, of the account(s) designated and am entitled to provide this authorization. I authorize the Marion County Sheriff's Office (MCSO) to initiate electronic credit entries, and if necessary, debit entries and adjustments for any credit entries in error to my account(s) listed above. This authorization will remain in effect until MCSO receives written notice of direct deposit termination from me, in such time and manner as to afford reasonable opportunity for MCSO and the Financial Institution(s) to act on it. I understand that the very earliest I can expect my account(s) to be credited will be on payday. Also, if I change or terminate my account(s) I must notify the Fiscal Division at least four days before the scheduled payroll date. If this information is not communicated in a timely manner, MCSO will make reasonable effort to redirect my payroll but cannot guarantee payment on the effective date.

Signature _Dellun C Miller_          Date _2/4/11_

Revised: 05/24/05          G:\Fiscal\Forms & Lists\Direct Deposit Authorization Form.doc

OMB No. 1115-0136

**U.S. Department of Justice**
Immigration and Naturalization Service

**Employment Eligibility Verification**

Please read instructions carefully before completing this form. The instructions must be available during completion of this form. **ANTI-DISCRIMINATION NOTICE:** It is illegal to discriminate against work eligible individuals. Employers CANNOT specify which document(s) they will accept from an employee. The refusal to hire an individual because of a future expiration date may also constitute illegal discrimination.

**Section 1. Employee Information and Verification.** To be completed and signed by employee at the time employment begins.

| Print Name: Last | First | Middle Initial | Maiden Name |
|---|---|---|---|
| Miller | Dellan | C | |

| Address (Street Name and Number) | Apt. # | Date of Birth (month/day/year) |
|---|---|---|
| ███████████████████ | | ███████ |
| | | Social Security # ███████ |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

I attest, under penalty of perjury, that I am (check one of the following):
- [x] A citizen or national of the United States
- [ ] A Lawful Permanent Resident (Alien # A_____)
- [ ] An alien authorized to work until ___/___/___
  (Alien # or Admission #)

| Employee's Signature | Date (month/day/year) |
|---|---|
| Dellan C. Miller | 1-3-05 |

**Preparer and/or Translator Certification.** *(To be completed and signed if Section 1 is prepared by a person other than the employee.)* I attest, under penalty of perjury, that I have assisted in the completion of this form and that to the best of my knowledge the information is true and correct.

| Preparer's/Translator's Signature | Print Name |
|---|---|
| | |

| Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|
| | |

**Section 2. Employer Review and Verification.** To be completed and signed by employer. Examine one document from List A OR examine one document from List B and one from List C, as listed on the reverse of this form, and record the title, number and expiration date, if any, of the document(s)

| List A | OR | List B | AND | List C |
|---|---|---|---|---|
| | | SS card | | DL |

| Document title: _____ | | | | |
| Issuing authority: _____ | | | | |
| Document #: _____ | | | | |
| Expiration Date (if any): ___/___/___ | | ___/___/___ | | ___/___/___ |
| Document #: _____ | | | | |
| Expiration Date (if any): ___/___/___ | | | | |

**CERTIFICATION** - I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the employee began employment on (month/day/year) ___/___/___ and that to the best of my knowledge the employee is eligible to work in the United States. (State employment agencies may omit the date the employee began employment.)

| Signature of Employer or Authorized Representative | Print Name | Title |
|---|---|---|
| Tonya M Pogue | Tonya m Pogue | Benefits Specialist |

| Business or Organization Name | Address (Street Name and Number, City, State, Zip Code) | Date (month/day/year) |
|---|---|---|
| MARION COUNTY SHERIFF'S OFFICE | P. O. BOX 1987   OCALA, FLORIDA  34478 | 1/3/05 |

**Section 3. Updating and Reverification.** To be completed and signed by employer.

| A. New Name (if applicable) | B. Date of rehire (month/day/year) (if applicable) |
|---|---|
| | |

C. If employee's previous grant of work authorization has expired, provide the information below for the document that establishes current employment eligibility.

Document Title: _____    Document #: _____    Expiration Date (if any): ___/___/___

I attest, under penalty of perjury, that to the best of my knowledge, this employee is eligible to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative | Date (month/day/year) |
|---|---|
| | |

Form I-9 (Rev. 11-21-91)N Page 2



# SHERIFF
## Marion County

December 17, 2010

RE: Dellun Miller

This letter is to verify that Dellun Miller is employed with the Marion County Sheriff's Office, as a Corrections Officer on January 1, 2005. As part of our hiring process, Mr. Miller was administered a thorough background investigation which showed no criminal history and included a drug screen. His fingerprints are on file in this office. They were last taken on July 24, 2007 and the results were negative.

