UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KRYSTI MERCHANT, as Personal
Representative for the Estate of
Cory Merchant, Deceased,

    Plaintiff,

v.                                                                            Case No. 5:23-cv-00661

BILLY WOODS, Sheriff of Marion
County, Florida, in his official
Capacity; Deputy JUSTIN KOSINSKI;
Deputy DELLUN MILLER; Sergeant
JEROME DUKES;

    Defendants.
_____/

## DEFENDANTS' JOINT *DAUBERT* MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS AND MEMORANDUM OF LAW

Defendants, BILLY WOODS, Sheriff of Marion County, Florida, in his official Capacity, Deputy JUSTIN KOSINSKI, Deputy DELLUN MILLER, and Sergeant JEROME DUKES (collectively "**Defendants**"), hereby file their Joint *Daubert* Motion to Exclude Plaintiff's Expert Witnesses and Memorandum of Law ("**Motion**"), pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702, Fed.R.Evid., and, in support, state:

### INTRODUCTION

1.     This is an action brought by Plaintiff, KRYSTI MERCHANT, as

1

Personal Representative for the Estate of Cory Merchant, Deceased ("**Plaintiff**") against Defendants alleging alleging (1) violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 and (2) wrongful death under Florida law, due to death of Cory Merchant ("**Merchant**"), a pretrial detainee at the Marion County Jail.

2. Plaintiff disclosed Paul M. Adee ("**Adee**"), a corrections practices expert. *See* Exhibit A, Expert Report of Adee; Exh. B, Adee Deposition.

3. As argued in this Motion, certain opinions of Adee should be excluded under *Daubert* and Rule 702.

## MEMORANDUM OF LAW

Rule 702, as explained by *Daubert* and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Under Rule 702 and *Daubert*, district courts must act as "gatekeepers" to ensure the reliability and relevancy of expert testimony. *Id.* (*quoting Daubert*, 509 U.S. at 589); *see also Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007) ("[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand."). Expert testimony is reliable and relevant—and, therefore, admissible—when the following criteria are met: (1) the expert is sufficiently qualified to testify about the matters he intends to address; (2) the methodology used is sufficiently reliable as

determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Id.* The Eleventh Circuit refers to these criteria separately as "qualification, reliability, and helpfulness," *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc), and has emphasized that they are "distinct concepts that courts and litigants must take care not to conflate." *Quiet Tech. DC-8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). These factors apply regardless of whether expert testimony is based on scientific, technical, or other specialized knowledge. *See id.* (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). The party offering the expert has the burden of showing, by a preponderance of the evidence, that each of these requirements is met. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

To meet the "reliability" requirement for an expert witness whose opinion is based "solely or primarily on experience," as opposed to scientific methodology, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261(*quoting* Fed. R. Evid. 702 advisory committee's note to 2000 amendments). An expert may rely on "facts or data in the case that the expert has been made aware of or personally observed."

3

Fed. R. Evid. 703. The court's focus is on the expert's principles and methodology, not the conclusions generated. *Daubert*, 509 U.S. at 595. Regardless of whether expert opinion is based on professional studies or personal experience, the expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1255 (11th Cir. 2005) (*quoting Kumho Tire*, 526 U.S. at 152). Although flaws in generally reliable evidence are best "tested by the adversary process—competing expert testimony and active cross-examination." *Quiet Tech.*, 326 F.3d at 1345 (internal quotations omitted), "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Expert testimony must also assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (*citing Frazier*, 387 F.3d at 1260). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (*quoting Daubert*, 509 U.S. at 591). Expert testimony does not help the trier of fact if it fails to "fit" with the facts of the case. *McDowell v. Brown*, 392 F.3d

4

1283, 1299 (11th Cir. 2004); *see also Korsing v. United States*, 2017 U.S. Dist. LEXIS 231046, 2017 WL 7794276, at *3 (S.D. Fla. Aug. 24, 2011)) ("Under [the helpfulness] requirement, which is concerned primarily with relevance, the Court must consider whether the expert testimony is sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute.") (citation and internal quotation omitted).

     1.    <u>Adee's assertion that it should take at least 5 to 10 seconds to conduct an adequate security check of each inmate is unreliable and lacks any methodology.</u>

In his expert report, Adee suggests that correctional officers should view each inmate for 5 seconds when conducting security checks. <u>Exh. A</u>, Adee Expert Report, P. 17   Therefore, according to Adee, it should take approximately 21 minutes on average to complete a security check for 256 inmates in Gulf Pod. <u>Id.</u> From this, Adee concluded that the length of time that Deputy Kosinki and Deputy Miller documented in their daily logs to complete the security checks was "woefully inadequate" and this indicated a lack of supervision by the Marion County Sheriff's Office and created a dangerous condition for Merchant. <u>Id.</u> at 17-18. In his deposition, Adee acknowledged that there was no "standard" for how long a correctional officer must stand and observe an inmate in his bed before moving on to the next inmate, but that this length of time was based on his experience "actually doing these checks and how long it takes for you, as a person,

5

to be able to ascertain if that person is alive and okay while they're laying in their bed under a blanket sometimes with their head covered even." Exh. B, Adee Deposition, 113/22-114/15; *see also* 84/6-85/6, 89/5-90/25.

