## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

KRYSTI MERCHANT, as Personal
Representative for the Estate of
Cory Merchant, Deceased,

      Plaintiff,

v.                                                    Case No. 5:23-cv-00661

BILLY WOODS, Sheriff of Marion
County, Florida, in his official
Capacity; Deputy JUSTIN KOSINSKI;
Deputy DELLUN MILLER; Sergeant
JEROME DUKES;

      Defendants.

_____/

### DEFENDANTS' JOINT MEMORANDUM OF LAW AND RESPONSE IN OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTION

Defendants, BILLY WOODS, Sheriff of Marion County, Florida, in his official Capacity, Deputy JUSTIN KOSINSKI, Deputy DELLUN MILLER, and Sergeant JEROME DUKES (collectively "**Defendants**"), hereby file their Joint Memorandum of Law and Response in Opposition to Plaintiff's *Daubert* Motion, and state:

### INTRODUCTION

1.     This is an action brought by Plaintiff, KRYSTI MERCHANT, as Personal Representative for the Estate of Cory Merchant, Deceased ("**Plaintiff**")

1

against Defendants alleging alleging (1) violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 and (2) wrongful death under Florida law, due to death of Cory Merchant ("**Merchant**"), a pretrial detainee at the Marion County Jail.

2.     On July 3, 2025, Plaintiff filed her Motion to Exclude or Limit Testimony of Defendants' Expert Dr. Richard Hough ("**Motion**").  (Doc. 53).

3.     Plaintiff's Motion should be denied because Dr. Richard M. Hough's ("**Dr. Hough**") opinions do not instruct the jury on which law to apply and Dr. Hough's opinions are reliable.

## <u>MEMORANDUM OF LAW</u>

1.     <u>The Florida Model Jail Standards ("**FMJS**") are relevant and Dr. Hough never offers the opinion that the FMJS supplies the constitutional standard for which a jury must apply in this case.</u>

Plaintiff argues in her Motion that Dr. Hough's statement that the FMJS "are the standards that jails within the State of Florida have to abide by" is "in and of itself, extraordinarily misleading, unhelpful, confusing, and prejudicial." *See* Doc. 53, P. 5-8.  Of course, it is not an opinion, but a fact, that the Marion County Jail must comply, at a minimum, with the FMJS pursuant to Florida law.  *See* § 951.23(4)(b), Fla. Stat.  ("Each sheriff, county, city, or other entity that operates a municipal detention facility or a county detention facility shall adopt, at a minimum, the Florida Model Jail Standards approved by the working group with

reference to all of the following: . . .").  Further, federal courts within this Circuit have found that the FMJS relevant to determine whether a jail complied with industry standards and practices.  *See, e.g. Silcox v. Hunter*, 2018 U.S. Dist. LEXIS 127442, at *28, *35-6 (M.D. Fla. July 31, 2018) (permitting Plaintiff's expert to testify on whether sheriff's policies concerning staffing and supervision practices comported with common jail standards and practices, including the FMJS, because "industry standards can bear on the standard of care in determining negligence" under Florida Wrongful Death statute); *MacMillan v. Roddenberry*, 2010 U.S. Dist. LEXIS 17246, *18, n.8 (M.D. Fla. Feb, 19, 2010) (using FMJS to rebut the plaintiff's assertion that the jail had a custom and policy of denying inmates access to medical care); *Timson v. Juvenile & Jail Facility Mgmt. Servs.*, 2009 U.S. Dist. LEXIS 137421, *28-9 (M.D. Fla. April 25, 2009) (noting that even though the security checks violated the jail's policy and the FMJS, the inadequate security checks did not proximately cause the inmate's suicide); *Thompson v. Spears*, 336 F. Supp. 2d 1224, 1233-34 (S.D. Fla. 2004) (using the FMJS to support the county's argument that the pretrial conditions did not pose an objectively substantial risk of harm to the plaintiff); *Bennett v. Bay Cnty. Sheriff Tommy Ford*, 2025 U.S. Dist. LEXIS 43154, *9, *24 (M.D. Fla. Feb. 20, 2025) (noting that even though the jail's policy differed from the National Commission on Correctional Health Care's standard related to constant in-person supervision of inmates, the jail's policy did comply with the

FMJS and thus, there was "no evidence from which a jury could find that [the Sheriff] had a custom or policy of not providing adequate mental health care to inmates on suicide precaution").

