IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRCT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| KRYSTI MERCHANT, as Personal Representative of the Estate of Cory Merchant, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   No.  5:23-cv-00661 |
| BILLY WOODS, et al, | )<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'** ***DAUBERT*** **MOTION TO EXCLUDE TESTIMONY OF PAUL M. ADEE, PLAINTIFF'S EXPERT**

NOW COMES Plaintiff, Krysti Merchant, by and through her attorneys, Romanucci & Blandin, LLC and hereby respectfully requests this Honorable Court enter an order denying Defendants Billy Woods, Deputy Justin Kosinski, Deputy Dellun Miller, and Sergeant Jerome Dukes' (collectively "Defendants") Motion *in Limine* to Exclude Testimony of Paul M. Adee, Plaintiff's Expert. In support thereof, Plaintiff states as follows:

**I.     Introduction**

This case, brought by Krysti Merchant, arises from the death of Cory Merchant, a pretrial detainee who was killed inside the Marion County Jail by a violent inmate named Eric Lutterloah. The gravamen of Plaintiff's claims is that the Marion County Jail implemented deficient classification, monitoring, and

1

supervision policies and practices that left Cory Merchant unreasonably vulnerable to attacks by dangerous detainees such as Mr. Lutterloah, violating his due process rights under the Fourteenth Amendment. To assist the trier of fact in understanding the correctional standards and procedures relevant to Cory Merchant's death, Plaintiff disclosed Paul A. Adee as an expert in correctional practices, with over 30 years of experience in the field.

Mr. Adee has disclosed a report that not only explains exactly what sources he relied on in coming to his ultimate conclusions but demonstrably applies the relied upon standards to the facts in this case. In addition to relying on his own 30-plus years of experience and training in this field, he cites guidance primarily from the Department of Justice's National Institute of Corrections, but also the American Bar Association's Standards for Criminal Justice, and *American Jails* Magazine. Testifying in a field of social science, Mr. Adee cannot articulate a mathematical equation that led him to his opinions, but he shows his work in applying industry standards and his vast professional experience to the record. Defendants now move to exclude limited portions of Mr. Adee's testimony, claiming that his opinions are unreliable or unhelpful. Grounded in decades of practical experience, a detailed review of the record, and an in-depth analysis of the Marion County Sheriff's Office policies and procedures, Mr. Adee's opinions should survive their *Daubert* challenge. His opinions address matters well beyond the scope of a juror's common knowledge, and will assist the jury in understanding the standards applicable inside the walls of a correctional facility.

## II.  Legal Standard

District courts serve as "gatekeeper[s]" to expert testimony that is not admissible under Fed. R. Evid. 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999) (quoting *Daubert*, 509 U.S. at 589). "The Eleventh Circuit has distilled the test for determining the admissibility of expert testimony under Rule 702 and *Daubert* into three basic inquiries—(1) is the expert qualified; (2) is the expert's methodology reliable; and (3) will the testimony assist the trier of fact." *Ghaner v. First Liberty Ins. Corp.*, No. 6:21-CV-1392-CEM-RMN, 2023 WL 5565004, at *2 (M.D. Fla. June 26, 2023). The standard for admissibility under Rule 702, however, is only a preponderance of the evidence—a relatively low threshold. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1229 (11th Cir. 2005). Gatekeeping "is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Adams v. Lab. Corp. of America*, 760 F.3d 1322, 1334 (11th Cir. 2014) (quoting *United States v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013)).

## III.  Discussion

Plaintiff retained a correctional expert, Paul A. Adee, in this case to opine on correctional standards relevant to this case—primarily those that govern the classification, monitoring, and supervision of detainees in correctional facilities. With over 30 years of experience in the corrections industry, Mr. Adee is qualified to opine on these topics, and Defendants do not appear to attack Mr. Adee's

credentials. Mr. Adee is an expert in the 'social science' of law enforcement practices inside of correctional institutions, as opposed to a hard science like engineering or chemistry. Accordingly, he is permitted to rely on his "professional experience, education, training, and observations" to provide testimony that, although not tested by the scientific method, is nonetheless reliable and "can give the jury a view of the evidence well beyond their everyday experience." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1318 (11th Cir. 2022) (internal quotations omitted).

