

PLAINTIFF'S
EXHIBIT

**10**

**TECHNICAL REPORT**

of the

**CORY MERCHANT INCIDENT**

Krysti Merchant, as Personal Representative for the Estate of Cory Merchant, Deceased

v.

Billy Woods, Sheriff of Marion County, Florida, in his official capacity; Deputy Justin Kosinski; Deputy Joseph Miller, Sergeant Jerome Dukes, et al.

RFI File: 24LL0261

Prepared by:

**Paul M. Adee, C.C.M., C.C.H.P.**

January 2, 2025



**CORY MERCHANT INCIDENT**

<u>**EXPERT'S REPORT**</u>                                                                                            <u>**JANUARY 2, 2025**</u>

## A.    INTRODUCTION

Mr. Cory Merchant (Merchant) was an inmate at the Marion County Jail (MCJ) in Ocala, Florida on 11/7/21. He was initially arrested on 11/8/19 for Lewd or Lascivious Behavior (Victim Aged 12-16); and subsequently had 2 additional charges filed on 1/27/20 for Sexual Assault by 24 years of age (YOA) Older Sexual Battery Victim 16 or 17 YOA and Lewd Lascivious Behavior Offender 18 YOA or Older Victim 12 YOA less 16 YOA.

Mr. Eric Lutterloah (Lutterloah) was also an inmate at the Marion County Jail in Ocala, Florida on 11/7/21. He was arrested on 6/4/20 for Armed Kidnapping and Sexual Battery Physical Force Not Likely to Cause Injury.

At the time of this incident Merchant and Lutterloah were being housed in G-Pod Section-A, together. During the early morning hours on 11/7/21, Lutterloah attacked Merchant by striking him and causing him to fall to the floor. Subsequently, Merchant was transported to the hospital where he died on 11/13/21 as a result of the injuries sustained during the attack by Lutterloah.

The scope of my investigation was to determine if the Marion County Sheriff's Office (MCSO), Sheriff Billy Woods, and the other named defendants complied with the Marion County Sheriff's Office Policies, Procedures, and Post Orders and the correctional standard of care regarding the care and treatment of Cory Merchant while in their custody.

My investigation into this matter and the preparation of this report was performed at the request of Sam Harton, Esq. of Romanucci and Blandin Law, LLC.

## B.    QUALIFICATIONS

I, Paul M. Adee, served 32 years as a correctional officer. I began my career as a correctional officer with the Winnebago County Sheriff's Office in Rockford, Illinois and ended my career as a major (division commander) with the Hillsborough County Sheriff's Office in Tampa, Florida. During that time, I served as a correctional officer/detention deputy; field training officer; detention supervisor as corporal, sergeant, and lieutenant; detention/corrections administrator as a captain and major. My assignments included correctional officer/pod deputy, assistant squad supervisor (corporal), squad supervisor (sergeant), detention training sergeant, shift commander(lieutenant), transportation bureau commander (lieutenant), judicial protection bureau commander (lieutenant), deputy division commander (captain), and division commander (major).



THE EXPERTS
**Robson Forensic**

As a correctional officer and detention deputy, I was trained in the proper protocol regarding the care, custody, and control of inmates. I was also trained to conduct well-being or wellness checks as required by policy, procedure, and established standards. As a correctional officer and detention deputy, I was responsible for conducting routine well-being checks and inspections of inmates and their living areas to ensure their health and welfare. As a field training officer and supervisor, I provided initial and ongoing training to subordinates regarding these same matters.

As a detention supervisor and commander assigned to the detention facilities, I provided oversight and supervision of deputies and supervisors in the proper care, custody, and control of inmates. I ensured subordinate personnel conducted adequate well-being checks of inmates in their charge and that they were managing the inmate living areas in accordance with established policy and standards. As a division commander, I also provided oversight of the classification unit which was responsible for initial and ongoing inmate classification processes. I have conducted and/or reviewed numerous investigations of alleged officer and/or inmate misconduct and recommended discipline when appropriate.

I hold a Bachelor of Arts degree in Criminal Justice from Saint Leo University and have successfully completed over 1,500 hours of basic, annual, and advanced training. I am a graduate of the University of Louisville Southern Police Institute Command Officer's Development Course. I am a Certified Correctional Health Professional (CCHP) through the National Commission on Correctional Health Care (NCCHC) and a Certified Correctional Manager (CCM) through the American Correctional Association (ACA).

My CV outlining my complete education, experience, and training is attached as Appendix 1.

The approach taken for the analysis of this investigation is based on reliable scientific reasoning and methodology which is accepted by the scientific community. My opinions are offered to within a reasonable degree of professional certainty relying on correctional principles and practices. My opinions are subject to change if additional information becomes available.

<u>Terms of Compensation</u>

The professional service fees Robson Forensic, Inc. charges for all tasks that I have undertaken in this case is currently $505 per hour, subject to change. To date Robson Forensic has billed approximately $15,150 for my work in this matter.

<u>Testimony as an Expert</u>

A document listing each of the occasions on which I have given expert testimony in the past 4 years is attached as Appendix 2.



Exhibits

I may use the following materials as exhibits to illustrate testimony: all references and documents cited in this report or listed as Materials Available for Review.

**C.    MATERIALS AVAILABLE FOR REVIEW**

Attached as Appendix 3.

**D.    EMPLOYEE BACKGROUND & MARION COUNTY SHERIFF'S OFFICE POLICIES, PROCEDURES, AND POST ORDERS**

Employee Background

Billy Woods was employed as the Sheriff of Marion County during the time that Cory Merchant was confined at the Marion County Jail at the time of this incident.

Jerome Dukes was employed as a Sergeant at the Marion County Jail by the Marion County Sheriff's Office during the time that Cory Merchant was confined therein at the time of this incident.

Justin Kosinski was employed as a Detention Deputy at the Marion County Jail by the Marion County Sheriff's Office during the time that Cory Merchant was confined therein at the time of this incident.

Dellun Miller was employed as a Detention Deputy at the Marion County Jail by the Marion County Sheriff's Office during the time that Cory Merchant was confined therein at the time of this incident.

Marion County Sheriff's Office Policies, Procedures, and Post Orders

Marion County Sheriff's Office **Policy 6011.00 Supervision of Inmates** – Jail, dated 4/13/23:[1]

- **Duty posts are located adjacent to inmate living areas to permit detention deputies to hear and respond promptly to emergency situations** and are staffed to provide full coverage of designated security posts, surveillance of inmates and performance of all ancillary functions. Each housing area has at least one certified detention deputy present at all times.
- **All high and medium security inmates are observed by a detention deputy as frequently as possible. More frequent observation is required for those inmates who are violent,** mentally disordered, suicidal, or who demonstrate unusual or bizarre behavior. Suicidal inmates housed alone are under continual observation.
- **All inmates will be visually checked every hour between 10:00 PM and 6:00 AM,** with the results recorded and maintained in the Daily Log of the Jail Management Computer System.

---

[1] Marion County Sheriff's Office Policy 6011.00 Supervision of Inmates – Jail, dated 4/13/23

**THE EXPERTS**
**Robson Forensic**

- A permanent log, recording routine, emergency and unusual situations shall be maintained in the jail's computer system.
- Procedures
    - The Jail Watch Commanders shall: **Conduct daily walk-through tours and inspections of housing units to gauge the temperament of the inmate population and ensure that both staff and inmates are adhering to Agency rules and regulations. An unannounced supervisor check will be documented in the daily pod log.**
    - The Sergeants shall: **Ensure that each pod detention deputy maintains a daily activity log by recording routine and emergency situations in the Daily Log in the jail's computer system.** Each shift shall prepare a daily shift activity report (Detention Supervisor Control Sheet) regarding all unusual occurrences for submittal to the Bureau Major through the chain of command. An unannounced supervisor check will be documented in the daily pod log when the sergeant makes his rounds.
- Inspections
    - **It is the responsibility of the supervisory staff to continuously assess inmate morale and the quality of care and supervision inmates receive.** Line supervisory staff will conduct a patrol of all areas of the facility on a shift basis, including weekends and holidays.
- General Supervision
    - **Detention deputies should vary their routines so that inmates cannot determine when their cell block or cells will be checked or inspected.**
    - All staff members shall monitor inmate movement to ensure the security and orderly running of the facility.

Marion County Sheriff's Office **Policy 6164.00 Headcount of Inmates**, dated 3/7/24:[2]

- Headcount of Inmates
    - **Night shift will conduct one (1) lock-down headcount.** The full "Lock-Down" count will be accomplished when all inmates are required to be immobilized and visually inspected.
- Definitions
    - **Lock-Down Headcount** - A headcount where all inmates stand for the count by their respective cell door or bunk. **After identification of the inmate, the inmates are secured in their cells or restricted to their bunks.**
- 6164.35 Security Checks
    - **When conducting a security check, all flashlights will be used sparingly, but with enough light thrown on the inmate to leave no doubt as to whether a human is actually in the bunk. The detention deputy must be certain of seeing flesh in all cases rather than counting an inmate on the basis of seeing any part of his/her clothing, hair or shoes.**
    - **All inmates will be visually checked every hour between the hours of 2300 and 0600,** unless they are involved in an outside program that precludes a personal check. Checks will be entered in the Daily Activity Log.

---

[2] Marion County Sheriff's Office Policy 6164.00 Headcount of Inmates, dated 3/7/24

Marion County Sheriff's Office **Post Order Post: Gulf Pod**, dated 1/8/19:[3]

- Purpose: The purpose of this Post Order is to outline the duties and responsibilities of those detention deputies assigned to the Gulf Pod post. This Post Order supersedes all previous Gulf Pod Post Orders and will not be changed without the approval of the Detention Bureau Chief or his/her designee.
- General Responsibilities
    - o 1. Maintain the security of the facility at all times.
    - o 2. Maintain vigilance of all inmates assigned to the unit.
    - o 3. Be thoroughly familiar with the Jail's emergency procedures.
    - o 4. Maintain a clean and orderly operation of the post during tour of duty.
- Specific Duties and Responsibilities
    - o 5. Conduct headcounts as follows:
        - ▪ b. An additional lockdown headcount will be conducted **as the inmates are locked-down each evening at 2200 hours**.
    - o 25. **Security checks will be accomplished every hour between the hours of 2200 to 0600**. These checks will be logged and maintained by the pod officer in the computers Daily Activity Log.

Marion County Sheriff's Office **Policy 6766.00 Classification of Inmates**, dated 3/14/24:[4]

- The policy of the Marion County Sheriff's Office is to segregate inmates housed in the Marion County Jail to ensure the safety and security of the individual inmates, as well as the smooth operation of the facility. The classification system evaluates the following:
    - o **History of assaultive behavior by reviewing current charges, past criminal conviction and institutional behavior.**
- Classifications personnel shall use the following data and techniques to determine special needs of the inmates:
    - o Criminal history
- SCREENING OF INMATES
    - o **Screening of inmates who are potentially vulnerable, and/or dangerous, or present a security risk shall include:**
        - ▪ **A review of the frequency, recentness and severity of both community and facility violent behavior by the inmate**.
        - ▪ **Inmates who are potentially vulnerable and/or aggressive will be housed according to their classification, and may need to be separated from other inmates**.
        - ▪ Sex Offenders, witnesses and LGBTQ inmates may need protection, and may need to be separated from other inmates.

---

[3] Marion County Sheriff's Office Post Order Post: Gulf Pod, dated 1/8/19
[4] Marion County Sheriff's Office Policy 6766.00 Classification of Inmates, dated 3/14/24

**THE EXPERTS**
# Robson Forensic

- Medium Security Levels- Includes inmates designated as Custody Levels 3 Medium High, 4 or 5. Inmates assigned to the medium security level will include sentenced misdemeanors and felons who do not qualify for minimum security and do not require a maximum level of security. In addition, inmates awaiting trial or sentencing and likely prison bound who do not require a maximum level of security will be placed in medium security. Medium High 3 inmates do not qualify for inmate worker status and may be limited to programs in their assigned housing area. Custody Levels 4 and 5 may qualify for inmate worker status and programs outside of their assigned housing area.
- Maximum Security Levels- Includes inmates designated as Custody Levels 1-High and 2-Close. **Inmates who are assigned to maximum security will be those who have been charged with serious assaultive felony crimes or have a history of assaultive felony violent convictions.** They also have other holds or detainers concerning such types of crimes or may be individuals who have displayed a significant disciplinary problem within the facility or display a need for a maximum amount of supervision and may have limited out of cell time. They will have limited access to programs that will be reviewed on a case by case basis. Maximum Security Inmates who are High Risk Security/Escape Risk will be placed in a solid red uniform and housed in confinement.

