UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KRYSTI MERCHANT, as Personal
Representative for the Estate of Cory
Merchant, Deceased,

    Plaintiff,

v.                                              Case No: 5:23-cv-661-JSM-PRL

BILLY WOODS, Sheriff of Marion
County, Florida, in His Official Capacity;
Deputy JUSTIN KOSINSKI; Deputy
DELLUN MILLER; Sergeant JEROME
DUKES,

    Defendants.

## ORDER

THIS CAUSE comes before the Court on Defendants' Motions for Summary Judgment and the parties' Motions to Exclude Experts. Upon review of these filings, the responses, replies, record evidence, and being otherwise advised in the premises, the Court concludes that the Sheriff's motion should be denied because the record is rife with disputed facts that prevent judgment as a matter of law on the Section 1983 claim against him in his official capacity. Also, the arguments regarding the experts' opinions are more appropriate on cross-examination. Plaintiff does not oppose the individual Defendants' motions for summary judgment so their motions will be granted as unopposed. Plaintiff also does not oppose the Sheriff's motion to the extent he seeks judgment on the Florida Wrongful Death claim. Finally, the Court requires further briefing on the issue of what damages are recoverable under Section 1983 under the unique facts of this case.

## BACKGROUND

The facts are interpreted in a light most favorable to Plaintiff, the non-movant. On November 7, 2021, at approximately 1:09 a.m., Eric Lutterloah arose from his bunk, walked over to the next bunk, talked to Cory Merchant, and then punched Merchant three times in the face, which caused Merchant to fall to the ground and strike the back of his head. Merchant died on November 13, 2021, due to complications from blunt head trauma because of Lutterloah's assault. Both Lutterloah and Merchant were pretrial detainees inside the Marion County Jail at the time of the incident because neither had been convicted of the criminal charges that caused their incarceration. Currently, Lutterloah is awaiting trial for the charge of manslaughter, a second-degree felony, due to his assault and the death of Merchant.

On December 8, 2023, Plaintiff Krysti Merchant, as Personal Representative of the Estate of Cory Merchant, filed her First Amended Complaint against Sheriff Woods alleging that Sheriff Woods' policies and customs caused the assault on Cory Merchant in violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. §1983. She also alleged a wrongful death claim against Sheriff Woods under Florida law. Notably, Krysti Merchant is Cory Merchant's adult sister. It is undisputed that she was not dependent on Cory Merchant. It is also undisputed that Cory Merchant's parents are deceased, he does not have a surviving spouse, and he does not have any children or other dependents.

The Sheriff operates the Marion County Jail, which is in Ocala, Marion County, Florida. The Marion County Jail consists of 11 separate housing units. At the time of the

incident, Merchant and Lutterloah were housed in Gulf Pod, Section Alpha, which contained other male inmates charged with, or awaiting transport to prison for, felony sexual offenses. Gulf Pod had a maximum capacity of 256 inmates and was typically at capacity.

One of the basic tools that the Marion County Jail utilized to protect the people detained in its care was a classification-and-segregation system based on how violent the detainee was scored. While the jail used this protection for detainees in the general population, it withdrew this protection for detainees housed in Gulf Pod.

The Sheriff's failure to apply its own classification-and-segregation system for sex offense detainees led to Cory Merchant being housed with Eric Lutterloah, the man who would eventually kill him. Cory Merchant was charged with lewd and lascivious battery—having sexual contact with someone under the age of consent. Eric Lutterloah, on the other hand, had previously been convicted of sexual battery, was on the sex offender registry, and was charged with kidnapping an adult for ransom and sexual battery, after he sexually assaulted someone at knifepoint.

Plaintiff's corrections expert, Paul Adee, opined that classification of the inmate population is essential for the safety, security, and orderly running of a jail, that it is industry practice to separate violent from non-violent detainees, and that such separation is essential to the safety of vulnerable detainees. The failure to employ classification and subsequent segregation of detainees based on security risk for persons charged with sex offenses endangered Cory Merchant.

Plaintiff's expert, Adee, also opined at length that the Sheriff compounded the jail's dangerous condition in the Gulf Pod unit because it had a practice and custom of understaffing the guards, failing to appropriately supervise and monitor the detainees, and an excessive culture of violence within the jail. As the Court stated at the onset, the record is disputed on the issue of whether the Sheriff's policies and customs led to Merchant's death because the Sheriff offers expert Dr. Richard Hough to opine on the matter, thus creating the quintessential battle of the experts.

