UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KRYSTI MERCHANT, as Personal
Representative for the Estate of
Cory Merchant, Deceased,

    Plaintiff,

v.                                             Case No. 5:23-cv-00661

BILLY WOODS, Sheriff of Marion
County, Florida, in his official
Capacity; Deputy JUSTIN KOSINSKI;
Deputy DELLUN MILLER; Sergeant
JEROME DUKES;

    Defendants.
_____/

### DEFENDANT, BILLY WOODS', MOTION FOR RECONSIDERATION OF DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR SECTION 1983 CLAIM

Defendant, BILLY WOODS, Sheriff of Marion County, Florida, in his official Capacity ("**Sheriff Woods**"), by and through his undersigned attorneys, hereby files his Motion for Reconsideration of Denial of Defendant's Motion for Summary Judgment for Section 1983 Claim, and states:

### INTRODUCTION

1. On October 3, 2025, the Court entered its Order denying in part Sheriff Woods' Motion for Summary Judgment. (Doc. 67).

2. More specifically, after Plaintiff, KRYSTI MERCHANT, as Personal Representative for the Estate of Cory Merchant, Deceased (**"Plaintiff"**), offered

1

no opposition to the summary judgment motions for the individual Defendants (Justin Kosinski, Dellun Miller, and Jerome Dukes) and for her Florida wrongful death claims against Sheriff Woods and the individual Defendants, the Court found genuinely disputed, material facts regarding Sheriff Woods' policies and customs and whether they caused Cory Merchant's death. See Doc. 67, p. 1, 6.

3. Sheriff Woods seeks the Court to reconsider its denial of his Motion for Summary Judgment related to Plaintiff's *Monell* claim under § 1983 (Count 2) because, respectfully, the Court needs to correct clear error or manifest injustice.

## **MEMORANDUM OF LAW**

Reconsideration is an extraordinary remedy which will only be granted upon a showing of one of the following: (1) an intervening change in law, (2) the discovery of new evidence which was not available at the time the Court rendered its decision, or (3) the need to correct clear error or manifest injustice. *Fla. Coll. of Osteopathic Med. Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998). "A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."[1] *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotation marks omitted). Instead, the moving party must set forth "strongly convincing" reasons for the Court to change

---

[1] Although the argument made by Sheriff Woods related to this Motion has been addressed in both the Motion for Summary Judgment and, when Plaintiff shifted tactics, in the Reply. Respectfully, this Motion is not an attempt to relitigate matters or present new argument and evidence.

2

its prior decision. *Madura v. BAC Home Loans Servicing L.P.*, No. 8:11-cv-2511, 2013 U.S. Dist. LEXIS 113262, 2013 WL 4055851, at *1 (M.D. Fla. Aug. 12, 2013).

    1.   <u>The Court found disputed issues of fact where none existed</u>.

While the Court must view the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, Rule 56, "[b]y its very terms, . . . provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986).

The Court primarily relied on Plaintiff's expert witness, two affidavits from former inmates inside the Marion County Jail, and the testimony from Cory Merchant's brother to determine that there was a genuine issue of material fact related to the violence inside the Marion County Jail or Gulf Pod.[2] Doc. 67, p. 4-5, 7. If the Court's Order is to be interpreted that Sheriff Woods' policies also created a "substantial risk of serious harm" to inmates inside the entire Marion County Jail, and by implication to Cory Merchant, the evidence is lacking. Plaintiff offered little evidence and no argument that the Marion County Jail

---

[2] The Court also noted that Deputy Kosinski testified that he had heard of the "Friday Night Fight Nights" and acknowledged that he would not be surprised if there was a night where inmates were getting together and facilitating physical altercations. Doc. 67, p. 5. Respectfully, Sheriff Woods refers the Court to his Reply on whether the latter inference can be reasonably drawn from Deputy Kosinski's testimony. Doc. 66, p. 11-12, Doc. 50-21, Kosinski Deposition, 42/24-45/24.

created a "substantial risk of serious harm" to Cory Merchant. And given that Plaintiff has argued that Sheriff Woods abandoned his policies for Gulf Pod as it relates to security checks, and everything else for Gulf-Alpha, it would be difficult conceive of a situation where Plaintiff could because, respectfully, both Plaintiff and the Court appear to agree that if Sheriff Woods had enforced his policies in Gulf Pod or Gulf-Alpha, then that pod and housing section would not have had the conditions that created a "substantial risk of serious harm" to Cory Merchant. *See* Doc. 62, p. 16, Doc. 67, p. 3, 8. However, the evidence the Court did depend to find a genuine issue of disputed fact does not support an inference the Court draws for Plaintiff, or the evidence was insufficient to show that a jury could reasonably find for Plaintiff on her § 1983 *Monell* claim.

