UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KRYSTI MERCHANT, AS PERSONAL REPRESENTATIVE
FOR THE ESTATE OF CORY MERCHANT

    Plaintiffs,

v.                                                Case No. 5:23-CV-661-JSM-PRL

BILLY WOODS, ET AL.,

    Defendants.

_____

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION

Sheriff Billy Woods' ("Defendant" or "The Sheriff") motion is not the stuff reconsideration is made of. It identifies no intervening new law; no newly discovered evidence; no controlling law the court misapplied or overlooked. Defendant, indeed, concedes in a footnote that "the argument made by Sheriff Woods related to this Motion has been addressed" both in his summary judgment motion and in his subsequent reply. ECF No. 69 at 2 fn. 1. Perhaps recognizing that there are no legitimate grounds for reconsideration, Defendant's new motion asks the Court to turn the summary judgment inquiry on its head: over and over, Defendant's motion criticizes the Court's summary judgment opinion for failing to draw factual inferences in Defendant's favor. But, of course, on summary judgment, the Court was required to draw all reasonable inferences in *Plaintiff*'s favor as the non-moving party. The Court

committed no error of fact or law—let alone a manifest error—in properly conducting its summary judgment analysis. The Court should reject Defendant's effort to re-litigate issues the Court has already considered and decided correctly.

### I.    Legal Standard

"Motions for reconsideration are permitted when there is (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) the need to correct clear error or manifest injustice." *Jenkinson v. Navy Fed. Credit Union*, 2025 WL 1455772, at *1 (M.D. Fla. Mar. 25, 2025). "A motion for reconsideration cannot be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to the entry of judgment." *Id*. "Reconsideration of a prior order is an extraordinary measure that should be applied sparingly. Court orders are not intended as first drafts subject to revisions at a litigant's pleasure, so a movant must establish extraordinary circumstances supporting reconsideration." *Wean v. Melinda*, No. 2:23-CV-302-SPC-NPM, 2025 WL 1194074, at *1 (M.D. Fla. Apr. 24, 2025). Defendant's motion does not come close to meeting this exceedingly demanding standard.

### II.   The Court Properly Considered the Facts in the Light Most Favorable to Plaintiff on Summary Judgment

After conceding that he is asking the Court to re-evaluate arguments he already made, ECF 69 at 2 fn 1, Defendant proceeds to quibble with a

hodgepodge of facts the Court relied upon in denying summary judgment. But in each instance, the Court conducted the proper summary judgment inquiry, considering the disputed facts (and attendant reasonable inferences) in the light most favorable to Plaintiff.

At the outset, it is important to note that Defendant's reconsideration motion does not seek reconsideration of the Court's denial of Defendant's *Daubert* motion regarding Plaintiff's expert, Paul Adee. Accordingly, Defendant's motion concedes that Mr. Adee offers admissible opinions as to the Sheriff's failure to comply with numerous correctional industry standards designed to provide basic safety protections to detainees. Among these opinions are: (1) the infrequent and predictable conduct of security checks at the Jail created a dangerous condition for Cory Merchant; (2) failure to enforce lockdown procedures at the jail created a dangerous condition for Cory Merchant; (3) the Jail's placement of all detainees charged with sex offenses in Gulf-Alpha, regardless of their history of assaultive behavior or vulnerability, created a dangerous condition for Cory Merchant; (4) the security checks that *were* conducted in the Gulf Pod were woefully inadequate to check 256 inmates in 4 separate living areas; and (5) the Sheriff's failure to adequately supervise inmates allowed for the level of physical violence at the Jail to exponentially increase between 2017 and 2021. ECF 62-10. The Court properly relied on Mr. Adee's opinions in concluding that genuine issues of material fact precluded

summary judgment. ECF 67. Defendant's failure to identify any error in the Court's *Daubert* analysis functionally precludes reconsideration.