If you need any additional information, please contact the Human Resources Division at (352) 368-3523.

SINCERELY,

ED DEAN, SHERIFF

BY *Barbara Crumley*
Barbara Crumley
Benefits Specialist

B/B

Personnel file

_____02/26/10_____(date)

PLEASE CHANGE MY (HARTFORD) / NATIONWIDE
DEDUCTON FROM ___$125.00___ TO
___$25.00___ FOR THE NEXT PAYROLL.

_____
          Dellun Miller

ID # _4614_

NJ
02/26



# *SHERiFF*

## **Marion County**

*As you know, in the FY 09/10 final budget hearing, the Marion County Board of County Commissioners approved our proposal to allow all employees the opportunity to be paid for up to $520 of their comp, admin or vacation time on their anniversary date. Employees have until the end of September 2010 to decide if they want to exercise this <u>ONE TIME</u> cash-out opportunity. Pay-outs will be made per the attached schedule, by check, on a monthly basis, upon receipt of the form below.*

*If it is your intention to take advantage of this opportunity, please fill out the bottom section of this form accordingly, sign and return the form to the Fiscal Division.*

*If you do not wish to receive pay for your eligible time, it is still required that you indicate where applicable, sign and return the form to the Fiscal Division.*

I wish to be paid for <u>520.00</u> worth of accrued <u>Comp</u> time.
            (up to $520)                (admin, comp, vacation)

\_\_\_\_ I decline the opportunity to receive pay for any eligible accrued leave time.

_Dallen Miller_ 4614                      _Dallen C Miller_
Print Name and ID #                          Signature

### ACCRUED TIME PAYOUT SCHEDULE FY 2009-10

01/01/05
18.94 hrs
Pay 27.4 hrs
comp ✓

| Evaluation Month | Check Date |
|---|---|
| October-09 | 11/06/09 |
| November-09 | 12/04/09 |
| December-09 | 12/31/09 |
| January-10 | 01/29/10 |
| February-10 | 02/26/10 |
| March-10 | 03/26/10 |
| April-10 | 05/07/10 |
| May-10 | 06/04/10 |
| June-10 | 07/02/10 |
| July-10 | 07/30/10 |
| August-10 | 08/27/10 |
| September-10 | 09/24/10 |

DS
01/25

## OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

**I DO SOLEMNLY SWEAR OR AFFIRM** that I will support, protect and defend the

Constitution and Government of the United States, and of the State of Florida; that I am

duly qualified to hold office under the Constitution of the State; and that I will well and

faithfully perform the duties of Deputy Sheriff/Corrections Officer which I am about to

enter in accordance with the Law Enforcement Code of Ethics which shall govern all of

my conduct.  So help me, God.

_____
**SIGNATURE**

_____
**PRINT  NAME**                          **ID#**

_____
**ED DEAN, SHERIFF**

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this ____ of **JANUARY** 2009, by
_____ who is personally known to me, or who has produced
_____ as identification and who did take an oath.

(SEAL)

_____
**NOTARY'S SIGNATURE**


KIMBERLY F. NEALE
Commission DD 824601
Expires December 13, 2012
Bonded Thru Troy Fain Insurance 800-385-7015



# *SHERIFF*

## Marion County

RECEIVED
FEB 1 6 2009
BY:

To Whom It May Concern: Please except this letter as my request for the position as the Transportation Officer.  I am a highly motivated and dedicated officer whom which I believe I would be a good candidate to assume this position.  Thank you for your consideration for this position.

Sincerely
CPL. Dellun C. Miller 4614

Sheriff Dean
Chief  Wilder
Major  Laxton
Capt.  Bowen
Capt.  Walters
Capt.  Favors
Sgt.  Jones
Sgt.  Kelly

P.O. Box 1987, Ocala, FL 34478
Ph. (352) 732-8181
Civil (352) 620-3606  •  Emergency Management (352) 622-3205  •  Jail (352) 351-8077

"PUTTING CITIZENS FIRST"

**Crumley, Barbara**

**From:** Miller,Dellun
**Sent:** Saturday, February 14, 2009 4:58 AM
**To:** Human Resources
**Subject:** Doc1  I was out of county on security detail when posted



Doc1.doc (1
MB)