While an expert witness can rely on his experience, there is no indication in the expert report or Adee's deposition that 5 seconds is anything but an arbitrary number. Nor is there any evidence that failing to observe the inmates for the length of time Adee suggests is relevant to the issues in this case or helpful for the jury. Merchant was not, for example, found deceased in his bunk underneath his blanket. Exh. B, Adee Deposition, 86/4-86/11. Adee further referenced no standard, no training materials, and no other cases or situations where 10 seconds, 5 seconds, 1 second, or anything in between could constitute a deviation from any correctional standard of care other than his own. It is within a juror's understanding to determine the length of time that is necessary to observe whether a person sleeping in his bed is present, alive, breathing, and not suffering from some distress. *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony assists the trier of fact if it concerns matters that are "beyond the understanding and experience of the average [person]"). Thus, Adee's analysis and conclusion that Deputy Kosinski, Deputy Miller, or both conducted inadequate security checks should be excluded.

2. <u>Adee's made a number of conclusory assertions and legal conclusions that instruct the jury what result to reach on ultimate issues.</u>

While expert opinions on ultimate issues are not automatically objectionable under Rule 704, Fed. R. Evid., an expert witness cannot testify as to legal conclusions. *See Cook* 402 F.3d 1092, at n. 8 ("courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.") (citation omitted).

In his expert report, Adee starts with conclusory assertions, e.g., "Sergeant Dukes provided inadequate supervision . . .[,]" "Deputy Justin Kosinski provided inadequate supervision of the inmates . . .[,]" "Deputy Dellun Miller conducted inadequate well-being/wellness/security checks in timing, form, and on a predictable schedule[,]" and Adee follows each "Finding" with "[t]his was in violation of the correctional standard of care and caused harm to Cory Merchant." <u>Exh. A</u>, Adee Expert Report, P. 21-22; <u>Exh. B</u>, Adee Deposition, 67/7-67/17, 118/3-118/8. Adee cannot offer numerous statements that Defendants owed Merchant various legal duties and Defendants breached those duties, which caused harm to Merchant. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (holding that expert who testified that an insurer had a duty to hire tax counsel in the lawsuit was a legal conclusion); *Omar v. Babcock*, 177 Fed. Appx. 59, 63,

7

n.5 (11th Cir. 2006) (finding no error with district court striking expert's opinions concerning deliberate indifference legal conclusions). While Adee did not expressly state that Defendants acted with deliberate indifference, Adee's conclusions, in effect, will instruct the jury to disregard the law and find that Defendants caused harm to Merchant if Defendants violated Adee's version of the correctional standard of care. *See, e.g. Jones v. Anderson*, No. 5:17-cv-77, 2018 U.S. Dist. LEXIS 95315 (S.D. Ga. 2018) (striking numerous opinions of correctional expert whose opinions lacked foundation and offered legal conclusions).

Adee also opined that a "reasonable and prudent" jail administrator would require security checks at least 30 minutes apart 24 hours a day. Exh. A, Adee Expert Report, P. 9-10; Exh. B, Adee Deposition, 65/15-65/18. Other than citing to a resource guide published by the National Institute of Corrections, Adee offers no other support for this conclusion. While the resource guide is helpful to new jail administrators and discusses important topics, it does not establish "policy, procedure, or a standard of care for particular jails," including the Marion County Jail. *See* Doc. 50, Exh. 17, P. 9-10. Instead, Adee has created his own standard of care, with citation to the resource guide as support, to conclude that nightly security checks every 60 minutes, as the Marion County Jail had implemented in their policies, deviated from the

standard of care owed to Merchant. Adee should not be permitted to deliver his standard of care to the jury, state that Defendants violated it, and therefore Defendants caused harm to Merchant. Simply because the Marion County Jail implemented 60-minute intervals does not mean Defendants created a substantial risk of serious harm to Merchant. *See Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003); *see also Grochowski v. Clayton Cty.*, 961 F.3d 1311, 1320 (11th Cir. 2020).

WHEREFORE Defendants, BILLY WOODS, Sheriff of Marion County, Florida, in his official Capacity, Deputy JUSTIN KOSINSKI, Deputy DELLUN MILLER, and Sergeant JEROME DUKES, respectfully request that this Court enter an Order, pursuant to Rule 702, Fed.R.Civ.P., limiting the testimony of Plaintiff's correctional practices expert, Paul M. Adee, as argued in this Motion.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel for Defendants, Brandon T. Byers, Esquire, of Hilyard, Bogan, & Palmer, P.A., hereby certifies that he conferred with counsel for Plaintiff, Sam Harton, Esquire, by telephone on July 2, 2025, and counsel for Plaintiff opposes the relief sought in this Motion.

/s/ Brandon T. Byers
Brandon T. Byers, Esquire
Fla. Bar. No. 0119492
Hilyard, Bogan, & Palmer, P.A.
Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 3rd of July, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to counsel for Plaintiff, Sam Harton, Esquire, Romanucci and Blandin, 321 North Clark Street, Chicago, Illinois 60654 and James M. Slater, Esquire, Slater Legal, PLLC, 113 South Monroe Street, Tallahassee, Florida 32301.

      /s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Fla. Bar No. 599565
Brandon T. Byers, Esquire
Fla. Bar. No. 0119492
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile: 407-841-8431
Email: bbogan@hilyardlawfirm.com
      bbyers@hilyardlawfirm.com
Attorneys for Defendants