While it is true that violation of the FMJS does not necessarily equate to a constitutional violation under 42 U.S.C. § 1983, *see Moody v. Williams*, 2020 U.S. Dist. LEXIS 224358, *14-15 (M.D. Fla. Dec. 1, 2020), *citing Saunders v. Sheriff of Brevard Cty.*, 735 Fed. Appx. 559, 565 (11th Cir. 2018), Dr. Hough does not intend to offer an opinion that "Defendants cannot be liable because they complied with Florida law and administrative code."  *See* Doc. 53, P. 5; *see also* Doc. 53, Exh. 2, Hough Deposition, 35/21-42/10, 100/23-102/6.  Nor does Dr. Hough intend to state that the FMJS provides the constitutional standard that the jury must evaluate under the facts of this case.  Rather, the FMJS are relevant to helping the jury understand how jail administrators provide for the safety and security of inmates within a county jail because, at least in Florida, the FMJS are the minimum standards that county jails must follow.  And the fact that the FMJS and the Florida Corrections Accreditation Committee ("**FCAC**") provides standards concerning security checks, classification, and inmate security and control, all of which Plaintiff alleged were deficient and caused constitutional violations, will assist the jury to determining if Defendants violated both the United States Constitution, as it relates to Plaintiff's federal claims, and Florida law, which relates to Plaintiff's

wrongful death claims.  Dr. Hough has testified in federal court on these very issues and certainly understands that he cannot tell the jury that Defendants acted in a "constitutional" or "reasonable" manner because Defendants adopted the minimum standards contained within the FMJS and have achieved Excelsior status by the FCAC.  *See, e.g. Hughes v. Judd*, 108 F. Supp. 3d 1167, 1239-1247 (M.D. Fla. 2015) (citing to Dr. Hough's trial testimony to enter judgment against the plaintiff's claims related to, among other claims, the alleged "dangerously violent conditions of confinement" in a juvenile detention center).

> 2.    Dr. Hough is permitted to testify concerning Defendant Sheriff's "custom and policy."

Dr. Hough's opinions related to Defendant Sheriff's "customs and policies" are relevant and Dr. Hough's opinions do not instruct the jury how to decide liability under Plaintiff's *Monell* claim.  *See* Doc. 53, P. 9-13.  Plaintiff has alleged, and its own expert has opined, that Defendant Sheriff's customs and policies caused a substantial risk of serious harm to, or created a dangerous condition for, Cory Merchant ("**Merchant**"), which resulted in Merchant's death from another inmate.  *See, e.g.* Doc. 20, ¶ 9, 43, 68, 352.i.-xix.; Doc. 52-1, Adee Expert Report, P. 21-22.  Plaintiff would permit her expert to testify that Defendant's customs and policies were "in violation of the correctional standard of care and caused harm to Cory Merchant" without any analysis, *see Giraldo v. City of Hollywood, Florida*, 142 F. Supp. 3d 1292, 1303-4 (S.D. Fla. 2015) (expert's conclusory opinion that city's

failure to take remedial retraining action following plaintiff's arrest amounts to a "de facto informal custom or practice" not supported by any reliable, articulable methodology); *Day v. Edenfield*, 2022 WL 972430, at *9 (N.D. Fla. Mar. 31, 2022) (excluding expert's opinion on "custom" where expert failed to support opinion with any "office-wide analysis of data showing that these violations in fact existed and were widespread throughout the department"), but not permit Dr. Hough to testify that, in his review of the records, the conditions at the Marion County Jail and Defendant Sheriff's policies met prevailing correctional practices, including those published by the FMJS and FCAC. As with Plaintiff's argument to preclude Dr. Hough from discussing the standards contained within the FMJS and FCAC, Dr. Hough does not intend to opine that the conditions or Defendant Sheriff's customs and policies were "constitutional." *See, e.g.* Doc. 53. Exh. 1, P. 26, ¶ 25. However, Dr. Hough should be permitted to opine on both the conditions and policies of the Marion County Jail with reference to his experience and the correctional standards found in both Florida and across the United States.