  Defendants contend that two discrete portions of Mr. Adee's expert report lack reliability and relevance: 1) Mr. Adee's opinion that correctional officers should take five to ten seconds when observing detainees during wellness checks, and 2) Mr. Adee's opinions that Defendants fell short of certain correctional standards. Their challenge should fail on both grounds. Regarding <u>reliability</u>, Mr. Adee demonstrates throughout his report how these opinions are drawn from his 32 years of experience in corrections and applies them to the facts in this case. The entirety of his report provides a clear roadmap of how he arrived at his ultimate "findings," which he summarizes at the end of his report. His opinions are <u>relevant</u> because they will assist the jury in understanding the standards which apply in a jail context—a setting which most jurors have likely never experienced, but of which Mr. Adee is an expert.

4

### A. Mr. Adee's opinion that a wellness check should take 5–10 seconds is reliable and helpful to a jury.

In his report, Mr. Adee explains the opinion he intends to offer regarding the importance and use of 'security checks' in jails:

> One of the core functions of a jail or correctional facility is to ensure the safety and well-being of the people who are committed therein. This is accomplished by staff conducting wellness/well-being/security checks, within designated time frames and on an irregular schedule, of the inmate population. These checks are utilized for multiple purposes. They are used to ensure inmates are not engaging in self-harm, causing harm to others, where they are supposed to be, and not violating facility rules, etc. An adequate check of each offender should take between 5-10 seconds, as the officer should be observing the person's body to ensure that they are breathing by looking for their chest to rise and fall. Officers should also observe the inmate to ascertain if they are moving their limbs, head, or another body part that would indicate they are alive. If the inmate is standing and/or moving around inside of the cell or living area, the check may take slightly less time.

ECF 52-1, Adee Report at 9. Defendant takes issue with a discrete statement in this portion of Mr. Adee's analysis: that a proper wellness check should take approximately between 5-10 seconds. ECF 52, Defendants' Motion at 5-6. Regarding reliability, Defendants argue that this five-second estimate is "an arbitrary number." Id. They take issue with Mr. Adee's failure to articulate a correctional standard that identifies 'five seconds' as the amount of time needed to adequately assess the well-being of a detainee. They also take issue with its relevance. Mr. Adee, though, shows how his opinions are drawn from his experience in corrections for 32 years, and his opinions will help a jury understand how corrections officials should conduct themselves to improve the safety and security of

5

detainees. Specifically, it will help the jury understand what type of officer presence, supervision, and monitoring is appropriate to keep people safe.

### i. *Reliability*

Mr. Adee identifies the five-second assessment period as a baseline because, in his experience and expertise, that is the approximate amount of time needed to perform the actions which are supposed to occur during an adequate security check. Mr. Adee has not testified that there is a black-and-white requirement that each officer observe each detainee for exactly five seconds, nor will he do so at trial. Rather, his opinion, taken in full context, can be summarized as follows: 1) correctional standards require officers to conduct security checks in such a way that they are accounting for the safety and well-being of each detainee, and 2) in Mr. Adee's 32 years of experience, a correctional officer needs to take, approximately, five to ten seconds to sufficiently accomplish that goal when detainees are sleeping. He explains in his report that the 5–10 second observation requirement is based on the need for officers to observe whether an inmate is breathing—by watching for chest movement—and to determine whether the inmate is alive by looking for movement in the limbs, head, or other body parts. ECF 52-1 at 9. Mr. Adee not only identifies standards upon which he relies for these propositions, but shows how his experience led him to the conclusion that officers need to spend a relatively protracted period evaluating detainees during security checks, as opposed to a brief glance into the dorm. Id. at 9-10.

This opinion—that a sufficient security check requires officers to go beyond merely laying eyes on a detainee and take steps to confirm the well-being of the

6

detainees—is not only reliable, but wholly uncontroversial. It is not only articulated by national standards upon which Mr. Adee relies (see ECF 52-1, Adee Report at 9-10) but is undisputed by Marion County officials. Captain McNeely testified as a Rule 30(b)(6) witness for Marion County that security checks of Gulf Pod likely cannot be completed in under ten minutes because sufficient checks require the officer to take time to account for the safety and well-being of each detainee:

> Q: So if you were to review a log in which a deputy said that he completed a security check in under ten minutes of the entire Gulf Pod with over 200 inmates, would you find that to be an adequate security check under the policy?
>
> [Objection omitted]
>
> A: Probably not.
>
> Q: Because it would not be possible for any deputy to account for the individual safety and wellbeing of over 200 inmates in Gulf Pod in under ten minutes, right?
>
> [Objection omitted]
>
> A: That's probably accurate. (77)

ECF 50-18, McNeely Dep. at 77.