**E.      DESCRIPTION OF THE INCIDENT**

<u>Merchant / Lutterloah Charges, Classification, Housing Assignments</u>

Cory Merchant was arrested on 11/8/19 for Lewd or Lascivious Behavior (Victim Aged 12 -16); and subsequently had 2 additional charges filed on 1/27/20 for Sexual Assault by 24 YOA Older Sexual Battery Victim 16 or 17 YOA and Lewd Lascivious Behavior Offender 18 YOA or Older Victim 12Y less 16Y and booked into the Marion County Jail. According to MCJ documents, **Merchant's charge was considered a non-assaultive felony and he was classified as medium (5) (pre) security, which was on the low end of the medium security spectrum.**[5] Prior to 11/7/21, the date of Lutterloah's attack, Merchant had been assigned to G-Pod Section-A.[6]

Eric Lutterloah was arrested on 6/4/20 for Armed Kidnapping and Sexual Battery Physical Force Not Likely to Cause Injury.[7] According to MCJ documents, **Lutterloah's charges were considered assaultive felonies, and he had a previous history of sexual assault/battery in a prison or jail.**[8, 9] **He was classified as high medium (3)** security, which was on the high end of the medium security spectrum.[10] Despite this, Lutterloah was also assigned to G-Pod Section-A, along with Cory Merchant.[11]

---

[5] Marion County Sheriff's Office Inmate File re: Cory Merchant ID #A0092328 Booking #1900010514
[6] Marion County Sheriff's Office Incident Report #210005382 by Deputy Justin Kosinski, dated 11/7/21
[7] Marion County Sheriff's Office Probable Cause Affidavit Case #MCSO20OFF009528/2005110789 by Detective B. Burleson #5542, dated 5/12/20
[8] Marion County Sheriff's Office Inmate Classification Report re: Eric Lutterloah ID #A0070076 Booking #2000004904
[9] Marion County Sheriff's Office PREA Sexual Violence Screening Form re: Eric Lutterloah, dated 6/4/20
[10] Marion County Sheriff's Office Inmate File re: Eric Lutterloah ID#A0070076 Booking #2000004904
[11] Marion County Sheriff's Office Incident Report #210005382 by Deputy Justin Kosinski, dated 11/7/21

**THE EXPERTS**
**Robson Forensic**

Lutterloah Attack on Merchant

According to his incident report, Deputy Kosinski was alerted to an incident (i.e., man down) in G-Pod A-Section at approximately 0110 hours. Deputy Kosinski described the event as follows:

> "Upon review of the section cameras, it appears Inmate Cory Merchant and Inmate Eric Lutterloah where in a physical altercation. Inmate Lutterloah gets out of his assigned bed (G/Ax12) and confronts Inmate Merchant in between Bunks G/A X14 and 16. Inmate Lutterloah appears to strike Inmate Merchant several times, causing him to fall to the ground between bunks G/A128 and 129. When Inmate Merchant fell, he was no longer in view of the camera. Inmate Lutterloah appears to walk to his assigned bunk area, then walk back to Inmate Merchant a couple of times before sitting on his assigned bunk. Inmate Merchant is assigned to bunk G/A123B and was out of his assigned area when the disturbance started."[12]

Merchant was transported, via EMS, to Ocala Regional Medical Center for treatment.[13] Cory Merchant subsequently died as a result of the injuries he sustained in this attack. According to his Death Certificate, Cory Merchant died on 11/13/21 as a result of complications of blunt head trauma and assault with the manner of death listed as homicide.[14]

G-Pod Description

G-Pod was comprised of 4 sections (i.e., A, B, C, and D) that can house a total population of 256 inmates. It was operated as a podular remote supervision housing unit, that is, staff were not assigned or located directly inside of the inmate living areas (i.e., sections). Instead, they were located in a control room adjacent to the sections. The control room had a window and video surveillance monitors to aid staff in providing supervision of the inmate population.[15]

G-Pod Security Checks

According to Marion County Sheriff's Office policy, procedure and post orders, staff were only required to conduct security checks between the hours of 2200-0600 or 2300-0600 hours, depending upon which policy, procedure or post order you were following, as they contradicted each other.[16, 17, 18]

According to the Marion County Sheriff's Office Daily Log for G-Pod on 11/7/21, Deputy Kosinski completed two separate security checks immediately prior to Lutterloah's attack on Merchant as follows:

---

[12] Marion County Sheriff's Office Incident Report #210005382 by Deputy Justin Kosinski, dated 11/7/21
[13] Marion County Sheriff's Office Supplemental Incident Report #210005382 by Sergeant Jerome Dukes, dated 11/7/21
[14] State of Florida Bureau of Vital Statistics Certification of Death re: Cory Merchant, dated 11/23/21
[15] Marion County Jail Staff Analysis by CRS Incorporated, dated 4/24/19
[16] Marion County Sheriff's Office Policy 6011.00 Supervision of Inmates – Jail, dated 4/13/23
[17] Marion County Sheriff's Office Policy 6164.00 Headcount of Inmates, dated 3/7/24
[18] Marion County Sheriff's Office Post Order Post: Gulf Pod, dated 1/8/19



0100-0104 check logged on 11/7/21 at 0104 hours and 0100-0109 check logged on 11/7/21 at 0119 hours.[19]

**F.      ANALYSIS**

<u>Security/Well-being/Wellness Check Policies/Procedures/Post Orders</u>

Policies and procedures are the formal mechanisms which administrators use to communicate with staff. Policies and procedures are often utilized during internal and external investigations when determining if policies and procedures, along with statutory requirements, are being followed by the agency and/or whether they are followed by staff during specific instances. In either case, policies and procedures must be specific and non-contradictory, as vagueness and/or contradictions confuse staff members and oftentimes cause less than desirable outcomes. As identified by the U.S. Department of Justice, National Institute of Corrections:[20]

> Failure to direct - This is a failure in the obligation or affirmative duty to provide employees written directives in the form of policies and procedures or other such **directives that clearly limit and outline the duties and responsibilities of staff** at each level of administration.

One of the core functions of a jail or correctional facility is to ensure the safety and well-being of the people who are committed therein. This is accomplished by staff conducting wellness/well-being/security checks, within designated time frames and on an irregular schedule, of the inmate population. These checks are utilized for multiple purposes. They are used to ensure inmates are not engaging in self-harm, causing harm to others, where they are supposed to be, and not violating facility rules, etc. An adequate check of each offender should take between 5-10 seconds, as the officer should be observing the person's body to ensure that they are breathing by looking for their chest to rise and fall. Officers should also observe the inmate to ascertain if they are moving their limbs, head, or another body part that would indicate they are alive. If the inmate is standing and/or moving around inside of the cell or living area, the check may take slightly less time. As identified by the U.S. Department of Justice, National Institute of Corrections in the Sheriff's Guide to Effective Jail Operations:[21]

> Jail staff must be able to account for and assure the well-being of inmates at all times. This is accomplished through a system of inmate well-being checks and counts. **The presence of staff in inmate-occupied areas is the most effective means of assuring the well-being of inmates. Good practice dictates that all inmates in the general population be viewed by staff in person at least every 30 minutes on an irregular schedule.** Persons who are violent, mentally ill, intoxicated, or have other special problems warranting closer supervision require more frequent checks.

---

[19] Marion County Sheriff's Office Daily Logs Location: G, dated 10/7/21 – 11/7/21
[20] U.S. Department of Justice, National Institute of Corrections, Resource Guide for Jail Administrators, Mark D. Martin & Thomas A. Rosazza, 2004
[21] U.S. Department of Justice, National Institute of Corrections, Sheriff's Guide to Effective Jail Operations, Mark D. Martin & Paul Katsampes, D.P.A., 2007



As identified by the U.S. Department of Justice, National Institute of Corrections in the Resource Guide for Jail Administrators:[22]

> **Good practice dictates that all inmates in general population housing be viewed by staff in person at least every 30 minutes on an irregular schedule.** People who are violent, mentally ill, intoxicated, or have other special problems warranting closer supervision require more frequent checks or, in some cases, constant supervision. The jail should have an established method for documenting the time and results of well-being checks.

In this instance, the Marion County Sheriff's Office's policies, procedures, and post orders were inadequate as they **ONLY** required security (i.e., well-being or wellness) checks between the hours of 2200 – 0600 or 2300 – 0600, depending upon which policy or post order you were following as indicated below.

As identified in the Daily Log for G-Pod from 10/7/21 – 11/7/21, there were 203 "security checks" documented. 194 of the 203 security checks (i.e., 96%) began at the top of each hour between 2300 hours each night with the final check beginning at 0500 hours the following morning. For clarity, I have again provided the Marion County Sheriff's Office policies, procedures, and post orders that discuss security (i.e., well-being or wellness) checks on inmates are highlighted below.

**Policy 6011.00 Supervision of Inmates:[23]**

- All high and medium security inmates are observed by a detention deputy as frequently as possible. More frequent observation is required for those inmates who are violent.
- All inmates will be visually checked every hour between **10:00 PM and 6:00 AM.**
- **All high and medium security inmates are observed by a detention deputy as frequently as possible.** More frequent observation is required for those inmates who are violent, mentally disordered, suicidal, or who demonstrate unusual or bizarre behavior. Suicidal inmates housed alone are under continual observation.

**Policy 6164.00 Headcount of Inmates:[24]**

- 6164.35 Security Checks
  - When conducting a security check, all flashlights will be used sparingly, but with enough light thrown on the inmate to leave no doubt as to whether a human is actually in the bunk. **The detention deputy must be certain of seeing flesh in all cases rather than counting an inmate on the basis of seeing any part of his/her clothing, hair or shoes.**
  - **All inmates will be visually checked every hour between the hours of 2300 and 0600.**

---

[22] U.S. Department of Justice, National Institute of Corrections, Resource Guide for Jail Administrators, Mark D. Martin & Thomas A. Rosazza, 2004
[23] Marion County Sheriff's Office Policy 6011.00 Supervision of Inmates – Jail, dated 4/13/23
[24] Marion County Sheriff's Office Policy 6164.00 Headcount of Inmates, dated 3/7/24



**Post Order Post: Gulf Pod:**[25]

- Specific Duties and Responsibilities
  - **Security checks will be accomplished every hour between the hours of 2200 to 0600**. These checks will be logged and maintained by the pod officer in the computers Daily Activity Log.

The contradiction between policies and post orders, the fact that security/well-being/wellness checks were **not** required throughout the entire 24-hour cycle of each day, and the Marion County Sheriff's Office custom and practice of beginning security checks at the top of each hour, thereby making them extremely predictable, created a dangerous condition for Cory Merchant.

<u>Lockdown / Headcount</u>

Based on my experience, education and training, maintaining control of the inmate population is achieved through adequate supervision of the inmates and consistent enforcement of policies, procedures, and the inmate rules and regulations. Failure to adequately control the inmate population through consistent enforcement of these rules creates an environment wherein the inmates feel that they are free to behave in any manner they desire as staff do not care. As identified by the U.S. Department of Justice, National Institute of Corrections:[26]

> The fifth element of inmate behavior management (IBM) is **supervising inmates to hold them individually accountable for their behavior**. Staff presence in inmate-occupied areas and positive staff interaction with inmates will result in desired inmate behavior. Skills such as decision making, problem solving, communication, and motivation contribute to the effectiveness of this element.

In this instance, the Marion County Sheriff's Office Headcount Policy stated:[27]

- Headcount of Inmates
  - **Night shift will conduct one (1) lock-down headcount**. The full "Lock-Down" count will be accomplished when all inmates are required to be immobilized and visually inspected.
- Definitions
  - **Lock-Down Headcount - A headcount where all inmates stand for the count by their respective cell door or bunk. <u>After identification of the inmate, the inmates are secured in their cells or restricted to their bunks</u>**.

Furthermore, the Marion County Sheriff's Office Inmate Rules and Regulations Handbook stated:[28]

---

[25] Marion County Sheriff's Office Post Order Post: Gulf Pod, dated 1/8/19
[26] U.S. Department of Justice, National Institute of Corrections, Inmate Behavior Management: Guide to Meeting Basic Needs, 2014
[27] Marion County Sheriff's Office Policy 6164.00 Headcount of Inmates, dated 3/7/24
[28] Marion County Sheriff's Office Inmate Rules and Regulations Handbook, dated 12/2017



Lockdown - Each night at approximately 9:45 P.M., "Lockdown" will be announced by a Detention Deputy. By 10:00 P/M. you are ordered to stand by your assigned cell/bunk. The Detention Deputy's will conduct a headcount at this time and secure you in your cell. All cell lights must be off by 10:00 P.M. **Inmates in open bay housing are to be on their bunk by 10:00 P.M. No inmates are to get off their bunk during lockdown except to use the bathroom.** All lights will be turned off and excessive noise will not be tolerated. Lights are turned on at approximately 5:30 A.M. At this time, you are to get ready for breakfast with starts at approximately 6:00 A.M.

In this instance, Sergeant Dukes knew that deputies allowed inmates to remain off of their assigned bunks after lockdown in violation of policy, procedure and the inmate rules and regulations. According to Sergeant Dukes' testimony regarding what an officer was supposed to do when they observed an inmate off their bunk and chatting with another inmate at their bunk after lockdown, **"It is a judgement call by the deputy as to when to address an inmate who is at another inmate's bunk, talking after lockdown. When it becomes <u>excessive</u>, you address it and tell the inmate to get back to their bunk."**[29] Neither Sergeant Dukes, nor Deputies Kosinski or Miller, adequately enforced the "lockdown" rule by ensuring inmates were restricted to their bunks during lockdown hours. This created a dangerous condition for Cory Merchant.

<u>Classification of Inmates</u>

Based on my experience, education and training, adequate and proper classification of the inmate population is essential to the safety, security, and orderly running of a jail. There are several groups of people that should not be housed together (i.e., males and females, adults and juveniles, violent and non-violent, etc.). As identified by the U.S. Department of Justice, National Institute of Corrections:[30]

Regardless of a jail's size and complexity, its primary responsibility is to safely and securely detain all persons placed in its custody. Classification is an essential management tool for performing this function. By definition, classification is the process of placing things or people into groups according to some rational idea or plan. A good system of classifying inmates will reduce escapes and escape attempts, suicides and suicide attempts, inmate-on-inmate assaults, and the unnecessary incarceration of non-threatening persons. These outcomes conserve valuable resources by reducing expenditures for legal fees and court costs, overtime pay, and medical care.

Due to the diversity of the population, inmates are generally separated into broad categories. Most jurisdictions, for example, distinguish between pre-trial and sentenced inmates, adults and juveniles, and males and females. Many also categorize inmates by the amount of their bond if it is set by statute. **Numerous jails attempt to separate the violent from the non-violent** or those

---

[29] Deposition Transcript of Jerome Dukes, dated 9/12/24, pages 91-92
[30] U.S. Department of Justice National Institute of Corrections, Objective Jail Classification Systems: A Guide for Jail Administrators, James Austin Ph.D., 1998



charged with felonies from those charged with misdemeanors. In addition, some jurisdictions try to identify special management inmates (protective custody, suicide risk, etc.).

<u>A Housing Plan Consistent with the Classification System</u>

Each jail must ensure that it has a written housing plan for each housing unit. The function of a housing plan is to establish sufficient space at each custody level to accommodate housing the number of inmates assigned to each level. For example, minimum-custody inmates should be housed in a minimum-security unit (typically dorm type units). Medium-custody inmates should be housed in double cells or secure dorm units, and maximum-custody inmates should be housed in single-cell units.