At the time of Cory Merchant's death and assault, the jail had been conducting audits of inmate-on-inmate assaults within the jail and was therefore aware of the rate at which inmates were assaulting other inmates. For example, there were 115 incident reports between 2018, and 2021. These reports reflected a substantial increase in inmate-on-inmate assaults during that time: 11 inmate-on-inmate assaults in 2018; 22 in 2019; 45 in 2020; and 41 through November 7, 2021 (on pace for 47 by the end of the year).

Violence and inmate fights in the Marion County Jail were commonplace. The record includes affidavits of two former Marion County Jail detainees who were housed in Gulf Pod. One of the detainees, Terry Place, stated that there was a pervasive culture of violence within Gulf Pod. Detainees were frequently violent and rarely disciplined. Place and Tommie Merchant (Cory Merchant's brother, who is also a former Marion County Jail detainee), averred that detainees in Gulf Pod engaged in "Friday Night Fight Nights." They explained that on Friday nights detainees were encouraged to fight each other and the jail's employees and officers on duty did nothing to stop them.

Deputy Kosinski testified that he had heard of the "Friday Night Fight Nights" and acknowledged that he would not be surprised if there was a night where inmates were getting together and facilitating physical altercations. Place estimated that violent altercations occurred in Gulf Pod 4 to 5 times a week. There was a culture of violence in Gulf Pod, and Place constantly feared for his safety while he was detained there.

Another Gulf Pod detainee, Steven Murphy, estimated that fights occurred in Gulf Pod on almost a daily basis, and the guards had an alarmingly indifferent attitude. According to Murphy, Lutterloah had a reputation for being violent and picking on weaker detainees like Cory Merchant, but the guards in Gulf Pod spent most of their time in the control room on social media instead of going out to surveil the dorms.

Plaintiff's claim against the Sheriff in his official capacity is that his policies and/or customs permitted Marion County Jail's systemic violence within the Gulf Pod unit, which caused Cory Merchant's death because he was not protected while he was a detainee. Because Plaintiff concedes the individual Defendants are entitled to summary judgment, the Court limits its discussion to the Sheriff's motion. Notably, Plaintiff is pursuing only the Section 1983 claim against the Sheriff. Plaintiff does not oppose his motion with respect to the Florida Wrongful Death claim.

After the Court discusses the Sheriff's motion for summary judgment, the Court will address Plaintiff's and the Sheriff's motions to exclude. The Court will conclude with the issue of damages because it appears that Plaintiff is not entitled to the typical compensatory damages under Section 1983 because there are no "survivors," who can claim these damages. The Court will permit further briefing on this matter.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

## DISCUSSION

As the Court intimated, the evidentiary record clearly illustrates a battle of the experts with respect to the issue of whether the Sheriff's policies and customs caused Merchant's assault and death (i.e., the deprivation of his Constitutional right to be safe

while detained at the Marion County Jaill). Since the claim must therefore continue to the trier of fact, the Court's discussion of Defendant's motion will be brief.

With respect to the Section 1983 claim, there are three elements: (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). These elements, in turn, are examined through the lens of the *Monell* doctrine, which controls Section 1983 claims against municipalities like Marion County, sued here as Sheriff Woods in his official capacity. Municipality liability is established by "prov[ing] that the deprivation resulted from '(1) an action taken or policy made by an official responsible for making final policy in that area of the County's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker.'" *Hale*, 50 F.3d at 1582 (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir.1994)).

As the Court's discussion of the facts reveals, there is a genuine issue on whether the conditions at the jail, particularly in the Gulf Pod unit, were so rife with violence and lack of supervision that there was no control over the detainees' safety. *See LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (discussing examples like "[w]hen prison officials have failed to control or separate prisoners who endanger the physical safety of other prisoners and the level of violence has become . . . high . . . ." Adee noted that the Marion County Jail had a steady, high, and increasing number of assaults in the years leading up to Cory Merchant's assault. Testimony reflected that the violence in the Gulf Pod unit was "constant."

In proving deliberate indifference to a serious risk of harm, a plaintiff must make two showings—first, that the Sheriff "knew of the substantial risk of serious harm," and second, that the Sheriff "knowingly or recklessly disregard[ed] that risk by failing to take reasonable measures to abate it[.]" *Hale*, 50 F.3d at 1583 (internal quotations and citations omitted). Knowledge is typically an issue of fact. *Id.* Here, there is sufficient evidence permitting an inference that the Sheriff knew that detainees classified as more vulnerable, like Cory Merchant, were exposed to a substantial risk of harm in Gulf Pod.