For example, as noted in the Reply (Doc. 66, p. 10-11), Plaintiff's expert witness reviewed 115 incident reports involving assaults from 2017 through 2021, but provided no context or analysis. Based on these incident reports, the Court accepted that this evidence supported the inference that the "Marion County Jail had a steady, high, and increasing number of assaults in the years leading up to Cory Merchant's death." Doc. 67, p. 7. To be clear, the incident reports were not for Gulf-Alpha, where the incident occurred, or the entire jail, but included incidents across the entire Gulf Pod, which consisted of four separate housing sections. Whether *Gulf-Alpha* had increasing levels of assaults during those years may be probative to Plaintiff's claim that Sheriff Woods was deliberately indifferent to a substantial risk of serious harm to Cory Merchant

4

since, after all, that is where he was primarily housed, where the incident occurred, and where Sheriff Woods allegedly abandoned all constitutional protections related to the safety and security of inmates. But whether the jail as a whole, or even Gulf Pod with its four, separate housing sections, experienced increased assaults from 2017 through 2021 does support not an inference that "[t]hese reports reflected a substantial increase in inmate-on-inmate assaults" in Gulf-Alpha.

More critically, the Court stated that "[w]hile the jail used this protection [classification-and-segregation system] for detainees in the general population, it withdrew this protection for detainees housed in the Gulf Pod." Doc. 67, p. 3. The Court agreed with Plaintiff's assertion in her Response that "instead of segregating these detainees to ensure that dangerous detainees are not housed with vulnerable ones, the MCJ places all detainees charged with sex offenses—regardless of their safety classification—in the same, common, dorm-style housing unit, called Gulf Pod-Alpha Section (Gulf-Alpha)." Doc. 62, p. 2. Plaintiff continues by stating that "detainees in Gulf-Alpha are housed in violation of the MCJ's own policies—operating everywhere else in the jail—that are designed to prevent dangerous and vulnerable detainees from being housed together." Doc. 62, p. 4; *see also id.*, p. 12-20 ("The MCJ's classification-and-segregation safety system described above applies to all of the MCJ's detainees except for one group: those who are detained on charges of committing sex offenses.").[3]

This is inaccurate as pointed out by Sheriff Woods in his Reply. Doc. 66, p. 5-7. While it may not be *material* to the Court or Plaintiff (Sheriff Woods respectfully disagrees) that Sheriff Woods' "classification-and-segregation safety system" places a *female* "3" (like Eric Lutterloah) with a *female* "5" (like Cory Merchant), but the Court, respectfully, commits clear error when it relies on conclusory allegations contradicted by the record to deny summary judgment because, in the Court's view, "the failure to employ classification and subsequent segregation of detainees based on security risk for persons charged with sex offenses endangered Cory Merchant." Doc. 67, p. 3. Simply because Plaintiff and her expert lacked the evidence to support the conclusion that placing a "3" with a "5," or generally housing "sex offense" inmates together, created a substantial risk of serious harm does not mean Plaintiff created a genuine issue of disputed fact with two affidavits from former inmates (one of whom was incarcerated after the incident and never placed inside Gulf-Alpha), Cory Merchant's brother, who had not passed through Marion County Jail since 2015, and an expert witness that claimed, in his experience at one jail, it takes X time to complete an adequate security check on each inmate, and that, more correctional officers and more frequent nighttime security checks provide better safety and security for inmates. This is not a novel observation by Mr. Adee, or

---

[3] It appears both the Court and Plaintiff agree that Sheriff Woods' classification-and-segregation policy provided inmates inside the Marion County Jail with the protection and safety demanded by the Constitution. Only in Gulf-Alpha was that protection and safety abandoned, and to a lesser extent, Gulf Pod, at least how it related to the alleged "systemic deficiencies" of insufficient security checks.