Defendant begins his list of factual nitpicks with a broad and unsupported claim that "Plaintiff offered little evidence and no argument that the Marion County Jail created a 'substantial risk of serious harm' to Cory Merchant." ECF 69 at 3-4. Defendant already fully litigated this argument on summary judgment. ECF No. 66 at 5-17. The Court rejected it, correctly finding that Plaintiff had adduced substantial evidence of the Jail's serious danger, including that (1) that the Marion County Jail had a steady, high, and increasing number of assaults in the years leading up to Mr. Merchant's death; (2) testimony reflected that violence in the Gulf Pod was "constant"; (3) there was sufficient evidence that the Sheriff knew that detainees classified as more vulnerable, like Cory Merchant, were exposed to a substantial risk of harm in Gulf Pod. ECF 67 at 7-8. These findings were supported by, among other evidence, the Jail's own policies, Mr. Adee's expert testimony, testimony from former residents of the Jail and Gulf Pod, and even testimony from correctional officers at the Jail who admitted their awareness of dangers like "Friday Night Fights." *Id.* at 3-5, 7-8.

Defendant then asserts that "both Plaintiff and the Court appear to agree that if Sheriff Woods had enforced his policies in Gulf Pod or Gulf-Alpha, then that pod and housing section would not have had the conditions that

4

created a 'substantial risk of serious harm' to Cory Merchant." ECF 69 at 4. This argument is both untrue and a misstatement of the evidence. First, much of Plaintiff's position—and the Court's finding on summary judgment—is that express policies of the Jail created a serious risk to Cory Merchant: specifically, the Jail's classification system placed all detainees for sexual offenses in the same dorm-style housing, irrespective of dangerousness and vulnerability. Mr. Adee explained—in testimony Defendant concedes is admissible—that this official policy of the Jail created a danger for Cory Merchant. So, the notion that the dangers Plaintiff identified are all problems of non-enforcement of the Sheriff's policies is simply untrue. Rather, Plaintiff has shown that Marion County maintains an official policy of refusing to implement classification and monitoring schemes in Gulf-Alpha that it uses elsewhere specifically for the purpose of keeping detainees safe. ECF 67 at 3; ECF 62 at 12-14.

But even beyond that, Plaintiff identified other standard, widespread *customs* of the Jail that created a substantial risk of serious harm to Cory Merchant, including: (1) the conduct of predictable, top-of-the-hour security checks created a substantial risk to Mr. Merchant; (2) the conduct of perfunctory and inadequate security checks—in which hundreds of detainees were purportedly "checked" within mere minutes—created a substantial risk to Mr. Merchant; (3) the understaffing of the Gulf-Pod, compared to the

5

Sheriff's heightened staffing requirements for every other unit containing high-risk inmates, created a substantial risk to Mr. Merchant; and (4) allowing detainees to fraternize out of their bunks during lockdown. ECF 62 at 26-33. Plaintiff thus identified numerous official policies and customs of the Sheriff that created a substantial risk of serious harm to Mr. Merchant, and in no way relied upon isolated failures of the individual defendants to comply with policy.

Defendant next quibbles with the Court's treatment of Plaintiff's expert's analysis, arguing that Mr. Adee analyzed the rate of violent assaults across the entire Gulf Pod, rather than the Gulf-Alpha unit where Mr. Merchant resided. As noted above, however, Defendant does not seek reconsideration of the Court's *Daubert* opinion as to Mr. Adee—so any methodological challenge to Mr. Adee's opinions is fodder for cross-examination, but is not a proper basis to exclude Mr. Adee's opinions as to the dangerousness of the Jail, much less reconsider the Court's ruling on summary judgment. The Court properly considered Mr. Adee's analysis of the increasing number of assaults in the Gulf Pod in denying summary judgment.

The substance of Defendant's argument is also wrong. According to Defendant, this purported methodological flaw in Mr. Adee's analysis—already argued by Defendant on summary judgment, ECF 66 at 10—means the Court committed a manifest error of fact. Defendant asserts only that the Court improperly relied upon Mr. Adee's opinions because he used Mr. Merchant's

6

pod as opposed to his specific unit to assess an aspect of the Jail's dangerousness to Mr. Merchant. Defendant identifies no reason why the Court was not permitted to rely on Mr. Adee's assessment of Mr. Merchant's pod as part of its substantial risk inquiry. Indeed, Mr. Adee's analysis makes perfect sense—Plaintiff identified violations of the correctional standard of care both in Gulf-Alpha (failure to implement the classification and segregation policies designed to protect detainees elsewhere in the Jail) and in Gulf Pod more broadly (inadequacy of security checks, understaffing, predictability and infrequency of security checks). Mr. Adee's use of Gulf Pod, rather than Gulf-Alpha, for his year-over-year assessment of inmate assaults accords with the fact that many of deviations from the standard of care that he identified were present across the entire Gulf Pod—which is exactly where many of the unconstitutional customs occurred. The Court's reliance on Mr. Adee's analysis thus not only fails to remotely approach a "manifest error of fact"—Mr. Adee's analysis is methodologically consistent with his other findings about the Jail.