# *SHERIFF*

## Marion County

DEC - 9 2008

TO:        SHERIFF ED DEAN

FROM:       Master Corrections Officer Dellun Miller #4614

DATE:      December 1, 2008

SUBJECT:   LAWN CREW OFFICER

SIR, I AM WRITING THIS LETTER TO SUBMIT MY INTEREST IN THE POSITION AS
LAWN CREW OFFICER.  I AM AN EXPERIENCED OFFICER WITH THE
MOTIVATION AND DRIVE TO OVERSEE ANY AND ALL JOBS AS INSTRUCTED. I
HAVE EXPERIENCE WITH SMALL ENGINES AND EQUIPMENT AS I WAS A
MECHANIC PRIOR TO BECOMING A CORRECTIONS OFFICER. I HAVE A TOTAL
OF 9 YEARS IN CORRECTIONS AND HAVE OVERSEEN MANY DETAILS BEFORE.

THANK YOU FOR YOUR TIME AND ANY CONSIDERATION IN THIS POSITION.


                                SINCERELY



                                CPL. DELLUN MILLER 4614

Cc:    Chief Bigelow
       Chief Wilder
       Major Laxton
       Captain Bowen
       Captain Walters
       Sergeant Piotti
       Sergeant Chisholm
       Human Resources
       File

P.O. Box 1987, Ocala, FL 34478
Ph. (352) 732-8181
Civil (352) 620-3606 • Emergency Management (352) 622-3205 • Jail (352) 351-8077

"PUTTING CITIZENS FIRST"



# SHERIrF

## Marion County

*As you know, in the FY08/09 final budget hearing, the Marion County Board of County Commissioners approved our proposal to allow all employees the opportunity to be paid for up to $520 of their comp, admin or vacation time on their anniversary date. Employees have until the end of September 2009 to decide if they want to exercise this ONE TIME cash-out opportunity. Pay-outs will be made per the attached schedule, by check, on a monthly basis, upon receipt of the form below.*

*If it is your intention to take advantage of this opportunity, please fill out the bottom section of this form accordingly, sign and return the form to the Fiscal Division.*

*If you do not wish to receive pay for your eligible time, it is still required that you indicate where applicable, sign and return the form to the Fiscal Division.*

I wish to be paid for _*$520.*_ worth of accrued ____*Comp.*____ time.
       (up to $520)                    (admin, comp, vacation)


____ I decline the opportunity to receive pay for any eligible accrued leave time.


_William C Miller 4614_          _William C Miller_ 4614
Print Name and ID #                 Signature

## ACCRUED TIME PAYOUT SCHEDULE FY 2008-09

| Evaluation Month | Check Date |
|---|---|
| October-08 | 11/07/08 |
| November-08 | 12/05/08 |
| December-08 | 01/02/09 |
| January-09 | 01/30/09 |
| February-09 | 02/27/09 |
| March-09 | 03/27/09 |
| April-09 | 05/08/09 |
| May-09 | 06/05/09 |
| June-09 | 07/03/09 |
| July-09 | 07/31/09 |
| August-09 | 08/28/09 |
| September-09 | 10/02/09 |

01/01/09
18.70hu
use 27.8hrs
comp

DS



# SHERIFF
## Marion County

## <u>KEY CARD ISSUANCE FORM</u>

**Name:** Miller, Dellun

**ID#:** 4614

### <u>Receiving a Key:</u>

| Key Number: | Date Received: | Issuer Signature: |
|---|---|---|
| 1011 | 7/24/02 | *[signature]* |

### <u>Returning a Key:</u>

| Key Number: | Date Returned: | Received By: |
|---|---|---|
| | | |

**I certify** that I have received the above key card and I am solely responsible for it.

**Signature:** *Dellun C Miller*

**Date:** 7/24/07

## OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

**I DO SOLEMNLY SWEAR OR AFFIRM** that I will support, protect and defend the

Constitution and Government of the United States, and of the State of Florida; that I am

duly qualified to hold office under the Constitution of the State; and that I will well and

faithfully perform the duties of Deputy Sheriff/Corrections Officer which I am about to

enter in accordance with the Law Enforcement Code of Ethics which shall govern all of

my conduct. So help me, God.

_____
**SIGNATURE**

_____
**PRINT NAME**        **ID#**

_____
**ED DEAN, SHERIFF**

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this 4th day of January, 2005 by

Dellun Miller who is personally known to me or who has produced

_____N/A_____ as identification and who did take an oath.

(SEAL)

Judy M. Collier
MY COMMISSION # DD093596 EXPIRES
April 26, 2006
BONDED THRU TROY FAIN INSURANCE, INC.