Similarly, as it relates to Opinion #17 and #18, which Plaintiff also seeks to exclude, Dr. Hough, as rebuttal to Mr. Adee's claims, simply observed that Dr. Adee offered no meaningful standard to indicate a "widespread custom and practice" of inmate violence at the Marion County Jail and, based on the records Dr. Hough reviewed, there did not appear to be any analysis connecting

Merchant's incident to any of the other incidents of violence within the Marion County Jail.  *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming dismissal of *Monell* claim because even though the plaintiff had a list of all cases involving excessive force, "he cannot show that any of them involved factual situations that are substantially similar to the case at hand.")  In other words, while Dr. Hough criticized the methodology employed by Mr. Adee, Dr. Hough does not intend to offer credibility opinions concerning Plaintiff's "affidavits," assuming they are even admissible at trial, or Mr. Adee's methodology.  However, Dr. Hough should be permitted to offer the opinions concerning the alleged inmate violence at the Marion County Jail and the policies Marion County Jail enacted and enforced to prevent inmate violence.

3.    Dr. Hough's opinions are reliable and supported by a discernible methodology.

On Opinion #5, Plaintiff devotes almost four pages to Dr. Hough's innocuous opinion that inmates have motivations and lives that are complex and largely unknown and that inmates are not inclined to share details of their lives when asked direct questions by jail staff.  Dr. Hough's opinion relates to his earlier observation concerning the "spontaneous assault" that occurred between Eric Lutterloah ("**Lutterloah**") and Merchant and how past fights or violence are not necessarily predictive of future violence in a correctional setting.  *See* Doc. 53, Exh. 1, Hough Report, P. 10-14.  Dr. Hough also cited publications related to

7

"spontaneous assaults," including his own training publication, to emphasize that "even if we have assessed that someone has the potential to be violent, we have no way to reliably predict when, where, or against whom." *Id.*, P. 11-14, and footnotes therein. Thus, while Plaintiff clearly took offense to Dr. Hough's tone to certain questions at his deposition, his opinions are sufficiently reliable and Plaintiff should employ "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof" to present its case to the jury. *See Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001), *quoting Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

As for Opinions 12, 14, 15, 16, and 22, while Plaintiff never asked Dr. Hough any questions concerning his methodology for these opinions, Dr. Hough did, however, make numerous references in his expert report to the FMJS, his publications, and publications by other academics as well as his decades of experience to include training and teaching law enforcement and correctional officers and as director in both juvenile and adult correctional facilities. *See also* Doc. 53, Exh. 2, Hough Deposition, 17/19-13/25-21/21. Further, in addition to his expert report, Dr. Hough also explained his review process to formulate his opinions in a case at his deposition. *Id.*, 12/23-13/25; Doc. 53, Exh. 1, Hough Report, P. 3-5. Simply because Dr. Hough viewed the evidence and his opinion differed from Plaintiff's expert does not mean that Dr. Hough's opinion was

"baseless" or lacks a reliable methodology. *See Kates v. Nocco*, 2023 U.S. Dist. LEXIS 84789, at * 9-12 (M.D. Fla. May 15, 2023) (finding Dr. Hough's methodology "sufficiently reliable" as Dr. Hough "persuasively outline[d] his methodology in a separate section of his report").

WHEREFORE Defendants, BILLY WOODS, Sheriff of Marion County, Florida, in his official Capacity, Deputy JUSTIN KOSINSKI, Deputy DELLUN MILLER, and Sergeant JEROME DUKES, respectfully request that this Court enter an Order denying Plaintiff's Motion to Exclude or Limit Opinion Testimony of Defendants' Expert Dr. Richard Hough.

Dated: July 17, 2025

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to counsel for Plaintiff, James M. Slater, Esquire, Slater Legal, PLLC, 113 South Monroe Street, Tallahassee, Florida 32301, Sam Harton, Esquire, Romanucci and Blandin, 321 North Clark Street, Chicago, Illinois 60654.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Fla. Bar No. 599565
Brandon T. Byers, Esquire
Fla. Bar. No. 0119492

9

Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile:  407-841-8431
Email: bbogan@hilyardlawfirm.com
          bbyers@hilyardlawfirm.com
Attorneys for Defendants