The standards relied on by Mr. Adee as well as Marion County's own employees indicate that security checks require the officer to watch the individual long enough to see that they are well. From there, Mr. Adee uses his 32 years of experience as a correctional officer to opine that it takes approximately five to ten seconds to do that. Defendants interpret Mr. Adee's estimate—a single line contained within a broader opinion—literally and rigidly. But Mr. Adee makes clear in both his report and his testimony that his temporal approximation is not an

7

uncompromising requirement. First, he admits that certain factors may mitigate the need for a full five- to ten-second observation, such as "if the inmate is standing and/or moving around inside of the cell or living area." ECF 52-1 at 9. Further, he testified in his deposition that a deficiency in this timing is not *per se* insufficient "because there are different factors that play into it." ECF 52-2 at 89:9-90:12. Mr. Adee does not evade the fact that his opinion regarding the five-second period is an estimation based on his experience, as opposed to a black-and-white requirement drawn from the scientific method. Mr. Adee's comment about "five to ten seconds," within a broader context of the full opinion, helps the jury understand that officers cannot just glance at each detainee and call it a day. ECF 52-1 at 9. Rather they must establish a presence amongst the detainees, watch for the rise and fall of breath for sleeping inmates, and take enough time to ensure that nothing is amiss. Mr. Adee demonstrates that his conclusion is grounded in a reasoned methodology—namely, that this is the approximate amount of time necessary in practice for an officer to assess the well-being of a detainee during a security check.

While Defendants dismiss Mr. Adee's experience as insufficient to support his conclusion, the Eleventh Circuit has made clear that "[i]n some cases, an admissible expert will need rigorous scientific or statistical analysis, but *Daubert* also allows for admitting experts whose methods are less formal, such as when an expert testifies primarily based on experience." *United States v. Esformes*, 60 F.4th 621, 637 (11th Cir.), *cert. denied,* 144 S. Ct. 485, 217 L. Ed. 2d 255 (2023). And Mr. Adee does not just cite his experience and throw out opinions; his report provides a

8

detailed analysis of what external standards he relies on and applies his articulated bases to the facts. See generally, ECF 52-1 at 4-20. While Defendants take issue with Mr. Adee's reliance on standards set forth by the National Institute of Corrections, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1323 (11th Cir. 2022). Because it is grounded in a reliable methodology and reflects "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," Mr. Adee's opinions about what is required to complete a sufficient security check—including his temporal approximation—should be admitted.

### ii. Relevance

Expert testimony is necessary to explain procedures that are "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). Mr. Adee's testimony will assist the trier of fact by providing specialized knowledge outside a layman's experience. Specifically, he will help the juror understand the procedures for conducting routine well-being checks that ensure an inmate's health and safety. He does not offer the opinion that failing to adhere to the five-second assessment period is a *per se* deviation from some scientific standard but rather uses a five-second period to illustrate the comprehensive wellness assessments expected during these security checks.

Defendants contend that jurors can determine how long a wellness check should take without expert input, ECF 52 at 6, overlooking the specialized

9

knowledge that comes from extensive correctional experience. Courts have long deferred to prison officials' expertise in these matters. *Cf. Bell v. Wolfish*, 441 U.S. 520, 548 (1979) (recognizing that decisions affecting internal order and institutional security fall "peculiarly within the province and professional expertise of corrections officials," warranting judicial deference absent substantial contrary evidence). Most jurors have not lived or worked in a jail setting and may not understand the standards which govern officer presence, supervision, and monitoring within a large general population, so they will need an expert to explain to them what conduct and policies keep detainees safe and secure. Mr. Adee's extensive experience allows him to offer important context that will assist jurors in evaluating the claims at issue in this case, many of which involve allegations of deficient monitoring and supervision.

### B. Mr. Adee's "findings" are not legal conclusions and are reliable.

Defendants identify two opinions within Mr. Adee's report that they argue constitute improper legal conclusions. **First**, Mr. Adee opines that several supervisory personnel provided "inadequate supervision" which violated correctional standards of care and caused harm to Cory Merchant. *See* ECF 52-1, Adee Report at 21. Defendants argue this opinion improperly "instruct[s] the jury to disregard the law and find that Defendants caused harm to Merchant if Defendants violated Adee's version of the correctional standard of care." ECF 52 at 7-8. **Second,** Mr. Adee states that a reasonable and prudent jail administrator would ensure checks were conducted at least every 30 minutes on an irregular schedule. Defendants assert that this opinion amounts to Mr. Adee "creat[ing] his own standard of care" and lacks "support." Id. at 8-9.