In this instance, the Marion County Sheriff's Office placed all sex offenders, regardless of whether or not they were considered violent or non-violent, in the same living area (i.e., G-Pod A-Section). Eric Lutterloah's charges were considered assaultive felonies, and he had a previous history of sexual assault/battery in a prison or jail.[31, 32] He should have been separated and housed in a different area than non-violent offenders such as Cory Merchant, as his charge was considered a non-assaultive felony[33] and he did not have a history of violence. This violated their own Classification Policy which stated:[34]

- The policy of the Marion County Sheriff's Office is to segregate inmates housed in the Marion County Jail to ensure the safety and security of the individual inmates, as well as the smooth operation of the facility. The classification system evaluates the following:
  - o **History of assaultive behavior by reviewing current charges, past criminal conviction and institutional behavior.**
- SCREENING OF INMATES
  - o **Screening of inmates who are potentially vulnerable, and/or dangerous, or present a security risk shall include:**
    - **A review of the frequency, recentness and severity of both community and facility violent behavior by the inmate.**
    - **Inmates who are potentially vulnerable and/or aggressive will be housed according to their classification and may need to be separated from other inmates.**

This created a dangerous condition for Cory Merchant.

---

[31] Marion County Sheriff's Office Inmate Classification Report re: Eric Lutterloah ID #A0070076 Booking #2000004904
[32] Marion County Sheriff's Office PREA Sexual Violence Screening Form re: Eric Lutterloah, dated 6/4/20
[33] Marion County Sheriff's Office Inmate File re: Cory Merchant ID #A0092328 Booking #1900010514
[34] Marion County Sheriff's Office Policy 6766.00 Classification of Inmates, dated 3/14/24

**Robson Forensic** THE EXPERTS

<u>Prior Attacks on Cory Merchant</u>

Cory Merchant was the victim of two violent attacks within G-Pod A-Section prior to being attacked by Inmate Eric Lutterloah on 11/7/21. He was attacked by Inmate John McDowell on 3/24/20[35] and again on 6/29/20 by Inmate Walter Summers.[36] After each attack, Merchant was left in G-Pod A-Section where he would be looked at as someone who was weak and vulnerable. The Marion County Sheriff's Office had a duty and obligation to protect him from future attacks and they failed to do such. They could have, and should have, transferred Merchant to another pod for his own protection, but failed to do such. As identified by the U.S. Department of Justice, National Institute of Corrections:[37]

> **Safety needs: Protection from harm, including personal injuries resulting from assault** or unsafe environmental conditions. In the context of the jail, **this means ensuring that inmates do not victimize one another,** eliminating hazardous environmental conditions, and developing plans to ensure inmates' well-being during emergencies.

As identified in American Jails Magazine by author Hal Brotheim:[38]

> The government's obligation upon incarcerating a citizen, derived from the 8th and 14th Amendments of the U.S. Constitution, is to provide reasonable protection for that person. **Jails have a duty to take reasonable measures to guarantee inmates' safety from assault,** suicide, fires and other facility dangers, and preventable illness. **We are charged with preventing assault** and the excessive use of force as well as suicide and self-harm. We must respond to serious medical and mental health needs; and we must avoid unconstitutional conditions of confinement.

As identified by the American Bar Association in ABA Standards for Criminal Justice 3rd Edition Treatment of Prisoners:[39]

> **Correctional officials should implement procedures for identifying those prisoners who are particularly vulnerable to physical** or sexual **abuse,** manipulation, or psychologically harmful verbal abuse by other prisoners or by staff, **and for protecting these and other prisoners who request and need protection.**

This created a dangerous condition for Cory Merchant.

<u>G-Pod Level of Violence & Lack of Staff Supervision of the Inmates</u>

Based on my education, training, and experience working in and managing jail operations, it is my opinion that providing ongoing supervision and management of the inmate population is what minimizes the

---

[35] Marion County Sheriff's Office Incident Report #200001461 by Deputy Courtney Washington, dated 3/24/20
[36] Marion County Sheriff's Office Incident Report #200003047 by Deputy John Frye, dated 6/29/20
[37] U.S. Department of Justice, National Institute of Corrections, Resource Guide for Jail Administrators, Mark D. Martin & Thomas A. Rosazza, 2004
[38] American Jails Magazine, Transgender Inmates The Dilemma, Hal Brotheim, 2013
[39] American Bar Association Standards for Criminal Justice 3rd Edition: Treatment of Prisoners, 2011



number and frequency of inmate-on-inmate assaults, inmate-on-staff assaults, thefts, and other violations of facility rules. If staff are not in direct continuous contact with the inmates such as in this instance, and they are not conducting well-being, wellness, or security checks within 30-minute intervals, the inmates will manage themselves. Typically this will cause the number and frequency of inmate-on-inmate assaults, inmate-on-staff assaults, thefts, and various other violations of facility rules to increase. As identified by the U.S. Department of Justice, National Institute of Corrections:[40]

> **Given the importance of inmate behavior management in achieving safety and security, it may be viewed as the jail's core function and the jail administrator's primary concern.** You should consider all decisions regarding jail operations with respect to their impact on inmate behavior management.

> **Staff interaction with inmates has a clear purpose: to obtain positive inmate behavior, namely, compliance with jail rules to achieve the goals of the behavior management plan.** In this interaction, jail staff are in the role of supervisor.

> Several barriers can impede staff interaction with inmates and, therefore, supervision of inmates. These barriers include the following factors:

> - The physical plant.
> - Staffing levels.
> - Staff placement.
> - Staff behavior.
> - **The level of administrative commitment to staff interaction with inmates.**

> **Because supervision is dependent on staff interaction with inmates, the jail must develop strategies to decrease barriers between staff and inmates. Doing so will assist staff in establishing control over all areas of the jail. For example, <u>if the physical plant is a barrier to supervision and cannot be changed, the jail can increase supervision by changing expectations for the level and type of staff interaction with inmates.</u>**

> <u>Inmate Behavior Management: The Key to a Safe and Secure Jail</u>

> In the absence of staff management of inmate behavior, however, the emphasis on physically containing inmates failed to keep jails secure. **With inmates left to their own devices inside cellblocks, problems such as violence, vandalism, and lack of sanitation became so common that they seemed inherent to jails, which, along with communities, have paid dearly for these problems through costly litigation, staff and inmate deaths, jail riots and fires, and escapes.**

---

[40] U.S. Department of Justice, National Institute of Corrections, Resource Guide for Jail Administrators, Mark D. Martin & Thomas A. Rosazza, 2004

**THE EXPERTS**
**Robson Forensic**

Friday Night Fight Nights

Terry Place, who was an inmate at the Marion County Jail and assigned to G-Pod, stated the following as it related to the level of violence within G-Pod at the Marion County Jail: [41]

- Gulf-Alpha was extremely violent, and I constantly feared for my safety at the hands of other inmates and correctional staff.
- There is a pervasive culture of violence in the Marion County Jail.
- Lutterloah had an extremely violent reputation amongst the inmates and guards.
- On multiple occasions, I witnessed guards encourage Lutterloah to be violent towards other inmates, saying things to him like "take care of business, Lutterloah."
- Inmates in Gulf Pod were able to engage in physical violence against each other constantly without intervention from guards.
- On Friday nights in Gulf Pod, inmates would participate in "Friday Night Fight Night," in which at least two inmates, but often up to six inmates, would engage in physical and violent altercations.
- Guards usually not make any effort to stop Friday Night Fight Nights.
- Friday Night Fight Nights occurred most Fridays in Gulf Pod.
- The few times that I did witness guards address inmates engaging in Friday Night Fight Nights, they would only come into the pod, tell the inmates to stop, then leave.
- After the guards left the pod, inmates would continue fighting and would not receive any discipline.
- I only witnessed inmates getting punished for fighting in the jail after the fight had already escalated to the point that someone had to receive medical care.
- As a result of the pervasive violence throughout the jail, I witnessed several inmates receive broken noses and deep lacerations from other inmates prior to Cory Merchant's death.
- Violent altercations in Gulf-Alpha occurred approximately 4-5 times a week.
- At 10 p.m., the inmates are supposed to go on lockdown after the last headcount.
- During lockdown, the inmates are supposed to be in their bunks and not roaming around the dorm.
- Almost no officers at the Marion County Jail enforced lockdown.
- At approximately 10 p.m. on the night of Cory Merchant's death, Officers Miller and Ski did the final headcount of the night and put Gulf-Alpha on lockdown but did not enforce headcount throughout the night.

Steven Murphy, who was an inmate at the Marion County Jail and assigned to G-Pod, stated the following as it related to the level of violence within G-Pod at the Marion County Jail: [42]

- The Marion County Jail was extremely violent, with fights occurring on a daily basis.
- I knew Eric Lutterloah while I was in the Marion County Jail, and he was a visibly and obviously aggressive person.
- Eric Lutterloah tended to pick on others in his dorm who were smaller and weaker than him.

---

[41] Declaration of Terry Place, dated 10/26/23
[42] Declaration of Steven Murphy, dated 10/25/23

**THE EXPERTS**
**Robson Forensic**

- Eric Lutterloah would often pick fights by escalating a verbal altercation into a full on brawl.
- As a trustee, I was able to access the rover's area in which guards were stationed to surveil Gulf Pod.
- While in the rover's area of different pods, I witnessed guards exhibiting unprofessional behavior such as watching YouTube videos when they were supposed to be surveilling the dorms, and making fart noises over the intercom.
- Officers in the Marion County Jail often encourage fighting.
- On several occasions, I witnessed an inmate complain to a Marion County Jail guard about getting physically attacked by another inmate, then witnessed the guards respond by laughing.
- Gulf Pod had a reputation throughout the jail of being the most violent pod.
- Foxtrot also had a reputation of being extremely violent.

In this instance, based on the facts contained in 115 separate incident reports that originated from G-Pod and were dated between 2018 – 2021, the number of inmate-on-inmate fights, inmate-on-inmate assaults/batteries, inmate-on-inmate aggravated batteries, and deaths increased each year as follows:[43]

| 2017 | 2018 | 2019 | 2020 | 2021(*Thru 11/14/21) |
|------|------|------|------|----------------------|
| 4 | 11 | 22 | 45 | 41* (on pace for 47 by end of 2021) |

*(2020: 45 incidents in 12 months = 3.75 per month; 2021: 41 incidents in 10 ½ months = 3.90 per month = 47 per year)

The Marion County Sheriff's Office **did not** require well-being, wellness, or security checks within 30-minute intervals at all. They merely required hourly checks, and then, only during the nighttime lockdown hours (2200 or 2300 – 0600). **Face-to-face supervision of the inmate population was virtually non-existent, which allowed for the level of physical violence to exponentially increase year-after-year as previously outlined.**

Based on the G-Pod Daily Log for the time frame 10/7/21 – 11/7/21, when Deputies Kosinski and Miller entered G-Pod to conduct their hourly security checks of the 4 inmate living sections containing 256 inmates, 89% (i.e., 51 of 57) and 96% (i.e., 49 of 51) of the security checks, respectively, were conducted within 9 minutes or less. Furthermore, Deputies Kosinski and Miller conducted their hourly security checks in 7 minutes or less 75% (i.e., 43 of 57) and 94% (i.e., 48 of 51) of the time, respectively. These are woefully inadequate timeframes to check 256 inmates in 4 separate living areas. On average, when viewing each inmate for 5 seconds, it should take approximately 21 minutes to complete well-being, wellness, or security check of 256 inmates. This does not include the deputy's routine observations, inspection of the physical plant, and interactions with inmates while walking through each area.

Jail administrators should be continuously analyzing facility operations, to include the level of violence therein. This is not a complicated process, as administrators have access to all reports generated by staff.

---

[43] Marion County Sheriff's Office Incident Reports (115), dated 2018 - 2021

As identified by the U.S. Department of Justice, National Institute of Corrections in the Resource Guide for Jail Administrators:[44]

> The jail's operations and programs should be monitored regularly through a process of internal inspections and reviews. **An internal monitoring system provides timely observation and assessment of critical jail functions and helps the jail administrator stay informed about programs, activities, and problems in the jail. It can reveal how well the facility is complying with policies and procedures, standards, and other legal requirements. It also provides a means to determine if the jail is meeting its goals and helps to identify areas needing change.**

As identified by the U.S. Department of Justice, National Institute of Corrections in the Sheriff's Guide to Effective Jail Operations:[45]

> The sheriff has a responsibility to provide a safe jail setting for staff, inmates, and others who visit or use the facility. **The primary goal of safety in the jail is to protect inmates, staff, and the public from harm. <u>This goal is achieved through the identification and management of risks to the safety and well-being of jail occupants and the community.</u> These risks include not only those unique to the jail environment, such as inmate assaults or violence,** but also risks inherent in any residential and work setting (e.g., accidents, disease, natural disaster).

In this instance, during the review of said reports, the administrator should have taken notice of the increasing number of inmate-on-inmate assaults, batteries, and fights year after year. They could have and should have enacted a solution to counter the increased level of violence by mandating that staff conduct additional "security" checks throughout the entire 24 hours of each day within 30 minute intervals at varied times. Not only would this have reduced the level of violence, but it would also have conformed with the standard of care.

The lack of inmate supervision by the Marion County Sheriff's Office, and Deputies Kosinski and Dellun Miller, created a dangerous condition for Cory Merchant.

Supervisory Oversight

Effective supervision is critically important to the efficient and effective operation of a jail. Supervisors are responsible for the direct supervision and oversight of subordinate personnel and the areas assigned to them. Supervision is an ongoing process whereby the supervisor has regular, frequent interaction with their subordinates. They observe, ask questions, elicit feedback, and take an active approach in the employees' growth and development. They must also ensure that subordinate personnel complete all tasks as required and monitor the quality of their work.