A municipality fails to take reasonable measures to abate a known risk if it "knew of ways to reduce the harm but knowingly . . . or . . . recklessly declined to act." *Hale*, 50 F.3d at 1583. The jury could find that the Sheriff knew of ways to reduce attacks on vulnerable detainees because in every other unit other than Gulf Pod, the jail segregated violent detainees from non-violent detainees. *Id.* (holding that the jail's failure to segregate dangerous and vulnerable detainees was evidence that the jail failed to take reasonable measures to protect vulnerable detainees from violence). The record reflects that the Sheriff also ignored a consultant's recommendations to increase the number of guards in Gulf Pod. The Sheriff could have enforced lockdowns and required the guards in Gulf Pod to conduct more frequent security checks.

In sum, the Court concludes that the finder of fact must determine the Section 1983 claim against the Sheriff. While the Sheriff contends that the claim cannot stand against him if the Court enters judgment in favor of the individual Defendants, the Eleventh Circuit states otherwise. Indeed, recently, the Eleventh Circuit noted: "The exoneration of an individual defendant does not, by itself, exonerate the municipal entity under section

1983." *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1300 (11th Cir. 2025) (citing *Barnett v. MacArthur*, 956 F.3d 1291, 1301 (11th Cir. 2020)). The Court now turns to the motions to exclude.

## **STANDARD FOR EXCLUDING EXPERTS**

When determining expert admissibility, courts consider: (1) the qualifications of the expert to competently testify to the matter at hand; (2) whether the methodologies underlying the conclusions conform with *Daubert*; and (3) whether the testimony's scientific, technical, or specialized nature will be helpful to the jury to understand a fact in issue. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). The Eleventh Circuit refers to the requirements as the "qualification," "reliability," and "helpfulness" prongs; each prong is distinct, and courts must take care not to conflate the prongs. *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d at 1333, 1341–42 (11th Cir. 2003)).

Notably, with respect to the qualification requirement (which the parties largely focus on in their motions), "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001)).

As for reliability, where an expert relies solely or primarily on experience to establish the reliability of his opinion, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier.* 387 F.3d at 1261 (quoting

9

Fed. R. Evid. 702 advisory committee's note (2000 amends.)). To fulfill its gatekeeping function, the court must do more than "simply 'taking the expert's word for it.'" *Id.* at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)).

The 2023 amendment to Rule 702 and the Committee Note set forth the proper procedure governing a party's burden to introduce expert testimony. *See* Fed. R. Evid. 702 advisory committee's note (2023 amends.). Specifically, the proponent must demonstrate that it is more likely than not that the proposed expert testimony will meet the admissibility requirements of Rule 702, as governed by Rule 104(a). The amendment also stresses the importance that an expert's opinion must "stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology" under Rule 702(d). *Id.* ("[The amendment] does not permit the expert to make claims that are unsupported by the expert's basis and methodology.").

The court's gatekeeping function is not a replacement for, and ought not to be a substitute for, vigorous cross-examination. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596. Where evidence is admissible, the cure for perceived deficiencies in testimony is achieved via cross-examination at trial. *Id.*

## DISCUSSION

### I.   Plaintiff's Expert Paul Adee

Plaintiff's expert Paul A. Adee is an expert in correctional practices, with over 30 years of experience in the field. The Sheriff contends that two discrete portions of Adee's expert report lack reliability and relevance: 1) Adee's opinion that correctional officers should take five to ten seconds when observing detainees during wellness checks and 2)

Adee's opinions that the Marion County Jail fell short of certain correctional standards. The Court concludes that these matters are more appropriately challenged on cross-examination.

> With respect to the wellness checks, Adee stated the following:
>
> One of the core functions of a jail or correctional facility is to ensure the safety and well-being of the people who are committed therein. This is accomplished by staff conducting wellness/well-being/security checks, within designated time frames and on an irregular schedule, of the inmate population. These checks are utilized for multiple purposes. They are used to ensure inmates are not engaging in self-harm, causing harm to others, where they are supposed to be, and not violating facility rules, etc. An adequate check of each offender should take between 5-10 seconds, as the officer should be observing the person's body to ensure that they are breathing by looking for their chest to rise and fall. Officers should also observe the inmate to ascertain if they are moving their limbs, head, or another body part that would indicate they are alive. If the inmate is standing and/or moving around inside of the cell or living area, the check may take slightly less time.

(Dkt. 52-1). The Court sees no reason to exclude this opinion because Adee explained the sources he relied on in coming to his ultimate conclusions. In other words, this opinion is admissible and any challenges to it go to the weight.

In addition to relying on over 30 years of experience and training in this field, Adee cited guidance primarily from the Department of Justice's National Institute of Corrections, but also the American Bar Association's Standards for Criminal Justice, and American Jails Magazine. Because this is a field of social science, Adee cannot articulate a mathematical equation that led him to his opinions, but he adequately explains how he relied on his experience and industry standards to reach his opinions. His opinions address matters well beyond the scope of a juror's common knowledge and will assist the jury in

11

understanding the standards applicable to a correctional facility. The Sheriff may cross-examine Adee about his 5-10 second rule.