6

helpful for the jury. *See also* Doc. 52, p. 6. Of course, more correctional officers and more frequent security checks would better secure the safety of inmates. In a perfect world, each inmate would have a correctional officer assigned to him and be held in a single-occupant cell. But the Constitution does not demand this level of safety and security. *See, e.g. Farmer v. Brennan*, 511 U.S. 825, 858-59 (1994) (Thomas, J., concurring in judgment) (Violent incidents among inmates are "inevitable" in such an environment "no matter what the guards do . . . unless all prisoners are locked in their cells 24 hours a day and sedated.").

The apt analysis for Plaintiff would have been to compare the other "sex offense" housing section and the female housing section with Gulf-Alpha to point out that "arbitrarily" placing sex offenders together, including an inmate who was "Wanted by Woods" or accused of an "assaultive felony offense" with inmates charged with allegedly "non-violent" sexual offenses does, in fact, lead to a "substantial risk of serious harm," or at least an inference that it does. Otherwise, the Court, respectfully, and Plaintiff are drawing unsupported inferences that the conditions inside Gulf-Alpha created an opportunity 515 days after his booking into the Marion County Jail for Eric Lutterloah to commit his first assault on an inmate with Cory Merchant,[4] not that Plaintiff provided evidence that Sheriff Woods knowingly, and with deliberate indifference, abandoned his classification-and-segregation policy for inmates inside Gulf-Alpha. *See Wade v. McDade*, 106

---

[4] Or 485 days according to Mr. Murphy as Eric Lutterloah allegedly punched another inmate 30 days earlier. Doc. 62, Exh. 13, ¶ 10.

7

F.4th 1251, 1258 (11th Cir. 2024) ("the plaintiff must demonstrate that the defendant acted with 'subjective recklessness as used in the criminal law,' and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable under the Cruel and Unusual Punishments Clause' if he 'responded reasonably to the risk.'") (*quoting Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994)).

2. <u>The Court erred by finding that Sheriff Woods failed to take reasonable measures to abate a known risk</u>.

The Court found that a reasonable jury could find that Sheriff Woods failed to take reasonable measures to abate a known risk by (1) not segregating "violent" inmates from "non-violent" inmates in Gulf Pod as it did everywhere else in the jail, (2) ignoring a recommendation to increase the number of guards in Gulf Pod, and (3) not enforcing lockdowns and requiring the correctional officers to conduct more frequent security checks. Doc. 67, p. 8.

As for the first measure, other than Eric Lutterloah, Plaintiff identified no other inmate or incident within Gulf-Alpha to show that "violent" inmates were regularly housed with "non-violent" inmates. The record evidence does not support the inference that Cory Merchant was "non-violent" while inside the Marion County Jail, or that an inference could be drawn that he needed protection for his "vulnerability" because "he was classified as a Level 5, which

the jail itself identifies as vulnerable enough to not be classified with heightened security inmates designated Levels 1, 2, or 3." Doc. 62, p. 43; *see also infra*.

For the second measure, it is important to understand what the consultant recommended, and not what Plaintiff indicated in their Response, which the Court adopted in the Order.[5] The Staffing Analysis only recommended another part-time, day shift detention deputy ("DD") but kept the same two correctional officers to supervise Gulf Pod at night. *See* Doc. 62, p. 44. Thus, respectfully, this basis does not provide a fair reading of the consultant's recommendations related to staffing. There is also not evidence to support an inference that two correctional deputies at night were insufficient to secure the safety of inmates in the entire Gulf Pod, and the security of the jail.

Finally, related to lockdowns and more frequent security checks, while the record evidence as read in a light most favorable to Plaintiff does suggest that the Individual Defendants committed quick security checks and permitted inmates leeway to leave their bunks during nighttime, there is no testimony that the written policies permitted this discretion or that supervisors failed to discipline correctional officers when they did not meet Sheriff Woods' standards related to this very issue. In fact, both Defendant Kosinski and Defendant Miller were disciplined for failing to complete security checks in a manner required by the policies. *See* Doc. 66, p. 15. On the issue of whether more frequent security checks was a reasonable measure that Sheriff Woods could have enforced, the

---

[5] *See also* Doc. 66, p. 12-14, n. 7.

only alternative proposed was the 30-minute interval suggested by Plaintiff's expert witness. And while Mr. Adee's suggestion and experience may be helpful, there is no constitutional requirement that inmates need to be seen in bed every 30 minutes throughout the night to ensure the safety and security of the inmates. *See, e.g. Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003). Finally, the video of the entire assault, which lasts less than 30 seconds, and the aftermath does not support the inference that Sheriff Woods did not enforce the lockdown policy, or that the failure to enforce the lockdown policy caused Eric Lutterloah to assault Cory Merchant. A handful of inmates quietly talking to other inmates on their bunk does not reasonably suggest that "almost no officers at the Marion County Jail enforced lockdown" or that violence occurred "without intervention from guards." Doc. 62, Exh. 12, ¶¶ 14, 20, 33.