 Defendant next asserts—in a manner that is conclusory andsomewhat hard to follow—that the sum total of the evidence offered by Plaintiff does not permit a finding that Defendant violated the Constitution. ECF 69 at 6-8. But the only controlling law Defendant cites in support of this proposition is a generic rule statement, *id.*; he offers no argument, beyond complaint that

7

Plaintiff's evidence is not good enough, that the Court committed a manifest error of fact or law. Defendant's argument again amounts to little more than an assertion that the Court should have drawn factual inferences in his favor. For example, Defendant asserts—without citation to any law—that the Court was required to ignore Defendant's abandonment of its classification system for Gulf-Alpha because some female "5s" at the Jail could be housed with female "3s." But Defendant neither explains how or why that changes the relevant legal analysis, nor explains why failure to draw Defendant's preferred inference is a manifest error of fact or law that warrants reconsideration. Defendant cannot do so because the Court's analysis on summary judgment is correct. The Court properly inferred that the Sheriff's classification system at the Jail was designed to ensure detainee safety by separating dangerous detainees from vulnerable ones, and that the Sheriff knowingly abandoned that basic, necessary precaution, as well as other monitoring protocols, for detainees charged with sex offenses. ECF 67 at 8. That inference accorded with Mr. Adee's expert opinion, the admissibility of which Defendant does not challenge. *See* ECF 62-10 at 12-13.

Defendant has identified no errors in the Court's summary judgment analysis—let alone flaws so significant as to be "manifest errors of law or fact." The Court should deny the Sheriff's motion.

### III. The Court Properly Found that Sheriff Woods Failed to Take Reasonable Measures to Abate a Known Risk

On summary judgment, the Court properly found that Plaintiff adduced evidence that the Sheriff failed to take reasonable measures to protect detainees like Mr. Merchant in myriad ways. On reconsideration, Defendant once more asks that the Court draw inferences in his favor and to ignore the crucial evidence supporting Plaintiff's claims.

First, Defendant argues that the Court improperly considered the Sheriff's abandonment of its classification system for detainees charged with sex offenses because, according to Defendant, there is inadequate evidence that housing a "3" with a "5" is dangerous. ECF 69 at 6-7. But Defendant once more ignores his own classification system: Defendant has established a system to house 3s separately from 5s precisely because Defendant understands that housing those two groups of inmates together poses substantial risks to the more vulnerable 5s. There is evidence that 3s are categorically different from 5s, as they are subject to heightened security standards, able to be housed High Security inmates, are eligible for fewer privileges, and are never* housed with

---

\* Defendant attempts to make the following distinction material: *female* Level 3s are placed with other *female* Level 5s in Charlie Pod. ECF 69 at 6. This is not a material distinction, much less dispositive of Plaintiff's claims. Plaintiff can find no record produced by Marion County to support their contention that the jail classifies males and females according to the exact same scheme. Indeed, there is evidence to the contrary. For example, there appear to be no dorms specifically designated for female sex offenders, and there is no specific identification of the existence of female Level 1s or Levels 6-9. ECF 50-12 at 9. Indeed, when explaining how the

inmates like Merchant who are designated a Level 5—except in the sex offender pods. ECF 62 at 9. On summary judgment, Plaintiff offered ample evidence that the Sheriff understood the severe risks associated with abandoning the classification system, including testimony from Defendant's corporate representative, Jail supervisors, and the Sheriff's interrogatory responses. *See* ECF 62 at 7-11. Defendant simply decided not to take the reasonable precaution of separate housing for more vulnerable and more dangerous inmates with respect to Gulf-Alpha. Plaintiff's expert, Mr. Adee, opined that such classification is a crucial and necessary component of facility safety. ECF 62-10 at 12-13. Defendant has identified no manifest error of fact or law in the Court's conclusion as to classification.