_____
**NOTARY'S SIGNATURE**

## MARION COUNTY SHERIFF'S OFFICE
## CODE OF ETHICS

As a Deputy Sheriff, Corrections Officer, or employee of the Marion County Sheriff's Office, I recognize that I am given a special trust and confidence by the citizens I serve. This trust and confidence is my bond to ensure that I shall behave and act according to the highest personal and professional principles. In furtherance of this pledge, I will abide by the following Code of Ethics.

I shall, in the performance of my duties, enforce and administer the law according to the principles of the United States Constitution, the Florida Constitution, and the applicable laws of the State of Florida and County of Marion, so that equal protection of the law and due process are guaranteed to everyone. To that end, I shall not permit personal opinions, bias, prejudice, or consideration of the status of others to alter or lessen these principles.

I fully recognize my fundamental duty to serve mankind; to safeguard lives and property, to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all people to liberty, equality and justice.

I shall abide by the standards of behavior set by the Marion County Sheriff's Office, consistent with the responsibilities, duties, obligations and functions of my appointment or my employment.

I shall not engage in nor condone brutal, cruel, or inhumane treatment of others, including inmates in my care and custody, nor shall I employ unnecessary force in the performance of my duties.

I shall adhere at all times to the standards and principles of honesty and integrity, and I shall keep my private life unsullied as an example to all.

I shall not use the Office of Sheriff nor my employment for personal gain or self-aggrandizement, and in all things well and truly behave myself according to the best of my skill and power.

I accept and will adhere to this Code of Ethics. In doing so, I also accept responsibility for encouraging others under my influence to abide by this Code.

_____      _____
Signature                                                      Date

_____
Print Name

## MARION COUNTY SHERIFF'S OFFICE
## CODE OF ETHICS

As a Deputy Sheriff, Corrections Officer, or employee of the Marion County Sheriff's Office, I recognize that I am given a special trust and confidence by the citizens I serve.  This trust and confidence is my bond to ensure that I shall behave and act according to the highest personal and professional principles.  In furtherance of this pledge, I will abide by the following Code of Ethics.

I shall, in the performance of my duties, enforce and administer the law according to the principles of the United States Constitution, the Florida Constitution, and the applicable laws of the State of Florida and County of Marion, so that equal protection of the law and due process are guaranteed to everyone.  To that end, I shall not permit personal opinions, bias, prejudice, or consideration of the status of others to alter or lessen these principles.

I fully recognize my fundamental duty to serve mankind; to safeguard lives and property, to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all people to liberty, equality and justice.

I shall abide by the standards of behavior set by the Marion County Sheriff's Office, consistent with the responsibilities, duties, obligations and functions of my appointment or my employment.

I shall not engage in nor condone brutal, cruel, or inhumane treatment of others, including inmates in my care and custody, nor shall I employ unnecessary force in the performance of my duties.

I shall adhere at all times to the standards and principles of honesty and integrity, and I shall keep my private life unsullied as an example to all.

I shall not use the Office of Sheriff nor my employment for personal gain or self-aggrandizement, and in all things well and truly behave myself according to the best of my skill and power.

I accept and will adhere to this Code of Ethics.  In doing so, I also accept responsibility for encouraging others under my influence to abide by this Code.

_____          _____10/18/04_____
Signature                                                           Date

_____
Print Name

# OATH OF OFFICE

**STATE OF FLORIDA**
**COUNTY OF MARION**

**I DO SOLEMNLY SWEAR OR AFFIRM** that I will support, protect and defend the

Constitution and Government of the United States, and of the State of Florida; that I am

Duly qualified to hold office under the Constitution of the State; and that I will well and

Faithfully perform the duties of  Corrections Officer  which I am about to enter in

accordance with the Law Enforcement Code of Ethics which shall govern all of my

conduct.  So help me, God.

**SIGNATURE**

DELLUN MILLER        #4614

**PRINT  NAME          ID#**

**ED DEAN, SHERIFF**

**STATE OF FLORIDA**
**COUNTY OF MARION**

Sworn to (or affirmed) and subscribed before me this 13th day of December, 2004  by
DELLUN MILLER who is personally known to me or who has produced
_____N/A_____ as identification and who did take an oath.

(SEAL)

**NOTARY'S SIGNATURE**

Barbara E. Crumley
MY COMMISSION #  DD060849  EXPIRES
December 26, 2005
BONDED THRU TROY FAIN INSURANCE, INC.