10

### i. *Mr. Adee's opinions are not legal conclusions*

Mr. Adee does not instruct the jury on the law. Rather, he opines that Defendants' conduct was inadequate because it deviated from industry standards. Such is the precise purpose of a law enforcement expert. Defendants equate Mr. Adee's opinions about correctional standards to instructions on the law (ECF 52 at 8), but courts routinely find expert testimony admissible when the expert opines on departures from professional standards of conduct, so long as the expert does not render legal conclusions. *Jackson v. Catanzariti*, No. 6:12-CV-113, 2019 WL 2098991 (S.D. Ga. May 14, 2019) (collecting cases in which courts admitted judgments from experts about whether conduct conformed with *industry standards* and excluded opinions about whether conduct conformed with *the law*.). For example, in *Hannibal Buress v. City of Miami*, the court permitted a police practices expert to testify about whether an officer's conduct conformed to professional norms. No. 20-23078-Civ-Scola, 2025 WL 1918002, at *2 (S.D. Fla. July 10, 2025). While the expert could not speak on legal concepts, such as whether probable cause existed during an arrest, the court emphasized that testimony identifying departures from professional standards would assist the jury. *Id.*

Defendants provide no analysis that explains how Mr. Adee's opinions regarding deviations from correctional standards cross a threshold into inadmissible legal conclusions. ECF 52 at 8. That is because Mr. Adee does not offer legal conclusions; rather, he describes professional corrections standards and assesses whether the conduct at issue deviated from them, as the law allows him to do. Mr. Adee's analysis reflects well-founded professional judgment, informed by over 30

11

years of experience in correctional practices and reliance on a clear methodology that applies identified correctional standards and his professional experience to a thorough review and analysis of the record.

### ii. Mr. Adee's application of certain sources and his professional experience to this case's facts is not a basis for exclusion.

Defendants' argument that Mr. Adee has not sufficiently identified a reliable basis for his findings is difficult to reconcile with Defendants' own acknowledgment that Mr. Adee derives this standard from the U.S. Department of Justice's National Institute of Corrections, specifically the *Sheriff's Guide to Effective Jail Operations* and the *Resource Guide for Jail Administrators*. Defendants contend that, because Mr. Adee cites no additional sources beyond these DOJ materials, he should be precluded from testifying about this standard before the jury. ECF 52 at 8–9. But this misunderstands the role of expert testimony.

The DOJ standards that Mr. Adee references are just that—standards. They provide nationally recognized guidance that are sufficiently reliable to support an expert opinion, especially when used in conjunction with 32 years of professional experience and training. *See Jackson,* 2019 WL 2098991, at *11 (collecting cases). Moreover, Mr. Adee is not merely citing these materials or his own professional experience and training in passing—he demonstrates how he has applied them to the facts of this case. *See* ECF 52-1 at 9-21. His reliance on DOJ publications as well as his decades of experience as a correctional professional provides a sound basis for his opinions. These standards are nationally recognized, relevant to correctional practices, and help inform his opinion about what a reasonable jail administrator

12

would do under the circumstances. Whether Defendants prefer those standards to others is beside the point. *Daubert* sets a threshold for admissibility—not a determination of which industry standards are more persuasive than others.

Mr. Adee then applies those standards to the facts of this case as reflected in incident reports, inmate files, and other records created by the Marion County Sheriff's Office. His findings will help the jury assess whether the actions of the defendants and staff conformed to—or deviated from—professional standards that are likely unfamiliar to a layperson. *See Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1110 (11th Cir. 2005) ("By [the specialized knowledge] requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."). In short, Mr. Adee is doing precisely what Rule 702 permits: applying his specialized experience to analyze whether the conduct in question departed from accepted professional standards. His reliance on DOJ-issued guidance is not only appropriate but demonstrative of an applied methodology.

## IV.     Conclusion

Defendants have failed to provide this Court with grounds on which to exclude Mr. Adee's proposed expert testimony. Because Mr. Adee's testimony is relevant, reliable, and helpful to the jury in evaluating correctional staff conduct and procedures, Defendants' motion should be denied in full. **WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an order denying Defendants' Motion *in Limine* to Exclude the Testimony of Paul Adee.

Respectfully submitted,

/s/ Sam Harton
Sam Harton
Stephen H. Weil
ROMANUCCI & BLANDIN, LLC
321 N. Clark Street, Suite 900
Chicago IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
sharton@rblaw.net

James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

Attorneys for Plaintiffs

14