---

[44] U.S. Department of Justice, National Institute of Corrections, Resource Guide for Jail Administrators, Mark D. Martin & Thomas A. Rosazza, 2004
[45] U.S. Department of Justice, National Institute of Corrections, Sheriff's Guide to Effective Jail Operations, Mark D. Martin & Paul Katsampes, D.P.A., 2007



Supervisors also have an obligation to take an active role in the supervision of the inmates that their subordinates are responsible for. They must have that same regular frequent interaction with the inmates. This provides the inmates with an opportunity to be heard, whether they are lodging a complaint, asking a question, or merely looking to have a conversation with the supervisor. This type of supervisory engagement, with employees and inmates, sets the stage for open communication by breaking down any perceived barriers. As identified by the U.S. Department of Justice, National Institute of Corrections:[46]

> Jail functions that should be monitored:
>
> - **General Security: Shift supervisors observe security practices during daily patrol.**
> - **Jail Log: Shift supervisors review and sign off on jail log daily.**
> - **Well-being Checks & Counts: Administrator, or designee, observe and review logs weekly.**

> Failure to supervise - This is a failure in the obligation or affirmative duty to provide ongoing supervision and direction to staff. In addition to training and directing staff (through written policy and procedures) at all levels, you must guide, coach, correct, and monitor them on a continuing basis to meet the duty to supervise. Jail administrators too often direct and train employees but then leave them unsupervised.

As identified by the U.S. Department of Justice, National Institute of Corrections:[47]

> A core part of the shift supervisor's duties is to visit various posts throughout the shift. These visits are essential to the supervisor's knowledge of what is taking place throughout the jail, managing the shift, assessing staff performance, and providing coaching and support to individual staff.

In this instance, Sergeant Dukes and the Marion County Sheriff's Office failed to provide adequate supervision of their employees and the inmates in their charge. Sergeant Dukes testified that he would walk through all the sections within the course of his hours, but he would only address the inmates (i.e., interact, take questions from, etc.) in one section of the pod.[48] Thereby, ignoring the remaining inmates located in the other three sections of the pod. It is unknown how much time Sergeant Dukes or any other supervisor spent in G-Pod as the Daily Log only captured the time each supervisor entered the pod, and not the time they departed.

Sergeant Dukes knew that the deputies he was responsible for supervising conducted security checks at the top of each hour, as he testified, he believed Deputy Kosinski was conducting a security check in another section when Merchant was attacked by Lutterloah. Sergeant Dukes testified, "According to the time, he's doing – they're doing a security check. Because how close it is to the – the 1:00 as far as the

---

[46] U.S. Department of Justice, National Institute of Corrections, Resource Guide for Jail Administrators, Mark D. Martin & Thomas A. Rosazza, 2004
[47] U.S. Department of Justice, National Institute of Corrections, Direct Supervision Jails the Role of the Administrator, David Bogard, Virginia A. Hutchinson, Vicci Persons, 2010
[48] Deposition Transcript of Jerome Dukes, dated 9/12/24, page 125

**Robson Forensic** THE EXPERTS

one – the – the – the hourly check."[49] Sergeant Dukes should have corrected Deputies Kosinski and Miller by advising them that good practice and the standard of care dictates that security checks be staggered or conducted at irregular intervals.

Additionally, had Sergeant Dukes, or any other supervisor or administrator from the Marion County Sheriff's Office actually reviewed the surveillance video of the security checks or analyzed the amount of time that it took their staff to conduct a security check of 4 different sections that held 256 inmates, they would have identified that the security checks were inadequate in timing and form. As previously indicated, Sergeant Dukes also knew that deputies were not following policy and procedures by allowing inmates to remain off of their bunks after lockdown.

The failure of Sergeant Dukes and the Marion County Sheriff's Office to provide adequate supervision of their employees and inmates created a dangerous condition for Cory Merchant.

*(The remainder of this page was left blank intentionally.)*

---

[49] Deposition Transcript of Jerome Dukes, dated 9/12/24, pages 136-138

**THE EXPERTS**
**Robson Forensic**

### G.    FINDINGS

Within the bounds of reasonable professional certainty, and subject to change if additional information becomes available, it is my professional opinion that:

1. The Marion County Sheriff's Office failed to provide a safe environment for the inmates in their care. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

2. The Marion County Sheriff's Office Policies, Procedures, and Post Orders regarding the observation (i.e., well-being/wellness/security checks) of inmates were contradictory, non-comprehensive (i.e., failed to require said checks to be conducted 24 hours per day), and inadequate. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

3. The Marion County Sheriff's Office had a custom and practice of conducting well-being/wellness/security checks on a predictable schedule. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

4. The Marion County Sheriff's Office had a custom and practice of conducting inadequate well-being/wellness/security checks in timing and form (i.e., length of time actually observing inmates). This was in violation of the correctional standard of care and caused harm to Cory Merchant.

5. The Marion County Sheriff's Office provided inadequate supervision of its employees. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

6. The Marion County Sheriff's Office provided inadequate supervision of the inmates in their care. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

7. The Marion County Sheriff's Office Policies and Procedures regarding inmate classification and housing plan were inadequate. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

8. The Marion County Sheriff's Office failed to adequately protect Cory Merchant, a non-violent inmate, from Eric Lutterloah, a violent inmate. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

9. Sergeant Jerome Dukes provided inadequate supervision of Deputies Justin Kosinski and Dellun Miller. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

10. Sergeant Jerome Dukes provided inadequate supervision of the inmates in his care. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

11. Deputy Justin Kosinski provided inadequate supervision of the inmates in his care. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

**Robson Forensic** THE EXPERTS

12. Deputy Dellun Miller provided inadequate supervision of the inmates in his care. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

13. Deputy Justin Kosinski conducted inadequate well-being/wellness/security checks in timing, form, and on a predictable schedule. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

14. Deputy Dellun Miller conducted inadequate well-being/wellness/security checks in timing, form, and on a predictable schedule. This was in violation of the correctional standard of care and caused harm to Cory Merchant.

Paul M. Adee, C.C.M., C.C.H.P.

**THE EXPERTS**
**Robson Forensic**

Appendix 1
CV of Paul M. Adee, C.C.M., C.C.H.P.



# THE EXPERTS
# Robson Forensic

PAUL M. ADEE, CCM, CCHP
Police Practices, Security, and Corrections Expert

**PROFESSIONAL EXPERIENCE**

2022 to
Present

**Robson Forensic, Inc.**
*Associate*
Provide technical investigations, analysis, reports, and testimony toward the resolution of personal injury litigation and failure analysis related to police practices and corrections and jail related incidents. Police, corrections, and jail procedures expertise includes duties and responsibilities of correctional officers/detention deputies, supervisors, correctional facilities, and jails including:

- Use of force
- In-custody Death: suicide, restraint asphyxia, withdrawal, overdose, trauma
- Inmate medical assessments: physical, mental health, detoxification
- Prisoner transportation - state and federal prisoners
- Emergency vehicle operation
- Jail security
- Observation of inmates
- Search protocols: inmate, cell or building, vehicle
- Inmate classification
  - General population
  - Restrictive housing: disciplinary, administrative
  - Gender classification
  - Adult and juvenile
  - Inmate worker (Trusty)
- Restraint procedures
- Internal investigations
- Policies and procedures
- Law enforcement and Detention training
- Field training protocols
- Jail inspections and consulting
- Firearms
- Less lethal weapons: Taser, O.C.
- Premises security: courthouse and office buildings, operational plans, access control, surveillance
- Food service
- Hiring practices

**THE EXPERTS**
# Robson Forensic

### PAUL M. ADEE, CCM, CCHP
#### Police Practices, Security, and Corrections Expert

| | |
|---|---|
| 1991 to 2021 | **Hillsborough County Sheriff's Office** |

*Major/Division Commander – Court Operations Division*                    *2019 & 2020-2021*

Provided leadership, management, and supervision for as many as 200 employees (sworn and civilian) and contractors.

- Responsible for overall security at five courthouse facilities and the County Administration building
- Managed and conducted security and threat protocol training for staff
- Reviewed all critical incidents to identify and remediate deficiencies in policies, procedures, and actions
- Managed civil process to ensure all was served in accordance with state statute
- Implemented active shooter training for all county employees and personnel within the administrative offices of the court
- Implemented concurrent security and health screening protocols for access to courthouse, county center, state attorneys, and public defender's facilities during Covid-19 pandemic
- Managed complex personnel, criminal, and use of force investigations
- Reviewed all operational plans regarding high profile or high-risk trials and hearings
- Conducted employee pre-disciplinary hearings
- Reviewed all employee performance evaluations
- Reviewed all allegations of inmate or staff misconduct
- Developed and implemented security plans and crowd control protocols during mass demonstrations at the courthouse and county center

*Major/Division Commander–Training Division*                    *2019-2020*

Provided leadership, management, and supervision for 40+ employees (sworn and civilian) of the division and all incoming law enforcement and detention recruits.

- Managed all aspects of the recruit training program for law enforcement and detention deputies
- Managed all aspects, to include approving and implementing lesson plans, of annual in-service training for law enforcement and detention deputies
- Managed the preparation and administration of promotional testing and assessment center operations and evaluations
- Managed the selection and implementation of body worn cameras
- Developed and implemented annual training for civilian personnel
- Ensured appropriate policies and protocols were in place to track, inventory, and manage lethal and less than lethal weapons
- Ensured appropriate policies and procedures were in place to track and manage the status of sworn staff member's certifications

# Robson Forensic
### THE EXPERTS

## PAUL M. ADEE, CCM, CCHP
### Police Practices, Security, and Corrections Expert

*Major / Division Commander – Jail Division 2*                    *2018-2019*
Provided leadership, management, and supervision for 300+ employees (sworn and civilian).
- Developed and implemented policies to ensure the safe, secure, efficient, and effective day-to-day operations of the Falkenburg Road Jail which housed up to 3,300 inmates
- Reviewed use of force investigations to ensure compliance with agency policies
- Conducted after action debriefings for line level and supervisory staff related to use of force and other significant events
- Reviewed allegations of inmate or staff misconduct
- Assumed deputy job responsibilities including conducting facility operations while maintaining contact with inmate population

*Major/Division Commander – Jail Division 1*                    *2017-2018*
Provided leadership, management, and supervision for 225+ employees (sworn and civilian).
- Developed and implemented policies to ensure the safe, secure, efficient, and effective day-to-day operations of the Orient Road Jail which housed up to 1,700 inmates
- Reviewed use of force investigations to ensure compliance with agency policies
- Conducted employee pre-disciplinary hearings
- Conducted after action debriefings for line level and supervisory staff related to use of force and other significant events
- Assumed deputy job responsibilities including conducting facility operations while maintaining contact with inmate population

*Major / Division Commander – Jail Division 3 (Support Services)*                    *2013-2017*
Provided leadership, management, and supervision for 200+ employees and contractors.
- Identified quality of care issues with a primary medical care provider
- Drafted Request for Proposal (RFP) for comprehensive inmate healthcare
- Evaluated, selected, negotiated with, and managed $24 million dollar budget and agreement for medical vendor that provided comprehensive inmate healthcare
- Reviewed electronic medical records and databases to ensure vendor compliance with agreement, policies, and provider's orders
- Investigated inmate deaths and other instances of potential litigation involving inmate medical care and correctional operations
- Ensured National Commission on Correctional Health Care (NCCHC) standards were met by medical vendor
- Implemented protocols for detoxing new inmates to minimize potential health risks
- Identified and implemented enhanced staffing of the mental health team and medical staff
- Managed $3+ million food service agreement and vendor which was responsible for producing over 3.25 million meals annually
- Managed in-house laundry facility that laundered more than 2 million pounds of laundry annually
- Managed inmate commissary agreement
- Managed inmate telecommunications and visitation agreement from an operational standpoint

**THE EXPERTS**
# Robson Forensic

### PAUL M. ADEE, CCM, CCHP
### Police Practices, Security, and Corrections Expert

- Managed the transportation of our inmates throughout the state of Florida, to include court hearings, medical appointments, and transfers to other jurisdictions (90k inmates and 500k miles travelled annually)
- Reviewed use of force investigations to ensure compliance with agency policies
- Reviewed and approved security clearances for contract staff

*Captain/Deputy Division Commander – Jail Division 2*            *2010-2013*
- Provided leadership, management, and direct supervision to 13 direct reports and indirect supervision to a total staff of 450 employees.
- Responsible for the day-to-day operations of the Falkenburg Road Jail which housed up to 3,300 inmates
- Developed and implemented processes to ensure staff adherence to policies and procedures
- Analyzed systems to evaluate and improve operational efficiency
- Developed and implemented new processes to provide direct support to staff members following critical incidents
- Assumed deputy job responsibilities including conducting facility operations while maintaining contact with inmate population
- Reviewed use of force investigations to ensure compliance with agency policies
- Reviewed all incident reports
- Reviewed allegations of inmate or staff misconduct

*Lieutenant/Bureau Commander–Judicial Protection Bureau*            *2009-2010*
Provided leadership, management, and supervision for 125 employees.
- Ensured each courtroom had the appropriate staffing levels
- Conducted and reviewed use of force investigations to ensure compliance with agency policies
- Conducted and reviewed allegations of inmate or staff misconduct
- Conducted security assessments
- Developed security protocols for courtroom and staff
- Recommended building modifications to enhance security
- Developed and conducted courtroom security training
- Managed all aspects of inmate and prisoner movement
- Supervised personnel during critical incidents
- Developed proposal for Sheriff's Office to take over courthouse and county center security
- Led transition of courthouse and county center security to Sheriff's Office

*Lieutenant/Section Commander – Transportation Section*            *2008-2009*
Provided leadership, management, and supervision for 60 employees.
- Conducted and reviewed use of force investigations to ensure compliance with agency policies
- Managed a fleet of more than 50 vehicles
- Developed operational plans for transportation of high-risk inmates
- Provided vision and direction to ensure safe, efficient, and secure transport of inmates
- Reviewed and updated policies and procedures regarding transportation of inmates

# Robson Forensic
### THE EXPERTS

### PAUL M. ADEE, CCM, CCHP
### Police Practices, Security, and Corrections Expert

- Developed and implemented strategic plan with County Code Enforcement Director to provide manpower for Sheriff's Jail Work Crew Program for county clean-up projects
- Reviewed traffic crash investigations
- Prepared and reviewed employee performance evaluations for direct report and indirect report employees