With respect to whether the jail followed correctional standards, there is no reason to exclude this so long as Adee does not state a legal conclusion. For example, Adee cannot testify that the Sheriff's failure to follow these standards was deliberately indifferent to Cory Merchant and caused his death. The Sheriff's expert also discusses correctional standards, which is permissible. Courts routinely find expert testimony admissible when the expert opines on departures from professional standards of conduct, with the caveat that the expert cannot render legal conclusions. *Jackson v. Catanzariti*, No. 6:12-CV-113, 2019 WL 2098991 (S.D. Ga. May 14, 2019) (collecting cases in which courts admitted expert opinion about whether conduct conformed with industry standards); *see also Hannibal Buress v. City of Miami*, No. 20-23078-Civ-Scola, 2025 WL 1918002, at *2 (S.D. Fla. July 10, 2025) (allowing a police practices expert to testify about whether an officer's conduct conformed to professional norms). Accordingly, the Court denies the Sheriff's motion to exclude.

## II. The Sheriff's Expert Dr. Richard Hough

Plaintiff moves to exclude Dr. Hough to the extent that he offers legal conclusions. As the Court just discussed, legal conclusions are not permitted. The Court is mindful that Dr. Hough has been excluded before for offering legal conclusions and agrees with Plaintiff that he cannot opine on whether the Sheriff followed the Constitution. For example, in *Jarvis v. City of Daytona Beach*, the court ruled that Dr. Hough could not testify about whether a "pattern or practice of intentional behavior or official misconduct or a violation

12

of established law exist[ed]." No. 6:23-CV-508-JSS-RMN, 2024 WL 3717233, at *2-*3 (M.D. Fla. Aug. 8, 2024) (internal quotations omitted). Dr. Hough was instructed that he could not tell the jury what result to reach. *Id.* This is bedrock law regarding expert testimony.

Here, Dr. Hough opines, multiple times, that there is no evidence that Defendant acted unconstitutionally: "nothing in the record indicat[es] Sheriff Woods allowed or created unconstitutional policies or practices." The Court agrees with Plaintiff and underscores that Dr. Hough cannot render any opinions about whether the Sheriff followed the Constitution (or any law for that matter). Again, he can opine about industry standards and whether the jail was following said standards. While Plaintiff moves to exclude Dr. Hough's opinions that Abee should have followed only Florida's standards, this matter is more appropriate on cross-examination.

In sum, while the Court denies Plaintiff's motion to exclude Dr. Hough, the Court rules that Dr. Hough is not permitted to testify about legal conclusions. Any further challenges to Dr. Hough's opinions may be raised at trial upon the appropriate objection.

Finally, while the Court reached the merits of the parties' motions, the Court is concerned that Plaintiff's Section 1983 claim against the Sheriff is possibly moot because it appears from the relevant law that Plaintiff may not be entitled to any damages. This is because it is undisputed that Cory Merchant does not have any "survivors" as contemplated under Florida law and case law reveals that, because Sections 1983 and 1988 do not address damages for a deceased injured party, the court must turn to state law to determine the

13

survivors' remedies. Florida's Wrongful Death Act does not include an adult sibling in its definition of survivor.

In her response, Plaintiff briefly addressed the issue of damages and requested that the Court permit further briefing because Defendants did not argue this issue in any of their motions. The Court agrees that briefing is necessary because it would be a waste of judicial resources (and the parties' resources) if the case went to trial, but Plaintiff was entitled to only nominal damages in the event she prevailed. While the Court expresses no opinion on the merits at this time, the Court's independent research found the case of *Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1330–31 (N.D. Fla. 2017) instructive. The Court also notes that binding precedent is clear that punitive damages are not permitted against a municipality under Section 1983. *Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1047 (11th Cir. 2008).

Accordingly, it is ORDERED AND ADJUDGED that:

1. The Individual Defendants' Motions for Summary Judgment (Dkts. 47 & 48) are granted.

2. The Sheriff's Motion for Summary Judgment (Dkt. 49) is granted as to the Florida Wrongful Death claim and denied as to the Section 1983 claim.

3. The parties' Motions to Exclude (Dkts. 52 & 53) are denied.

4. The Sheriff and Plaintiff shall each file a brief on the issue of what, if any, damages Plaintiff is entitled to under Section 1983. The brief shall not exceed ten (10) pages in length and shall be filed within fourteen (14) days of this Order.

5. The Court declines to enter any final judgments until the conclusion of this case.

**DONE** and **ORDERED** in Tampa, Florida, this October 3, 2025.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record