Thus, while the Court identified alternatives, respectfully, Sheriff Woods already implemented those alternatives in Gulf-Alpha, or the record evidence does not support the inference that those alternatives were "reasonable."

3. <u>Based on the record evidence read in a light most favorable towards Plaintiff, a judgment in favor of the Individual Defendants cannot be harmonized with a concomitant decision imposing liability on Sheriff Woods.</u>

At some point, if the Court does not reconsider its Order, it will have to enter judgment in favor of the Individual Defendants, or Plaintiff will have to dismiss them from the action, and this case will be tried before a jury. The jury, consistent with the record evidence, will listen to the Individual Defendants deny that they conducted insufficient security checks, failed to enforce lockdown, or

generally did not provide for the safety and security of the inmates inside Gulf-Alpha, or anywhere else they were assigned inside the Marion County Jail. The jury, much like the testimony in the record evidence, will hear that supervisors inside the Marion County Jail, i.e., the corporate representatives that have testified in this action, allowed very little discretion to deviate from those important tasks, i.e., nighttime security checks and lockdowns, because they understood that it ensured the safety and security of the inmates, and thus disciplined correctional deputies, including the Individual Defendants, for not upholding that standard as required by Sheriff Woods' policies. And assuming Mr. Murphy and Mr. Place appear and testify consistently with their Declarations and pursuant to the Rules of Evidence, the jury will listen to how, despite claiming that they did, the Individual Defendants regularly failed to provide for the safety and security of the inmates, which if followed, would have provided for the safety and security of Cory Merchant. In other words, there are likely no circumstances where a reasonable jury, assuming the record evidence in a light most favorable to Plaintiff, could find that the Individual Defendants actions did not cause Cory Merchant's death, but instead find that Sheriff Woods' policies solely caused Cory Merchant's death under the cases cited by this Court and Plaintiff, which would result in an inconsistent verdict. *See e.g. Andre v. Clayton Cnty.*, 148 F.4th 1282, 1300-1 (11th Cir. 2025) ("We must ask whether a judgment in favor of individual officers 'can be harmonized with a concomitant decision imposing liability on the municipal entity.'") (*quoting Barnett v.*

*MacArthur*, 956 F.3d 1291, 1301 (11th Cir. 2020)); *see also* Doc. 66, p. 17-19. This is the key question in determining whether a government agency caused the constitutional violation, or whether the government agency is simply being held responsible for the unconstitutional acts of their employees under a *respondeat superior* theory of liability, which is not permitted under § 1983, *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015), and, respectfully, an additional reason why the Court must correct clear error or manifest injustice by granting Sheriff Woods' Motion for Summary Judgment.

**WHEREFORE**, Defendant, BILLY WOODS, Sheriff of Marion County, Florida, in his official Capacity, respectfully requests that the Court reconsider its Order denying Defendant's Motion for Summary Judgment by granting the same and entering judgment against Plaintiff.

### **LOCAL RULE 3.01(g) CERTIFICATION**

Undersigned counsel certified that he conferred with counsel for Plaintiff, Sam Harton, Esq., by email on October 17, 2025, who indicated her opposition to the relief requested in this Motion.

*/s/ Bruce R. Bogan*
Bruce R. Bogan, Esq.
Fla. Bar No. 599565
Hilyard, Bogan, & Palmer, P.A.
Attorney for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to counsel for Plaintiff, James M. Slater, Esquire, Slater Legal, PLLC, 113 South Monroe Street, Tallahassee, Florida 32301, Sam Harton, Esquire, Romanucci and Blandin, 321 North Clark Street, Chicago, Illinois 60654.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Fla. Bar No. 599565
Brandon T. Byers, Esquire
Fla. Bar. No. 0119492
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile: 407-841-8431
Email: bbogan@hilyardlawfirm.com
bbyers@hilyardlawfirm.com
Attorneys for Defendant, Sheriff Woods