Second, Defendant argues that the staffing analysis cited by Plaintiff is insufficient to support a conclusion that Defendant failed to provide adequate staffing. As an initial matter, Defendant reduces Plaintiff's argument as to

---

classification system applies to alleged sex offenders, Marion County made sure to distinguish that his answer only applied to male inmates. ECF 50-13 at 53-54 ("[…] And again, this is all dealing with male inmates, only. That's -- we're not talking about females, here […]"). Defendant's reference to the classification of female inmates is hardly persuasive cross-examination fodder, and it is certainly not sufficient to overcome the ample evidence that Plaintiff has put forth showing an official policy of housing all alleged sex offenders together regardless of their potential for violence. The fact remains that the County itself testified to abandoning the implementation of any classification scheme whatsoever in Gulf-Alpha, resulting in Mr. Merchant being classified with Mr. Lutterloah. It may be that the Sheriff endangered female detainees as well, but that question is simply not before the Court in this case.

10

inadequate staffing down to a single data point, when, in actuality, Plaintiff cited a robust body of evidence that the Gulf Pod was inadequately staffed. This included: (1) evidence that the Jail staffed Alpha Pod, which like Gulf Pod houses detainees with high-danger security classifications, with give officers monitoring the 176-detainee pod at any given point in time, but only staffed Gulf Pod (256 detainees) with two officers, ECF 62 at 26; (2) testimony from Defendant's corporate representative that MCJ detainees can perceive staffing shortages and will take the opportunity to "do whatever it is that they wanted[,]" ECF 62 at 22; (3) evidence the deputies assigned to Gulf Pod had numerous responsibilities unrelated to inmate monitoring that drew their attention elsewhere, ECF 62 at 23; (4) evidence that the deputies assigned to monitor Gulf-Alpha pod had obstructed views, ECF 62 at 23; (5) evidence that the staffing of just two deputies for the 256-person Gulf Pod often meant that three of the four units within the Gulf Pod remained entirely unmonitored, ECF 62 at 25; (6) evidence that at the time Mr. Merchant was assaulted, a single Deputy was monitoring all four units within the Gulf Pod, *id*;  (7) corporate representative testimony that in 2021, the Sheriff was concerned that detainees knew the Jail was short-staffed, *id*. at 22; and (8) evidence that the Jail had more than 100 authorized staff below what the staffing analysis deemed necessary, *id*. Yet Defendant's reconsideration motion criticizes a single data point cited by Plaintiff—the staffing analysis's recommendation to

11

add an officer to Gulf Pod—to argue that the Court committed a manifest error of fact or law. The Court committed no such error. While the staffing analysis did recommend an additional officer for 16 hours a day, it also identified staffing and supervision challenges specifically associated with the dormitory-style Gulf Pod, including: (1) views obstructed or degraded by reflections from lighting in the common area, inmates watching staff activity, blind spots in the facility, and bunks and beds; (2) lack of physical separation of inmates as in celled units; (3) "Never sleeps- conditions do not ease after lights out," and (4) "Staff see what inmates want them to see." ECF 62-11 at 5. At a minimum, then, the 2019 staffing analysis placed the Sheriff on notice of substantial challenges with existing staffing and security checks that the Sheriff failed to rectify by 2021.

Third, Defendant argues that Plaintiff presented inadequate evidence with respect to the adequacy and frequency of Defendant's enforcement of lockdowns and conduct of security checks. Defendant asserts that Plaintiff has not presented any evidence that the inadequacy of Defendant's security measures arose from the Sheriff's written policies. But Plaintiff did adduce a broad corpus of evidence that the Sheriff's official policies and widespread practices both manifested a conscious disregard for the safety of detainees. Plaintiff's expert explained that the Sheriff's official policies required security checks only once each hour, a frequency well-below the standard of care, and

that the Sheriff had a widespread custom of conducting inadequate, perfunctory checks predictable times that were insufficient to provide remotely reasonable security to any jail dorm, much less one that lacked the classification safeguards such as Gulf-Alpha. ECF 62-10 at 9-11, 14-18. Plaintiff also adduced substantial testimony that the widespread practice of the Sheriff was to not enforce lockdown, including testimony from both staff and prior detainees at the facility. ECF 62 at 33. Plaintiff's expert likewise explained that the failure to enforce lockdown procedures created a dangerous condition for Mr. Merchant, including by creating "an environment wherein the inmates feel that they are free to behave in any manner they desire as staff do not care." ECF 62-10 at 11-12.†