# SHERIFF
## Marion County

**TO:**          **NEW EMPLOYEE**

**SUBJECT:**     **ORIENTATION PACKET**

Contained in the information supplied to you today are the following items in reference to your employment with the Marion County Sheriff's Office.
1. Infectious Disease Control Plan
2. Operations Directives
   a. 3030.50    Employee Benefits
   b. 3035.00    Leave
   c. 3041.00    Duty Assignments – Hours of Work
   d. 1068.00    Code of Conduct
   e. Organizational Chart
   f. Employee Time Sheets
   g. Family/Medical Leave
   h. Outside Employment Request Form
   i. Employee Assistance Program leaflet
3. Leaflet explaining Accreditation
4. Employee Handbook
5. Hepatitis B Vaccine Memo and Immunization Consent Form

In addition to the above, you have previously been provided a copy of the book "Corp Values" and have signed the Code of Ethics.

The complete operations directives for the policies and procedures of the Marion County Sheriff's Office are located on the computer and your rights and responsibilities as an employee of the MCSO are contained in these directives. You will be assigned and provided a user name at a later date that will allow you access to this information.

I acknowledge that I am in receipt of the above materials and am responsible to read and understand the contents.    **Dellun C. Miller #4614**

_Dellun C. Miller_
Signature
_1-3-05_
Date



# **SHERIFF**
## Marion County

# <u>LOYALTY OATH</u>

**STATE OF FLORIDA,**
**COUNTY OF MARION**

I, Dellun C. Miller, of Ocala, Florida and of the United States of America, and being employed
by, or an officer of, the Marion County Sheriff's Office and a recipient of public funds as such employee of officer, do solemnly swear or affirm that I will support the Constitution of the United States and the State of Florida.

_____
Dellun C. Miller

**STATE OF FLORIDA**
**COUNTY OF MARION**

The foregoing instrument was acknowledged before me this 3rd day of January, 2005 by Dellun C. Miller who is personally known to me or who has produced DL as identification and who did take an oath.

_____
Notary Signature

Tonya M. Pogue_____
Name (printed/typed)


Tonya M. Pogue
Commission # DD255797
Expires October 5, 2007
Bonded Troy Fain Insurance, Inc. 800-385-7019

## Property Issue Sheet
(Human Resources, Computer Services, & Administrative Services)

## Name:Dellun C. Miller        ID#:4614        SS#

| Qty | Item | Date Iss'd | Rcvd By | Iss'd By | Date Rtnd | Rtnd By | Rcvd By |
|---|---|---|---|---|---|---|---|
| | **HUMAN RESOURCES ISSUES:** | | | | | | |
| 1 | I.D. BADGE-Corrections Officer | 1/3/05 | *DCM* | **TMP** | | | |
| 1 | BUILDING KEY # 0475 | 1/3/05 | *DCM* | **TMP** | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **COMPUTER SERVICES ISSUES:** | | | | | | |
| | MOBILE DATA TERMINAL PROPERTY # | | | | | | |
| | SERIAL # | | | | | | |
| | MOBILE DATA TERMINAL PROPERTY # | | | | | | |
| | SERIAL # | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **ADMINISTRATIVE SERVICES ISSUES:** | | | | | | |
| | | | | | | | |
| | | | | | | | |



# PERSONNEL INFORMATION SHEET
**PLEASE CHANGE ANY OF THE FOLLOWING INFORMATION THAT IS NOT CORRECT:**

**ID#:**            <u>4614</u>

**SSN:**            █████████

**NAME:**           **Dellun C. Miller**

**ADDRESS:**        ████████████

**HOME PHONE:**     ████████████

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## EMERGENCY CONTACT  - PRIMARY

NAME            █████████████

ADDRESS

CITY, STATE, ZIP    *SAME AS ABOVE*

RELATIONSHIP    *Wife*            PHONE ████████████

## EMERGENCY CONTACT – SECONDARY

NAME            *STEVE MILLER*

ADDRESS

CITY, STATE, ZIP

RELATIONSHIP    *BROTHER*        PHONE *625-26 09*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Cc:  Fiscal





**SHERIFF**
**Marion County**

TO:        ALL NEW PERSONNEL

FROM:      ACCREDITATION

SUBJECT:   OPERATIONS DIRECTIVES

All of the Operations Directives for the Marion County Sheriff's Office are accessible through the Agency's computer system. Printed copies of the Operations Directives are available for review at the following locations/office:

| | | |
|---|---|---|
| **Accreditation** | **Bureau Chief's Office** | **Chiefs of Staff's** |
| **Civil Division** | **District Offices** | **Human Resources** |
| **Legal** | **Patrol Captain's Office** | **Jail Lieutenant's Office** |
| **Jail Custody & Security Captain** | | |

Within a few days of your employment, Computer Services will establish your computer sign-on name so you can access e-mail, directives, etc. through the computer. As soon as possible, after your computer sign-on name has been established, Accreditation will e-mail you instructions on accessing the Operations Directives. You will be notified when new or revised directives are published via the Agency's e-mail system.