*Lieutenant/Shift Commander – Jail Division 2*                                    *2007-2008*
Provided leadership, management, and supervision for 115 employees at the Falkenburg Road Jail.
- Conducted and reviewed use of force investigations to ensure compliance with agency policies
- Conducted and reviewed allegations of inmate or staff misconduct
- Supervised staff for adherence to agency policies and procedures
- Supervised inmates for adherence to established rules and regulations
- Served as facility Field Training Coordinator overseeing the field training program
- Reviewed all field training reports
- Developed remedial training plans for trainees and tenured employees
- Reviewed inmate disciplinary sanctions
- Reviewed incident reports
- Provided training, guidance, and direction to staff
- Supervised personnel during critical incidents
- Conducted debriefings and training for personnel after critical incidents
- Conducted inspections of jail facilities, personnel, and inmates
- Ensured facility was properly staffed

*Sergeant/Detention Training Coordinator – Training Division*                      *2005-2007*
Provided leadership, management, and supervision for 6 employees.
- Developed, reviewed, and approved instructor lesson plans for sworn and civilian employees
- Provided instruction to students
- Instructor certifications – general topics, firearms, Taser
- Developed training schedules for 1,700 sworn and civilian employees
- Conducted supervisory oversight of instructors for quality assurance purposes
- Conducted investigations of alleged staff misconduct
- Prepared employee performance evaluations
- Conducted supervisory oversight (1:1) for an employee enrolled in the Performance Improvement Program
- Provided guidance to civilian support personnel regarding adequacy and importance of maintaining accurate training records

# Robson Forensic
**THE EXPERTS**

### PAUL M. ADEE, CCM, CCHP
### Police Practices, Security, and Corrections Expert

*Sergeant/Squad Supervisor – Jail Division 1*     *2001-2005*
Provided leadership, management, and supervision for 15 employees.
- Conducted and reviewed use of force investigations to ensure compliance with agency policies
- Provided direct supervision and support to subordinate personnel
- Conducted investigations of alleged inmate or staff misconduct
- Conducted facility and personnel inspections
- Conducted inmate disciplinary hearings
- Responded to inmate complaints and grievances
- Implemented and monitored employee staffing levels
- Supervised personnel during critical incidents
- Provided coaching and counseling to employees and inmates
- Supervised inmate headcounts
- Provided input regarding inmate classification
- Conducted daily rounds of all inmates living areas under my command
- Conducted jail inspections throughout the state of Florida
- Served as a Field Training Supervisor
- Reviewed field training reports
- Developed remedial training plans

*Corporal/Assistant Squad Supervisor – Jail Division 1*   *1996-2001*
Provided leadership, management, and supervision for 8 employees; and assisted the squad supervisor.
- Conducted use of force investigations to ensure compliance with agency policies
- Provided direct supervision and support to subordinate personnel
- Conducted investigations of alleged inmate or staff misconduct
- Conducted facility and personnel inspections
- Conducted inmate disciplinary hearings
- Responded to inmate complaints and grievances
- Supervised personnel during critical incidents
- Provided coaching and counseling to employees and inmates
- Supervised inmate headcounts
- Conducted daily rounds of all inmates living areas under my command
- Served as a Field Training Supervisor
- Developed remedial training plans
- Provided input regarding inmate classification
- Conducted jail inspections throughout the state of Florida

# THE EXPERTS
# Robson Forensic

## PAUL M. ADEE, CCM, CCHP
## Police Practices, Security, and Corrections Expert

*Deputy - Jail Division 1*                                                      *1991-1996*
Provided direct supervision for 72 inmates within the inmate living area (pod).
- Provided security within pod
- Conducted cell, bunk, and pod inspections
- Conducted inmate feeding and laundry exchange
- Distributed inmate canteen
- Distributed inmate mail (personal and legal)
- Supervised medication distribution
- Provided answers to questions and complaints
- Provided hygiene items and cleaning supplies
- Investigated inmate misconduct
- Provided input regarding inmate classification

1995 to    **United States Marshalls Service**
1999       *Part-time Guard*
           Provided armed/unarmed security for Deputy United States Marshall's while transporting
           prisoners and providing supervision of same while attending court proceedings.

1990       **American Red Cross Homeless Shelter**
           *Security Guard*
           Ensured the safety and security of staff members and 75 residents.
           - Proactively addressed potential security issues
           - Enforced shelter rules
           - Resolved conflict
           - Deterred criminal activity
           - Conducted searches

1989 to    **Kmart/Sears**
1990       *Loss Prevention Specialist*
           Responsible for enforcing loss prevention policies and procedures to safeguard company assets,
           minimize theft and reduce shortages and fraud. Monitored inventory and conducted audits and
           investigations.

1988 to    **Winnebago County Sheriff's Office**
1990       *Correctional Officer*
           Responsible for the day-to-day care, custody, and control of up to 350 inmates.
           - Maintained strict adherence to all rules and regulations
           - Provided inmate meals, clothing, bedding, toiletries
           - Inspected inmate living areas
           - Investigated inmate misconduct
           - Completed incident reports
           - Restrained inmates when necessary and appropriate

**THE EXPERTS**
# Robson Forensic

### PAUL M. ADEE, CCM, CCHP
### Police Practices, Security, and Corrections Expert

| | |
|---|---|
| 1984 to 1988 | **United States Navy – USS Puget Sound** |
| | *Watch Section Supervisor (E4)* |

Managed the radio communications on the USS Puget Sound for my squad/shift. Held Top Secret Security clearance. Supervised and cultivated a team of up to six sailors ranking from E1 to E4. Honorably discharged.

- Recognized with a Meritorious Unit Commendation and two Sea Service Ribbons, and Good Conduct Award

## PROFESSIONAL CREDENTIALS

Certified Correctional Officer, Florida
Certified Correctional Health Professional, National Commission on Correctional Health Care
Certified Corrections Manager, American Correctional Association

## EDUCATION

B.A., Criminal Justice, Saint Leo University, Saint Leo, Florida, 2011

## CONTINUING EDUCATION

National Commission on Correctional Health Care National Conference, October 2023
- An In-Depth Review of NCCHC's Standards for Health Services in Jails and Prisons
- Suicide Screening and Assessment: 10 Key Issues and Controversies
- Constitutional Requirements for Correctional Behavioral Health
- Deposition Basics: Expect Challenges, Avoid Pitfalls
- Words Matter: Defend Litigation with Good Records
- Mock Deposition Preparation for Your Health Care Provider
- Litigation Lessons: Defensive Patience for Difficult Patients
- The Anatomy of a Correctional Health Care Lawsuit and Beyond

American Correctional Association 2023 Winter Conference, January 2023
- Current Drug Trends: National Threat Assessment
- Ohio's Quality Assurance of Transportation Practices: Basics Approach in Evaluating
- Transportation Protocols and Best Practices
- The Crossroads of Criminal Justice, Academia and Medicine: How Three Professions Intersect to Reduce Recidivism of Incarceration
- Continuum of Care in the Virginia Department of Corrections to Reduce Placement of Vulnerable Population in RHU
- Beyond Good and Evil: Inside the Mind of the Psychopath
- Tracking Sentinel Events Online and Reporting Daily Call Using Online Sentinel Event Log

# THE EXPERTS
# Robson Forensic

### PAUL M. ADEE, CCM, CCHP
### Police Practices, Security, and Corrections Expert

Virtual Winter Conference on Correctional Health Care, December 2022
- Prostate Cancer Update for Corrections
- A Winning Record: Exploring the Role of Medical Records in Litigation
- Improve Patient Engagement and Utilization through Cultural Responsiveness
- Safety and Security in the Dental Clinic
- Building Resiliency to Cope with Occupational Stress
- The Care and Management of Transgender, Gender-Dysphoric, and Intersex People
- Culture Shift: Establishing a Near Miss Reporting System in a Major Correctional Facility
- The Connection Between Human Trafficking and Corrections: Effective Interventions
- Suicide Prevention

Leadership Challenges During the 2020 Civil Unrest in Portland, FLETC, 2021
Recognizing Head Injuries in Infants & Children, Florida Department of Law
    Enforcement, 2021
Rescue Task Force, Hillsborough County Sheriff's Office, 2020
Helping Employees Through Crisis, Hillsborough County Sheriff's Office, 2020
Duty to Act, Hillsborough County Sheriff's Office, 2020
Personal Protective Equipment, Hillsborough County Sheriff's Office, 2020
Suicide Awareness, Hillsborough County Sheriff's Office, 2020
Human Trafficking, Florida Department of Law Enforcement, 2020
Narcan Roll Call for Law Enforcement, Hillsborough County Sheriff's Office, 2019
Saving Lives by Understanding the Threat, Hillsborough County Sheriff's Office, 2019
Suicide by Cop, Police Executive Research Forum, 2019
Tourniquet Application Review, Hillsborough County Sheriff's Office, 2019
Autism and Law Enforcement, Hillsborough County Sheriff's Office, 2019
Autism, Hillsborough County Sheriff's Office, 2017
Diabetic Emergency and Officer Response, Hillsborough County Sheriff's Office, 2016
Physiological Response Dynamics Training, Hillsborough County Sheriff's Office, 2016
One Breath: The importance of Recognizing Agonal & Other Breathing Problems,
    Institute for the Prevention of In-custody Deaths Inc., 2016
Ethics, Hillsborough County Sheriff's Office, 2013
Discriminatory Profiling & Traffic Stops, Hillsborough County Sheriff's Office, 2013
Mentally Ill & Ethics Video, Hillsborough County Sheriff's Office, 2011
Field Force Command and Planning for Executives, FEMA, 2011
First Responder, Hillsborough County Sheriff's Office, 2010
Court Security, Public Agency Training Council, 20 hours, 2010
Physical Security, Hillsborough County Sheriff's Office, 2009
Command Officer's Development Course, University of Louisville, Southern Police
    Institute, 400 hours, 2008
Taser M26 Advanced and X26 Instructor, Hillsborough Community College, 2007
Human Trafficking, Florida Coalition Against Human Trafficking, 2007
The Bulletproof Mind, St. Petersburg College, 2006
Instructor Workshop, Hillsborough Community College, 2006

# THE EXPERTS
# Robson Forensic

## PAUL M. ADEE, CCM, CCHP
### Police Practices, Security, and Corrections Expert

Terrorism: The Israeli Experience, Hillsborough County Sheriff's Office, 2006
The Middle Eastern Mindset, Hillsborough County Sheriff's Office, 2006
Use of Force, Hillsborough County Sheriff's Office, 2005
Agency Instructor Certification, St. Petersburg College, 2006
Taser X26, Hillsborough County Sheriff's Office, 2006
CMS Instructor Techniques, Hillsborough Community College, 80 hours, 2005
Criminal Justice Instructor's Conference, Florida Department of Law Enforcement,
    2005
ICS 100 Incident Command System Introduction, FEMA, 2005
ICS 700 National Incident Management System (NIMS) Introduction, FEMA, 2005
Building and Maintaining a Sound Behavioral Climate, Hillsborough Community College, 2005
Special FTO Liabilities, University of North Florida, 2004
AED, Hillsborough County Sheriff's Office, 2004
Leadership Training, Hillsborough County Sheriff's Office, 2003
Florida Jail Services Inspector, Florida Association of Counties, 2003
Positive Leadership, Hillsborough County Sheriff's Office, 2002
Terrorism Operational Response, St. Petersburg College, 2002
Hepatitis, Law Enforcement Training Network, 2002
Mental Preparedness, Law Enforcement Training Network, 2002
Sexual Misconduct, Law Enforcement Training Network, 2002
Sexual Abuse, Hillsborough County Sheriff's Office, 2002
Professionalism, Law Enforcement Training Network, 2001
Basic First Aid Parts 1 & 2, Law Enforcement Training Network, 2000
Cultural Diversity Parts 1,2,3 & 5, Law Enforcement Training Network, 2000
Sexual Harassment 1, Law Enforcement Training Network, 2000, 2001
Florida Jail Inspector, Florida Association of Counties, 40 hours, 1998
Career Development Middle Management, Hillsborough County Sheriff's Office, 1998
Bloodborne Pathogens, Hillsborough County Sheriff's Office, 1997, 1999, 2000, 2001, 2013
First Aid, Hillsborough County Sheriff's Office, 1997, 2000
Domestic Violence, Hillsborough County Sheriff's Office, 1996, 2004
Jail Field Training Officer, Hillsborough County Sheriff's Office, 1995
Oleoresin Capsicum (OC) Certification, Hillsborough County Sheriff's Office, 1995, 2005
Fire, Safety and Sanitation Officer, Hillsborough County Sheriff's Office, 1995
Defensive Tactics, Hillsborough County Sheriff's Office, 1994, 1995, 1997, 1999, 2000, 2001, 2002,
    2004, 2005
CPR, Hillsborough County Sheriff's Office, 1994, 1997, 1999, 2001, 2003, 2004
Human Diversity, Hillsborough County Sheriff's Office, 1993, 1994, 1998, 2000, 2004, 2007
Line Supervision, Hillsborough County Sheriff's Office, 1992
Jail Suicide Prevention, Northwest Illinois Criminal Justice Commission, 1990
FBI State Certified Firearms Instructor, Northwest Illinois Criminal Justice Commission, 1989
Report Writing, Northwest Illinois Criminal Justice Commission, 1989
Self Defense Refresher, Northwest Illinois Criminal Justice Commission, 1988
AIDS Info Seminar, Northwest Illinois Criminal Justice Commission, 1988

# THE EXPERTS
# Robson Forensic

PAUL M. ADEE, CCM, CCHP
Police Practices, Security, and Corrections Expert

**PROFESSIONAL MEMBERSHIPS**

American Correctional Association, member
ASIS International, member
International Association of Police Chiefs, member
American Jail Association, member
Optimist Club of Tampa, member

Appendix 2
Testimony History of Paul M. Adee, C.C.M., C.C.H.P.