---

† Defendant cites *Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003), for the proposition that "there is no constitutional requirement that inmates need to be seen in bed every 30 minutes throughout the night to ensure the safety and security of the inmates." But *Cagle* stands for no such thing—in *Cagle*, a jail suicide case, the Court rejected liability where defendants breached a consent decree requiring hourly checks and an additional staffer. The Court did so because the consent decree at issue had nothing to do with prevention of jail suicides at the particular jail at issue, and there was no evidence that the individual jailer acted with deliberate indifference in light of other steps taken to protect the detainee. *Id.* at 987-90. The problem in *Cagle* was a lack of proof as to the risk of suicide at the jail. Here, by contrast, as discussed throughout, the record is replete with evidence that for the Marion County Jail, the Sheriff was on ample notice that his policies and customs created a substantial risk of serious danger to detainees like Mr. Merchant, and that he nonetheless failed to reasonable steps to ensure the safety of detainees.

13

### IV. A Judgment in Favor of Plaintiff Against the Sheriff is Consistent with a Judgment in Favor of Individual Defendants

Finally, Defendants argue that because Plaintiffs are not proceeding against the individual defendants, a verdict against the Sheriff would create an inconsistency. This argument is wrong on the facts and the law, but it was also fully litigated on summary judgment. See ECF 66 at 17-19. Defendant is not permitted to re-litigate this argument on reconsideration. The argument also lacks merit. There is no risk of an inconsistency because the jury will not be asked to answer any questions about the conduct of the individual defendants. Plaintiff has chosen not to proceed against any individual defendant; the posture of this case is no different than if Plaintiff had never named the original defendants to begin with. The salient question is whether the jury will *necessarily* make inconsistent factual findings if they find in favor of the Sheriff. The answer to that question is no, because the jury will not be asked to make *any* findings about the conduct of the individual defendants.

Second, and more importantly, this is not a case where municipal liability relies upon the liability of any individual officer. As the Court explained in its summary judgment opinion, "The exoneration of an individual defendant does not, by itself, exonerate the municipal entity under section 1983." ECF 67 at 8-9 (quoting *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1300 (11th Cir. 2025). The relevant inquiry is whether "a judgment in favor of

individual officers can be harmonized with a concomitant decision imposing liability on the municipal entity." *Andre*, 148 F.4th at 1300 (cleaned up). Plaintiff's claim is that the policies and widespread customs of the Sheriff resulted in Mr. Merchant's death. Specifically, the Sheriff had an official policy of failing to segregate inmates that it knew were dangerous from those it knew were more vulnerable in Gulf-Alpha, unlike other areas of the Jail. The Sheriff adopted that official policy, which was not a responsibility of the Individual Defendants, and carried out that policy alongside widespread customs that compounded the dangerousness of Gulf-Alpha: the Sheriff had a widespread custom of failing to conduct adequate, frequent enough security checks, and Plaintiff adduced evidence that the Sheriff entirely failed to enforce lockdown procedures necessary for detainee safety. Plaintiff also adduced evidence that the Sheriff inadequately staffed the Jail and Gulf Pod. These failures of the Sheriff do not require that any individual defendant have acted with deliberate indifference toward Mr. Merchant. This is not a case where the Sheriff's liability flows exclusively from the recklessness of individual officers; it is a case where the Sheriff's own policies and customs resulted in Mr. Merchant's death.

## V. Conclusion

The Sheriff's motion is a classic misuse of the reconsideration vehicle. It identifies no new intervening law; no newly discovered facts; and nothing

remotely approaching a manifest error of law or fact. At best, the motion identifies the existence of a number of factual disputes that the Court properly resolved in Plaintiff's favor, as it was required to do on summary judgment. The motion represents a canonical effort to relitigate issues the Court already resolved. The Court should deny the motion.

        Respectfully submitted,
        By: */s/ Sam Harton*
        Attorney for Plaintiffs

        Sam Harton
        Ben Berkman
        Stephen Weil
        Romanucci & Blandin, LLC
        321 N. Clark Street, Suite 900
        Chicago IL 60654
        Tel: (312) 458-1000
        sharton@rblaw.net

        James M. Slater (FBN 111779)
        Slater Legal PLLC
        113 S. Monroe Street
        Tallahassee, Florida 32301
        james@slater.legal
        Tel. (305) 523-9023