### DO NOT DETACH THE ACKNOWLEDGEMENT FORM

**I, Dellun C. Miller**                                      **ID#: 4614**

**Acknowledge that I have been informed that the Operations Directives are available on the Agency's computer system and that printed copies of the directives are located in various offices throughout the Agency. I understand that it is my responsibility to review each directive and seek clarification from my supervisor for any directive that I do not fully understand and I agree to abide by all Agency Operations Directives.**

_Dellun C. Miller 4614_                          _1-3-05_

Signature & ID#                                        Date

### RETURN ENTIRE PAGE TO ACCREDITATION

cc:     File
        Lt. Gary Harbin (Jail)



# SHERIFF
## Marion County

### EMPLOYEE FLOWER FUND

In the event an employee is hospitalized overnight; or should and employee's immediate family member passes way, we would like to send flowers or some other appropriate acknowledgement.

The <u>minimum deduction</u> must be 25 cents or more per pay period.

This deduction is not recognized as a charitable contribution for income tax purposes per the Internal Revenue Service.

To arrange for flowers, please contact:
Chaplain Murray – Jail – ext. #2222

I, Dellun C. Miller ID#4614,
☑ Authorize
☐ Do Not Authorize
A deduction from my pay check for the Flower fund.
$ __.25__ amount to be deducted

Employee's Signature: _Dellun C Miller_
Date: January 3rd, 2005

**THANK YOU FOR YOUR PARTICIPATION!!!**

C: Fiscal
Revised 08/28/03

## MARION COUNTY SHERIFF'S OFFICE
## AUTHORIZATION AGREEMENT
## FOR AUTOMATIC PAYROLL DEPOSITS
## (EFT - ELECTRONIC FUNDS TRANSFER)

I hereby authorize the Ma▮▮▮▮▮
entries to my ( ) Checkin▮▮▮
to credit the same to suc▮▮
if necessary, for any cre▮▮

My signature below also i▮▮▮▮

    * This autho▮▮

    * If for any r▮▮▮
      notify the ▮▮▮
      this information is not communicated in a timely manner, the Employer will make reasonable
      effort to redirect my payroll but cannot guarantee payment on the effective date.

    * My employer and SunTrust Bank will process the electronic transmission of my payroll in
      compliance with NACHA standards and regulations.

Account Type:      Checking (✓)    Savings ( )
Financial Institution:   _Florida Credit Union_____
Branch: _____  City: _____  State: _____
Transit ABA number: _____  Account Number: _____

### PLEASE ATTACH A DEPOSIT SLIP OR VOIDED CHECK.

Name: (Print) _Miller Dellun C_____   Employee Id #: _4614____

Signature: _Dellun C Miller_____   Date: _1-3-05___

**IMPORTANCE OF HONESTY**

The Marion County Sheriff's Office is seeking applicants who demonstrate certain characteristics. Honesty is the most important characteristic that you must demonstrate. Therefore, it is extremely important that you are completely truthful when answering all questions.

The importance of honesty from time of application, completion of all documents and questionnaires, as well as during all interviews cannot be overemphasized. Failure to respond to any question truthfully, whether orally or in writing, will result in disqualification. Many applicants have been disqualified for dishonesty.

While filling out documents, you are cautioned to take your time, to be thorough, and to be specific in all your answers. If you have any doubt in your mind concerning a particular question or if you are unsure whether to include certain information, the answer is "Yes", include it."

You may think that something you have done will disqualify you from further consideration, it may or may not. What will certainly disqualify you is lying, misleading or distorting the truth. For example, an arrest (either when you were a juvenile or as an adult) may or may not disqualify you. However, lying about that arrest will disqualify you from further consideration. You may have been fired from a job that, by itself, may or may not disqualify you; however, lying about it will disqualify you from further consideration. The use of drugs, including marijuana, may or may not disqualify you; however lying about it will disqualify you from further consideration.

I have read and understand the above information.

Printed Name _Dellun C Miller_

Applicant
Signature _Dellun C Miller_ Date _4-30-04_

Witness _Arlita Bure_