Paul Adee
History of Expert Testimony by Deposition or Trial

| Date | Case Name and Description |
|------|---------------------------|
| 9/11/23 | Estate of Nicolette Tanya Eugenua French, et al. v. Moseley Architects, P.C. and Moseley Architects of South Carolina, P.C., et al. Case No.: 2021-CP-26-06200 Court of Common Pleas of Horry County, South Carolina; *Deposition* |
| 8/13/24 | Joshua Brown v. Gail Watts, Emanual Okome, Ashley Ehirim, Correctional Officer Idowu, Correctional Officer King, Correctional Officer Langford, Correctional Officer Rice, Correctional Officer Oakley Case No.: 21-CV-02248-DLB United States District Court for the District of Maryland; *Deposition* |

**THE EXPERTS**
**Robson Forensic**

Appendix 3
Materials Available for Review



24LL0261 Harton-Merchant

Case Materials Available for Review

Appendix 3

**Documents**

1. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661-JSM-PRL First Amended Complaint, dated 12/8/23
2. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant, Billy Woods' Answers to Interrogatories
3. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant, Dellun Miller's Answers to Interrogatories
4. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant, Justin Kosinski's Answers to Interrogatories
5. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant Jerome Dukes Answers to Interrogatories
6. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant Sheriff, Billy Woods' Answer and Affirmative Defenses to Plaintiff's Amended Complaint, dated 12/22/23
7. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant Deputy, Jerome Dukes' Answer and Affirmative Defenses to Plaintiff's Amended Complaint, dated 12/22/23
8. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant, Dellun Miller's, Answer and Affirmative Defenses to Plaintiff's Amended Complaint, dated 12/22/23
9. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant, Justin Kosinski's, Answer and Affirmative Defenses to Plaintiff's Amended Complaint, dated 12/22/23
10. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant Sheriff Billy Woods' Objections to Plaintiff's First Request for Production, dated 4/1/24
11. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant, Billy Woods Responses to Plaintiff's Request for Production, dated 4/1/24
12. United States District Court Middle District of Florida Ocala Division Case No. 5:23-cv-00661 Defendant, Billy Woods Responses to Plaintiff's Third Request for Production, dated
13. Fed. R. Civ. P. 30(B)(6) Rider Marion County, undated
14. Marion County Jail Staff Analysis by CRS Incorporated, dated 4/24/19
15. Marion County Jail Personnel Distribution, 2016 - 2021
16. Marion County Sheriff's Office Operations Directive 6050.00 Post Orders, dated 2/23/17
17. Marion County Sheriff's Office Operations Directive 6136.00 Detention Training, dated 2/23/17
18. Marion County Sheriff's Office Operations Directive 6633.00 Inmate Grievance and Request Procedures, dated 12/13/21

19. Marion County Sheriff's Office Operations Directive 6006.00 Staff Communications – Jail, dated 2/23/17
20. Marion County Sheriff's Office Operations Directive 4700.00 Unusual Occurrences, dated 2/10/17
21. Marion County Sheriff's Office Operations Directive 6013.00 Incident Reports, dated 2/23/17
22. Marion County Sheriff's Office Operations Directive 6540.00 Jail Medical Facility, dated 2/13/17
23. Marion County Sheriff's Office Operations Directive 6315.00 Critical Incident Debriefing – Jail, dated 2/23/17
24. Marion County Sheriff's Office Policy 3041.00 Duty Assignment – Hours of Work, dated 2/23/17
25. Marion County Sheriff's Office Policy 3350.00 Discipline Policy, dated 7/21/21
26. Marion County Sheriff's Office Policy 6091.00 Employee Regulations – Jail, dated 10/30/18
27. Marion County Sheriff's Office Policy 6630.00 Special Management Inmates, dated 2/14/17
28. Marion County Sheriff's Office Policy 6631.00 Juvenile Detention, dated 10/30/18
29. Marion County Sheriff's Office Policy 6633.00 Inmate Grievance and Request Procedures, dated 12/13/21
30. Marion County Sheriff's Office Policy 3036.00 Personnel Injury and Disability, dated 1/2/19
31. Marion County Sheriff's Office Policy 6314.00 Mass Arrest, Jail Procedures, dated 2/23/17
32. Marion County Sheriff's Office Policy 6011.00 Supervision of Inmates – Jail, dated 4/13/23
33. Marion County Sheriff's Office Policy 6766.00 Classification of Inmates, dated 3/14/24
34. Marion County Sheriff's Office Policy 6012.00 Facility Reports, dated 3/27/18
35. Marion County Sheriff's Office Policy 6164.00 Headcount of Inmates, dated 3/7/24
36. Marion County Sheriff's Office Policy 6723.00 Orientation of Inmates, dated 12/14/22
37. Marion County Sheriff's Office Policy 6322.00 Jail Housekeeping Plan, dated 2/23/17
38. Marion County Sheriff's Office Policy 3030.00 Personnel Management, dated 10/25/21
39. Marion County Sheriff's Office Policy 6729.00 Inmate Gain Time, dated 2/17/17
40. Marion County Sheriff's Office Policy 6570.00 Notification in the Event of Injury, Serious Illness or Death, dated 2/14/20
41. Marion County Sheriff's Office Policy 6330.00 Security and Control, General, dated 2/6/24
42. Marion County Sheriff's Office Policy6721.00 Intake and Booking Procedures, dated 2/6/24
43. Marion County Sheriff's Office Post Order Post: Alpha Control, dated 6/26/19
44. Marion County Sheriff's Office Post Order Post: Alpha Pod, dated 9/11/18
45. Marion County Sheriff's Office Post Order Post: Alpha/Echo, dated 8/31/23
46. Marion County Sheriff's Office Post Order Post: Bravo Control, dated 12/19/14
47. Marion County Sheriff's Office Post Order Post: Bravo Alpha (Step-Down Unit), dated 7/2/19
48. Marion County Sheriff's Office Post Order Post: Charlie Control, dated 3/31/06
49. Marion County Sheriff's Office Post Order Post: Charlie Pod, dated 1/8/19
50. Marion County Sheriff's Office Post Order Post: Delta Control, dated 6/29/19
51. Marion County Sheriff's Office Post Order Post: Delta Pod, dated 6/19/19
52. Marion County Sheriff's Office Post Order Post: Echo Pod, dated 5/12/12
53. Marion County Sheriff's Office Post Order Post: Echo/Foxtrot Control, dated 1/3/05
54. Marion County Sheriff's Office Post Order Post: Foxtrot Pod, dated 6/21/19
55. Marion County Sheriff's Office Post Order Post: Gulf Pod, dated 1/8/19

56. Marion County Sheriff's Office Post Order Post: Hotel Pod, dated 1/8/19
57. Marion County Sheriff's Office Post Order Post: Intake Control, dated 8/24/10
58. Marion County Sheriff's Office Post Order Post: Master Control, dated 6/25/19
59. Marion County Sheriff's Office Booking & Release Internal Manual, dated 2/28/24
60. Official Minutes of Marion County Board of County Commissioners (Pl Merchant 0001-1473)
61. Report on Suicide Prevention Practices Within the Marion County Jail by Lindsay M. Hayes, dated 11/10/18 (Pl Merchant 1474-1517)
62. PREA Facility Audit Report: Final, dated 1/2/22 (Pl Merchant 1518-1633)
63. Marion County Sheriff's Office Detention Bureau Annual Report 2022 (Pl Merchant 2544-2563)
64. Marion County Crime Statistics (Pl Merchant 1634-1635)
65. Marion County Sheriff's Office Analysis of Security and Operational Functions Report by Nancy A. DeFerrari, CJM and Lieutenant Chris Vorisek, dated 10/15/18 (Pl Merchant 1636-1672)
66. Marion County Sheriff's Office Inmate Rules and Regulations Handbook, dated 12/2017 (Pl Merchant 1673-1701)
67. Marion County Sheriff's Office Inmate Rules and Regulations Handbook, dated 6/2024
68. Florida Model Jail Standards, dated 11/14/22 (Pl Merchant 1702-1793)
69. Official Minutes of Marion County Board of County Commissioners (Pl Merchant 1794-1797)
70. Letter from Cathy Wyckoff to Marion County Commissioners, dated 3/22/19 (Pl Merchant 1798-1801)
71. Emailed Public Record Requests (Pl Merchant 1802-1813)
72. Handwritten Note, dated 11/16/18 (Pl Merchant 1814)
73. Official Minutes of Marion County Board of County Commissioners (Pl Merchant 1815-1818)
74. Letter from Timothy McCourt to Cathy Wyckoff, dated 3/6/19 (Pl Merchant 1819)
75. Report on Suicide Prevention Practices Within the Marion County Jail by Lindsay M. Hayes, dated 11/10/18 (Pl Merchant 1820-1863)
76. Email from Cathy Wyckoff to Tim McCourt, Williams Woods and others re: Inmate Violence in the Marion County Jail Investigation, dated 9/25/23 (Pl Merchant 1864-1866)
77. Marion County Sheriff's Office Job Descriptions, dated 2/22/23 (Pl Merchant 1867-1874)
78. Cathy Wyckoff Communications with Marion County Sheriff's Office (Pl Merchant 1875-1897)
79. EMS Call Logs dated 1/1/17-9/25/23 (Pl Merchant 1898-1916)
80. FDLE Internal Investigation Report re: Jerome Dukes, dated 10/13/16 (Pl Merchant 1917-1922)
81. Marion County Sheriff's Office Citizen Comment/Complaint Report re: Corporal Jerome Dukes, dated 9/25/16 (Pl Merchant 1928-1933)
82. FOIA Request and Response (Pl Merchant 1934-1947)
83. Marion County Sheriff's Office Incident Report #16000961 by Deputy Gregory Spicher, dated 2/25/16
84. Marion County Sheriff's Office Incident Report #16002104 by Deputy Ronald Palmer, dated 5/21/16
85. Marion County Sheriff's Office Incident Report #16002520 by Deputy Robert Regan, dated 6/20/16
86. Marion County Sheriff's Office Incident Report #16004360 by Deputy Jordan Leon-Sanchez, dated 10/15/16
87. Marion County Sheriff's Office Incident Report #17000773 by Deputy Alan Drake, dated 2/16/17 (Pl Merchant 1962-1977)

88. Marion County Sheriff's Office Incident Report #17004822(01) by Detective Rhonda Stroup, dated 2/16/17 (Pl Merchant 1978-1982)

89. Marion County Sheriff's Office Incident Report #17005302 by Deputy Justin Kosinski, dated 11/25/17 (Pl Merchant 1983-1985)

90. Marion County Sheriff's Office Incident Report #17032302(01) by Detective Rhonda Stroup, dated 11/25/17 (Pl Merchant 1986-1990)

91. Marion County Sheriff's Office Incident Report #18006531(01) by Detective Rhonda Stroup, dated 3/3/18 (Pl Merchant 1991-1994)

92. Marion County Sheriff's Office Incident Report #18015700(01) by Detective Rhonda Stroup, dated 6/12/18 (Pl Merchant 1995-1999)

93. Marion County Sheriff's Office Incident Report #18018460(03) by Detective Nathan McLain, dated 7/24/18 (Pl Merchant 2000-2006)

94. Marion County Sheriff's Office Incident Report #18022684(01) by Detective Nathan McLain, dated 8/24/18 (Pl Merchant 2007-2010)

95. Marion County Sheriff's Office Incident Report #19013548(04) by Detective Nathan McLain, dated 5/15/19 (1952-1960)

96. Marion County Sheriff's Office Incident Report #190002112 by Deputy Howard Cromwell, dated 5/17/19

97. Marion County Sheriff's Office Incident Report #190002339 by Deputy Andrew Yacuzzo, dated 6/1/19

98. Marion County Sheriff's Office Incident Report #190002533 by Deputy Jason Lester, dated 6/15/19

99. Marion County Sheriff's Office Incident Report #19018702(01) by Detective Nathan McLain, dated 7/10/19 (Pl Merchant 2011-2014)

100. Marion County Sheriff's Office Incident Report #190004880 by Deputy Andrew Yacuzzo, dated 11/12/19

101. Marion County Sheriff's Office Incident Report #200001425 by Deputy Tyler Adams, dated 3/21/20 (Pl Merchant 2015-2017)

102. Marion County Sheriff's Office Incident Report #200001461 by Deputy Courtney Washington, dated 3/24/20

103. Marion County Sheriff's Office Incident Report #200003047 by Deputy John Frye, dated 6/29/20

104. Marion County Sheriff's Office Incident Report #200003926 by Deputy Sandra Denardis, dated 8/29/20

105. Marion County Sheriff's Office Incident Report #210002232 by Deputy Jarrod Henson, dated 5/7/21

106. Marion County Sheriff's Office Incident Report #210002252 by Deputy Kristofer Valdez, dated 5/8/21

107. Marion County Sheriff's Office Incident Report #210002303 by Deputy Didier Canelle, dated 5/11/21

108. Marion County Sheriff's Office Incident Report #210003128 by Deputy Andrew Yacuzzo, dated 6/27/21

109. Marion County Sheriff's Office Incident Report #210003457 by Deputy Shawn Prince, dated 7/16/21

110. Marion County Sheriff's Office Incident Report #210004010 by Deputy Justin Enchautequi, date 8/19/21
111. Marion County Sheriff's Office Incident Report #210005261 by Deputy Samaryon Wyman, dated 11/1/21
112. Marion County Sheriff's Office Incident Report #210005382 by Deputy Justin Kosinski, dated 11/7/21
113. Marion County Sheriff's Office Incident Report #18000682 by Deputy Christopher Turner, dated 2/12/18 (Pl Merchant 2018-2022)
114. Marion County Sheriff's Office Incident Report #18001025 by Deputy Christopher Turner, dated 3/3/18 (Pl Merchant 2023-2024)
115. Marion County Sheriff's Office Incident Report #180002178 by Deputy Devon McCarthy, dated 5/9/18 (Pl Merchant 2025-2027)
116. Marion County Sheriff's Office Incident Report #180002853 by Deputy Andrew Yacuzzo, dated 6/12/18 (Pl Merchant 2028)
117. Marion County Sheriff's Office Incident Report #180004140 by Deputy Zachary Welch, dated 8/22/18 (Pl Merchant 2029-2030)
118. Marion County Sheriff's Office Incident Report #180005050 by Deputy Zachary Welch, dated 10/8/18 (Pl Merchant 2031)
119. Marion County Sheriff's Office Incident Report #180006476 by Deputy Kristofer Valdez, dated 12/26/18 (Pl Merchant 2032-2033)
120. Marion County Sheriff's Office Incident Report #190001098 by Deputy Brandon Dowels, dated 3/12/19 (Pl Merchant 2034-2038)
121. Marion County Sheriff's Office Incident Report #190002664 by Deputy Shaquille Thomas, dated 6/23/19 (Pl Merchant 2039-2041)
122. Marion County Sheriff's Office Incident Report #190003159 by Deputy Cory Schweitzer, dated 7/25/19 (Pl Merchant 2042-2043)
123. Marion County Sheriff's Office Incident Report #190003469 by Deputy Cody Liss, dated 8/15/19 (Pl Merchant 2044-2045)
124. Marion County Sheriff's Office Incident Report #190003958 by Richard Zimmerman, dated 9/16/19 (Pl Merchant 2046-2048)
125. Marion County Sheriff's Office Incident Report #190004802 by Deputy Robert Regan, dated 11/8/19 (Pl Merchant 2049)
126. Marion County Sheriff's Office Incident Report #190004893 by Deputy Jacqueline Johnson-Cabrera, dated 11/9/19 (Pl Merchant 2050)
127. Marion County Sheriff's Office Incident Report #190004955 by Deputy Robert Regan, dated 11/17/19 (Pl Merchant 2051)
128. Marion County Sheriff's Office Incident Report #190004991 by Deputy Xavier McMiller, dated 11/19/19 (Pl Merchant 2052-2054)
129. Marion County Sheriff's Office Incident Report #190004999 by Deputy Gregory Spicher Jr., dated 11/19/19 (Pl Merchant 2055)
130. Marion County Sheriff's Office Incident Report #190005006 by Deputy Errol James, dated 11/19/19 (Pl Merchant 2056-2057)
131. Marion County Sheriff's Office Incident Report #190005038 by Deputy Samaryon Wyman, dated 11/20/19 (Pl Merchant 2058)

132. Marion County Sheriff's Office Incident Report #190005068 by Deputy Cory Schweitzer, dated 11/22/19 (Pl Merchant 2059)

133. Marion County Sheriff's Office Incident Report #190005203 by Deputy Samaryon Wyman, dated 11/30/19 (Pl Merchant 2060)

134. Marion County Sheriff's Office Incident Report #190005235 by Deputy Xavier McMiller, dated 12/2/19 (Pl Merchant 2061-2062)

135. Marion County Sheriff's Office Incident Report #190005589 by Deputy William Arias, dated 12/19/19 (Pl Merchant 2063)

136. Marion County Sheriff's Office Incident Report #190005710 by Deputy Samaryon Wyman, dated 12/28/19 (Pl Merchant 2064)

137. Marion County Sheriff's Office Incident Report #190005742 by Deputy Robert Regan, dated 12/29/19 (Pl Merchant 2065-2066)

138. Marion County Sheriff's Office Incident Report #200000116 by Deputy Samaryon Wyman, dated 1/7/20 (Pl Merchant 2067)

139. Marion County Sheriff's Office Incident Report #200000204 by Deputy Tammy Counts, dated 1/12/20 (Pl Merchant 2068-2069)

140. Marion County Sheriff's Office Incident Report #200000206 by Deputy Justin Kosinski, dated 1/13/20 (Pl Merchant 2070)

141. Marion County Sheriff's Office Incident Report #200000217 by Deputy Justin Kosinski, dated 1/13/20 (Pl Merchant 2071)

142. Marion County Sheriff's Office Incident Report #200000312 by Deputy Xavier McMiller, dated 1/18/20 (Pl Merchant 2072-2074)

143. Marion County Sheriff's Office Incident Report #200000381 by Deputy Darryl Keaton, dated 1/21/20 (Pl Merchant 2075-2077)

144. Marion County Sheriff's Office Incident Report #200000482 by Deputy Samaryon Wyman, dated 1/26/20 (Pl Merchant 2078)

145. Marion County Sheriff's Office Incident Report #200000531 by Deputy Isai Palau, dated 1/29/20 (Pl Merchant 2079)

146. Marion County Sheriff's Office Incident Report #200001092 by Deputy Justin Kosinski, dated 3/1/20 (Pl Merchant 2080-2081)

147. Marion County Sheriff's Office Incident Report #200001102 by Deputy Xavier McMiller, dated 3/2/20 (Pl Merchant 2082-2083)

148. Marion County Sheriff's Office Incident Report #200001122 by Deputy Tyler Adams, dated 3/3/20 (Pl Merchant 2084-2085)

149. Marion County Sheriff's Office Incident Report #200001383 by Deputy Cory Schweitzer, dated 3/19/20 (Pl Merchant 2086-2087)

150. Marion County Sheriff's Office Incident Report #200001514 by Deputy Justin Kosinski, dated 3/27/20 (Pl Merchant 2088-2089)

151. Marion County Sheriff's Office Incident Report #200001520 by Deputy Jarred Bryant, dated 3/28/20 (Pl Merchant 2090-2092)

152. Marion County Sheriff's Office Incident Report #200001761 by Deputy Xavier McMiller, dated 4/10/20 (Pl Merchant 2093-2094)

153. Marion County Sheriff's Office Incident Report #200001983 by Deputy Zachary Linder, dated 4/24/20 (Pl Merchant 2095-2096)

154. Marion County Sheriff's Office Incident Report #200002227 by Deputy Dylan Roberts, dated 5/9/20 (PI Merchant 2097-2099)

155. Marion County Sheriff's Office Incident Report #200002383 by Deputy Cory Schweitzer, dated 5/19/20 (PI Merchant 2100-2102)

156. Marion County Sheriff's Office Incident Report #200002773 by Deputy Justin Kosinski, dated 6/11/20 (PI Merchant 2103-2105)

157. Marion County Sheriff's Office Incident Report #200002806 by Deputy John Frye, dated 6/12/20 (PI Merchant 2106-2108)

158. Marion County Sheriff's Office Incident Report #200002867 by Deputy Samaryon, dated 6/17/20 (PI Merchant 2109-2110)

159. Marion County Sheriff's Office Incident Report #200002944 by Deputy Edwin Rushing, dated 6/21/20 (PI Merchant 2111)

160. Marion County Sheriff's Office Incident Report #200003138 by Deputy Jared Davis, dated 7/6/20 (PI Merchant 2112-2115)

161. Marion County Sheriff's Office Incident Report #200003191 by Deputy John Frye, dated 7/10/20 (PI Merchant 2116-2117)

162. Marion County Sheriff's Office Incident Report #200003208 by Deputy John Frye, dated 7/11/20 (PI Merchant 2118)

163. Marion County Sheriff's Office Incident Report #200003212 by Deputy Samaryon Wyman, dated 7/12/20 (PI Merchant 2119-2121)

164. Marion County Sheriff's Office Incident Report #200003301 by Deputy Errol James, dated 7/17/20 (PI Merchant 2122)

165. Marion County Sheriff's Office Incident Report #200003411 by Deputy Jared Davis, dated 7/25/20 (PI Merchant 2123-2124)

166. Marion County Sheriff's Office Incident Report #200003561 by Deputy Dylan Roberts, dated 8/3/20 (PI Merchant 2125-2127)

167. Marion County Sheriff's Office Incident Report #200003572 by Deputy Samaryon Wyman, dated 8/3/20 (PI Merchant 2128-2131)

168. Marion County Sheriff's Office Incident Report #200003610 by Deputy Errol James, dated 8/6/20 (PI Merchant 2132)

169. Marion County Sheriff's Office Incident Report #200003726 by Deputy Laura Vogt, dated 8/15/20 (PI Merchant 2133-2134)

170. Marion County Sheriff's Office Incident Report #200004079 by Deputy Tammy Counts, dated 9/10/20 (PI Merchant 2135-2136)

171. Marion County Sheriff's Office Incident Report #200004097 by Deputy Justin Kosinski, dated 9/12/20 (PI Merchant 2137-2139)

172. Marion County Sheriff's Office Incident Report #200004218 by Deputy Samaryon Wyman, dated 9/19/20 (PI Merchant 2140-2141)

173. Marion County Sheriff's Office Incident Report #200004254 by Deputy Xavier McMiller, dated 9/21/20 (PI Merchant 2142)

174. Marion County Sheriff's Office Incident Report #200004421 by Deputy Samaryon Wyman, dated 10/2/20 (PI Merchant 2143-2144)

175. Marion County Sheriff's Office Incident Report #200005052 by Deputy Errol James, dated 11/12/20 (PI Merchant 2145)

176. Marion County Sheriff's Office Incident Report #200005190 by Deputy Xavier McMiller, dated
     11/21/20 (PI Merchant 2146-2148)
177. Marion County Sheriff's Office Incident Report #200005240 by Deputy Cory Schweitzer, dated
     11/25/20 (PI Merchant 2149-2150)
178. Marion County Sheriff's Office Incident Report #200005255 by Deputy Justin Kosinski, dated
     11/25/20 (PI Merchant 2151-2153)
179. Marion County Sheriff's Office Incident Report #200005448 by Xavier McMiller, dated 12/9/20
     (PI Merchant 2154-2158)
180. Marion County Sheriff's Office Incident Report #200005468 by Deputy James Errol, dated
     12/10/20 (PI Merchant 2159)
181. Marion County Sheriff's Office Incident Report #210000047 by Deputy Xavier McMiller, dated
     1/3/21 (PI Merchant 2160-2161)
182. Marion County Sheriff's Office Incident Report #210000051 by Deputy Xavier McMiller, dated
     1/4/21 (PI Merchant 2162)
183. Marion County Sheriff's Office Incident Report #210000181 by Deputy Errol James, dated
     1/11/21 (PI Merchant 2163)
184. Marion County Sheriff's Office Incident Report #210000322 by Deputy John Frye, dated
     1/18/21 (PI Merchant 2164-2166)
185. Marion County Sheriff's Office Incident Report #210000346 by Deputy Darryl Keaton, dated
     1/19/21 (PI Merchant 2167-2168)
186. Marion County Sheriff's Office Incident Report #210000568 by Deputy Xavier McMiller, dated
     2/1/21 (PI Merchant 2169-2172)
187. Marion County Sheriff's Office Incident Report #210000741 by Deputy Samaryon Wyman,
     dated 2/10/21 (PI Merchant 2173)
188. Marion County Sheriff's Office Incident Report #210000789 by Deputy Errol James, dated
     2/13/21 (PI Merchant 2174)
189. Marion County Sheriff's Office Incident Report #210000860 by Deputy Tyler Adams, dated
     2/16/21 (PI Merchant 2175-2176)
190. Marion County Sheriff's Office Incident Report #210000992 by Deputy Joe Phillips, dated
     2/25/21 (PI Merchant 2177)
191. Marion County Sheriff's Office Incident Report #210001008 by Deputy Xavier McMiller, dated
     2/27/21 (PI Merchant 2178-2182)
192. Marion County Sheriff's Office Incident Report #210001075 by Deputy Tyler Adams, dated
     3/2/21 (PI Merchant 2183-2185)
193. Marion County Sheriff's Office Incident Report #210001120 by Deputy Xavier McMiller, dated
     3/5/21 (PI Merchant 2186-2188)
194. Marion County Sheriff's Office Incident Report #210001623 by Deputy Dellun Miller, dated
     3/31/21 (PI Merchant 2189-2197)
195. Marion County Sheriff's Office Incident Report #210001675 by Deputy Tyler Adams, dated
     4/3/21 (PI Merchant 2198-2199)
196. Marion County Sheriff's Office Incident Report #210001947 by Deputy Xavier McMiller, dated
     4/20/21 (PI Merchant 2200-2203)
197. Marion County Sheriff's Office Incident Report #210002246 by Deputy Dylan Roberts, dated
     5/8/21 (PI Merchant 2204-2205)

198. Marion County Sheriff's Office Incident Report #210002287 by Deputy John Frye, dated 5/11/21 (Pl Merchant 2206)

199. Marion County Sheriff's Office Incident Report #210002523 by Deputy Cory Schweitzer, dated 5/23/21 (Pl Merchant 2207-2208)

200. Marion County Sheriff's Office Incident Report #210002751 by Deputy Dylan Roberts, dated 6/5/21 (Pl Merchant 2209-2210)

201. Marion County Sheriff's Office Incident Report #210003100 by Deputy Darryl Keaton, dated 6/26/21 (Pl Merchant 2211-2217)

202. Marion County Sheriff's Office Incident Report #210003168 by Deputy Cherrelle Jennings, dated 6/30/21 (Pl Merchant 2218)

203. Marion County Sheriff's Office Incident Report #210003344 by Deputy Darryl Keaton, dated 7/10/21 (Pl Merchant 2219-2220)

204. Marion County Sheriff's Office Incident Report #210003730 by Deputy Dellun Miller, dated 8/1/21 (Pl Merchant 2221-2224)

205. Marion County Sheriff's Office Incident Report #210003835 by Deputy John Frye, dated 8/8/21 (Pl Merchant 2225-2226)

206. Marion County Sheriff's Office Incident Report #210003841 by Deputy John Frye, dated 8/8/21 (Pl Merchant 2227-2230)

207. Marion County Sheriff's Office Incident Report #210003939 by Deputy Errol James, dated 8/15/21 (Pl Merchant 2231)

208. Marion County Sheriff's Office Incident Report #210004366 by Deputy Joe Phillips, dated 9/8/21 (Pl Merchant 2232-2233)

209. Marion County Sheriff's Office Incident Report #210004389 by Deputy John Frye, dated 9/10/21 (Pl Merchant 2234-2235)

210. Marion County Sheriff's Office Incident Report #210004395 by Deputy John Frye, dated 9/10/21 (Pl Merchant 2236-2237)

211. Marion County Sheriff's Office Incident Report #210004401 by Deputy John Frye, dated 9/10/21 (Pl Merchant 2238)

212. Marion County Sheriff's Office Incident Report #210004426 by Deputy Shaquille Thomas, dated 9/12/21

213. Marion County Sheriff's Office Incident Report #210004678 by Deputy Cory Schweitzer, dated 9/25/21 (Pl Merchant 2239-2240)

214. Marion County Sheriff's Office Incident Report #210004804 by Deputy Dylan Roberts, dated 10/4/21 (Pl Merchant 2241-2242)

215. Marion County Sheriff's Office Incident Report #210004881 by Deputy Dylan Roberts, dated 10/8/21 (Pl Merchant 2243-2244)

216. Marion County Sheriff's Office Incident Report #210004896 by Deputy Justin Kosinski, dated 10/9/21 (Pl Merchant 2245-2246)

217. Marion County Sheriff's Office Incident Report #210005039 by Deputy Cory Schweitzer, dated 10/18/21 (Pl Merchant 2247-2248)

218. Marion County Sheriff's Office Incident Report #210005382 by Deputy Justin Kosinski, dated 11/7/21 (Pl Merchant 2251-2253)

219. Marion County Sheriff's Office Incident Report #210005399 by Deputy Joe Phillips, dated 11/8/21 (Pl Merchant 2254-2255)

220. Marion County Sheriff's Office Incident Report #210005516 by Deputy Robert Regan, dated 11/14/21 (Pl Merchant 2256-2258)
221. Marion County Sheriff's Office Incident Report #210005517 by Deputy Robert Regan, dated 11/14/21 (Pl Merchant 2259-2261)
222. Marion County Sheriff's Office Incident Report #19OFF020557(13) by Detective Nathan McLain, dated 8/1/19 (Pl Merchant 2262-2330)
223. Marion County Sheriff's Office Incident Report #19OFF030278(02) by Detective Nathan McLain, dated 11/26/19 (Pl Merchant 2231-2238)
224. Marion County Sheriff's Office Incident Report #20OFF006894(01) by Detective Nathan McLain, dated 3/31/20 (Pl Merchant 2339-2343)
225. Marion County Sheriff's Office Incident Report #20OFF006894(01) by Detective Nathan McLain, dated 3/31/20 (Pl Merchant 2344-2349)
226. Marion County Sheriff's Office Incident Report #20OFF003779(03) by Detective I. Palau, dated 2/19/21 (Pl Merchant 2350-2356)
227. Marion County Sheriff's Office Incident Report #21OFF014588(02) by Detective I. Palau, dated 6/30/21 (Pl Merchant 2357-2364)
228. Marion County Sheriff's Office Incident Report #21OFF020749(01) by Detective Nathan McClain, dated 10/1/21 (Pl Merchant 2365-2370)
229. Marion County Sheriff's Office Incident Report #21OFF023413(10) by Detective Nathan McClain (Pl Merchant 2371-2397)
230. Marion County Sheriff's Office Administrative Review Report #AR-21-231 re: Lieutenant Kristin Johnson #5163, dated 11/15/21 (Pl Merchant 2399-2416)
231. Marion County Sheriff's Office Administrative Review Report #DA-05-127 re: Officer William Konopinski #5673, dated 6/28/16 (Pl Merchant 2417-2421)
232. Marion County Sheriff's Office Administrative Review Report #9017 re: Officer Justin Kosinski #5573, dated 12/20/12 (Pl Merchant 2422-2428)
233. Marion County Sheriff's Office Observation Report #6560 re: Officer Justin Kosinski #5573, dated 2/8/11 (Pl Merchant 2429-2434)
234. Marion County Sheriff's Office Use of Force Report #UOF 19-148 re: Corey Merchant, dated 5/18/19 (Pl Merchant 2435-2449)
235. Marion County Sheriff's Office Observation Report #OR17-063 re: Deputy Kristofer Valdez #6168, dated 11/16/17 (Pl Merchant 2532-2537)
236. Marion County Sheriff's Office Observation Report #OR18-010 re: Deputy Craig Savage #6172, dated 2/16/18 (Pl Merchant 2538-2542)
237. Marion County Sheriff's Office In-Custody Report, dated 10/1/21 – 11/30/21
238. Various Newspaper Articles (Pl Merchant 2452-2505)
239. Newspaper Article (Pl Merchant 2526-2531)
240. Medical Examiner Districts 5 & 24 Report #2021-2744 re: Cory Merchant, dated 1/11/22 (Pl Merchant 2507-2522)
241. State of Florida Bureau of Vital Statistics Certification of Death re: Cory Merchant, dated 11/23/21 (Pl Merchant 4784)
242. December 2022 Positions (Pl Merchant 2523)
243. January 2022 Positions (Pl Merchant 2524)
244. June 2021 Positions (Pl Merchant 2525)

245. Declaration of Terry Place, dated 10/26/23 (Pl Merchant 3564-3566)

246. Declaration of Steven Murphy, dated 10/25/23 (Pl Merchant 3567-3568)

247. Ocala Health System Medical Records re: Cory Merchant #G000789582 (Pl Merchant 3569-4693)

248. FDLE Criminal History Information on the Internet re: Cory Merchant, dated 4/17/24 (Pl Merchant 4694-4727)

249. Sprint Telephone Records/Billing re: Cory Merchant (Pl Merchant 4728-4783)

250. Marion County Jail Video Visitation Report re: Cory Merchant, dated 7/7/20 – 6/23/21

251. Circuit Court of Marion County Order Appointing Personal Representative 23CP000581AX (Pl Merchant 4785-4786)

252. Marion County Sheriff's Office 67 Case Photos re: MCSO21OFF023413

253. Booking Property Photos (3)

254. Marion County Sheriff's Office Incident Report #99022042 by Deputy Alfred Greenway, dated 7/8/1999

255. Marion County Sheriff's Office Incident Report #01009187 by Deputy Beckie Sirolli, dated 3/15/01

256. Marion County Sheriff's Office Incident Report #01011340 by Deputy Timothy Ohara, dated 4/1/01

257. Marion County Sheriff's Office Incident Report #04034398 by Deputy Niels Tonnesen, dated 6/20/04

258. Marion County Sheriff's Office Incident Report #

259. Marion County Sheriff's Office Incident Report #05029238 by Deputy Christophe Erickson, dated 5/28/05

260. Marion County Sheriff's Office Incident Report #05030150, unknown author, dated 6/2/05

261. Marion County Sheriff's Office Incident Report #05046038 by Deputy Robert Youmans, dated 8/26/05

262. Marion County Sheriff's Office Incident Report #07049249 by Deputy Elliott Chauncey, dated 9/25/07

263. Marion County Sheriff's Office Incident Report #08063462 by Deputy Richard Peters, dated 12/9/08

264. Marion County Sheriff's Office Incident Report #14016693 by Deputy Regina Graham, dated 6/19/14

265. Marion County Sheriff's Office Incident Report #15028953 by Deputy Roy Johnson, dated 9/2/15

266. Marion County Sheriff's Office Incident Report #16001728 by Deputy Kasey Newton, dated 1/13/16

267. Marion County Sheriff's Office Incident Report #16003345 by Deputy David Christmas, dated 1/25/16

268. Marion County Sheriff's Office Incident Report #16013038 by Deputy Dawn Heath, dated 5/10/16

269. Marion County Sheriff's Office Incident Report #16016110 by Deputy Robert Rath, dated 5/6/16

270. Marion County Sheriff's Office Incident Report #16016111 by Deputy Robert Rath, dated 5/6/16

271. Marion County Sheriff's Office Incident Report #18011135 by Deputy Kevin Johnson, dated 4/26/18
272. Marion County Sheriff's Office Incident Report #18027202 by Detective Stephen Juliano, dated 10/8/18
273. Marion County Sheriff's Office Incident Report #19016128, dated 6/11/19
274. Marion County Sheriff's Office Incident Report #19OFF020168 by Detective Daniel Pinder, dated 7/26/19
275. Marion County Sheriff's Office Incident Report #21OFF023413 by Detective Nathan McLain, dated 11/17/21
276. Marion County Sheriff's Office Detention Personnel Post Assignments, dated 11/6/21
277. Incident Detail Report #2111070079, dated 11/7/21
278. Marion County Sheriff's Office Disciplinary Report History re: Cory Merchant, various booking numbers
279. Marion County Sheriff's Office Housing Movements Report re: Cory Merchant ID #A0092328 Booking #1900010514
280. Marion County Sheriff's Office Inmate File re: Cory Merchant ID #A0092328 Booking #1900010514
281. Marion County Sheriff's Office Inmate Mail History re: Cory Merchant ID #A0092328 Booking #1900010514
282. Marion County Sheriff's Office Inmate Medical Records re: Cory Merchant ID #A0092328
283. Marion County Sheriff's Office Inmate Request Form re: Cory Merchant ID #A0092328, dated 11/24/19
284. Marion County Sheriff's Office Inmate Request Form re: Cory Merchant ID #A0092328, dated 4/11/20
285. Marion County Sheriff's Office Inmate Request Form re: Cory Merchant ID #A0092328, dated 9/23/20
286. Marion County Sheriff's Office Inmate Request Form re: Cory Merchant ID #A0092328, dated 12/15/20
287. Marion County Sheriff's Office Inspection of Confinement Log re: Cory Merchant
288. Marion County Sheriff's Office Telephone Call Detail Report re: Cory Merchant, dated 11/8/19 – 12/22/21
289. Marion County Sheriff's Office Inmate File re: Eric Lutterloah ID#A0070076 Booking #2000004904
290. Marion County Sheriff's Office Probable Cause Affidavit Case #MCSO20OFF009528/2005110789 by Detective B. Burleson #5542, dated 5/12/20
291. Marion County Sheriff's Office Lutterloah Inmate File 1 of 2
292. Marion County Sheriff's Office Lutterloah Inmate File 2 of 2
293. Marion County Sheriff's Office Alerts History Report re: Eric Lutterloah
294. Marion County Sheriff's Office Housing Movements Report re: Eric Lutterloah ID #A0070076 Booking #2000004904
295. Marion County Sheriff's Office Inmate Classification Report re: Eric Lutterloah ID #A0070076 Booking #2000004904
296. Marion County Sheriff's Office Inmate Classification Record re: Eric Lutterloah, dated 6/4/20

297.  Marion County Sheriff's Office Inmate Mail History re: Eric Lutterloah ID #A00700776 Booking #2000004904
298.  Marion County Sheriff's Office Keep Aways Report re: Eric Lutterloah
299.  Marion County Sheriff's Office Inmate Visitors Report re: Eric Lutterloah
300.  Marion County Sheriff's Office PREA Sexual Violence Screening Form re: Eric Lutterloah, dated 6/4/20
301.  Marion County Sheriff's Office Courthouse Division Bailiff Unit Internal Manual, dated 10/2023
302.  Marion County Sheriff's Office Daily Logs Location: G, dated 10/7/21 – 11/7/21
303.  Marion County Sheriff's Office Daily Logs Location: G, dated 11/6/21 – 11/8/21
304.  Training Records re: Jerome Dukes
305.  Training Records re: Justin Kosinski
306.  Training Records re: Dellun Miller
307.  Personnel File re: Dellun Miller
308.  Marion County Sheriff's Office Letter of Counseling re: Deputy Dellun Miller #4614, dated 4/14/21
309.  Marion County Sheriff's Office Memorandum re: Sergeant Dellun Miller #4614, dated 12/29/20
310.  Marion County Sheriff's Office Letter of Reprimand re: Deputy Dellun Miller #4614, dated 7/7/14
311.  Deposition Transcript of Jerome Dukes, dated 9/12/24

**Audio Recordings**

1.  Interview: Inmate Posey (PI Merchant 1923)
2.  Interview: Nurse Ramos (PI Merchant 1924)
3.  Interview: Officer Dukes (PI Merchant 1925)
4.  Interview: Officer Moore (PI Merchant 1926)
5.  Interview: Merchant (PI Merchant 1948)
6.  Interview: Merchant (PI Merchant 1949)
7.  Interview: Lightle Baker (PI Merchant 1950)
8.  Interview: KJ Case, Lightle (PI Merchant 2398)
9.  911 Call: Swift Pace (PI Merchant 2506)
10. McPhadden Call (PI Merchant 2543)
11. Interview 210917 0907
12. Interview 210917 0909
13. Interview 210917 0903
14. Interview 210917 0857
15. Victim Interview 2021-09-29 12064
16. Interview (Extraction 1.1) Deputy Kosinski
17. Interview (Extraction 1.1) Tommie Merchant px
18. Interview 211107 0732
19. Interview 211107 0741

20. Interview 211107 0749
21. Interview 211107 0757
22. Interview Angel Acost-Cruz Audio 2021-11-07 06
23. Interview Deputy Kosinski Audio 2021-11-07 054
24. Interview Eric Lutterloah Audio 2021-11-07 0751
25. Interview Frank Calabria Audio 2021-11
26. Interview Ryan Glover Audio 2021-11-07
27. Interview Jason Santore Audio 2021-11-07 065311 5
28. Interview 211105 2021
29. Interview 211126 0000
30. Interview Nurses John Little and Natasha Sa
31. Interview Robert Furr Audio 2-21-11-07 070418 5212
32. Interview 211104 2205
33. Interview 211108 2253
34. 10.26.101.27-350e240a0a24651b3a001137b9
35. 10.36.148.13-000be3770a24940d76e93442a

**Video Surveillance**

1. Posey Complaint Video, dated 9/24/16 (PI Merchant 1927)
2. Baker Kimberly's Center, dated 1/21/16 (PI Merchant 1951)
3. Exhibit 16 Surveillance Video, dated 10/9/21
4. Exhibit 17 Surveillance Video, dated 9/10/21
5. Surveillance Video G-Pod, dated 9/10/21
6. Surveillance Video 1 Book-Cam-29-Rel-Ent-2020-09-12, dated 9/12/21
7. Surveillance Video 2 Book-Cam-29-Rel-Ent-2020-09-12, dated 9/12/21